IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LINEAR TECHNOLOGY CORP.,   )
   )
        Plaintiff,   )   **PUBLIC VERSION**
   )
    v.   )   C.A. No. 06-476 (GMS)
   )
MONOLITHIC POWER SYSTEMS, INC., )
   )
        Defendant.   )


**LINEAR TECHNOLOGY CORPORATION'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANT'S
AFFIRMATIVE DEFENSES OF INVALIDITY AND UNENFORCEABILITY
UNDER FED. R. CIV. P. 12(f) OR, IN THE ALTERNATIVE,
FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware  19899
(302) 658-9200
  Attorneys for plaintiff Linear Technology
  Corporation

OF COUNSEL:

Raphael V. Lupo
Joel M. Freed
Mark G. Davis
Ronald J. Pabis
Stephen K. Shahida
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC  20005
(202) 756-8000

Original Version Filed October 2, 2006
Redacted Version Filed October 4, 2006

i.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ......................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................ 4

    A.   The Applicable Legal Standard ...................................................................................4

    B.

    C.

    D.   The Court Should Strike Monolithic's Legally Insufficient Challenges To The Linear Patents Or, In The Alternative, Enter Judgment For Linear On Monolithic's Invalidity And Enforceability Defenses...................................................10

CONCLUSION........................................................................................................................ 12

**REDACTED**

ii.

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Aro Corp. v. Allied Witan Co.,*
    531 F.2d 1368 (6th Cir. 1976) ..................................................................................7, 9

*Cook, Inc. v. Medtronic, Inc.,*
    2006 U.S. Dist. LEXIS 47073 (N.D. Cal., June 29, 2006) .....................................11

*Flex-Foot, Inc. v. CRP, Inc.,*
    238 F.3d 1362 (Fed. Cir. 2001).......................................................................6, 7, 8, 10

*Greiff v. T.I.C. Enters., L.L.C.,*
    2004 U.S. Dist. LEXIS 680 (D. Del. Jan. 9, 2004) ...................................................4

*Hemstreet v. Spiegel, Inc.,*
    851 F.2d 348 (Fed. Cir. 1988) ..................................................................................7

*Lear v. Adkins,*
    395 U.S. 653 (1969) .............................................................................................8, 9

*Mack v. South Bay Beer Distribs., Inc.,*
    798 F.2d 1279 (9th Cir. 1986) ...................................................................................5

*Mele v. Fed. Reserve Bank of New York,*
    359 F.3d 251 (3d Cir. 2004).......................................................................................5

*Panduit Corp. v. HellermannTyton Corp.,*
    2004 U.S. Dist. LEXIS 15918 (N.D. Ill. Aug. 10, 2004)...........................................9

*Southmark Prime Plus, L.P. v. Falzone,*
    776 F. Supp. 888 (D. Del. 1991) ...............................................................................5

**Rules**

Fed R. Civ.12(b)(6) ......................................................................................................5

Fed. R. Civ. P. 12(c) ...............................................................................................1, 2, 5

Fed. R. Civ. P. 12(f) ...............................................................................................1, 2, 4

Fed. R. Evid. 201(b).....................................................................................................5

**Statutes**

19 U.S.C. § 1337...........................................................................................................2

35 U.S.C. § 101..........................................................................................................2, 4

35 U.S.C. § 102..........................................................................................................2, 4

35 U.S.C. § 103..........................................................................................................2, 4

iii.

35 U.S.C. § 112........................................................................................................2, 4

35 U.S.C. § 116...........................................................................................................4

Cal. Civ. Code § 1641................................................................................................11

**Other Authorities**

Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* § 9:381 (1995)............ 4

1.

**INTRODUCTION**

**REDACTED**

That agreement was further incorporated into a Consent Order, which ended the ITC proceeding.  Ignoring its agreement,

**REDACTED**

Accordingly, these defenses should be stricken, or in the alternative, judgment should be entered for Linear on the pleadings on these defenses.

**NATURE AND STAGE OF PROCEEDINGS**

Linear filed its complaint in this action for breach of contract and patent infringement against Monolithic on August 3, 2006.  ("Complaint," D.I. 1).  Monolithic answered on September 14, 2006, raising affirmative defenses of patent invalidity, as well as unenforceability for purported patent misuse and inequitable conduct before the United States Patent and Trademark Office ("PTO").  ("Answer," D.I. 9, at 5-8).  Linear has moved to strike Monolithic's invalidity and unenforceability defenses under Fed. R. Civ. P. 12(f) or, in the alternative, to enter judgment on the pleadings in Linear's favor on those defenses under Fed. R. Civ. P. 12(c).  This is Linear's opening brief in support of its motion.

