IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINEAR TECHNOLOGY CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MONOLITHIC POWER SYSTEMS INC., ) <br> ) <br> Defendant. ) | C. A. No. 06-0476-GMS <br><br> **PUBLIC VERSION** |

**MONOLITHIC POWER SYSTEMS, INC'S OPPOSITION TO
LINEAR TECHNOLOGY CORPORATION'S MOTION
TO STRIKE DEFENSES OF INVALIDITY AND UNENFORCEABILITY OR,
IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**

OF COUNSEL:

Rosslyn (Beth) Stevens Hummer
Mark A. Flagel
Bob Steinberg
Dean G. Dunlavey
Latham & Watkins
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Tel: (213) 485-1234

Dated: October 16, 2006
Public Version Dated: October 17, 2006
756149 / 30611

Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19889-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Defendant
Monolithic Power Systems Inc.*

# **TABLE OF CONTENTS**

Table of Authorities ............................................................................................................. ii

I.  INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ............................................................................................................. 3

    A.    In Considering Linear's Motion, the Court is Required to Construe All the Facts in Favor of MPS. .............................................................. 3

    B.    The Settlement Agreement is Governed by California Law, Which Requires that the Whole of the Contract be Taken Together and Recognizes the Intent of the Parties as Paramount. ........................................ 4

        1.    The Intent of the Contracting Parties Set Forth in the Written Contract Establishes the Rights and Duties of Each Party under a Contract. ............................................................................ 5

        2.    Extrinsic Evidence is Available to Interpret an Ambiguous Integrated Contract ................................................................................... 6

    C.    Linear's Argument that MPS cannot Assert the Defenses It Moves to Strike Turns on its Faulty Assertion that this Patent Infringement Lawsuit is an Action to Enforce the Settlement Agreement. ......................... 7

    D.    Linear's Attempt to Interpret "Validity" to Mean "Validity and Enforceability" is Without Merit and Further Evidence that Linear is Attempting to Rewrite the Settlement Agreement. .................................... 8

    E.    Linear's Argument that MPS Cannot Assert a Patent Misuse Defense is Equally Flawed ................................................................................ 10

III. CONCLUSION ....................................................................................................... 12

# **TABLE OF AUTHORITIES**

## **CASES**

*A.B. Chance Co. v. RTE Corp.*,
854 F.2d 1307 (Fed. Cir. 1988)......................................................................................9

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997)....................................................................................10

*Balistreri v. Nevada Livestock Prod. Credit Ass'n*,
214 Cal. App. 3d 635 Cal. Rptr. 862 (Cal. Ct. App. 1989)............................................6

*In re Bennett*,
298 F.3d 1059 (9th Cir. 2002) ....................................................................................5, 6

*Brulotte v. Thys Co.*,
379 U.S. 29, 85 S. Ct. 176 (1964)...........................................................................10, 11

*Lear v. Adkins*,
395 U.S. 653, 89 S. Ct. 1902 (1969).............................................................................8

*Mallinckrodt, Inc. v. Medipart, Inc.*,
976 F.2d 700 (Fed. Cir. 1992)......................................................................................10

*Minn. Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d
1559 (Fed. Cir. 1992)....................................................................................................9

*Norian Corp. v. Stryker Corp.*,
363 F.3d 1321 (Fed. Cir. 2004).....................................................................................9

*Pacific Gas & Electric Co. v. GW Thomas Drayage & Rigging Co.*,
69 Cal. 2d 33, 69 Cal. Rptr. 561 (Cal. 1968) ................................................................5

*Penn-America Ins. Co. v. Mike's Tailoring*,
125 Cal. App. 4th 884, 22 Cal. Rptr. 3d 918 (Cal. Ct. App. 2005) ..............................5

*Procter & Gamble Co. v. Nabisco Brands, Inc.*,
697 F. Supp. 1360 (D. Del. 1988).................................................................................3

*Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*,
931 F.2d 1002 (3d Cir. 1991)........................................................................................3

