## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LINEAR TECHNOLOGY CORPORATION, )
)
          Plaintiff, )
)   C.A. No. 06-476-GMS
    v. )
) **JURY TRIAL DEMANDED**
MONOLITHIC POWER SYSTEMS, INC., )
) **PUBLIC VERSION**
         Defendant. ) **Public Version Dated:  October 23, 2007**

## LETTER TO CHIEF JUDGE GREGORY M. SLEET
## FROM RICHARD L. HORWITZ DATED OCTOBER 22, 2007

cc:  Clerk of the Court (via hand delivery)

    All Counsel of Record (via email)

Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19889-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Defendant*
*Monolithic Power Systems, Inc.*



**Potter Anderson & Corroon LLP**

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

October 22, 2007

**VIA ELECTRONIC FILING**

The Honorable Gregory M. Sleet                                    **PUBLIC VERSION**
J. Caleb Boggs Federal Building                       **Public Version Dated:  October 23, 2007**
844 King Street
Wilmington, DE 19801

Re: *Linear Technology Corporation v. Monolithic Power Systems Inc.,*
C. A. No. 06-476 (GMS)

Dear Chief Judge Sleet:

Linear's answering letter brief presents attorney argument rather than demonstrating "genuine issues of material fact." MPS is entitled to summary judgment that the ▮▮▮▮▮ "liquidated damages provision" is an unenforceable penalty provision. Linear's CEO *repeatedly* admitted that the ▮▮▮▮▮ figure *was not* the result of an effort by the parties to estimate what damages might be sustained in the event of a breach. There is no contrary evidence.

MPS likewise is entitled to summary judgment that it has not breached the Settlement Agreement ("SA"). The interpretation of the contractual language is a legal issue for the Court. The accused MP1543 does not employ "the ZX circuitry identified by counsel for Linear in the ITC proceeding." There is no contrary evidence.

As set forth in the opening letter brief, MPS's non-infringement and invalidity arguments likely will be further developed after the Court issues its claim construction order. Nonetheless, MPS is entitled to summary judgment of non-infringement as to several claims now, to narrow the dispute, because Linear – which bears the burden – has not identified and cannot identify the claimed "threshold fraction of maximum rated output current" in the accused MP1543 product.

**THE "LIQUIDATED DAMAGES" PROVISION IS AN UNENFORCEABLE PENALTY**

The validity of a liquidated damages provision is a legal question for the Court to decide. *Harbor Island Holdings v. Kim*, 107 Cal. App. 4th 790, 795 (2003). Penalty provisions are *per se* unreasonable. *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977 (1998). "The amount set as liquidated damages '***must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.'"*** *Id.* (internal citations omitted, emphasis added).

The SA itself establishes that the ▮▮▮▮▮ was not intended to serve as a proxy for Linear's anticipated actual damages: ▮▮▮▮▮▮▮▮▮▮▮▮▮ SA (Exhibit 1 to Opening Letter Brief), ¶ 6.1. Consistent with this, Linear's CEO, Lothar Maier – the Linear officer who demanded and approved this provision – repeatedly admitted under oath that the ▮▮▮▮▮ figure was not the

The Honorable Gregory M. Sleet
October 22, 2007 (Public Version Dated: October 23, 2007)
Page 2

result of an endeavor by the parties to estimate the actual damages that would flow from a breach. 8/24/07 Maier deposition (Exhibit 8), at 23-30. Mr. Maier summed it up succinctly: "*Like I said, you know, several times now, we really didn't tie it to anything specific.*" *Id.* at 30:3-5.

Faced with this evidence, Linear proceeds to misstate the record. It claims that the ██████ "represented the 'minimum potential loss' that Linear would incur if it had to enforce the SA." Mr. Maier, however, admitted that the ██████ was not tied to anything specific. Linear further asserts, without any evidentiary citation, that "the parties agreed to compensate Linear for . . . litigation costs through the use of a liquidated damages provision." Once again the evidence is to the contrary. Mr. Maier was questioned specifically as to whether Linear had done anything to try to quantify the potential costs associated with litigation – such as the time and resources of the engineers who would look at a product and otherwise prepare for trial – before coming up with the ██████ figure. He responded: "No, we didn't really quantify it." Exhibit 8, at 24:14-19. Linear also misstates the record concerning Mr. Neely's testimony. Mr. Neely clearly testified that the ██████ figure was added by Linear as a penalty provision to force compliance. *See generally* 8/10/07 Neely deposition (Exhibit 9), at 77:2 to 78:10; 81:7 to 83:18. There is no genuine issue of material fact.

Linear argues that the Court should deny summary judgment because MPS was represented by attorneys during the negotiation of the SA. That argument does not create a genuine issue of material fact. The only material fact, which is undisputed, is that the ██████ figure does not represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that Linear might sustain. Thus, the "liquidated damages" provision is a penalty as a matter of law, regardless of whether MPS was represented by attorneys. The provision is *per se* unenforceable under applicable California law.

Linear also contends, without support, that MPS drafted the liquidated damages clause. While this contention is irrelevant, it is also incorrect. Linear demanded a penalty provision. The first draft of the SA contained a ██████ figure. Linear subsequently changed the figure to ██████ to make it a bigger penalty. Exhibit 9, at 77:2 to 78:10; 81:7 to 83:18. In any event, a penalty provision is unenforceable regardless of who drafted it.

## MPS DID NOT BREACH THE SETTLEMENT AND LICENSE AGREEMENT

The interpretation of the contractual language in the SA is a legal issue for the Court.

Linear argues that there is a genuine issue of material fact as to whether the MP1543 contains "ZX circuitry" that allows it to go into "sleep mode." Not only is the statement wrong, it is irrelevant. The SA does not address "ZX circuitry" – whatever that may be. It addresses "the ZX circuitry *identified by counsel for Linear in the ITC proceeding.*" The identified ZX circuitry was very specific, and called out on claim charts submitted to the ITC. *See* Exhibit 10, claim chart at 2 (identifying the circuitry that constituted the alleged "third circuit" as including ██████). Not surprisingly, Linear's claim charts in this case identify *completely different circuitry* as constituting the alleged "third circuit." *See* Exhibit 11, claim chart at 2 (identifying ████████████). Since the MP1543 does not contain "the ZX circuitry identified by counsel for Linear in the ITC proceeding," MPS is entitled to summary judgment.

The Honorable Gregory M. Sleet
October 22, 2007 (Public Version Dated:  October 23, 2007)
Page 3

Linear has the burden on its breach of contract claim.  Pursuant to the Scheduling Order, its expert's opening report was required to address those issues as to which Linear has the burden of proof.  The expert report does not support Linear's argument.  Indeed, the report does not even contain the term "ZX," much less discuss the circuitry that had been identified in the ITC.  Linear has absolutely no evidence to support its contention; summary judgment is appropriate.

Linear also contends that one out-of-context passage from the deposition testimony of MPS's CFO supports its argument as to the legal interpretation of the SA language.  Linear's contention is without merit.  Since the contract language at issue is unambiguous, no extrinsic evidence is needed.  Furthermore, the Court, not an untrained lay person, is to interpret the contractual provisions.  Mr. Neely is not an attorney (Exhibit 9, 14:7-8), he was not designated and he is not qualified to testify as to the interpretation of contractual provisions, he clarified the passage that Linear cited (Exhibit 12), and Linear ignores the passages from Mr. Neely's deposition that contradict Linear's desired spin.  *See, e.g.,* Exhibit 9 at 41:2-18; 42:2-18; 68:2 to 69:1; 87:19 to 89:7; 104:5 to 105:10; 135:10-17.  Linear also ignores the contemporaneous correspondence, wherein MPS expressly informed Linear that ███████████████████

## THE ASSERTED CLAIMS ARE INVALID AND NOT INFRINGED

Linear tries to blame its shifting infringement theories on MPS's production of a set of schematics for a preliminary design of the MP1543.  This is more misdirection.  MPS provided the schematics for the production version of the MP1543 on April 12, 2007.  Linear served its claim charts identifying the "███" signal as the alleged "second control signal" three months later, on July 17, 2007.  *See* Exhibit 4 to Opening Letter Brief.  Linear cited to the *exact same* schematics when it *changed* its infringement theory on October 1, 2007.

As set forth in the opening letter brief, MPS's non-infringement and invalidity arguments likely will be developed further after the Court issues its claim construction order.  Linear offers no facts to contest non-infringement under MPS's proposed claim constructions.  In any case, MPS is entitled to summary judgment of non-infringement as to several claims now because Linear – which bears the burden – has not identified and cannot identify the claimed "threshold fraction of maximum rated output current" or the "selected sleep mode current level" in the accused MP1543 product.  Linear's proposed constructions of those terms are clearly improper, as they would render the terms meaningless surplusage.  *See, e.g., Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,* 296 F.3d 1106, 1115 (Fed. Cir. 2002) (a construction that renders a claim term meaningless is improper); *Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1562 (Fed. Cir. 1991) ("All the limitations of a claim must be considered meaningful.").

Moreover, Linear offers no facts to contest summary judgment of invalidity.  Since MPS has put forth evidence of invalidity, Linear is required to point out "specific facts showing that there is a genuine issue for trial . . . ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986), quoting Rule 56(e), Fed. R. Civ. P.  Rather than identify facts, Linear merely points to the decision of a different agency on a subset of the claims at issue in this case.

The Honorable Gregory M. Sleet
October 22, 2007 (Public Version Dated:  October 23, 2007)
Page 4

Respectfully,

*/s/ Richard L. Horwitz*

Richard L. Horwitz

RLH/nmt/826783/30611

cc:     Clerk of the Court (via hand delivery)
        All Counsel of Record (via electronic mail)

# EXHIBIT 8

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 9

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 10

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 11

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 12

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 13

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 14

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 15

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY