IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINEAR TECHNOLOGY CORP., | ) |
| Plaintiff, | ) **REDACTED PUBLIC VERSION** |
| v. | ) C.A. No. 06-476 (GMS) |
| MONOLITHIC POWER SYSTEMS, INC., | ) |
| Defendant. | ) |

**LINEAR TECHNOLOGY CORPORATION'S OPENING BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT ON
CONTRACT INTERPRETATION AND BREACH OF CONTRACT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658-9200
  Attorneys for Plaintiff Linear Technology
  Corporation

OF COUNSEL:

Raphael V. Lupo
Joel M. Freed
Ronald J. Pabis
Jimmy Shin
Matthew G. Cunningham
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
(202) 756-8000

Original Filing Date: November 26, 2007
Redacted Filing Date: December 3, 2007

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 2
SUMMARY OF THE ARGUMENT .......................................................................................... 2
STATEMENT OF FACTS .......................................................................................................... 4
    A.    The Products At Issue At The ITC ............................................................................. 4
    B.    The Negotiation and Drafting of the Settlement Agreement .................................. 4
    C.    Section 3.3 of the Settlement Agreement and Monolithic's Promise Not To Practice the Asserted Claims .................................................................................. 5
    D.    [REDACTED] ............................................................................................................... 7
    E.    This Action And Monolithic's Challenges To The Patents .................................... 9
ARGUMENT ................................................................................................................................ 9
    A.    The Applicable Law .................................................................................................... 9
    B.    Monolithic Agreed That It Would Not Use ZX Circuitry And Would Not Otherwise Practice The Asserted Claims ................................................................ 10
    C.    Monolithic Agreed Not To Challenge The Validity Or Enforceability Of The '178 Or '258 Patents ........................................................................................... 12
        1.    [REDACTED] ................................................................................................. 13
        2.    The Extrinsic Evidence Supports Linear's Interpretation ....................... 14
        3.    [REDACTED] ................................................................................................. 14
CONCLUSION .......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*City of Atascadero v. Merrill Lynch,* 68 Cal. App. 4th 445 (Cal. Ct. App. 1998) .......................... 9

*City of Manhattan Beach v. Superior Court,* 914 P.2d 160 (Cal. 1996) ......................................... 10

*Cook, Inc. v. Medtronic, Inc.,* 2006 U.S. Dist. LEXIS 47073 (N.D. Cal., June 29, 2006) .......................................................................................................................... 13

*Flex-Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362 (Fed. Cir. 2001) ........................................................ 14

*Foad Consulting Group v. Musil Govan Azzalino,* 270 F.3d 821 (9th Cir. 2001) ........................ 10

*Mann v. GTCR Golder Rauner, LLC,* 2006 US. Dist. LEXIS 14115 (D. Ariz. Mar. 28, 2006) .......................................................................................................................... 7

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 442 P.2d 641 (1968) .............................................................................................................................................. 10

**Statutes**

19 U.S.C. § 1337 ................................................................................................................................ 4

Cal. Civ. Code § 1641 (2007) .......................................................................................................... 13

Cal. Civ. Code §§ 1635 - 1656 (2007) ............................................................................................. 10

Cal. Civ. Code, § 1636 (2007) ........................................................................................................... 9

Cal. Code Civ. Proc. §§ 1859 - 1861, 1864 (2007) ........................................................................ 10

Fed. R. Civ. P. 30(e) ............................................................................................................................ 7

## NATURE AND STAGE OF THE PROCEEDINGS

At the November 21, 2007 teleconference, the Court granted plaintiff Linear Technology Corporation ("Linear") leave to file a cross-motion for summary judgment on its breach of contract claims. This is Linear's opening brief in support of that motion.

## SUMMARY OF THE ARGUMENT

1. In settling a Section 337 Investigation by the International Trade Commission ("ITC"), Monolithic Power Systems, Inc. ("Monolithic") made these promises:



Monolithic has breached these promises. Monolithic's MP1543 contains the ZX circuitry identified in the ITC investigation and/or otherwise practices the patent claims there asserted. And in this action to enforce the settlement, Monolithic has sought to raise patent validity and enforceability defenses. Linear seeks summary judgment for those breaches.

2. There is no genuine dispute that -- although not labeled as such -- Monolithic's MP1543 introduced after the settlement contains "ZX circuitry" because it contains circuitry ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ just like in the MP1556 that was at issue in the ITC. MPS cannot escape its contractual obligations simply by ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Linear is entitled to summary judgment on this basis.

3. Monolithic also promised not to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ This provision is clear and unambiguous. Monolithic's interpretation limiting the agreement to the specific ZX circuitry identified in the ITC proceeding is contrary to its plain language and would render the cited language meaningless. Furthermore, the extrinsic evidence reinforces what is clear from the contractual language itself. Linear's patent counsel added the phrase ▬▬▬▬▬▬▬

███████████████ to the Settlement Agreement to make plain that Monolithic was to stop practicing the asserted patents. Monolithic's own negotiator, CFO Rick Neely, confirmed this understanding at his deposition:



█(Neely Dep.) at 43:14-44:1 (emphasis added).[1] After Mr. Neely provided his sworn testimony that ███████████████████ Monolithic submitted a so-called "errata sheet" improperly attempting to change that testimony to coincide with Monolithic's litigation position. Ex.1. That attempt should be rejected by this Court, but in any event, Monolithic cannot rely upon a self-serving "errata sheet" to contradict the plain terms of the Settlement Agreement.

4.  Finally, Linear also should be granted summary judgment that Monolithic cannot challenge validity or enforceability in this action. Monolithic promised ███████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████

## STATEMENT OF FACTS

In August 2004, the ITC instituted an investigation of Monolithic's activities under Section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337) for unfair methods of competition. ("Complaint," D.I. 1, ¶ 8). Linear alleged that Monolithic violated Section 337 by importing voltage regulator circuits that infringed the '178 and '258 patents. (D.I. 1 at ¶¶ 5, 6,

---

[1] The exhibits referenced in this brief are attached to the Declaration of Karen Jacobs Louden, filed herewith.

8). Monolithic challenged the patents as invalid and unenforceable due to inequitable conduct. Ex. 2 (Public Version of Monolithic's Amended Response), at 19-23.

## A. The Products At Issue At The ITC

At the ITC, Linear initially accused Monolithic's MP1556 product of infringement. After initially resisting discovery, Monolithic eventually also provided information relating to its MP1557-1559 products. These products were added to the investigation prior to the final hearing scheduled before the ITC Administrative Law Judge. Although the MP1543 was developed during the discovery period, MPS did *not* produce MP1543 schematics so it was not added to the investigation.

## B. The Negotiation And Drafting Of The Settlement Agreement

On the eve of trial, the parties entered into the Settlement Agreement and a Consent Order Stipulation. Ex. 3. The Consent Order terminated the investigation pursuant to a "Joint Motion to Terminate Investigation Based Upon A Settlement Agreement And Consent Order" dated September 30, 2005. (D.I. 1 at ¶ 9).

The Settlement Agreement was negotiated by Linear's patent counsel, John England, and Monolithic's Chief Financial Officer, Rick Neely. Ex. 4 (England Dep.) at 28:11-18. Before exchanging initial drafts, the CEOs of the two companies met, and Linear's CEO, Lothar Maier, told Monolithic's CEO, Michael Hsing, that to settle the ITC investigation, Monolithic would "have to get out of the market." Ex. 5 (Hsing Dep.) at 41:16-42:9, 46:6-47:3. Later that day, Mr. England further told Mr. Hsing that Linear wanted Monolithic to stop infringing Linear's patents. *Id.* at 41:16-42:9. On September 23, 2005, Mr. Neely sent a draft agreement to Mr. England. Ex. 6. Over the next seven days, numerous drafts were exchanged and the final terms agreed upon.

3

### C. Section 3.3 Of The Settlement Agreement And Monolithic's Promise Not To Practice The Asserted Claims

Monolithic received a  nonexclusive worldwide license for the MP1556, and agreed to refrain from selling any other products incorporating Linear's patented technology. Ex. 3 (Settlement Agreement) at ¶¶ 3.1–3.3. Paragraph 3.3 of the Settlement Agreement provides:

Ex. 3 (Settlement Agreement) at ¶ 3.3 (emphasis added).

The first version of Section 3.3, which Monolithic drafted, did not contain the language promising Ex. 6 (9/23/05 Draft Settlement Agreement) at ¶ 3.3. In responding to that draft, Mr. England added, and sent his changes to Mr. Neely. Ex. 7 (9/26/05 Draft Settlement Agreement) at ¶ 3.3.[3]

Mr. England added that language to ensure that Monolithic would "behave [them]selves in the future on any of the asserted claims of the asserted patents anywhere in the world." Ex. 4

---

[2] The "Asserted Claims" are defined in Section 1.3 to be Claims 1, 31, 34, 41, 44, 55 and 56 of the '178 Patent and claims 2 and 35 of the '258 Patent. Ex. 3 (Settlement Agreement) at ¶ 1.3.

[3] Mr. England added the following underlined language:

4

(England Dep.) at 131:5-21. Mr. Neely's handwritten notes from a conversation with Mr. England on September 26, 2005, confirms that he understood that:



Ex. 8 (Neely's 9/26/05 handwritten notes).

Mr. Neely again confirmed this understanding during his deposition:



Ex. 1 (Neely Dep.) at 43:14-44:1 (emphasis added).[4] Monolithic's CEO (Mr. Hsing), who signed the Settlement Agreement, did not offer any testimony to contradict Mr. Neely's understanding. Ex. 5 (Hsing Dep.) at 18:1-13.



The initial draft that Mr. Neely sent to Mr. England contained the first iteration of that provision. Monolithic itself proposed that it

---

[4] Nevertheless, MPS improperly attempted to change Mr. Neely's testimony in an "errata sheet." Ex. 1 (Neely Dep.) at proposed errata. That is improper under Rule 30(e), Fed. R. Civ. P. and that "errata" should be stricken and ignored. *See e.g., Mann v. GTCR Golder Rauner, LLC*, 2006 US. Dist. LEXIS 14115 (D. Ariz. Mar. 28, 2006).

5

[REDACTED]

Ex. 6 (9/23/05 Draft Settlement Agreement) at ¶ 2.5. Mr. England countered with a more expansive wording of the provision, namely one which foreclosed [REDACTED]

Ex. 7 (9/26/05 Draft Settlement Agreement) at ¶ 2.5. Monolithic objected and sought to go back to its original language limiting the provision [REDACTED]

Ex. 9 (9/26/05 Draft Settlement Agreement) at ¶ 2.5. Mr. England proposed a compromise under which the provision would apply [REDACTED]

Ex. 10 (9/27/05 Draft Settlement Agreement) at ¶ 2.5. The final wording of the signed document embraced that compromise.[5] Ex. 3 (Settlement Agreement) at ¶¶ 1.3 and 2.5. Accordingly, the final language of [REDACTED]



### E. This Action And Monolithic's Challenges To The Patents

After the parties entered into the Settlement Agreement, Linear learned of Monolithic's release of its MP1543 product. Linear then brought this action to enforce the Settlement Agreement and also alleged willful infringement. (D.I. 1 at ¶¶ 15, 16, 18).

Monolithic's Fifth and Ninth Defenses attempt to revive its contention that the patents are invalid and are unenforceable for inequitable conduct. ("Answer," D.I. 9 at 4-8). Monolithic's Fourth Defense further asserts that the '178 and '258 patents are unenforceable for patent misuse by reason of Monolithic's *own* agreement to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* These challenges to the patents are the subject of Linear's pending Motion to Strike and/or for Judgment on the Pleadings. (D.I. 12 and 19).

### ARGUMENT

### A. The Applicable Law

Under California law, which governs the Settlement Agreement, the fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. Cal. Civ. Code, § 1636 (2007). That "is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the

object, nature and subject matter of the contract; and the subsequent acts and conduct of the parties." *City of Atascadero v. Merrill Lynch,* 68 Cal. App. 4th 445, 474 (Cal. Ct. App. 1998) (citing Cal. Civ. Code §§ 1635 - 1656 (2007); Cal. Code Civ. Proc. §§ 1859 - 1861, 1864 (2007)).[6]

The Ninth Circuit has described the application of California's parol evidence rule as follows: "In contrast to many other states, California has a liberal parol evidence rule: It permits consideration of extrinsic evidence to explain the meaning of the terms of a contract even when the meaning appears unambiguous." *Foad Consulting Group v. Musil Govan Azzalino,* 270 F.3d 821 (9th Cir. 2001) citing *City of Manhattan Beach v. Superior Court,* 914 P.2d 160, 169 (Cal. 1996) ("'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'" (quoting *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 442 P.2d 641, 644, (1968)).

Thus, under California law, the extrinsic evidence cited herein is admissible to show how the parties negotiated and selected the various words, phrases, and terms used in their agreement, and to confirm the interpretation of the agreement advanced herein.

**B.    Monolithic Agreed That It Would Not Use ZX Circuitry And Would Not Otherwise Practice The Asserted Claims**

Section 3.3 of the Settlement Agreement sets forth Monolithic's agreement to limit the scope of its activities. It provides:



---

[6] These code provisions are attached at Exhibit 11 to the Declaration of Karen Jacobs Louden.



Ex. 3 (Settlement Agreement) at ¶ 3.3 (emphasis added). Thus, Monolithic agreed: 1) not to sell the products at issue in the ITC investigation (the MP1557-1559); 2) not to sell any other product containing ZX circuitry ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and 3) not to sell products that otherwise practice the Asserted Claims.

There is no dispute that Monolithic's MP1543, introduced after the parties' settlement, contains circuitry ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ just like in the MP1556 which was at issue in the ITC.[7] It is not labeled "ZX," but MPS cannot avoid its agreement by using ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or by giving the circuitry a set of initials other than "ZX." Yet, that is precisely the contract interpretation that Monolithic seeks to advance.[8]

---

[7] The MP1543 circuitry, like the MP1556 at issue in the ITC, contains ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 13 (Blauschild Report) at 35-36 and 48-49.

[8] Monolithic argues that Section 3.3 covers only the "very specific" ZX circuitry as so named and identified in claim charts submitted to the ITC in the ITC investigation. ("10/22/07 letter from R. Horowitz to the Hon. Gregory M. Sleet," D.I. 98 at 2). That makes no sense. At the time the Settlement Agreement was negotiated Monolithic's negotiator, Mr. Neely, did not even know what the "ZX circuitry identified by counsel for Linear in the ITC proceeding" was. Ex. 1 (Neely Dep.) at 47:1-5. Moreover, no one at Linear ever saw or had the opportunity to see the claim charts or schematics Monolithic refers to, or the actual "ZX" circuitry that Monolithic claims is the limit of its agreement, because Linear employees were not allowed access to such documents and things under the terms of the protective order in the ITC proceeding. Ex. 4 (England Dep.) at 125:17-23. Given that Linear's executives did not know the specific circuitry labeled as "ZX" in the MP1556, it is no wonder that Mr. England added the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ language to Section 3.3.

9

In any event, Monolithic also agreed not to otherwise infringe. The agreement says so. So do both Mr. England and Mr. Neely. Mr. England added ███████ ███████ Monolithic's agreement to cease infringement and get out of the market. Ex. 4 (England Dep.) at 131:9-21; 140:23-141:24. Mr. Neely's handwritten notes from his September 26 telephone call (Ex. 8) confirms that, as does his sworn deposition testimony that ███ ███████████████████████████████████████████████ ███████████████████████████ Ex. 1, (Neely Dep.) at 43:14-44:1 (emphasis added).

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████ There is no question that this is an action to enforce the Settlement Agreement (D.I. 1 at ¶¶ 8-16) and that Monolithic has sought to challenge the patents in this action. Thus, Monolithic is in breach of the Settlement Agreement. Moreover, the history of the negotiation of this provision shows that Linear consistently insisted that the settlement was conditioned on Monolithic's agreement ███████████████████ ███████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

---

[9] In its original Answer to Linear's complaint, Monolithic acknowledged the Settlement Agreement (D.I. 9 at ¶ 9) and conceded that it promised ███████████████ ███████ (*Id.* at ¶ 14).

10

███████████████████████████████████(Settlement Agreement) at ¶ 2.5. ██████
████████████████████████████████████████████████████████████████
██████ *See* Cal. Civ. Code § 1641 (2007) ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *see, e.g., Cook, Inc. v. Medtronic, Inc.*, 2006 U.S. Dist. LEXIS 47073, at *23 (N.D. Cal. June 29, 2006). ████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

### 2.     The Extrinsic Evidence Supports Linear's Interpretation

The history of the negotiation of Section 2.5 also shows that in settling the ITC investigation████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

███████████████████████████████ *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1367 (Fed. Cir. 2001) (promise not to challenge patent validity in settlement agreement gives rise to contractual estoppel of subsequent validity challenge).

The *Flex-Foot* panel stated that agreements settling infringement litigation "must be enforced if they are to remain effective as a means for resolving legal disagreements. Upholding the terms of settlement agreements encourages patent owners to agree to settlements and promotes judicial economy." *Id.* at 1370. The court further explained that:

> Once an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding.
> *Id.*

As in *Flex-Foot*, ████████████████████████████
████████████████ In the ITC, Monolithic asserted invalidity and unenforceability defenses in response to Linear's charges of infringement.[10] Ex. 2 at 19-25. During the thirteen months the investigation remained active, Monolithic took extensive discovery on these defenses including a host of depositions, scores of contention interrogatories, and numerous expert reports on the same invalidity and unenforceability defenses it has attempted to recycle in this case.

Monolithic thus had ample motivation and occasion to evaluate the grounds for its defenses. After such thorough investigation, however, Monolithic decided to forego trial on these issues and to surrender any future challenges to the Linear Patents. Allowing Monolithic to

12

go back on its agreement would not only erode the policy favoring settlements in patent litigation, but also squander judicial resources.

██████████████████████████████████████

## CONCLUSION

For all the foregoing reasons, Linear respectfully requests that summary judgment be entered that: (1) Monolithic has breached its promise not to use ZX circuitry; (2) if Linear proves that Monolithic practices the Asserted Claims, it will have proved that Monolithic breached its agreement not to infringe; and ████████████████████████

████████████████████████

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Karen Jacobs Louden* |
|  | Jack B. Blumenfeld (#1014) |
|  | Karen Jacobs Louden (#2881) |
|  | James W. Parrett, Jr. (#4292) |
|  | 1201 N. Market Street |
| OF COUNSEL: | P.O. Box 1347 |
|  | Wilmington, DE 19899-1347 |
| Raphael V. Lupo | (302) 658-9200 |
| Joel M. Freed |  |
| Mark G. Davis | *Attorneys for Plaintiff Linear Technology* |
| Ronald J. Pabis | *Corporation* |
| Matthew G. Cunningham |  |
| MCDERMOTT WILL & EMERY LLP |  |
| 600 13th Street, N.W. |  |
| Washington, DC 20005 |  |
| (202) 756-8000 |  |

November 26, 2007
1321206

13

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on November 26, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

      Richard L. Horwitz
      POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on November 26, 2007 upon the following in the manner indicated:

**BY HAND & EMAIL**

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899

**BY EMAIL**

Dean G. Dunlavey
Mark A. Flagel
Robert Steinberg
Sean Pak
Latham & Watkins LLP
633 West Fifth Street, Ste. 400
Los Angeles, CA 90017

Mark Kachner
Latham & Watkins LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626-1925

David McKone
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago IL 60606

      /s/ Karen Jacobs Louden

      klouden@mnat.com (#2881)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on December 3, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Richard L. Horwitz
>POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on December 3, 2007 upon the following in the manner indicated:

**BY HAND & EMAIL**

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899

**BY EMAIL**

Dean G. Dunlavey
Mark A. Flagel
Robert Steinberg
Sean Pak
Latham & Watkins LLP
633 West Fifth Street, Ste. 400
Los Angeles, CA 90017

Mark Kachner
Latham & Watkins LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626-1925

David McKone
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago IL 60606

/s/ James W. Parrett, Jr.
_____
jparrett@mnat.com (#4292)