IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LINEAR TECHNOLOGY CORP., )
)
Plaintiff, )          **FILED UNDER SEAL**
)
v. )          C.A. No. 06-476 (GMS)
)
MONOLITHIC POWER SYSTEMS, )          **REDACTED**
INC., )          **PUBLIC VERSION**
)
Defendant. )

**DECLARATION OF KAREN JACOBS LOUDEN IN SUPPORT OF
LINEAR TECHNOLOGY CORPORATION'S MOTION FOR SUMMARY
JUDGMENT ON CONTRACT INTERPRETATION AND BREACH OF CONTRACT**

I, KAREN JACOBS LOUDEN, declare and state as follows:

1.      I am a partner at Morris, Nichols, Arsht & Tunnell LLP, and represent the

Plaintiff Linear Technology Corporation ("Linear") in this litigation.  I submit this declaration in

support of Linear's Motion for Summary Judgment on Contract Interpretation and Breach of

Contract.

2.      Attached as Exhibit 1 is a true and correct copy of relevant portions of the

deposition transcript of Rick Neely, Jr., the CFO of Monolithic Power Systems, Inc.

("Monolithic") taken by Linear on August 10, 2007.

3.      Attached as Exhibit 2 is a true and correct copy of the Public Version of

Monolithic's Amended Response and Affirmative Defenses to Linear's in the International

Trade Commission's 337-TA-521 Investigation.

4.      Attached as Exhibit 3 is a true and correct copy of the Settlement and Licensing

Agreement between Monolithic and Linear with attached Consent Order Stipulation, Consent

Order, and Joint Motion to Terminate the Investigation Based Upon A Settlement Agreement and Consent Order.

5.      Attached as Exhibit 4 is a true and correct copy of relevant portions of the deposition transcript of John M. England, Jr., Linear's Patent Counsel, taken by Monolithic on August 7, 2007.

6.      Attached as Exhibit 5 is a true and correct copy of relevant portions of the deposition transcript of Michael Hsing, the Chief Executive Officer of Monolithic taken by Linear on August 29, 2007.

7.      Attached as Exhibit 6 is a true and correct copy of an email dated September 23, 2005 from Rick Neely to John England enclosing a draft Settlement and License Agreement.

8.      Attached as Exhibit 7 is a true and correct copy of an email dated September 26, 2005 from John England to Rick Neely enclosing a draft Settlement and License Agreement.

9.      Attached as Exhibit 8 is a true and correct copy of Rick Neely's handwritten notes, dated September 26, 2005.

10.      Attached as Exhibit 9 is a true and correct copy of an email dated September 26, 2005 from Rick Neely to John England enclosing a draft Settlement and License Agreement.

11.      Attached as Exhibit 10 is a true and correct copy of an email dated September 27, 2005 from John England to Rick Neely enclosing a draft Settlement and License Agreement.

12.      Attached as Exhibit 11 is a true and correct copy of sections 1635 – 1656 of the California Civil Code and sections 1859 – 1861 of the California Code of Civil Procedure.

13.      Attached as Exhibit 12 is a true and correct copy of relevant portions of the Opening Expert Report of Robert Blauschild in the International Trade Commission's 337-TA-521 Investigation.

14.     Attached as Exhibit 13 is a true and correct copy of relevant portions of the

Opening Expert Report of Robert Blauschild in this action.

15.     Attached as Exhibit 14 is a true and correct copy of relevant portions of the

Opening Expert Report of Thomas Szepesi in this action.

I declare, under the penalty of perjury, that the foregoing is true and correct.


Dated: November 26, 2007
Redacted Filing: December 3, 2007

Karen Jacobs Louden

1321201

- 3 -

# EXHIBIT 1

## FULLY REDACTED

# EXHIBIT 2

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: (202) 637-2200  Fax: (202) 637-2201
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Boston | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| | Washington, D.C. |

September 20, 2004

**BY HAND DELIVERY**

Marilyn R. Abbott
U.S. International Trade Commission
500 E. Street, S.W., Suite 401
Washington, D.C. 20436

Re:    In the Matter of CERTAIN VOLTAGE REGULATOR CIRCUITS, COMPONENTS
THEREOF AND PRODUCTS CONTAINING SAME
Investigation No. 337-TA-521

Dear Secretary Abbott:

Attached for filing is an original and six copies of the Public Version of the Amended
Response and Affirmative Defenses of Respondent Monolithic Power Systems, Inc. to the
Complaint of Linear Technologies Corporation.  Please contact me at (202) 637-2168 should you
have any questions.

Very truly yours,

David E Easler

David E. Easler
Legal Assistant

cc:    (see Certificate of Service)

RECEIVED 2004 SEP 20 PM 4: 49 OFC OF THE SECRETARY US INT'L TRADE COMM

DC\707988.1

# PUBLIC VERSION

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

Before The Honorable Sidney Harris
Administrative Law Judge

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| CERTAIN VOLTAGE REGULATOR | ) |
| CIRCUITS, COMPONENTS THEREOF AND | ) Investigation No. 337-TA-521 |
| PRODUCTS CONTAINING SAME | ) |
| | ) |

## AMENDED RESPONSE AND AFFIRMATIVE DEFENSES OF RESPONDENT MONOLITHIC POWER SYSTEMS, INC. TO THE COMPLAINT OF LINEAR TECHNOLOGY CORPORATION

**RESPONDENT:**

MONOLITHIC POWER SYSTEMS, INC.
983 University Avenue, Building A
Los Gatos, CA 95032
Telephone: (408) 395-2802

**SIGNED BY:**

Jean-Francois M. Daviet, Ph.D
983 University Avenue, Building A
Los Gatos, CA 95032
Telephone: (408) 395-2802

**COUNSEL FOR RESPONDENT:**

Mark A. Flagel
Robert Steinberg
Rosslyn Stevens Hummer
Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Maximilian A. Grant
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1918
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

Pursuant to the United States International Trade Commission's Rules regarding Adjudication and Enforcement of Unfair Practices in Import Trade (the "ITC Rules"), 19 CFR 210.13, Respondent Monolithic Power Systems, Inc. ("MPS") hereby submits this amended response to the Notice of Investigation and Complaint of Linear Technology Corporation ("Linear"). MPS denies that it has engaged in unfair competition or violated section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, by importing, selling for importation, or selling within the United States after importation any products that infringe, directly, contributorily, or by inducement, any valid claim of U.S. Patent Nos. 5,481,178 or 6,580,258 (the "Patents-in-Suit"). MPS further denies that the Patents-in-Suit are valid and enforceable.

## AMENDED RESPONSE TO NOTICE OF INVESTIGATION

Pursuant to ITC Rule 210.13(b), Respondent MPS hereby submits this amended response to the Notice of Investigation (the "Notice") issued by the International Trade Commission (the "Commission") on August 12, 2004, and published in the Federal Register on August 17, 2004.

Without admitting any of the specific or general allegations set forth in Linear's Complaint as referenced in the Notice, Respondent provides the following amended response: Respondent admits that a Complaint was filed with the Commission on July 16, 2004, pursuant to the Tariff Act of 1930, as amended, (the "Tariff Act") 19 U.S.C. § 1337 *et seq.*, as set forth in the "Summary" section of the Notice ("Summary of Notice") forwarded by the Commission. Respondent also admits that the Complainant Linear supplemented its Complaint by letter dated August 10, 2004, as referenced in the Summary of Notice. Respondent further admits that Linear's Complaint alleges certain violations of section 337 of the Tariff Act in the importing of certain voltage regulator circuits, components thereof, and products containing voltage regulator circuits alleged to infringe claims 1-6, 31, 34-35, 41, 44-48, and 51-57 of U.S. Patent No. 5,481,178 (the "'178 Patent") and claims 1-19, 31, 34, and 35 of U.S. Patent No. 6,580,258 (the

2

"'258 Patent"). MPS admits that the Complaint further alleges the existence of a domestic

industry, as set forth in the Summary of Notice. Respondent further admits that Complainant

requested that the Commission investigate its Complaint, issue an exclusion order, and issue a

cease and desist order, as set forth in the Summary of Notice.

Furthermore, as set forth in the "Scope of Investigation" section of the Notice, MPS

admits that the Commission ordered that an investigation be opened pursuant to subsection (b) of

section 337 of the Tariff Act. The Notice speaks for itself. MPS denies that it has violated

section 337 of the Tariff Act for any reason, including: (i) importation into the United States, (ii)

sale for importation into the United States, or (iii) sale within the United States following

importation of certain voltage regulator circuits, components thereof, or products containing

voltage regulator circuits alleged to infringe claims 1-6, 31, 34-35, 41, 44-48, and 51-57 of the

'178 Patent and claims 1-19, 31, 34, and 35 of the '258 Patent. MPS further admits that the

Commission opened an investigation into whether an industry in the United States exists as

required by subsection (a)(2) of section 337 of the Tariff Act, as set forth in the "Scope of

Investigation" section of the Notice. MPS lacks sufficient knowledge and information regarding

Linear's allegation that it meets the domestic industry requirement and denies this allegation on

that basis.

## AMENDED RESPONSE TO COMPLAINT

In answer to the specific allegations of the Complaint filed by Linear, MPS further

responds as follows:

1.    With respect to the allegations of paragraph 1 of the Complaint, MPS admits that

Linear has requested an investigation by the Commission pursuant to the Tariff Act regarding the

importation of articles alleged to infringe claims 1-6, 31, 34-35, 41, 44-48, and 51-57 of the '178

Patent and claims 1-19, 31, 34, and 35 of the '258 Patent. MPS further admits that copies of the

3

'178 and '258 Patents are attached to the Complaint. MPS lacks sufficient knowledge and information regarding ownership of the Patents-in-Suit by Linear and therefore denies ownership by Linear. MPS denies that it infringes any valid and enforceable claim of the Patents-in-Suit. MPS denies any remaining allegations in paragraph 1.

2.     MPS denies each and every allegation set forth in paragraph 2 of the Complaint.

3.     MPS lacks sufficient knowledge and information regarding the allegations set forth in paragraph 3 of the Complaint and denies these allegations on that basis.

4.     MPS admits that Linear seeks the relief set forth in paragraph 4 of the Complaint. MPS denies that Linear is entitled to either an exclusion order pursuant to section 337(d) of the Tariff Act or a permanent cease and desist order pursuant to section 337(f) as set forth in paragraph 4. MPS further denies that Linear is entitled to any other relief whatsoever. MPS also denies that any of MPS's products, or components thereof, infringes any of the asserted claims of the Patents-in-Suit. MPS denies any remaining allegations in paragraph 4.

5.     With respect to the allegations contained in paragraph 5 of the Complaint, MPS admits that Complainant Linear appears to be a corporation formed pursuant to Delaware law. MPS lacks sufficient knowledge and information regarding the remaining allegations set forth in paragraph 5, including the allegation that Linear "has pioneered the design, development, manufacture, sale, and marketing of high performance linear integrated circuits ("ICs") covered by numerous U.S. patents," and denies these allegations on that basis.

6.     MPS lacks sufficient knowledge and information regarding the allegations contained in paragraph 6 of the Complaint and denies these allegations on that basis.

7.     With respect to the allegations of paragraph 7 of the Complaint, MPS admits that Linear's marketing materials refer to the LTC1148 series of products as "voltage regulators."

4

MPS denies that the asserted claims of the Patents-in-Suit, alleged by Linear to be embodied in the LTC1148 products, claim any new and novel combination of power saving features. MPS lacks sufficient knowledge and information regarding the remaining allegations set forth in paragraph 7 of the Complaint and denies these allegations on that basis.

8.      With respect to the allegations of paragraph 8 of the Complaint, MPS admits that Linear has identified the LTC1148 as being at issue in this investigation and further admits that Linear's marketing materials refer to the LTC1148 series of products as "voltage regulators." MPS lacks sufficient knowledge and information regarding the remaining allegations contained in paragraph 8 and denies these allegations on that basis.

9.      MPS lacks sufficient knowledge and information regarding the allegations contained in paragraph 9 of the Complaint and denies these allegations on that basis.

10.     With respect to the allegations contained in paragraph 10 of the Complaint, MPS denies that it was reincorporated in Delaware in 2004. MPS admits that it has branch offices in Shanghai, China, Shenzhen, China, Seongnam, Korea and Taipei, Taiwan.

11.     MPS denies that its MP1556, the only product accused and charted by Linear, includes features that infringe the Patents-in-Suit, as alleged by paragraph 11 of the Complaint. MPS denies that it manufactures semiconductor products. MPS contracts with a third party manufacturer located in mainland China to manufacture its semiconductor products, including the MP1556. MPS admits that it sells and markets various semiconductor products, including the MP1556. The United States represents a relatively small share of the total market for the MP1556. MPS admits that the data sheet for the accused MP1556 attached as Exhibit 9 to the Complaint indicates that it can be used in the various products listed in paragraph 11. MPS denies any remaining allegations set forth in paragraph 11.

5

12.    MPS denies each and every allegation set forth in paragraph 12 of the Complaint. MPS specifically denies that it, either directly or indirectly, has committed unfair acts by importing into the United States, selling for importation into the United States, or selling within the United States following importation voltage regulators, components thereof, or products containing voltage regulators that infringe at least one valid and enforceable claim of the Patents-in-Suit.  MPS denies any remaining allegations in paragraph 12.

13.    MPS lacks sufficient knowledge and information regarding the interpretation or application of "voltage regulators" (as such term is construed and applied by Linear) and denies the allegations contained in paragraph 13 on that basis.  In particular, MPS lacks sufficient knowledge and information to respond to the statement that "absent a voltage regulator circuit, the voltage fluctuations in the voltage source can result in situations similar to a momentary dimming of lights in the home," and denies the allegations contained in paragraph 13 on that basis.  MPS denies any remaining allegations set forth in paragraph 13.

14.    MPS lacks sufficient knowledge and information regarding Linear's interpretation of the term "voltage regulator" in the context of the Patents-in-Suit and denies the allegations contained in paragraph 14 of the Complaint on that basis.  MPS further lacks sufficient knowledge and information regarding the purported benefits described in the Patents-in-Suit and denies the allegations contained in paragraph 14 on that basis.  MPS also denies that the Patents-in-Suit disclose or claim anything inventive or novel.  MPS denies any remaining allegations set forth in paragraph 14.

15.    MPS lacks sufficient knowledge and information regarding Linear's interpretation of the term "voltage regulator" in the context of the Patents-in-Suit and denies the allegations contained in paragraph 15 of the Complaint on that basis.  MPS further lacks sufficient

6

knowledge and information to respond to the allegation that it is desirable to place a voltage regulator into "sleep mode" or to turn off portions of it "whenever feasible," and denies the allegations contained in paragraph 15 on that basis. MPS denies any remaining allegations set forth in paragraph 15.

16.    MPS lacks sufficient knowledge and information regarding the allegations of paragraph 16 of the Complaint and denies these allegations on that basis. In particular, MPS lacks sufficient knowledge and information regarding the purported actions or realizations made by the individuals named in the Patents-in-Suit and denies the allegations contained in paragraph 16 on that basis. MPS also denies that the Patents-in-Suit disclose or claim anything inventive or novel. MPS denies any remaining allegations set forth in paragraph 16.

17.    The patent specifications and claims speak for themselves, and, on that basis, MPS denies the allegations of paragraph 17 of the Complaint relating to the Patents-in-Suit. MPS further denies that the Patents-in-Suit disclose or claim anything inventive or novel. In particular, MPS denies that a mode of operation in which two transistors in a switch are "simultaneously" turned off, as claimed in the Patents-in-Suit, is novel, non-obvious, and was not disclosed or used in the prior art. MPS denies any remaining allegations set forth in paragraph 17.

18.    MPS lacks sufficient knowledge and information regarding the allegations of paragraph 18 of the Complaint and denies these allegations on that basis. In particular, MPS lacks sufficient knowledge and information regarding the purported actions or realizations made by the individuals named in the Patents-in-Suit and denies the allegations contained in paragraph 18 on that basis. MPS also denies that the Patents-in-Suit disclose or claim anything inventive or novel. MPS denies any remaining allegations set forth in paragraph 18.

7

19.    The patent specifications and claims speak for themselves, and, on that basis, MPS denies the allegations of paragraph 19 of the Complaint relating to the Patents-in-Suit. MPS further denies that the Patents-in-Suit disclose or claim anything inventive or novel. In particular, MPS denies that a circuit for preventing the current to the load from reversing polarity, as claimed in the Patents-in-Suit, is novel, non-obvious, and was not disclosed or used in the prior art. MPS denies any remaining allegations set forth in paragraph 19.

20.    MPS lacks sufficient knowledge and information regarding Linear's interpretation of the term "voltage regulator" in the context of the Patents-in-Suit and denies the allegations contained in paragraph 20 on that basis. MPS further lacks sufficient knowledge and information to respond to the allegation that the methods and circuits disclosed and claimed in the Patents-in-Suit can be used to reduce power consumption or to increase efficiency, and denies the allegations contained in paragraph 20 on that basis. MPS also denies that the Patents-in-Suit disclose or claim anything inventive or novel. MPS denies any remaining allegations set forth in paragraph 20.

21.    MPS admits that the allegations recited in paragraph 21 of the Complaint appear on the front pages of the Patents-in-Suit.

22.    MPS denies that the Patents-in-Suit were duly and legally issued, as set forth in paragraph 22 of the Complaint. MPS admits that the patents appear to indicate that Milton E. Wilcox and Randy G. Flatness assigned their rights and interests in the Patents-in-Suit to Linear. MPS admits Exhibit 10 to the Complaint appears to be a certified copy of the assignment of the '178 Patent.

23.    MPS lacks sufficient knowledge and information regarding the allegations of paragraph 23 of the Complaint and denies these allegations on that basis.

8

24.     MPS lacks sufficient knowledge and information regarding Linear's interpretation of the term "voltage regulator" in the context of the Patents-in-Suit and denies the allegations contained in paragraph 24 of the Complaint on that basis.  MPS further lacks sufficient knowledge and information to respond to the allegation that the "voltage regulator circuits are used to ensure that the fluctuating levels of power from the power source is within certain limits," and denies the allegations contained in paragraph 24 on that basis.  MPS also lacks sufficient knowledge and information to respond to the allegation that "a battery for a portable electronic device" having a circuit claimed in the Patents-in-Suit "lasts longer than one having a prior art voltage regulator circuit," and denies the allegations contained in paragraph 24 on that basis.  Furthermore, MPS specifically denies that the Patents-in-Suit disclose or claim anything inventive or novel.   In particular, MPS denies that a mode of operation in which two transistors in a switch are "simultaneously" turned off, as claimed in the Patents-in-Suit, is novel, non-obvious, and was not disclosed or used in the prior art.  MPS also denies that a circuit for preventing the current to the load from reversing polarity, as claimed in the Patents-in-Suit, is novel, non-obvious, and was not disclosed or used in the prior art.

25.     MPS admits that Exhibit 11 is a chart that purports to list foreign patents and patent applications corresponding to Linear's Patents-in-Suit, as set forth by paragraph 25 of the Complaint.  MPS lacks sufficient knowledge and information regarding the remaining allegations of paragraph 25 and denies these allegations on that basis.

26.     MPS is unable to respond to the allegations contained in paragraph 26 of the Confidential Version of the Complaint at this time because they have been redacted from the Public Version.  MPS lacks sufficient knowledge and information regarding the allegations and denies these allegations on that basis.

9

27.    With respect to the allegations contained in paragraph 27 of the Complaint, MPS denies that the accused MP1556 is classified under HTS number 8534 or 8536. MPS admits that the MP1556 is classified under HTS number 8542.

28.    MPS denies each and every allegation set forth in paragraph 28 of the Complaint and the claim charts contained in Exhibits 12 and 13. Linear has only specifically alleged and charted the MP1556 product as allegedly infringing a claim and, indeed, has only charted one claim from each asserted patent, claim 51 of the '178 patent and claim 34 of the '258 patent. MPS specifically denies that the accused MP1556 product infringes any of the asserted claims of the Patents-in-Suit because the MP1556 does not contain each and every element, or its equivalent, of any of the asserted claims. For example, and as to the two claims charted by Linear, the MP1556 does not

**REDACTED**

Furthermore, MPS's sale of the MP1556 (and the manufacture thereof by a third party manufacturer) cannot constitute infringement of the method claims 51 of the '178 Patent and 34 of the '258 Patent. Moreover, to the extent that Linear attempts to read any of the claims of the Patents-in-Suit on the MP1556, such claims of the Patents-in-Suit are invalid (as interpreted and applied by Linear) in view of the prior art and thus cannot be infringed. The foregoing list of non-infringement contentions is not exhaustive, and discovery is ongoing. MPS denies any remaining allegations in paragraph 28.

29.     MPS denies each and every allegation set forth in paragraph 29 of the Complaint. MPS specifically denies that the MP1556 directly infringes any of the asserted claims of the Patents-in-Suit.

30.     MPS denies each and every allegation set forth in paragraph 30 of the Complaint. MPS specifically denies that its sale of the MP1556 contributes to direct infringement of any of the asserted claims of the Patents-in-Suit.

31.     MPS denies each and every allegation set forth in paragraph 31 of the Complaint. MPS specifically denies that the MP1556 is a non-staple apparatus designed for use as a component in circuits claimed in claims 1-6, 31, 34-35, 44-48, and 55-57 of the '178 Patent and claims 1-19 and 35 of the '258 Patent.   MPS further denies that MP1556 is a non-staple apparatus designed for use in practicing the methods claimed in claims 41 and 51-54 of the '178 Patent and claim 34 of the '258 Patent.  MPS denies any remaining allegations in paragraph 31.

32.     With respect to the allegations contained in paragraph 32 of the Complaint, MPS admits that it now has knowledge of the Patents-in-Suit, upon discovering that Linear had filed a complaint with the ITC against MPS in July 2004.  MPS lacks sufficient knowledge and information to assess Linear's claim to ownership of the Patents-in-Suit or what it means by its "marketing and enforcement activities" and, on that basis, denies the allegations contained in paragraph 32.

33.     MPS denies each and every allegation set forth in paragraph 33 of the Complaint. MPS specifically denies that it actively or knowingly aids, abets or otherwise induces the direct infringement of the Patents-in-Suit.

34.    MPS denies each and every allegation set forth in paragraph 34 of the Complaint. MPS specifically denies that it actively induces infringement of the asserted claims of the Patents-in-Suit.

35.    With respect to the allegations contained in paragraph 35 of the Complaint, MPS admits that it now has knowledge of the Patents-in-Suit, upon discovering that Linear had filed a complaint with the ITC against MPS in July 2004. MPS lacks sufficient knowledge and information to assess Linear's claim to ownership of the Patents-in-Suit or what it means by its "marketing and enforcement activities" and, on that basis, denies the allegations contained in paragraph 35.

36.    MPS admits that it is a fabless integrated circuit provider, but denies that it manufactures any products. MPS further admits that it employs a third-party fabrication facility located in mainland China to fabricate the MP1556. MPS further admits that it employs a third party in Malaysia to package and test the MP1556. MPS further admits that the MP1556 is available for sale in the United States and can be purchased from MPS. MPS denies any remaining allegations set forth in paragraph 36.

37.    MPS admits that a person named "Michael Nakanishi" purchased two EV0063 evaluation boards from MPS on May 17, 2004, as set forth in paragraph 37 to the Complaint. MPS lacks sufficient knowledge and information as to whether "Michael Nakanishi" is a representative of Linear and denies this allegation on that basis. MPS further admits that the EV0063 evaluation board contains an MP1556 chip. MPS lacks sufficient knowledge and information regarding whether the EV0063 evaluation boards "arrived in a box on May 20, 2004" and denies this allegation on that basis. MPS further denies that Exhibit 13 to the Complaint shows the outside of the box or that Exhibit 13 shows that the EV0063 parts were

12

assembled by UNISEM [M] BERHAD in Malaysia. MPS admits that the record of purchase was sent via Federal Express from its United States headquarters. MPS lacks sufficient knowledge and information regarding any remaining allegations in paragraph 37 and denies these allegations on that basis.

38.    MPS lacks sufficient knowledge and information regarding the allegations of paragraph 38 of the Complaint that the EV0063 evaluation boards were purchased by a representative of Linear or photographed following receipt. MPS admits that Exhibit 18 to the Complaint purports to be a reproduction of color photographs of two EV0063 evaluation boards. MPS denies the remaining allegations of paragraph 38 of the Complaint. Specifically, MPS denies that the MP1556 product directly infringes claim 51 of the '178 Patent or claim 34 of the '258 Patent. MPS further denies that it is committing unfair acts by importing, selling after importation, or offering for sale for importation products which infringe the Patents-in-Suit. MPS lacks sufficient knowledge and information regarding any remaining allegations in paragraph 38 and denies these allegations on that basis.

39.    MPS lacks sufficient knowledge and information regarding the allegations of paragraph 39 of the Complaint and denies these allegations on that basis.

40.    With respect to the allegations of paragraph 40 of the Complaint, MPS admits that Linear's marketing materials refer to the LTC1148 series of products as "voltage regulators." MPS lacks sufficient knowledge and information regarding Linear's allegation that it "meets the technical prong of the domestic industry requirement" and denies this allegation on that basis. MPS further lacks sufficient knowledge and information regarding Linear's allegation that the LTC1148-3.3 and LTC1148-5 products practice the subject matter claimed in the Patents-in-Suit and denies the allegations contained in paragraph 40 on that basis.

41.    With respect to the allegations of paragraph 41 of the Complaint, MPS admits that Exhibits 19 and 20 to the Complaint appear to be claim charts that purport to apply claim 51 of the '178 Patent and claim 34 of the '258 Patent to the LTC1148 product.  MPS specifically denies that the Patents-in-Suit disclose or claim anything inventive or novel.  Except as specifically admitted, MPS lacks sufficient knowledge and information regarding Linear's allegation that the LTC1148 products practice the subject matter claimed in Patents-in-Suit and, on that basis, denies the remaining allegations of paragraph 41.

42.    MPS lacks sufficient knowledge and information regarding the allegations of paragraph 42 of the Complaint and denies these allegations on that basis.  In particular, MPS lacks sufficient knowledge and information regarding Linear's allegation that it "meets the economic prong of the domestic industry requirement" and denies this allegation on that basis.

43.    With respect to the allegations of paragraph 43 of the Complaint, MPS specifically denies that the Patents-in-Suit disclose or claim anything inventive or novel.  In particular, MPS denies that the Patents-in-Suit cover any novel "voltage regulator" technology. MPS lacks sufficient knowledge and information regarding Linear's allegation that it has invested heavily in research and development to innovate its voltage regulators and denies this allegation on that basis.  MPS further lacks sufficient knowledge and information regarding Linear's interpretation of the term "voltage regulator" in the context of the Patents-in-Suit and denies the allegations contained in paragraph 43 on that basis.  MPS is unable to respond to the allegations regarding confidential exhibit 21, which is not included as part of the Public Version of the Complaint.  MPS lacks sufficient knowledge and information regarding confidential exhibit 21, and, on that basis, denies the allegations.  MPS lacks sufficient knowledge and

14

information regarding the remaining allegations of paragraph 43  and denies these allegations on that basis.

44.     MPS is unable to respond to the allegations of paragraph 44 regarding confidential exhibit 22, which is not included as part of the Public Version of the Complaint. MPS lacks sufficient knowledge and information regarding confidential exhibit 22, and, on that basis, denies the allegations of paragraph 44.

45.     MPS admits that there is pending litigation related to the '178 Patent, as alleged in paragraph 45 of the Complaint.  MPS lacks sufficient knowledge and information regarding Linear's allegation that there is no pending litigation regarding the '258 Patent and denies this allegation on that basis.

46.     MPS admits that Linear filed a complaint in the Northern District of California District Court on June 26, 1997, as set forth in paragraph 46 of the Complaint.  MPS further admits that this lawsuit was filed against Impala Linear Corp., Toyoda Automatic Loom Works, Ltd., Analog Devices, Inc., Maxim Integrated Products, and Unitrode Corp. (the "Impala Litigation"), and MPS further admits that the Impala Litigation involved allegations of infringement of the '178 Patent.

47.     MPS admits that the Northern District of California District Court issued a claim construction order on June 9, 1999 and subsequently issued a summary judgment order, as set forth in paragraph 47 of the Complaint.  MPS denies Linear's characterizations of the claim construction and summary judgment orders as the Court's orders speak for themselves.  MPS admits that the case was appealed to the United States Court of Appeals for the Federal Circuit.

48.     MPS lacks sufficient knowledge and information regarding the allegations of paragraph 48 of the Complaint and denies these allegations on that basis.

49.    MPS admits the allegations set forth in paragraph 49 of the Complaint.

50.    MPS is unable to respond to the allegations contained in paragraph 50 of the Confidential Version of the Complaint at this time that have been redacted from the Public Version. MPS lacks sufficient knowledge and information regarding the redacted and unredacted allegations of paragraph 50 and denies these allegations on that basis.

51.    MPS lacks sufficient knowledge and information regarding the allegations of paragraph 51 of the Complaint and denies these allegations on that basis.

52.    MPS admits that the United States Court of Appeals for the Federal Circuit issued a ruling on June 17, 2004, as set forth in paragraph 52 of the Complaint. MPS denies Linear's characterizations of the ruling as the decision speaks for itself.

53.    MPS lacks sufficient knowledge and information regarding the allegations of paragraph 53 of the Complaint and denies these allegations on that basis.

## STATEMENT PURSUANT TO SECTION 210.13(B)

Pursuant to 19 C.F.R. § 210.13(b), MPS provides the following information:

A.    Harmonized Tariff Schedule item number(s):  The Harmonized Tariff Schedule item number for the importation of the MP1556 product is 8542.29.0040.

B.    MPS's capacity to produce:  As set forth in paragraph 11, *supra*, MPS does not produce the MP1556.

C.    The name and address of MPS's supplier(s) for the MP1556 product:  MPS currently contracts with Advanced Semiconductor Manufacturing Corp. ("ASMC"), 385 Hong Cao Road, Shanghai 200233, China to manufacture its wafers for the MP1556 in foundries located in China. Once the MP1556 silicon wafers have been produced, they are shipped to Unisem (M) Berhard ("Unisem"), No. 1, Persiaran Pulai Jaya 9, Kawasan Perindustrian Pulai

16

Jaya, 31300 Ipoh, Perak Darul Ridzuan, Malaysia for wafer sort. The MP1556 chips are then assembled and packaged by Unisem in Malaysia.

D.      Statistical data: The statistical data available to MPS as to the quantity and value of imports of the MP1556 product are limited. To date, MPS has imported approximately

**REDACTED**

E.      Relative significance of United States market: The United States market for the MP1556 product is relatively insignificant to MPS, as measured by comparing MPS's worldwide sales of the MP1556 against its imports of that product.

### RELIEF REQUESTED

A.      MPS denies that its accused MP1556 product has infringed or will infringe any valid and enforceable claim of the Patents-in-Suit. MPS further denies that it has violated section 337 of the Tariff Act in any way. MPS further denies that Linear is entitled to an investigation pursuant to section 337(b)(1) of the Tariff Act, as set forth in Section A of the "Relief Requested" section of the Complaint (the "Relief Requested Section").

B.      MPS denies that Linear is entitled to a hearing pursuant to sections 337(c) and (d) of the Tariff Act, as set forth in Section B of the Relief Requested Section.

C.      MPS denies that Linear is entitled to a permanent exclusion order pursuant to sections 337(d) and (f)(1) of the Tariff Act, as set forth in Section C of the Relief Requested Section.

D.      MPS denies that Linear is entitled to a permanent cease and desist order pursuant to section 337(f) of the Tariff Act, as set forth in Section D of the Relief Requested Section, or any other relief that the Commission might grant, as set forth in Section E of the Relief Requested Section.

**AFFIRMATIVE DEFENSES**

MPS alleges the following affirmative defenses in response to the allegations set forth in the Complaint.

### FIRST AFFIRMATIVE DEFENSE

### (Non-infringement – 35 U.S.C. § 271)

MPS has not directly infringed claims 1-6, 31, 34-35, 41, 44-48, and 51-57 of U.S. Patent No. 5,481,178 (the "'178 Patent") or claims 1-19, 31, 34, and 35 of U.S. Patent No. 6,580,258 (the "'258 Patent") (collectively, the "Claims"). MPS has not engaged in any acts constituting contributory infringement of the Claims. MPS has not induced anyone to infringe the Claims.

Linear has only specifically alleged and charted the MP1556 product as allegedly infringing a claim in the '178 Patent and a claim in the '258 Patent. MPS does not infringe, directly or indirectly, the Claims for at least the following reasons:

The accused MP1556 product does not infringe any of the Claims of the Patents-in-Suit because the MP1556 does not contain each and every element, or its equivalent, of any of the Claims. For example, and as to the two claims charted by Linear, the MP1556 does not

**REDACTED**

Furthermore, MPS's sale of the MP1556 (and the manufacture thereof by a third party manufacturer) cannot constitute infringement of the method claims 51 of the '178 Patent and 34 of the '258 Patent, which are the only two claims identified and charted by Linear. Moreover, to the extent that Linear attempts to read any of the claims of the Patents-in-Suit on the MP1556, such claims of the Patents-in-Suit are invalid (as interpreted and applied by Linear) in view of the prior art and thus cannot be infringed. The foregoing list of non-infringement contentions is not exhaustive, and discovery is ongoing.

A copy of the MP1556 datasheet is attached hereto as **Exhibit 1.**

## SECOND AFFIRMATIVE DEFENSE

### (Claims Are Invalid as Anticipated – 35 U.S.C. § 102)

Upon information and belief, one or more of the Claims are invalid because (i) the subject matter claimed by the Patents-in-Suit was known by others in the United States prior to the issuance of the Patents-in-Suit; (ii) the claimed subject matter was described in a printed publication prior to the issuance of the Patents-in-Suit; (iii) the claimed subject matter was in use or on sale for more than a year prior to the date of application for the Patents-in-Suit; and/or (iv) the claimed subject matter was described by another in a patent application filed prior to the priority date of the subject matter claimed in the Patents-in-Suit.

In the Impala Litigation, the defendants produced extensive prior art against the '178 Patent (which prior art also applies to the '258 Patent) and filed under seal motions for summary judgment on various grounds, including invalidity, non-infringement and unenforceability. In September 2001, the District Court entered an order granting a summary judgment of non-infringement in the Impala Litigation, which was appealed to the Federal Circuit. In issuing that order, the District Court set aside as moot the defendants' motions on the issues of invalidity and unenforceability based on its finding of non-infringement. A copy of the District Court's opinion in the Impala litigation is attached hereto as **Exhibit 2.** Upon appeal, the Federal Circuit vacated the District Court's order and remanded the case based, in part, on a different interpretation of certain claim terms. A copy of the Federal Circuit's opinion in the Impala litigation is attached hereto as **Exhibit 3.**

Linear has yet to produce to MPS any of the prior art identified during the Impala Litigation, which is the subject of certain of MPS's pending discovery requests. However, based on publicly available information regarding the prior art and factual circumstances discovered

19

during the Impala Litigation, as well as the prosecution histories of the Patents-in-Suit, the Patents-in-Suit are invalid (as interpreted and applied by Linear), *inter alia*, under 35 U.S.C. §§ 102, 103 and 112 and unenforceable due to inequitable conduct.  Discovery is ongoing, and MPS has only recently commenced its own investigation into the invalidity and unenforceability of the Patents-in-Suit.

Based on presently available information, the Patents-in-Suit are invalid (as interpreted and applied by Linear) pursuant to one or more subparts of 35 U.S.C. §102, including §§ 102(a), (b), (e), (f) and (g).  In particular, the Claims of the Patents-in-Suit are invalid (as interpreted and applied by Linear) under §102 for at least the following reasons:

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are anticipated by documentation from Siliconix regarding its Si9150 Ripple Regulator (the "Si9150 Ripple Regulator").

- Claim 51 of the '178 Patent and other related Claims of the Patents-in-Suit are anticipated by U.S. Patent No. 5,237,606 (the "DDL Regulator").

- Claim 51 of the '178 Patent and other related Claims of the Patents-in-Suit are anticipated by documentation from Maxim regarding its MAX782 product (the "MAX782").

- Claim 51 of the '178 Patent and other related Claims of the Patents-in-Suit are anticipated by Japanese Patent No. 4-101286 (the "JP '286 Patent").

The foregoing list of invalidity contentions is not exhaustive, and discovery is ongoing. With respect to the foregoing contentions, MPS incorporates by reference the relevant pleadings and documents from the Impala Litigation, which are in Linear's possession.

## THIRD AFFIRMATIVE DEFENSE

### (Lack of Novelty – 35 U.S.C. § 101)

Upon information and belief, the Claims are invalid because they lack novelty.

## FOURTH AFFIRMATIVE DEFENSE

### (Claims Are Invalid for Indefinite Claim Language – 35 U.S.C. § 112 ¶2)

Upon information and belief, the Claims are invalid because the claim language is too indefinite.

## FIFTH AFFIRMATIVE DEFENSE

### (Claims Are Invalid as Obvious – 35 U.S.C. § 103)

Upon information and belief, the Claims are invalid because they were obvious to one skilled in the art at the time of the purported invention.

Based on presently available information, the Patents-in-Suit are invalid (as interpreted and applied by Linear) for failure to comply with one or more subparts of 35 U.S.C. §103. In particular, the Claims of the Patents-in-Suit are invalid (as interpreted and applied by Linear) under §103 for at least the following reasons:

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the Si9150 Ripple Regulator and Figure 1 of the '178 Patent.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the documentation from Harris Semiconductor regarding its HIP 5060 product (the "HIP 5060") and "Electronic Power Control" by I. M. Gottlieb ("Gottlieb").

21

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the "HIP 5060 and "Synchronous Half-Wave Rectifier" by W. E. Ripple ("Ripple").

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the HIP 5060 and "Current Drives Synchronous Rectifier" by W. R. Archer ("Archer").

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the Japanese Patent No. 4-42771 (the "JP '771 Patent") and Gottlieb.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the JP '771 Patent and Ripple.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the JP '771 Patent and Archer.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the HIP 5060 and Figure 1 of the '178 Patent.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of the JP '771 Patent and the Si9150 Ripple Regulator.

- Claim 34 of the '258 Patent and other related Claims of the Patents-in-Suit are obvious in view of the combination of U.S. Patent No. 4,541,041 (the "'041 Patent") and the Si9150 Ripple Regulator.

- Claim 51 of the '178 Patent and other related Claims of the Patents-in-Suit are
  obvious in view of the combination of the DDL Regulator and Figure 1 of the
  '178 Patent.

The foregoing list of invalidity contentions is not exhaustive, and discovery is ongoing.
With respect to the foregoing contentions, MPS incorporates by reference the relevant pleadings
and documents from the Impala Litigation, which are in Linear's possession.

## SIXTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

Upon information and belief, the allegations in the Complaint are precluded due to the
doctrine of prosecution history estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unenforceability due to Inequitable Conduct)

Upon information and belief, the Claims are unenforceable due to inequitable conduct.
Based on presently available information, the Patents-in-Suit are unenforceable due to
inequitable conduct.  MPS is informed and believes, and therefore alleges, that all Claims of the
Patents-in-Suits are unenforceable by virtue of the failure of the patentees to act with the degree
of candor and good faith required of persons who prepare or prosecute a patent application
before the United States Patent and Trademark Office, including the failure to disclose material
prior art and information known to the patentees or persons having substantial responsibility for
the prosecution of the Patents-in-Suit.   In particular, all Claims of the Patents-in-Suit are
unenforceable for at least the following reasons:

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose various
  publications by one of Linear's own employees, Jim Williams, including

Applications Notes 29 and 35 ("Williams") during the prosecution of the '178 Patent.

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose documents from Micro Linear Corporation regarding its ML4862 product ("ML4862") during the prosecution of the '178 Patent.

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose documents from Linear regarding its LT1073 product ("LT1073") during the prosecution of the '178 Patent.

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose documents relating to Maxim's MAX 782 product during the prosecution of the '178 Patent.

- All Claims of the '258 Patent are unenforceable because the patentees knowingly and willfully inundated the Examiner with a large volume of prior art references that are not material in order to obscure those references that are materially relevant to the '258 Patent. In this regard, the Examiner of the '258 Patent made the following statements for the record during the prosecution of the '258 Patent: "It is noted that applicants have field [sic – filed] a large volume of prior art in the instant application. Many of these references do not appear material to the claimed invention. Applicants [sic] attention is directed to Ex Parte Morning Surf Corp., 230 USPQ 446. And Penn Yan Boats, Inc. v. Sea Lark Boats, Inc. 359 Supp. 948, 175 USPQ 260 (S.D. Fla. 1972)."

24

- All Claims of the Patents-in-Suit are unenforceable for failure to disclose the identity of Ronald Vinsant, a former employee of Linear, as an inventor of the Patents-in-Suit during the prosecution of the '178 Patent.

The foregoing list of unenforceability contentions is not exhaustive, and discovery is ongoing. With respect to the foregoing contentions relating to the Impala Litigation, MPS incorporates by reference the relevant pleadings and documents from the Impala Litigation, which are in Linear's possession.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Lack of a Domestic Industry)

Upon information and belief, there is no domestic industry as required by section 337 of the Tariff Act of 1930, as amended. Therefore, Linear is not entitled to the relief it seeks.

### NINTH AFFIRMATIVE DEFENSE

#### (Lack of Unfair Act)

MPS has committed no unfair act as set forth by the Tariff Act.

### TENTH AFFIRMATIVE DEFENSE

#### (Failure to State a Claim)

Complainant Linear is not entitled to relief pursuant to the Tariff Act because its Complaint fails to state a claim for relief under the Tariff Act.

## REQUEST FOR RELIEF

WHEREFORE, Respondent MPS respectfully requests that the Commission:

1.  Find no violation of Section 337 of the Tariff Act of 1930, as amended;

2.  Find that Respondent MPS has not infringed any claim of the two Patents-in-Suit;

3.  Find that the Claims of the Patents-in-Suit are invalid and unenforceable;

3.  Deny all relief requested by Complainant Linear;

4.  Issue an order terminating the Investigation with prejudice; and

5.  Grant such other relief as the Commission may deem just and proper.

Dated: September 20, 2004

Respectfully submitted,

Mark A. Flagel
Robert Steinberg
Rosslyn Stevens Hummer
Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Maximilian A. Grant
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1918
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

By _____
Maximilian A. Grant
Attorneys for Monolithic Power Systems, Inc.

**VERIFICATION**

I have read the foregoing AMENDED RESPONSE AND AFFIRMATIVE DEFENSES OF RESPONDENT MONOLITHIC POWER SYSTEMS, INC. TO THE COMPLAINT OF LINEAR TECHNOLOGY CORPORATION and know its contents.

I am the Director of Sales and Marketing, Europe, of Monolithic Power Systems, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I have read the foregoing document. I am informed and believe and, on that ground, allege that the matters stated in it are true.

Executed on September __17th__, 2004 in __Wuertzburg _____.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.



Jean-Francois M. Daviet, Ph.D

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2004, I served copies of the forgoing **Public Version of Response and Affirmative Defenses of Respondent Monolithic Powers Systems, Inc. to the Complaint of Linear Technologies Corporation on** the following parties in the manner indicated:

**(Original and Six Copies)**
**Hand Delivery**
U.S. International Trade Commission
Marilyn R. Abbott, Secretary
U.S. International Trade Commission
500 E Street, S.W. Room 112
Washington, D.C. 20436
202-205-2000

**(Two Copies and**
**Diskette Containing WordPerfect for**
**Windows Version)**
**Hand Delivery**
U.S. International Trade Commission
Honorable Sidney Harris
Office of the Administrative Law Judge
U.S. International Trade Commission
500 E Street, S.W. Suite 317-G
Washington, D.C. 20436
202-205-2000

**(Two Copies)**
**Hand Delivery**
David H. Hollander, Jr., Esq.
Investigative Attorney
Office of Unfair Import Investigations
500 E Street, S.W.
Washington, D.C. 20436
202-205-2000

**Counsel for Complainant**

D. Sean Trainor, Esq.
**MCDERMOTT WILL & EMERY LLP**
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
*(via electronic mail)*

Vera M. Elson, Esq.
Peter P. Chen, Esq.
Keaton S. Parekh, Esq.
**MCDERMOTT WILL & EMERY LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
*(via electronic mail)*

Timothy Andersen, Esq.
**MCDERMOTT WILL & EMERY LLP**
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
*(via electronic mail and federal express)*

Tamara Nation, Esq.
**MCDERMOTT WILL & EMERY LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
*(via electronic mail and federal express)*

David E. Easler
Legal Assistant
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
(202) 637-2200

# EXHIBIT 3

## FULLY REDACTED

# EXHIBIT 4

## FULLY REDACTED

# EXHIBIT 5

## FULLY REDACTED

# EXHIBIT 6

## FULLY REDACTED

# EXHIBIT 7

## FULLY REDACTED

# EXHIBIT 8

## FULLY REDACTED

# EXHIBIT 9

## FULLY REDACTED

# EXHIBIT 10

## FULLY REDACTED

# EXHIBIT 11

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1635 (2007)

**§ 1635.  Uniformity of interpretation**

All contracts, whether public or private, are to be interpreted by the same rules, except as otherwise provided by this code.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1636 (2007)

**§ 1636.  Contracts, how to be interpreted**

A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1637 (2007)

**§ 1637.  Intention of parties, how ascertained**

For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this chapter are to be applied.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1638 (2007)

### § 1638.  Intention to be ascertained from language

The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1639 (2007)

**§ 1639.  Interpretation of written contracts**

When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1640 (2007)

### § 1640.  Writing, when disregarded

When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED \*\*\*
\*\*\* THROUGH 2007 CH. 750, APPROVED 10/14/07 \*\*\*

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1641 (2007)

**§ 1641.  Effect to be given to every part of contract**

The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED \*\*\*
\*\*\* THROUGH 2007 CH. 750, APPROVED 10/14/07 \*\*\*

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1642 (2007)

**§ 1642.  Several contracts, when taken together**

Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3. Obligations
Part 2. Contracts
Title 3. Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1643 (2007)

**§ 1643. Interpretation in favor of contract**

A contract must receive such a interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1644 (2007)

**§ 1644.  Words to be understood in usual sense**

The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED \*\*\*
\*\*\* THROUGH 2007 CH. 750, APPROVED 10/14/07 \*\*\*

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1645 (2007)

## § 1645.  Technical words

Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1646 (2007)

**§ 1646.  Law of place**

A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1647 (2007)

**§ 1647.  Contracts explained by circumstances**

A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1648 (2007)

**§ 1648.  Contract restricted to its evident object**

However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1649 (2007)

**§ 1649.  Interpretation in sense in which promisor believed promisee to rely**

If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1650 (2007)

**§ 1650.  Particular clauses subordinate to general intent**

Particular clauses of a contract are subordinate to its general intent.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1651 (2007)

**§ 1651.  Contract, partly written and partly printed.**

Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1652 (2007)

**§ 1652.  Repugnancies, how reconciled**

   Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract.

**HISTORY:**

   Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1653 (2007)

**§ 1653.  Inconsistent words rejected**

Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1654 (2007)

**§ 1654.  Language interpreted against party who caused uncertainty**

In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

**HISTORY:**

Enacted 1872. Amended Stats 1982 ch 1120 § 1.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1655 (2007)

**§ 1655.  Reasonable stipulations, when implied**

Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED \*\*\*
\*\*\* THROUGH 2007 CH. 750, APPROVED 10/14/07 \*\*\*

CIVIL CODE
Division 3.  Obligations
Part 2.  Contracts
Title 3.  Interpretation of Contracts

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Civ Code § 1656 (2007)

### § 1656.  Necessary incidents implied

All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CODE OF CIVIL PROCEDURE
Part 4.  Miscellaneous Provisions
Title 1.  Of the General Principles of Evidence

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Code Civ Proc § 1859 (2007)

**§ 1859.  The intention of the Legislature or parties**

In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED \*\*\*
\*\*\* THROUGH 2007 CH. 750, APPROVED 10/14/07 \*\*\*

CODE OF CIVIL PROCEDURE
Part 4.  Miscellaneous Provisions
Title 1.  Of the General Principles of Evidence

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Code Civ Proc § 1860 (2007)

**§ 1860.  Circumstances considered**

For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CODE OF CIVIL PROCEDURE
Part 4.  Miscellaneous Provisions
Title 1.  Of the General Principles of Evidence

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Code Civ Proc § 1861 (2007)

**§ 1861.  Terms presumed used in general acceptation; Evidence of local, etc., use**

The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a local, technical, or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the agreement must be construed accordingly.

**HISTORY:**

Enacted 1872.

LEXSTAT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL URGENCY LEGISLATION ENACTED ***
*** THROUGH 2007 CH. 750, APPROVED 10/14/07 ***

CODE OF CIVIL PROCEDURE
Part 4.  Miscellaneous Provisions
Title 1.  Of the General Principles of Evidence

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

Cal Code Civ Proc § 1864 (2007)

### § 1864.  Of two constructions, which preferred

When the terms of an agreement have been intended in a different sense by the different parties to it, that sense is to prevail against either party in which he supposed the other understood it, and when different constructions of a provision are otherwise equally proper, that is to be taken which is most favorable to the party in whose favor the provision was made.

**HISTORY:**

Enacted 1872.

# EXHIBIT 12

## FULLY REDACTED

# EXHIBIT 13

## FULLY REDACTED

# EXHIBIT 14

## FULLY REDACTED