IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINEAR TECHNOLOGY CORP., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 06-476 (GMS) |
| ) | |
| MONOLITHIC POWER SYSTEMS, INC., ) | PUBLIC VERSION |
| ) | |
| Defendant. ) | |

**LINEAR TECHNOLOGY CORPORATION'S
ANSWERING BRIEF IN OPPOSITION TO MONOLITHIC
POWER SYSTEMS INC.'S MOTION FOR SUMMARY JUDGMENT
OF NO BREACH OF CONTRACT (COUNT ONE)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658-9200
  Attorneys for plaintiff Linear Technology
  Corporation

OF COUNSEL:

Raphael V. Lupo
Joel M. Freed
Ronald J. Pabis
Jimmy Shin
Matthew G. Cunningham
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
(202) 756-8000

Confidential Version Filed: December 12, 2007
Public Version Filed: December 19, 2007

i.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................

NATURE AND STAGE OF THE PROCEEDINGS .................................................................1

SUMMARY OF ARGUMENT ..................................................................................................1

STATEMENT OF FACTS .........................................................................................................1

ARGUMENT...............................................................................................................................1

    A.    The Applicable Law.........................................................................................1

    B.    Monolithic's MP1543 Has ZX Circuitry ........................................................2

    C.    REDACTED ...............4

        1.    Monolithic's Interpretation Reads REDACTED REDACTED ..............4

        2.    Section 6.1's Royalty Provision Does Not Support Monolithic's Interpretation of Section 3.3 ......................8

        3.    Monolithic's Additional Irrelevant Assertions ..............................10

CONCLUSION..........................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*City of Atascaradero v. Merrill Lynch,*
  68 Cal. App. 4th 445 (Cal. Ct. App. 1998) ...................................................................4

**STATUTES AND OTHER AUTHORITIES**

Civ. Code §§ 1635-1656 .........................................................................................................2

Code Civ. Proc. §§ 1859 -1861 ..............................................................................................2

U.S. Patent No. 5,481,178 ................................................................................................ Passim

U.S. Patent No. 6,580,258 ................................................................................................... 5-6

1.

## NATURE AND STAGE OF THE PROCEEDINGS

This is Linear Technology Corporation's ("Linear") answering brief in opposition to Monolithic Power System, Inc.'s ("Monolithic") Motion for Summary Judgment of No Breach of Contract (Count One) (the "Motion"). (D.I. 105).

## SUMMARY OF ARGUMENT

Monolithic's Motion should be denied because Monolithic's MP1543 contains "ZX circuitry" based on REDACTED -- just like in the MP1556 which was at issue in the ITC proceeding. It also should be denied because Monolithic agreed in Section 3.3 of the Settlement Agreement not only that REDACTED

REDACTED Monolithic's proposed interpretation of Section 3.3 -- which would limit the provision to the exact circuitry at issue in the ITC proceeding -- is inconsistent with the plain meaning, the intent of the parties as expressed in the agreement itself and during their negotiations, and California law. It reads REDACTED out of the Agreement.

## STATEMENT OF FACTS

The relevant facts are set forth in Linear's Opening Brief in Support of its Motion for Summary Judgment on Contract Interpretation and Breach of Contract (D.I. 108) and in the Argument section below.

## ARGUMENT

A.  **The Applicable Law**

Monolithic acknowledges that California law governs the interpretation of the Settlement Agreement. It ignores, however, that under that law the Court must consider

2.

"objective manifestations of the parties' intent, including the circumstances surrounding the negotiation of the agreement." D.I. 109, Ex. 11 (Cal. Civ. Code §§ 1635-1656 (2007); Cal. Code Civ. Proc. §§ 1859 -1861, 1864 (2007)). Although that evidence is not necessary to discern the plain meaning of the Settlement Agreement, it is not to be ignored as Monolithic does. And it clearly refutes the interpretation of the Settlement Agreement that Monolithic advances.

### B.   Monolithic's MP1543 Has ZX Circuitry

There is no question that there is circuitry in the MP1543 (which Monolithic designed before the settlement but introduced after the settlement) that is based REDACTED REDACTED The products at issue in the ITC proceeding also had REDACTED

Monolithic labeled REDACTED in the MP1556 at issue in the ITC as REDACTED It participates in the performance of the function of the third element of claims 1, 34, and 41 of the '178 patent and it corresponds to comparator 74 in the third means as shown in Figure 7 of the '178 and '258 patents. See D.I. 109, Ex. 12 (Report of Robert Blauschild in the ITC Proceeding) at 45-46, 58, 78. The MP1543 REDACTED at issue here, while not labeled as "ZX," likewise participates in the performance of the function of the third element of claims 1, 34, and 41 of the '178 patent and corresponds to comparator 74 in the third means as shown in Figure 7 of the '178 and '258 patents. Id., Ex. 13 (Blauschild Report) at 35-46 and 48-49.

Monolithic cannot avoid its agreement by using a set of initials other than "ZX" to describe its circuitry or REDACTED REDACTED Yet, that is the essence of the contract interpretation which Monolithic advances.

3.

Monolithic's reliance on the report of its expert in this case (Dr. Szepezi) is misplaced. D.I. 106 at 4. Dr. Szepezi was not involved in the ITC proceeding and offers no opinion on what was meant by the contractual language REDACTED REDACTED At most his report shows only that the MP1543 does not REDACTED He does not dispute, however, that both the MP1556 and the MP1543 have REDACTED REDACTED

Monolithic's fact witnesses also offer no support for Monolithic's position. Mr. Hsing, Monolithic's CEO who signed the Settlement Agreement, refused to answer whether he had an understanding as to whether the MP1543 has the ZX circuitry identified by counsel for Linear in the ITC:

REDACTED

Declaration of Karen Jacobs Louden ("Louden Decl."), Ex. 15 (Hsing Dep.) at 60:20-61:7. He also claimed that his understanding of the term "ZX circuitry identified by counsel for Linear in the ITC proceeding" at the time he signed the Settlement Agreement was privileged information. *Id.*, at 15:18-16:13.[1]

---

[1] Rick Neely, Monolithic's negotiator, did not even know what the "ZX circuitry identified by counsel for Linear in the ITC proceeding" was. D.I. 109, Ex. 1 (Neely Dep.) at 47:1-5.

4.

In the end, Monolithic's position boils down to the assertion that the MP1543 does not contain ZX circuitry within the meaning of the Settlement Agreement because it is a "boost" or "step-up" converter, rather than a "buck" or "step-down converter." That is a distinction without a difference because the Linear patents clearly apply to both topologies. The patents plainly state:

> Additionally, the circuit and method can be used to control switches in various types of switching regulator configurations, including voltage step-down, voltage step-up and polarity-inversing configurations.

Louden Decl., Ex. 16 ('178 patent) at 2:47-51. Monolithic's assertion that the MP1543 has a "fundamentally different" topology not only fails because both topologies are embraced in the patents; it also fails because under its topology the MP1543 still has REDACTED REDACTED -- just like the MP1556 at issue in the ITC.

### C.   Monolithic Agreed Not To Practice the Asserted Claims

#### 1.   Monolithic's Interpretation Reads REDACTED REDACTED Out of the Settlement Agreement[2]

California law requires that "the whole of the contract is to be taken together, so as to give effect to every provision and not in a way which renders some clauses nugatory, inoperative, or meaningless." *City of Atascaradero v. Merrill Lynch*, 68 Cal. App. 4th 445, 473 (Cal. Ct. App. 1998). Monolithic's interpretation fails to do that and instead reads the phrase REDACTED ' out of the Settlement Agreement. Indeed, *all* of the activities that Monolithic asserts are prohibited by the Settlement Agreement are subsumed in the

---

[2]   The correct interpretation of Section 3.3 of the Settlement Agreement and the arguments in support of that interpretation are set forth in Linear's Opening Brief in Support of its Motion for Summary Judgment on Contract Interpretation and Breach of Contract (D.I. 108). Linear incorporates those arguments herein and focuses this response on the reasons why Monolithic's proposed interpretation is contrary to the plain meaning of the Settlement Agreement and California law.

5.

language that proceeds the            REDACTED            language added by Linear's

negotiator, Mr. England.³

      Monolithic incorrectly maintains that            REDACTED

modifies the manner in which the ZX circuitry can be connected and that the phrase is a catchall

to capture any other potential way the ZX circuitry may infringe the Asserted Claims.  In other

words, Monolithic asserts that Section 3.3 reflects Monolithic's promise            REDACTED
REDACTED




      REDACTED            See D.I. 106 at 6.  But that construction

makes no sense because there is no way to connect the ZX circuitry other than connecting the

ZX circuitry to enter into "sleep mode" or "reverse polarity protection" that would practice the

Asserted Claims.

      Indeed, both parties' experts agreed that all of the Asserted Claims (indeed all the

claims) can be grouped into two categories -- as either sleep mode (or transistors off) claims or

reverse current (or reverse polarity) protection claims.⁴  Because all of the Asserted Claims fall

into those two categories, a connection of ZX circuitry to practice the claims necessarily would

---

³    The Asserted Claims are defined in the Settlement Agreement            REDACTED
REDACTED
REDACTED The '178 patent has 50 additional claims and the '258 patent has an additional
33 claims that are not included within the definition of Asserted Claims.  D.I. 109, Ex. 3
(Settlement Agreement) at 2.

⁴    Although Monolithic's expert in the ITC proceeding, Dr. Steven Leeb, took issue with
Linear's reference to one group of claims as the "sleep mode" claims, he divided the
claims into what he called the    REDACTED    claims and the "reverse current
prevention" claims. Louden Decl., Ex. 17 (Leeb Opening Report in the ITC proceeding)
at 50-51.

6.

entail a "sleep mode" or "reverse polarity protection" connection.[5] Thus, the language REDACTED as interpreted by Monolithic as purportedly applicable only to practice of the claims with ZX circuitry -- would add ***nothing*** to Section 3.3, thus rendering that language superfluous.

In contrast, under Linear's construction, the phrase REDACTED REDACTED is far from superfluous. It captures products that practice the Asserted Claims even if they do not have ZX circuitry.

As such, Monolithic is wrong that "Linear's proposed construction impermissibly would render virtually all of paragraph 3.3 to be surplusage." D.I. 106 at 7. The REDACTED and REDACTED promises in Section 3.3 reflect Monolithic's agreement to refrain from REDACTED REDACTED Monolithic's promise not to REDACTED

Monolithic's contention here that the "phrase REDACTED was intended as a catchall to capture any other potential way that the 'identified' ZX circuitry might operate to practice the Asserted Claims that did not fit neatly within the labels REDACTED (D.I. 106 at 6) also is flatly contradicted by the testimony of both parties to the negotiation. Linear's negotiator Mr. England testified that he

---

[5] There are also other claims in the Linear Patents that were not asserted in the ITC proceeding but that also fall within the category of "sleep mode" claims or "reverse polarity protection claims." See Louden Decl., Ex. 17 (Leeb Opening Report in the ITC proceeding) at 50, including claims 2, 3 and 57 of the '178 patent and claims 1, 3, and 31 of the '258 patent in the "two transistor off" category and claims 45-47 and 51-54 of the '178 patent in the "reverse current prevention" category.

7.

added the REDACTED language to ensure that Monolithic would "behave [them]selves in the future on any of the asserted claims of the asserted patents anywhere in the world." D.I. 109, Ex. 4 (England Dep.) at 131:5-21. Monolithic's negotiator, Mr. Neely, testified that: REDACTED practice thos REDACTED REDACTED *Id.*, Ex. 1 (Neely Dep.) at 43:14-44:1.

Also without foundation is Monolithic's other contention that its interpretation must be adopted because: REDACTED

REDACTED

REDACTED (D.I. 106 at 7). That contention ignores (indeed turns on its head) the very rationale for extracting from Monolithic the promise REDACTED REDACTED namely to require that Monolithic "behave"[6] and refrain from REDACTED

REDACTED

---

[6] Monolithic's contrary interpretation is plainly belied by the drafting history of the Settlement Agreement. Monolithic initially proposed language for Section 3.3 REDACTED
REDACTED
D.I. 109, Ex. 6 (9/23/05 Draft Settlement Agreement) at ¶ 3.3. As discussed above, in responding to Monolithic's draft, Mr. England added REDACTED REDACTED to ensure that Monolithic would "behave yourselves in the future on any of the asserted claims of the asserted patents anywhere in the world." *Id.*, Ex. 4 (England Dep.) at 131:5-21. Mr. England sent his change requiring that REDACTED REDACTED to Mr. Neely on September 26, 2005. *Id.*, Ex. 7 (9/26/05 Draft Settlement Agreement) at ¶ 3.3. Mr. Neely confirmed at his deposition his understanding that REDACTED *d.*, Ex. 1 (Neely Dep.) at 43:14-44:1.

[7] For the same reason, Monolithic's contention that its interpretation must be adopted because otherwise the entirety of section 3.3 should have been reduced to REDACTED
REDACTED See D.I. 106 at 7. That contention ignores the circumstances under which the Settlement Agreement was entered. At the time, the parties were on the eve of trial at the ITC where Linear had accused the MP1556-MP1559 and the ZX circuitry contained therein of infringing the Asserted Claims. For Linear to settle, it was entitled to specific assurances that Monolithic would
(Continued . . .)

8.

Moreover, in advancing the position that the agreement Mr. England negotiated was only about circuitry that precisely duplicates what had been labeled ZX, Monolithic ignores that Mr. England had no idea what that circuitry was. Neither he nor any other employee or executive at Linear had seen the schematics at issue. In fact, all Linear employees were prevented from seeing the "ZX" circuitry or the claim charts from the ITC proceeding because Monolithic marked such information "Confidential" under the protective order in the ITC proceeding. *Id.*, Ex. 4 (England Dep.) at 125:17-23. It would have made no sense for Linear to agree to limit the agreement to circuitry it never saw and was precluded from seeing.

    2.    Section 6.1's Royalty Provision Does Not Support Monolithic's Interpretation of Section 3.3

Monolithic's reliance on Section 6.1 of the Settlement Agreement is misplaced. That Section sets forth Monolithic's agreement to pay a REDACTED REDACTED REDACTED The difference in products covered by Sections 3.3 and 6.1 of the Settlement Agreement actually supports Linear's position, as the comparison below demonstrates:

REDACTED

---

(. . . continued)
    never again dispute that the accused products or the accused circuitry at issue infringed the Linear Patents.

9.

REDACTED

The language of section 6.1 is limited to REDACTED but the language of Section 3.3 specifically goes beyond that. This does not demonstrate that the Section 3.3 language REDACTED refers simply to some connection of the accused ZX circuitry in other than REDACTED as Monolithic contends. Rather, it demonstrates that Monolithic sought in REDACTED

REDACTED

REDACTED Indeed Monolithic rejected Mr. England's proposal to make the agreed royalty of Section 6.1 extend REDACTED On September 28, the day before the Settlement Agreement was signed, Mr. England sent Mr. Neely a revised draft of Section 6.1 wherein he sought to apply the REDACTED

REDACTED

Louden Decl., Ex. 18 (9/28/05 Draft Settlement Agreement) at ¶ 6.1. Monolithic objected, and as a result REDACTED of Section 6.1 was not agreed upon for products REDACTED

10.

REDACTED But the promise REDACTED remains in Section 3.3. As a result, REDACTED Indeed, if it was intended that they be coextensive, there would have been no reason for Monolithic to object to Mr. England's proposed language.

### 3. Monolithic's Additional Irrelevant Assertions

In its opening brief, Monolithic appears to suggest that its position on this motion is somehow supported by the assertion that the sales of the MP1543 in the United States have been REDACTED D.I. 106 at 2. That is irrelevant.[8] Moreover, the only reason the sales of the MP1543 are REDACTED is that Linear identified Monolithic's wrongdoing early, and did not wait until Monolithic made REDACTED sales before asserting rights under the Settlement Agreement. Monolithic pulled the product from the market shortly thereafter. Louden Decl., Ex. 15 (Hsing Dep.) at 89:10-14.

That Linear did not accuse all of Monolithic's voltage regulators of infringement in this case or during the ITC proceeding is likewise irrelevant. As Michael Hsing, Monolithic's CEO testified, REDACTED But Monolithic did try to compete with Linear with regard to certain parts like the MP1543 and the parts identified in the ITC proceeding.

---

[8] Moreover, Monolithic's suggestion that it abandoned the ITC proceeding because the MP1556 was not commercially successful is disingenuous. The ITC proceeding was a heavily contested litigation that settled on the eve of trial.

[9] Monolithic's CEO, Mr. Hsing testified as follows:
REDACTED

11.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Linear's Opening Brief in Support of its Motion for Summary Judgment on Contract Interpretation and Breach of Contract (D.I. 108), Linear respectfully requests that Monolithic's Motion be denied and that summary judgment for Linear be granted that: (1) Monolithic has breached its promise REDACTED REDACTED (2) if Linear proves that Monolithic otherwise practices the Asserted Claims, it will have proved that Monolithic breached its promise REDACTED and (3) Monolithic has breached its promise not to REDACTED

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658-9200
Attorneys for plaintiff Linear Technology Corporation

OF COUNSEL:
Raphael V. Lupo
Joel M. Freed
Ronald J. Pabis
Jimmy Shin
Matthew G. Cunningham
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
(202) 756-8000

December 12, 2007

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on December 19, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Richard L. Horwitz
>POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on December 19, 2007 upon the following in the manner indicated:

**BY HAND & EMAIL**

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899

**BY EMAIL**

Dean G. Dunlavey
Mark A. Flagel
Robert Steinberg
Sean Pak
Latham & Watkins LLP
633 West Fifth Street, Ste. 400
Los Angeles, CA 90017

Mark Kachner
Latham & Watkins LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626-1925

David McKone
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago IL 60606

>*/s/ Karen Jacobs Louden*
>―――――――――――――――
>klouden@mnat.com (#2881)