**SUMMARY OF ARGUMENT**

Rather than face trial in the ITC, Monolithic made and then broke a series of promises to Linear.  This motion concerns one such broken promise,

**REDACTED**

2.

**REDACTED**

Those insufficient defenses therefore should be stricken under Fed. R. Civ. P. 12(f).  In the alternative, the Court should enter judgment on the pleadings for Linear on those defenses under Fed. R. Civ. P. 12(c).

### STATEMENT OF FACTS

**REDACTED**

On or about August 17, 2004, the ITC instituted an investigation of Monolithic's activities under Section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337) for unfair methods of competition.  (D.I. 1, ¶ 8).  In the ITC proceedings, Linear alleged that Monolithic violated Section 337 by importing voltage regulator circuits that infringed U.S. Patent Nos. 5,481,178 and 6,580,258 B2 (collectively, the "'178 and '258 patents" or "the Linear Patents").  (D.I. 1 at ¶¶ 5, 6, 8).  In defense of the proceedings, Monolithic alleged that the Linear Patents were invalid under 35 U.S.C. §§ 101, 102, 103, and 112 for alleged anticipation, lack of novelty, indefiniteness, and obviousness.  (Public Version of Monolithic's Amended Response, attached as Exhibit A at 19-23).  Monolithic further challenged the Linear Patents as unenforceable, due to inequitable conduct.  (*Id.*, at 23-25).

3.

On the eve of trial, the parties entered into a Settlement and License Agreement ("the Settlement Agreement"), and a Consent Order Stipulation. (D.I. 1, Ex. C). On September 30, 2005, Linear and Monolithic filed a "Joint Motion to Terminate Investigation Based Upon A Settlement Agreement And Consent Order." (D.I. 1 at ¶ 9). The Consent Order terminated the ITC investigation.

**REDACTED**

Having learned of Monolithic's renewed infringement of the '178 and '258 patents, Linear brought this action alleging breach of the Settlement Agreement and willful infringement of the patents in suit. (D.I. 1 at ¶¶ 15, 16, 18).

**REDACTED**

---
1

**REDACTED**

4.

Specifically, in its Fifth Defense, Monolith revives its contention that the '178 and '258 patents are "invalid" under 35 U.S.C. §§ 101, 102, 103, 112 and/or 116 (D.I. 9 at 5). In its Ninth Defense, Monolithic again avers that the Linear Patents are unenforceable due to inequitable conduct. (*Id.*, at 6-8).

**REDACTED**

**ARGUMENT**

A.    The Applicable Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides that the Court may strike "any insufficient defense. . . ." Fed. R. Civ. P. 12(f).[2]  The court must construe all facts in favor of the nonmoving party but grant a motion to strike if the defense is insufficient as a matter of law. *See, e.g., Greiff v. T.I.C. Enters., L.L.C.*, 2004 U.S. Dist. LEXIS 680, at *5 (D. Del. Jan. 9, 2004). The moving party must show "that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* § 9:381 (1995).

---

[2]    "Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

5.

Rule 12(c) of the Federal Rules of Civil Procedure provides for judgment on the pleadings.[3] A motion for judgment on the pleadings under Rule 12(c) is governed by the same "no material issue of fact to resolve" standard as a motion to dismiss under Rule 12(b)(6). *See Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 253 (3d Cir. 2004). Matters extraneous to the pleadings are not considered, *id.,* at 256, but a "'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id.,* at 256 n.5 (citation omitted, emphasis original). Likewise, under Rule 12(c), a court may take judicial notice of additional facts where appropriate under Federal Rule of Evidence 201.[4] *Southmark Prime Plus, L.P. v. Falzone,* 776 F. Supp. 888, 892 (D. Del. 1991); *see Mack v. South Bay Beer Distribs., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986) (no conversion to summary judgment motion when evidence of public record could be judicially noticed). Specifically, "federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue." *Southmark,* 776 F. Supp. at 892 (citation omitted).[5]

---

[3]     Rule 12(c) states (emphasis added):

> After the pleadings are closed but within such time as not to delay the trial, *any party may move for judgment on the pleadings.* If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c).

[4]     Rule 201(b) defines a judicially noticed fact as "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

[5]     Court records that may be judicially noticed include the briefs and petitions of the parties. *Id.* These are materials that cannot be reasonably disputed and whose accuracy cannot reasonably be questioned. *Id.*

6.

B.                    **REDACTED**

1.

On the eve of the ITC trial, the parties voluntarily settled.   In its Answer, Monolithic acknowledges the Settlement Agreement (D.I. 9 at ¶ 9)

**REDACTED**

2.

**REDACTED**

**REDACTED**

*See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1367 (Fed. Cir. 2001) (promise not to challenge patent validity in settlement agreement gives rise to contractual estoppel of subsequent validity challenge).

C.

**REDACTED**

1.  **Public Policy Favors Enforcement of Voluntary Settlements, Including Waiver Provisions**

The law generally favors voluntary settlement of legal disputes, *see, e.g., Flex-Foot*, 238 F.3d at 1369, and "[s]ettlement is of particular value in patent litigation, the nature of which is often inordinately complex and time consuming." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) (Markey, C.J.). Accordingly, "'there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into,' because enforcement of settlement agreements encourages parties to enter into them — thus fostering judicial economy." *Flex-Foot*, 238 F.3d at 1369 (*quoting Hemstreet v. Spiegel, Inc.*, 851 F.2d 348 (Fed. Cir. 1988)). As in *Flex-Foot*,

# REDACTED

In *Flex-Foot*, patentee brought an infringement action against Springlite that resulted in a settlement agreement and a corresponding license. *Flex-Foot*, 238 F.3d at 1363. Neither document barred Springlite from challenging the validity of the Flex-Foot patent, and Springlite subsequently brought an action to declare that patent invalid. *Id.* Following some discovery and full briefing on Springlite's summary judgment motion of invalidity, the parties resolved that action by entering into another settlement agreement and corresponding license. *Id.* at 1364. Unlike the prior contract, however, the second agreement had a provision waiving Springlite's right to challenge the validity and enforceability of the Flex-Foot patent. *Id.*

Flex-Foot subsequently sued Springlite for patent infringement, and the dispute was referred to arbitration as provided by the settlement agreement. Flex-Foot prevailed in arbitration. Springlite then moved the district court to vacate the arbitration award and consider its affirmative defense of invalidity. The district court refused, instead granting Flex-Foot's

8.

motion to affirm the arbitrators' award. *Id.* The trial court concluded that Springlite was "collaterally estopped" from challenging the validity and enforceability of Flex-Foot's patent.

Springlite appealed to the Federal Circuit, arguing, among other things, that its waiver of claims and defenses in the settlement agreement with Flex-Foot contravened public policy.[6] *Id.* at 1365. Springlite rested its challenge on *Lear v. Adkins*, 395 U.S. 653 (1969), which had overruled the doctrine of licensee estoppel in favor of the "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." 395 U.S. at 669.

The *Flex-Foot* panel held *Lear* inapplicable to agreements settling infringement litigation, concluding that such "agreements must be enforced if they are to remain effective as a means for resolving legal disagreements. Upholding the terms of settlement agreements encourages patent owners to agree to settlements and promotes judicial economy." *Flex-Foot*, 238 F.3d at 1370. The Court further explained that:

> Once an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding.

---

[6]     The Federal Circuit held the waiver issue "intimately related with the substance of enforcement of a patent right," and thus governed by its own law. *Flex-Foot*, 238 F.3d at 1365.

9.

*Id.*[7]  In sum, the public interest in settling litigation trumps the public interest behind the *Lear* decision.  The Sixth Circuit in *Aro*, 531 F.2d at 1373, expressed the same sentiment, albeit more emphatically, when affirming the enforcement of a settlement agreement:[8]

> Whatever boon *Lear* may have provided those who take licenses under certain conditions, it cannot be interpreted so broadly as to condone a kind of gamesmanship, wherein an alleged infringer, after employing the judicial system for months of discovery, negotiation and sparring, abandons its challenge to validity, executes a license in settlement, and then repudiates the license and seeks to start the fight all over again in the courts.  *Lear* does not require that the courts answer every beck and call of the fickle suitor whose transient affection is governed by such on-again, off-again strategies.  The mantle of *Lear* ill befits him who would use and reuse the courts as pawns in a private game of varying design.  The "defender of the public interest" role is not available to him who would frustrate on whim the orderly conclusion of litigation.

> 2.     Monolithic Conducted Exhaustive Discovery On Invalidity
>        and Unenforceability Defenses in the ITC

This case presents an instance of the precise gamesmanship noted by Judge Markey in *Aro*.  In the ITC, Monolithic asserted invalidity and unenforceability defenses in response to Linear's charges of infringement.[9]  (Ex. A at 19-25).  Monolithic voluntarily entered

---

[7]     As one district court noted, these considerations do not form a "test" for contractual estoppel, but merely constitute the "specific terms of the relevant settlement agreement at issue in that particular case in holding that the accused infringer was contractually estopped from raising a challenge to the validity of the patent in subsequent litigation." *Panduit Corp. v. HellermannTyton Corp.*, 2004 U.S. Dist. LEXIS 15918 at *7 (N.D. Ill. Aug. 10, 2004).

[8]     *Aro* was authored by Judge Markey, then Chief Judge of the United States Court of Custom and Patent Appeals, who sat on the Sixth Circuit by designation.

[9]     **REDACTED**                                                   the substance of Monolithic's invalidity and unenforceability arguments is not material to this motion.  It appears, however, that the substance of these defenses will be substantially the same in the present action.  For example, Monolithic's inequitable conduct defense (Ninth Defense) before this Court resurrects one of the grounds for inequitable conduct alleged before the ITC.  (Ex. A at 24).  The Court may take judicial notice of the contents of Monolithic's Answer filed in the ITC.

10.

into an agreement settling its dispute with Linear in the ITC after taking extensive discovery on issues it now attempts to resurrect. In the thirteen months the investigation remained active, Monolithic took a host of depositions, propounded scores of contention interrogatories, and submitted numerous expert reports. Indeed, discovery had come to a close by the time the parties reached settlement.

Monolithic thus had ample motivation and occasion to evaluate the grounds for its defenses. After such thorough investigation, however,

**REDACTED** Allowing Monolithic to

go back on its agreement would not only erode the policy favoring settlements in patent litigation, but would also squander judicial resources.

D.    The Court Should Strike Monolithic's Legally Insufficient Challenges To The Linear Patents Or, In The Alternative, Enter Judgment For Linear On Monolithic's Invalidity And Enforceability Defenses

No material facts are in dispute.        **REDACTED**

Monolithic's attempts to raise such challenges fail as a matter of law.

**REDACTED**

judgment should be entered for Linear on the pleadings on these defenses.

**REDACTED**

Monolithic is clearly estopped from asserting this defense under *Flex-Foot*, 238 F.3d at 1370.

11.

Monolithic's Ninth Defense for inequitable conduct is also barred under this provision.

**REDACTED**


**REDACTED**


Suit." To conclude otherwise would do injustice to the alternative phrase "challenge or."

Contract provisions must be construed so as not to render any language redundant. Cal. Civ. Code § 1641[10] ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *see, e.g., Cook, Inc. v. Medtronic, Inc.*, 2006 U.S. Dist. LEXIS 47073, at *23 (N.D. Cal., June 29, 2006).

**REDACTED**


Monolithic's allegations of patent misuse are likewise misguided. As discussed above,    **REDACTED**

What is more, Monolithic agreed to the very language it now seeks to repudiate. This Court should not condone Monolithic's bait and switch tactics.

---

[10]    Paragraph 6.1 provides that the Agreement be construed with and governed by the laws of the State of California.

12.

**REDACTED**

Yet Monolithic agreed, with advice of counsel, to this very language in signing the contract.[12] To put it simply, there can be no patent misuse where Monolithic agreed to this provision as part of a voluntary settlement. Any other outcome would frustrate the public policy promoting the settlement of patent disputes.

<u>**CONCLUSION**</u>

For these reasons, Linear respectfully request that the Court strike Monolithic's Fourth, Fifth, and Ninth Defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Alternatively, Linear asks that the Court enter judgment in Linear's favor on those defenses under Rule 12(c) of the Federal Rules.

---

11

**REDACTED**

12

**REDACTED**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden (#2881)*_____
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware  19899
(302) 658-9200
 Attorneys for plaintiff Linear Technology
 Corporation

OF COUNSEL:

Raphael V. Lupo
Joel M. Freed
Mark G. Davis
Ronald J. Pabis
Stephen K. Shahida
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC  20005
(202) 756-8000


October 4, 2006

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on October 4, 2006 I electronically filed the foregoing Answer and Counterclaims with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz
POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on October 4, 2006 upon the following in the manner indicated:

### BY HAND AND EMAIL

Richard L. Horwitz
POTTER ANDERSON & CORROON LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951

### BY EMAIL

Dean G. Dunlavey
Mark A. Flagel
Robert Steinberg
Rosslyn Stevens Hummer
LATHAM & WATKINS
633 West Fifth Street, Ste. 400
Los Angeles, CA  90071


*/s/ Karen Jacobs Louden(#2881)*
klouden@mnat.com

EXHIBIT A

# PUBLIC VERSION

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

### Before The Honorable Sidney Harris
### Administrative Law Judge

| | |
|---|---|
| In the Matter of )<br><br>CERTAIN VOLTAGE REGULATOR )<br>CIRCUITS, COMPONENTS THEREOF AND )<br>PRODUCTS CONTAINING SAME )<br>) | Investigation No. 337-TA-521 |

## AMENDED RESPONSE AND AFFIRMATIVE DEFENSES OF RESPONDENT
## MONOLITHIC POWER SYSTEMS, INC.
## TO THE COMPLAINT OF LINEAR TECHNOLOGY CORPORATION

**RESPONDENT:**

MONOLITHIC POWER SYSTEMS, INC.
983 University Avenue, Building A
Los Gatos, CA 95032
Telephone: (408) 395-2802

**SIGNED BY:**

Jean-Francois M. Daviet, Ph.D
983 University Avenue, Building A
Los Gatos, CA 95032
Telephone: (408) 395-2802

**COUNSEL FOR RESPONDENT:**

Mark A. Flagel
Robert Steinberg
Rosslyn Stevens Hummer
Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Maximilian A. Grant
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1918
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

A copy of the MP1556 datasheet is attached hereto as **Exhibit 1**.

## SECOND AFFIRMATIVE DEFENSE

### (Claims Are Invalid as Anticipated – 35 U.S.C. § 102)

Upon information and belief, one or more of the Claims are invalid because (i) the subject matter claimed by the Patents-in-Suit was known by others in the United States prior to the issuance of the Patents-in-Suit; (ii) the claimed subject matter was described in a printed publication prior to the issuance of the Patents-in-Suit; (iii) the claimed subject matter was in use or on sale for more than a year prior to the date of application for the Patents-in-Suit; and/or (iv) the claimed subject matter was described by another in a patent application filed prior to the priority date of the subject matter claimed in the Patents-in-Suit.

In the Impala Litigation, the defendants produced extensive prior art against the '178 Patent (which prior art also applies to the '258 Patent) and filed under seal motions for summary judgment on various grounds, including invalidity, non-infringement and unenforceability. In September 2001, the District Court entered an order granting a summary judgment of non-infringement in the Impala Litigation, which was appealed to the Federal Circuit. In issuing that order, the District Court set aside as moot the defendants' motions on the issues of invalidity and unenforceability based on its finding of non-infringement. A copy of the District Court's opinion in the Impala litigation is attached hereto as **Exhibit 2**. Upon appeal, the Federal Circuit vacated the District Court's order and remanded the case based, in part, on a different interpretation of certain claim terms. A copy of the Federal Circuit's opinion in the Impala litigation is attached hereto as **Exhibit 3**.

Linear has yet to produce to MPS any of the prior art identified during the Impala Litigation, which is the subject of certain of MPS's pending discovery requests. However, based on publicly available information regarding the prior art and factual circumstances discovered

19

during the Impala Litigation, as well as the prosecution histories of the Patents-in-Suit, the Patents-in-Suit are invalid (as interpreted and applied by Linear), *inter alia*, under 35 U.S.C. §§ 102, 103 and 112 and unenforceable due to inequitable conduct. Discovery is ongoing, and MPS has only recently commenced its own investigation into the invalidity and unenforceability of the Patents-in-Suit.

Based on presently available information, the Patents-in-Suit are invalid (as interpreted and applied by Linear) pursuant to one or more subparts of 35 U.S.C. §102, including §§ 102(a), (b), (e), (f) and (g). In particular, the Claims of the Patents-in-Suit are invalid (as interpreted and applied by Linear) under §102 for at least the following reasons:

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are anticipated by documentation from Siliconix regarding its Si9150 Ripple Regulator (the "Si9150 Ripple Regulator").

- Claim 51 of the '178 Patent and other related Claims of the Patents-in-Suit are anticipated by U.S. Patent No. 5,237,606 (the "DDL Regulator").

- Claim 51 of the '178 Patent and other related Claims of the Patents-in-Suit are anticipated by documentation from Maxim regarding its MAX782 product (the "MAX782").

- Claim 51 of the '178 Patent and other related Claims of the Patents-in-Suit are anticipated by Japanese Patent No. 4-101286 (the "JP '286 Patent").

The foregoing list of invalidity contentions is not exhaustive, and discovery is ongoing. With respect to the foregoing contentions, MPS incorporates by reference the relevant pleadings and documents from the Impala Litigation, which are in Linear's possession.

### THIRD AFFIRMATIVE DEFENSE

### (Lack of Novelty – 35 U.S.C. § 101)

Upon information and belief, the Claims are invalid because they lack novelty.

### FOURTH AFFIRMATIVE DEFENSE

### (Claims Are Invalid for Indefinite Claim Language – 35 U.S.C. § 112 ¶2)

Upon information and belief, the Claims are invalid because the claim language is too indefinite.

### FIFTH AFFIRMATIVE DEFENSE

### (Claims Are Invalid as Obvious – 35 U.S.C. § 103)

Upon information and belief, the Claims are invalid because they were obvious to one skilled in the art at the time of the purported invention.

Based on presently available information, the Patents-in-Suit are invalid (as interpreted and applied by Linear) for failure to comply with one or more subparts of 35 U.S.C. §103.  In particular, the Claims of the Patents-in-Suit are invalid (as interpreted and applied by Linear) under §103 for at least the following reasons:

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the Si9150 Ripple Regulator and Figure 1 of the '178 Patent.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the documentation from Harris Semiconductor regarding its HIP 5060 product (the "HIP 5060") and "Electronic Power Control" by I. M. Gottlieb ("Gottlieb").

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the "HIP 5060 and "Synchronous Half-Wave Rectifier" by W. E. Ripple ("Ripple").

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the HIP 5060 and "Current Drives Synchronous Rectifier" by W. R. Archer ("Archer").

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the Japanese Patent No. 4-42771 (the "JP '771 Patent") and Gottlieb.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the JP '771 Patent and Ripple.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the JP '771 Patent and Archer.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the HIP 5060 and Figure 1 of the '178 Patent.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the JP '771 Patent and the Si9150 Ripple Regulator.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of U.S. Patent No. 4,541,041 (the "'041 Patent") and the Si9150 Ripple Regulator.

- Claim 51 of the '178 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the DDL Regulator and Figure 1 of the '178 Patent.

The foregoing list of invalidity contentions is not exhaustive, and discovery is ongoing. With respect to the foregoing contentions, MPS incorporates by reference the relevant pleadings and documents from the Impala Litigation, which are in Linear's possession.

### SIXTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

Upon information and belief, the allegations in the Complaint are precluded due to the doctrine of prosecution history estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

### (Unenforceability due to Inequitable Conduct)

Upon information and belief, the Claims are unenforceable due to inequitable conduct. Based on presently available information, the Patents-in-Suit are unenforceable due to inequitable conduct. MPS is informed and believes, and therefore alleges, that all Claims of the Patents-in-Suits are unenforceable by virtue of the failure of the patentees to act with the degree of candor and good faith required of persons who prepare or prosecute a patent application before the United States Patent and Trademark Office, including the failure to disclose material prior art and information known to the patentees or persons having substantial responsibility for the prosecution of the Patents-in-Suit.   In particular, all Claims of the Patents-in-Suit are unenforceable for at least the following reasons:

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose various publications by one of Linear's own employees, Jim Williams, including

Applications Notes 29 and 35 ("Williams") during the prosecution of the '178 Patent.

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose documents from Micro Linear Corporation regarding its ML4862 product ("ML4862") during the prosecution of the '178 Patent.

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose documents from Linear regarding its LT1073 product ("LT1073") during the prosecution of the '178 Patent.

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose documents relating to Maxim's MAX 782 product during the prosecution of the '178 Patent.

- All Claims of the '258 Patent are unenforceable because the patentees knowingly and willfully inundated the Examiner with a large volume of prior art references that are not material in order to obscure those references that are materially relevant to the '258 Patent. In this regard, the Examiner of the '258 Patent made the following statements for the record during the prosecution of the '258 Patent: "It is noted that applicants have field [sic – filed] a large volume of prior art in the instant application. Many of these references do not appear material to the claimed invention. Applicants [sic] attention is directed to Ex Parte Morning Surf Corp., 230 USPQ 446. And Penn Yan Boats, Inc. v. Sea Lark Boats, Inc. 359 Supp. 948, 175 USPQ 260 (S.D. Fla. 1972)."

24

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose the identity of Ronald Vinsant, a former employee of Linear, as an inventor of the Patents-in-Suit during the prosecution of the '178 Patent.

The foregoing list of unenforceability contentions is not exhaustive, and discovery is ongoing. With respect to the foregoing contentions relating to the Impala Litigation, MPS incorporates by reference the relevant pleadings and documents from the Impala Litigation, which are in Linear's possession.

## EIGHTH AFFIRMATIVE DEFENSE

### (Lack of a Domestic Industry)

Upon information and belief, there is no domestic industry as required by section 337 of the Tariff Act of 1930, as amended. Therefore, Linear is not entitled to the relief it seeks.

## NINTH AFFIRMATIVE DEFENSE

### (Lack of Unfair Act)

MPS has committed no unfair act as set forth by the Tariff Act.

## TENTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Complainant Linear is not entitled to relief pursuant to the Tariff Act because its Complaint fails to state a claim for relief under the Tariff Act.

Dated: September 20, 2004

Respectfully submitted,

Mark A. Flagel
Robert Steinberg
Rosslyn Stevens Hummer
Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Maximilian A. Grant
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1918
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

By _____
Maximilian A. Grant
Attorneys for Monolithic Power Systems, Inc.

## **VERIFICATION**

I have read the foregoing AMENDED RESPONSE AND AFFIRMATIVE DEFENSES OF RESPONDENT MONOLITHIC POWER SYSTEMS, INC. TO THE COMPLAINT OF LINEAR TECHNOLOGY CORPORATION and know its contents.

I am the Director of Sales and Marketing, Europe, of Monolithic Power Systems, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I have read the foregoing document. I am informed and believe and, on that ground, allege that the matters stated in it are true.

Executed on September __17th__, 2004 in __Wuertzburg _____.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.



Jean-Francois M. Daviet, Ph.D

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2004, I served copies of the forgoing **Public Version of Response and Affirmative Defenses of Respondent Monolithic Powers Systems, Inc. to the Complaint of Linear Technologies Corporation on** the following parties in the manner indicated:

**(Original and Six Copies)**
**Hand Delivery**
U.S. International Trade Commission
Marilyn R. Abbott, Secretary
U.S. International Trade Commission
500 E Street, S.W. Room 112
Washington, D.C. 20436
202-205-2000

**(Two Copies and**
**Diskette Containing WordPerfect for**
**Windows Version)**
**Hand Delivery**
U.S. International Trade Commission
Honorable Sidney Harris
Office of the Administrative Law Judge
U.S. International Trade Commission
500 E Street, S.W. Suite 317-G
Washington, D.C. 20436
202-205-2000

**(Two Copies)**
**Hand Delivery**
David H. Hollander, Jr., Esq.
Investigative Attorney
Office of Unfair Import Investigations
500 E Street, S.W.
Washington, D.C. 20436
202-205-2000

**Counsel for Complainant**

D. Sean Trainor, Esq.
**MCDERMOTT WILL & EMERY LLP**
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
*(via electronic mail)*

Vera M. Elson, Esq.
Peter P. Chen, Esq.
Keaton S. Parekh, Esq.
**MCDERMOTT WILL & EMERY LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
*(via electronic mail)*

Timothy Andersen, Esq.
**MCDERMOTT WILL & EMERY LLP**
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
*(via electronic mail and federal express)*

Tamara Nation, Esq.
**MCDERMOTT WILL & EMERY LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
*(via electronic mail and federal express)*

David E. Easler
Legal Assistant
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
(202) 637-2200