*Tex-Cal Land Mgmt., Inc. v. Agric. LRB*,
135 Cal. App. 3d 906, 185 Cal. Rptr. 588 (Cal. Ct. App.1982)....................................6

## STATUTES AND RULES

35 U.S.C. § 154(a)(1) ........................................................................................................ 11

Cal. Civ. Code § 1580 ....................................................................................................... 6

Cal. Civ. Code § 1636 ....................................................................................................... 5

Cal. Civ. Code § 1641 .................................................................................................... 4, 9

Cal. Civ. Code § 1856(g) ............................................................................................... 5, 6

Cal. Civ. Code § 1858 ....................................................................................................... 9

Cal. Civ. Code § 1860 ....................................................................................................... 5

Fed. R. Civ. P. 12(c) .......................................................................................................... 3

Fed. R. Civ. P. 12(f) .......................................................................................................... 3

## OTHER AUTHORITIES

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    537 (1990) ................................................................................................................... 3

1 Witkin, Summary of Cal. Law, Contracts § 366 (9th ed. 1987) ..................................... 6

Defendant Monolithic Power Systems, Inc. ("MPS") hereby submits its opposition to plaintiff Linear Technology Corporation's ("Linear") motion to strike MPS's defenses of invalidity and unenforceability or, in the alternative, for judgment on the pleadings.

## I.  INTRODUCTION

MPS *does* have an agreement with Linear. That agreement, however, has no bearing on this patent infringement lawsuit because the agreement concerns ▮



In this lawsuit, Linear has accused a completely different MPS product – the MP1543 – of infringement. The MP1543 does not employ the previously accused ▮ Pursuant to the Settlement Agreement, MPS agreed that: ▮

Linear's present lawsuit – incorrectly claiming that the MP1543 product infringes the patents-in-suit – does not fall within the terms of the Settlement Agreement. ▮ Linear does not even allege that the MP1543 contains the ▮ Confronted by these facts, Linear engages in misdirection: it takes one clause of one sentence of one paragraph of the

Settlement Agreement out of context and argues that MPS agreed it would never challenge the validity of the Linear patents, regardless of the forum, the accused products or the nature of the dispute. That is nonsense. ***MPS and Linear never agreed that Linear could accuse any MPS part of infringement in the future but MPS would be precluded from challenging the validity of Linear's patents.***

In considering this motion, all inferences must be drawn in favor of MPS. Here, those inferences clearly allow for – and in MPS's view compel – the conclusion that the Settlement Agreement permits MPS to raise a validity defense against Linear's claim that the MP1543 infringes the patents-in-suit. ▮▮▮ Linear's motion to strike MPS's invalidity defense must be denied.

Likewise, there is no merit in Linear's attempt to rewrite the Settlement Agreement in arguing that MPS is precluded from challenging the enforceability of the patents-in-suit as well as the validity of those patents. The Federal Circuit repeatedly has stated that patent enforceability and patent invalidity are distinct and separate concepts. ▮▮▮

Finally, there is no merit in Linear's argument that MPS cannot raise a patent misuse defense because MPS signed the Settlement Agreement. Patent misuse typically arises – as is the case here – from a patentee's illicit attempt to include or enforce a contractual provision that is contrary to the policy of the United States patent laws.

2

## II. ARGUMENT

### A. In Considering Linear's Motion, the Court is Required to Construe All the Facts in Favor of MPS

In considering Linear's motion, the Court is required to construe all the facts in favor of MPS, the non-moving party. *See, e.g., Procter & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988) ("[w]hen considering [a Rule 12(f)] motion, the Court must construe all the facts in favor of the nonmoving party (Defendants) and deny the motion if the defense is sufficient under law"). *See also Inst. for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1004 (3d Cir.) (in ruling on a Rule 12(c) motion, "the district court was required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to . . . the nonmoving party"), *cert. denied*, 502 U.S. 909 (1991).

Motions under Rules 12(f) and 12(c) are disfavored. *See Procter*, 697 F. Supp. at 1362 ("[m]otions to strike affirmative defenses are disfavored by courts"); *Institute*, 931 F.2d at 1005 ("'the Rule 12(c) motion is little more than a relic of the common law and code era [that] only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain'") (quoting 5A C. Wright & A. Miller, *Federal Practice and Procedure*, at 537 (1990)).

Here, MPS denies that this action is an action to enforce the Settlement Agreement or the Consent Order. (Answer, ¶ 14). MPS denies that it has violated the Settlement Agreement. *Id.* MPS denies that its sales of the MP1543 breach the Settlement Agreement or the Consent Order. (*Id.*, ¶ 16). MPS denies that it has infringed, induced infringement, or contributed to infringement of the patents-in-suit. (*Id.*, ¶ 18). [REDACTED] These denials create material issues of disputed fact. Construing each of these disputed facts in favor or MPS,

3

as the Court is required to do for purposes of the pending motion, compels the denial of Linear's motion.

### B. The Settlement Agreement is Governed by California Law, Which Requires that the Whole of the Contract be Taken Together and Recognizes the Intent of the Parties as Paramount



Linear recognizes that under California law, "[t]he whole of a contract is to be taken together, so as to give effect to every part." Cal. Civ. Code § 1641. (Linear Opening Brief ("LOB") at 11).[1] Section 1641, *by itself*, undermines Linear's entire argument.

[2] However, in the unlikely event that the Court were to find the Settlement

---

[1] California law on the interpretation of contracts is extensive. The applicable law includes California Civil Code sections 1549 through 1615 and sections 1635 through 1663, California Code of Civil Procedure sections 1856 through 1866, decisional law and other sections of the Civil Code governing unlawful contracts, damages provisions, and the like.

[2] 

4

Agreement language ambiguous, California law would dictate that the factual issue concerning the parties' intent mandates the denial of Linear's motion.

In California, an ambiguous contract is interpreted by reference to extrinsic evidence provided the proffered interpretation to be supported by the extrinsic evidence is reasonable. *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002). Furthermore, California law is clear that regardless of whether a contract is ambiguous, the context of the agreement is *always* available to assist in interpreting its meaning. Cal. Civ. Code §§ 1856(g) and 1860.

      **1.    The Intent of the Contracting Parties Set Forth in the Written Contract Establishes the Rights and Duties of Each Party under a Contract**

In California, the "intention of the parties as expressed in the contract is the source of contractual rights and duties." *Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 38, 69 Cal. Rptr. 561, 564 (Cal. 1968) (citing Cal. Civ. Code § 1636). Here, the parties dispute MPS' rights to contest or challenge the validity of the patents-in-suit. MPS submits that, *at best for Linear*, a factual dispute exists as to the meaning of the contractual terms and their application to disputed facts. In such a circumstance, of course, judgment as a matter of law is precluded. *Penn-America Ins. Co. v. Mike's Tailoring*, 125 Cal. App. 4th 884, 889, 22 Cal. Rptr. 3d 918, 922 (Cal. Ct. App. 2005) (while interpretation of a contract is a question of law, a decision as to the meaning of a contract cannot be reached until factual disputes are resolved).

[redacted]

5

### 2. Extrinsic Evidence is Available to Interpret an Ambiguous Integrated Contract

If a contract is ambiguous, extrinsic evidence is admissible to aid in its interpretation. *In re Bennett*, 298 F.3d at 1064. California law goes further. California Code of Civil Procedure section 1856(g) provides:

> This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, . . . to otherwise interpret the terms of the agreement . . . .

In turn, section 1860 states:

> For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret.

In this case, the extrinsic evidence would further confirm that the Settlement Agreement has no application to Linear's allegation that the MP1543 product infringes its patents.  (Exhibit A). The parties never agreed that in the event Linear brought a claim for patent infringement against an MPS product not containing the ▮ ▮, MPS would be precluded from challenging the validity of the Linear patents.[3]

---

[3] In California, the interpretation of a contract is a question of law while the question of whether an agreement was reached is a question of fact. *Tex-Cal Land Mgmt., Inc v. Agric. LRB*, 135 Cal. App. 3d 906, 916, 185 Cal. Rptr. 588, 593 (Cal. Ct. App. 1982). Pursuant to Civil Code section 1580, the parties must give mutual consent in order to contract. "'Consent is not mutual, unless the parties all agree upon the same thing in the same sense.'" *Balistreri v. Nevada Livestock Prod. Credit Ass'n*, 214 Cal. App. 3d 635, 640, 262 Cal. Rptr. 862, 865 (Cal. Ct. App. 1989) (quoting 1 Witkin, Summary of Cal. Law, Contracts § 366 (9th ed. 1987)). MPS never consented to waive its invalidity defenses as to an allegation of infringement directed to an entirely different product that does not include the ▮

6

MPS and Linear entered into the Settlement Agreement to resolve their patent infringement dispute in the ITC.  Neither MPS nor Linear ever contemplated that Linear would have free rein in the future to accuse different MPS products – products not employing the ▮ – while MPS would be severely handicapped in its ability to defend itself.

### C. Linear's Argument that MPS cannot Assert the Defenses It Moves to Strike Turns on its Faulty Assertion that this Patent Infringement Lawsuit is an Action to Enforce the Settlement Agreement

Linear's motion is entirely dependent upon the premise that this lawsuit  Linear's basic premise is not only circular, it is flat wrong.

7

 The MP1543 does not fall into any of those three categories, and hence *this lawsuit unquestionably is not a legitimate suit to enforce the Settlement Agreement.*[4]

### D. Linear's Attempt to Interpret "Validity" to Mean "Validity and Enforceability" is Without Merit and Further Evidence that Linear is Attempting to Rewrite the Settlement Agreement

As set forth above, there is no merit in Linear's attempt to convert the Settlement Agreement into an unbounded waiver by MPS of its invalidity defenses. Linear's motion, however, does not stop there.

---

[4] Moreover, Count II of the Complaint is a straightforward, separate claim for patent infringement, which (a) does not involve the MP1556-1559, (b) does not involve a product with the ▮▮▮▮, and (c) does not relate in any way to the Settlement Agreement. Thus, there is nothing in the Settlement Agreement that could even arguably preclude the assertion of an invalidity defense as against that Count. Any argument to the contrary is not only unsupported by the Settlement Agreement, but would violate the clear public policy of *Lear v. Adkins*, 395 U.S. 653, 674 & n.19, 89 S. Ct. 1902, 1913 & n.19 (1969), in favor of allowing challenges to invalid patents.

8

There is a fundamental and clear-cut distinction between the validity of a patent claim and the enforceability of a patent. "Inequitable conduct is a separate defense to patent infringement." *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1312 (Fed. Cir. 1988). If a patent applicant engages in inequitable conduct during the prosecution of a patent application, the resulting patent is unenforceable, it is not invalid. *See Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1329 (Fed. Cir. 2004) ("[m]isleading statements by patent applicants . . . can produce unenforceability, not invalidity"). *See also Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1569 (Fed. Cir. 1992) ("we note that proving inequitable conduct does not 'invalidate' a patent. Rather, it renders the patent unenforceable."). [REDACTED]

Once again, Linear asks the Court to ignore the language of the Settlement Agreement. [REDACTED] Through mystical "canons of contract interpretation" that it never explains, Linear argues that what this must mean is that MPS somehow is precluded from challenging the enforceability of the patents-in-suit. (LOB, at 11). Linear's argument is devoid of merit. [REDACTED] It would be wholly improper to somehow interpret contact language to govern a subject that is nowhere mentioned in the contract. "[T]he judge is . . . not to insert what has been omitted, or to omit what has been inserted." Cal. Civ. Code § 1858. Linear is asking the Court, under the guise of a motion to strike, to rewrite the express language of the Settlement Agreement. Linear's request should be denied.

9

### E. Linear's Argument that MPS Cannot Assert a Patent Misuse Defense is Equally Flawed

Linear asserts, without citing any legal authority, that MPS is precluded from asserting its Fourth Defense (patent misuse) because MPS signed the Settlement Agreement, which contains the improper restrictions that MPS ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ According to Linear, "there can be no patent misuse where [MPS] agreed to this provision as part of a voluntary settlement." (LOB, at 12).

Here again, Linear is wrong. Patent misuse commonly arises – as is the case here – from a patentee's illicit attempt to include or enforce a contractual provision that is contrary to the policy of the United States patent laws. The case law is clear that the fact a party has signed a contract containing an illicit provision does not preclude that party from later challenging the provision. Contractual provisions, such as those in a license agreement or a settlement agreement, "*are subject to* antitrust, patent, contract, and any other applicable law, as well as *equitable considerations such as patent misuse*." *B. Braun Medical, Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997) (emphasis added). *See generally Mallinckrodt, Inc v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992) (the doctrine of patent misuse "arose to restrain practices that did not in themselves violate any law, but that drew anticompetitive strength from the patent right, and thus were deemed to be contrary to public policy").

In perhaps the classic patent misuse case, *Brulotte v. Thys Co.*, 379 U.S. 29, 85 S. Ct. 176 (1964), the patentee and licensees expressly agreed that the licensees would continue to make royalty payments after the patents expired. The Supreme Court found that such a contractual provision "is unlawful per se." 379 U.S. at 32, 85 S. Ct. at 179. The *Brulotte* decision demonstrates the lack of merit in Linear's unsupported assertion that "if it's in a contract, it can't be patent misuse."

10

Linear's patent rights are governed by statute. Title 35, United States Code section 154(a)(1) provides:

> Every patent shall contain a short title of the invention and *a grant* to the patentee, his heirs or assigns, ***of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States.***

(Emphasis added.)

The patent laws protect inventors from competition, for a set period of time, within the borders of the United States. Attempts to prevent others from practicing a claimed invention outside those borders is the very definition of patent misuse. ▌

▌ The provisions are against public policy and unenforceable. There is no basis for Linear's motion to strike MPS's Fourth Defense of patent misuse.

11

### III. CONCLUSION

For the reasons set forth above, MPS respectfully submits that the Court should deny Linear's motion to strike, or, in the alternative, motion for judgment on the pleadings.

|  |  |
|---|---|
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: |  |
| Rosslyn (Beth) Stevens Hummer<br>Mark A. Flagel<br>Bob Steinberg<br>Dean G. Dunlavey<br>Latham & Watkins<br>633 West Fifth Street, Suite 4000<br>Los Angeles, CA 90071-2007<br>Tel: (213) 485-1234 | By: /s/ Richard L. Horwitz<br>Richard L. Horwitz (#2246)<br>Kenneth L. Dorsney (#3726)<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, Delaware 19889-0951<br>Tel: (302) 984-6000<br>rhorwitz@potteranderson.com<br>kdorsney@potteranderson.com |
| Dated: October 16, 2006<br>Public Version Dated: October 17, 2006<br>756149 / 30611 | *Attorneys for Defendant*<br>*Monolithic Power Systems Inc.* |

12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Kenneth L. Dorsney, hereby certify that on October 17, 2006, the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Karen Jacobs Louden
Morris, James, Hitchens & Williams
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on October 17, 2006, I have Electronically Mailed the documents to the following non-registered participants:

Raphael V. Lupo
Mark G. Davis
Ronald J. Pabis
Stephen K. Shahida
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
rlupo@mwe.com
madavis@mwe.com
rpabis@mwe.com
sshahida@mwe.com

By: */s/ Kenneth L. Dorsney*
Richard L. Horwitz
Kenneth L. Dorsney
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

750219

# EXHIBIT A

Case 1:06-cv-00476-GMS    Document 18-2    Filed 10/17/2006    Page 1 of 2

**THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY**