## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINEAR TECHNOLOGY CORPORATION, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 06-476-GMS |
| | ) |
| v. | ) **PUBLIC VERSION** |
| | ) |
| MONOLITHIC POWER SYSTEMS, INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

## MONOLITHIC POWER SYSTEMS, INC.'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
## OF NO BREACH OF CONTRACT (COUNT ONE)

OF COUNSEL:

Dean G. Dunlavey
Mark D. Kachner
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel: (714) 540-1235

Mark A. Flagel
Robert Steinberg
Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Tel: (213) 485-1234

David McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Tel: (312) 777-7316

Dated: December 21, 2007
Public Version Dated: December 21, 2007

Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19889-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Defendant*
*Monolithic Power Systems, Inc.*

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDING.............................................................1

II.   SUMMARY OF ARGUMENT ...............................................................................................1

III.   ARGUMENT ..............................................................................................................................2

     A.     The Settlement Agreement Does Not Cover The MP1543; It Covers Only the MP1556-1559 And Products That Contain "The ZX Circuitry Identified By Counsel For Linear In The ITC Proceeding" ....................................2

     B.     The Undisputed Evidence Is That The MP1543 Does Not Contain "The ZX Circuitry Identified By Counsel For Linear In The ITC Proceeding"......................................................................................................................3

          1.     Linear Presented No Evidence That The MP1543 Contains "The ZX Circuitry Identified By Counsel For Linear In The ITC Proceeding".....................................................................................................3

          2.     MPS Presented Affirmative Evidence That The MP1543 Does Not Contain "The ZX Circuitry Identified By Counsel For Linear In The ITC Proceeding" And Linear Did Not Rebut That Evidence ..............4

     C.     Linear Cannot Re-Write The Settlement Agreement To Cover Different Circuitry Than The ZX Circuitry Its Attorneys Identified In The ITC Proceeding.......................................................................................................................6

     D.     Linear Cannot Re-Write The Settlement Agreement To Cover Infringement Generally ...............................................................................................8

          1.     Linear's Proposed "Interpretation" Defies Plain English ............................8

          2.     Linear's "Two Category" Argument Is Unsupported And Contrary To The Evidence In Any Event .................................................................9

          3.     Linear's Proposed "Interpretation" Would Render Nearly All Of Section 3.3 Superfluous And Also Is Inconsistent With Section 6.1.........10

     E.     Linear's Attempt To Use Extrinsic Evidence To Contradict The Plain Meaning Of The Settlement Agreement Is Improper And Unavailing.................12

          1.     Extrinsic Evidence May Not Be Used To Contradict The Plain Language Of A Contract..............................................................................12

          2.     The Extrinsic Evidence Cited By Linear Cannot Alter The Plain Language Of The Settlement Agreement ...................................................12

3.    The Actual Extrinsic Evidence – Ignored By Linear – Supports MPS's Position And The Plain Language Of The Settlement Agreement.................................................................................................14

IV.    CONCLUSION...................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AIU Ins. Co. v. Superior Court (FMC Corp.),*
   799 P.2d 1253, 51 Cal. 3d 807 (1990)..................................................................... 12

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................................... 3

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   80 Cal. Rptr. 2d 329, 68 Cal. App. 4th 445 (1998) ...................................... 9

*In re Bennett,*
   298 F.3d 1059 (9th Cir. 2002) ........................................................................ 12

*Shaw v. Regents of University of California,*
   67 Cal. Rptr. 2d 850, 58 Cal. App. 4th 44 (1997) ............................... 7, 12

*Ticor Title Ins. Co. v. Employers Ins. of Wausau,*
   48 Cal. Rptr. 2d 368, 40 Cal. App. 4th 1699 (1995) ........................... 12

### STATUTES

Cal. Civ. Code § 1636.................................................................................................. 6

Cal. Civ. Code § 1638................................................................................................ 6, 12

## I.      NATURE AND STAGE OF THE PROCEEDING

Trial in this proceeding is scheduled for June 23, 2008.  The pre-trial conference is scheduled for May 23, 2008.

During the November 21, 2007 teleconference, the Court granted MPS's request for leave to file a motion for summary judgment on Linear's breach of contract claim and Linear's request for leave to file a cross-motion.  MPS filed its Motion for Summary Judgment of No Breach of Contract (Count One) (D.I. 105) and accompanying opening brief ("MPS OB") (D.I. 106) on November 26, 2007.  MPS filed its answering brief ("MPS AB") (D.I. 120) in opposition to Linear's motion for summary judgment on December 12, 2007.  MPS incorporates its answering brief herein by reference.

## II.     SUMMARY OF ARGUMENT

MPS is entitled to summary judgment as to Linear's breach of contract claim (Count One).  The accused MP1543 product does not contain "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" – the governing language of the parties' Settlement and License Agreement (the "Settlement Agreement").  Linear had the burden of proving this fact and failed to do so.  Indeed, Linear served three reports from its technical expert in this case and not one contained a single statement to the effect that the MP1543 contains "the ZX circuitry identified by counsel for Linear in the ITC Proceeding."

Linear tries to avoid summary judgment by arguing that the MP1543 contains "a reverse current comparator that allows the product to go into sleep mode but *is not precisely arranged as it was previously*."  Linear Answering Brief ("Linear AB") (D.I. 121), at 2 (emphasis added).  Linear's apparent hope is that the Court will re-write the Settlement Agreement to replace the very specific language to which the parties actually agreed:  "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" – with something like "circuitry based on a reverse current comparator" or "any circuitry that causes a product to go into sleep mode."  This is impermissible.  If that were the parties' agreement, that language would be in the Settlement Agreement.

Since the ZX circuitry identified by its counsel in the ITC proceeding is not present in the MP1543, Linear resorts to more creative advocacy. It argues that the Settlement Agreement applies to *any* assertion of infringement by Linear against *any* MPS product. Linear's argument is specious. The plain language of the Settlement Agreement demonstrates that a breach of section 3.3 requires the sale by MPS of either the MP1556-1559 products, or a "product[] in which *the ZX circuitry identified by counsel for Linear* in the ITC Proceeding *is connected so as to*" do one of three things: (1) enter into "sleep mode," (2) enter into "reverse polarity protection," or (3) "otherwise practice the Asserted Claims." The phrase "otherwise practice the Asserted Claims" can only be referring to, and modifying, the phrase "product[] in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to . . ." Linear's proposed interpretation defies plain English, would render virtually all of section 3.3 surplusage, and is inconsistent with the stipulated royalty provision of section 6.1.

The language of the Settlement Agreement is clear. It does not cover the MP1543. Linear has not proven, and cannot prove, that the MP1543 contains the ZX circuitry specified in the Settlement Agreement. Its failure to meet that burden is dispositive. For the reasons set forth in this brief, MPS's Opening Brief (D.I. 106), and MPS's answering brief in opposition to Linear's motion for summary judgment (D.I. 120), the Court should grant summary judgment to MPS and dismiss Linear's breach of contract claim.

## III.     ARGUMENT

### A.     The Settlement Agreement Does Not Cover The MP1543; It Covers Only the MP1556-1559 And Products That Contain "The ZX Circuitry Identified By Counsel For Linear In The ITC Proceeding"

MPS and Linear entered into the Settlement Agreement to resolve their patent infringement dispute in the ITC. At the time the Settlement Agreement was executed, Linear had examined numerous MPS products and concluded that it would pursue infringement claims only as to the MP1556-MP1559 products and "any other products in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to allow such products to enter into what Linear referred to as 'sleep mode,' 'reverse polarity protection', or otherwise

2

practice the Asserted Claims anywhere in the world." Settlement Agreement (Ex. A to MPS OB (D.I. 106)), §§ 3.1, 3.2, 3.3. Further, Linear expressly agreed that "MPS products, such as the MP2104, that have the accused ZX circuitry disabled . . . do not infringe the Licensed Patents." *Id.*, § 3.3.

To constitute a breach of the Settlement Agreement, the ZX circuitry specifically identified by counsel for Linear in the ITC proceeding must be present and connected, *and* that circuitry must function to do one of three things: (1) enter into "sleep mode," (2) enter into "reverse polarity protection," or (3) otherwise practice the Asserted Claims. Since the MP1543 does not contain the ZX circuitry, its sales cannot constitute a breach of the Settlement Agreement.

**B.    The Undisputed Evidence Is That The MP1543 Does Not Contain "The ZX Circuitry Identified By Counsel For Linear In The ITC Proceeding"**

**1.    Linear Presented No Evidence That The MP1543 Contains "The ZX Circuitry Identified By Counsel For Linear In The ITC Proceeding"**

Linear has the burden of proof as to its breach of contract claim. Consequently, MPS only had to point out that Linear has not produced any evidence the MP1543 contains "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," which MPS has done. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Linear then had to come forward with evidence demonstrating a genuine issue as to that material fact. *Id.* Linear failed to do so. Linear has served three reports from its technical expert in this case. None of those reports contains a single statement or cites to any evidence that the MP1543 contains "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." Since Linear has no evidence, the "plain language of Rule 56(c) mandates the entry of summary judgment." *Id.*, at 322.

If Linear had any evidence to support its position, it would have been easy to present it to the Court. Indeed, Linear was required to do so. Linear has the schematic diagrams for the MP1556 and for the MP1543. If the MP1543 had "the ZX circuitry identified by its counsel in the ITC Proceeding," Linear could have presented the schematic diagrams side-by-side and

3

shown the common circuitry. Linear did nothing of the sort. Indeed, nowhere has Linear even attempted to identify for the Court what constituted "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," much less show that it is actually present in the MP1543. Accordingly, MPS is entitled to summary judgment on Linear's breach of contract claim (Count One).

**2.    MPS Presented Affirmative Evidence That The MP1543 Does Not Contain "The ZX Circuitry Identified By Counsel For Linear In The ITC Proceeding" And Linear Did Not Rebut That Evidence**

Although MPS had no obligation to provide affirmative evidence on this issue, it did so. In particular, the answering expert report of MPS's expert, Dr. Thomas Szepesi, served on November 1, 2007, demonstrated that the MP1543 does not contain "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." (Ex. D to MPS OB (D.I. 106)), at 84-87. Remarkably, Linear argues that the Court should discount Dr. Szepesi's report because "Dr. Szepesi was not involved in the ITC proceeding and offers no opinion on what was meant by the contractual language '[the] ZX circuitry identified by counsel for Linear in the ITC proceeding.'" Linear AB (D.I. 121) at 3. Not only is Linear's argument a *non sequitur*, it ignores the facts that: (1) Linear's expert in this case, Robert Blauschild, served as Linear's expert in the ITC proceeding, (2) none of Mr. Blauschild's three reports in this case offers an opinion that the MP1543 contains "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," and (3) none of Mr. Blauschild's three reports contradicts Dr. Szepesi's statements that the MP1543 does not contain "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." Linear's misguided and unsupported attacks on MPS's evidence appear to be an improper attempt to shift the burden of proof or otherwise distract the Court.

Furthermore, while Linear strives to create confusion as to what constitutes "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," it should be noted that section 3.3 of the Settlement Agreement contains a provision which reads: "For avoidance of doubt, Linear agrees that the MPS products, such as the MP2104, that have the accused ZX

4

circuitry disabled as set forth in the ITC proceeding, do not infringe the Licensed Patents and that MPS may continue to make, have made, use, sell and offer to sell such products."

The MP2104 is the same product as the MP1556, but with "the accused ZX circuitry disabled." As detailed in Dr. Szepesi's report, he reviewed the evidence from the ITC proceeding to identify what circuitry was enabled in the MP1556 but disabled in the MP2104. He then compared that disabled circuitry from the ITC proceeding with the MP1543 circuitry. He concluded that none of "the accused ZX circuitry disabled as set forth in the ITC Proceeding" is present in the MP1543. Answering Expert Report of Defendant Monolithic Power Systems, Inc.'s Expert: Dr. Thomas Szepesi (Ex. D to MPS OB (D.I. 106)), at 84-87. Thus, not only has Linear failed to present any evidence that the MP1543 contains "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," the unchallenged evidence presented by MPS demonstrates that the MP1543 does not contain that circuitry.[1]  Accordingly, MPS is entitled to summary judgment.

---

[1] Linear engages in more misdirection when it claims that "Monolithic's position boils down to the assertion that the MP1543 does not contain ZX circuitry within the meaning of the Settlement Agreement because it is a 'boost' or 'step-up' converter, rather than a 'buck' or 'step-down converter." Linear AB (D.I. 121) at 4. As Linear well knows, MPS's discussion of converter topologies had nothing to do with the ZX circuitry issue. The Settlement Agreement addresses three categories of products: (1) the MP1556, (2) the MP1557 through MP1559 products under development, and (3) "any other products in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to allow such products to enter into what Linear referred to as 'sleep mode,' 'reverse polarity protection', or otherwise practice the Asserted Claims anywhere in the world." Settlement Agreement (Ex. A to MPS OB (D.I. 106), §§ 3.2, 3.3. The MP1556, MP1557, MP1558 and MP1559 were all designed for use in step-down voltage converters. In contrast, the MP1543 is intended for use in step-up voltage converters. MPS's opening brief described the MP1543's fundamentally different topology in order to establish that the MP1543 is not an MP1556, MP1557, MP1558 or MP1559 – thus immediately eliminating product categories (1) and (2) from the discussion and allowing the Court to focus on category (3).

**C.    Linear Cannot Re-Write The Settlement Agreement To Cover Different Circuitry Than The ZX Circuitry Its Attorneys Identified In The ITC Proceeding**

Since the MP1543 does not contain "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," Linear asks the Court to re-write the Settlement Agreement. In particular, Linear wants to replace the very specific language to which the parties actually agreed – "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" – with something like "circuitry based on a reverse current comparator" or "any circuitry that causes a product to go into sleep mode."[2] The Settlement Agreement, however, says nothing about prohibiting "reverse current comparators" or circuitry that Linear might want to argue could be re-arranged somehow to resemble something that was in the MP1556. The Settlement Agreement covers "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." That circuitry is not present in the MP1543 – period.

As it did in its cross motion for summary judgment, Linear contends that the Court should re-write the contract language because Linear employees were prevented from seeing "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." Linear AB (D.I. 121), at 8. This is a specious argument. If Linear did not understand the term "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" or thought that the term was unworkable because no one at Linear had access to certain confidential materials from the ITC proceeding, it had the obligation to inform MPS of that and see if the parties could reach a different agreement – one that contained different language. Linear could not remain silent on this issue only to later ask this Court to re-write the Settlement Agreement more to its liking. "Although the intent of the parties determines the meaning of the contract (Civ. Code, § 1636, 1638), the relevant intent is 'objective' – that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." *Shaw v. Regents of University of California*, 67 Cal. Rptr. 2d 850,

---

[2] It is ironic for Linear to argue that MPS is somehow trying to avoid liability "by using a set of initials other than 'ZX' to described its circuitry." Linear AB (D.I. 121), at 2. To the contrary, it is Linear that wants to "win by labeling," as it wants to put a "ZX" label on circuitry that it admits is different than the circuitry its attorneys identified in the ITC proceeding.

856, 58 Cal. App. 4th 44, 54-55 (1997). Moreover, Linear's counsel, as well as its expert, Mr. Blauschild, had unfettered access during the ITC Proceeding to the confidential materials describing the accused ZX circuitry, including the circuit schematics.

Linear suggests that there is something nefarious about MPS's counsel advising MPS's CEO Michael Hsing that he should not answer questions about the MP1543 and "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" if his knowledge came from privileged communications. Linear AB (D.I. 121) at 3. Linear's suggestion is without merit; its position rings particularly hollow since Linear's counsel instructed Linear's witnesses not to answer similar questions on privilege grounds.



Thus, both parties elected not to waive the nature of their privileged communications with their attorneys concerning the terms of the agreement. Those elections have no bearing on the meaning of the term "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." Linear's attempt to create confusion over this issue further evidences the lack of merit in its position. The language of the Settlement Agreement is clear and straightforward. Pursuant to that language, MPS is entitled to summary judgment as to Linear's breach of contract claim.

### D. Linear Cannot Re-Write The Settlement Agreement To Cover Infringement Generally

Since the MP1543 does not contain "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," and since the Settlement Agreement cannot be re-written to refer to "reverse current comparators" or different circuitry "that allows the product to go into sleep mode," Linear advocates yet another re-write of the Settlement Agreement. In particular, Linear argues that the Settlement Agreement must apply as a matter of law to any product that Linear chooses to allege may be infringing its patents, regardless of the presence or absence of the ZX circuitry. This argument, like the others, is unavailing.

#### 1. Linear's Proposed "Interpretation" Defies Plain English

As a matter of plain English grammar, the phrase "otherwise practice the Asserted Claims" is explicitly connected to, and modifies, the phrase "any other products in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to . . .."[3] There is no other phrase in the sentence that it can modify. The expressions "sleep mode" and "reverse polarity protection" are examples of ways that the ZX circuitry could operate so as to "practice the Asserted Claims." The phrase "or otherwise practice the Asserted Claims" is a catchall to capture any other potential way that the "identified" ZX circuitry might operate to practice the Asserted Claims that did not fit neatly within the labels "sleep mode" or "reverse polarity protection."

---

[3] The entirety of section 3.3 reads as follows:

> MPS agrees that it has not made and will not make any sales of its MP1557-1559 products anywhere in the world. MPS further agrees that, except with respect to the Licensed Product, it has not made and will not make any sales of any other products in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to allow such products to enter into what Linear referred to as "sleep mode," "reverse polarity protection", or otherwise practice the Asserted Claims anywhere in the world. For avoidance of doubt, Linear agrees that the MPS products, such as the MP2104, that have the accused ZX circuitry disabled as set forth in the ITC proceeding, do not infringe the Licensed Patents and that MPS may continue to make, have made, use, sell and offer to sell such products.

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 80 Cal. Rptr. 2d 329, 349, 68 Cal. App. 4th 445, 473 (1998), cited by Linear, further demonstrates that Linear's position is without merit. In that case, the phrase at issue related to a party's power to "assert any claims against any third parties alleged to be owned by or held in any trust which is alleged to be applicable to the deposits of the Settling Option B Pool Participants with the Pools." Merrill Lynch argued that the phrase "alleged to be owned" referred to "any claims" as opposed to "third parties." The court rejected this argument based on principles of grammar and common sense. "As written, the lengthy subordinate clause 'alleged to be owned by or held in any trust,' etc., most logically refers to and modifies the immediately preceding phrase 'any third parties,' and not the earlier phrase 'any claims.'" *City of Atascadero*, 80 Cal. Rptr. 2d at 349, 68 Cal. App. 4th at 474. The court also noted that even if Merrill Lynch's clumsy interpretation were possible, the clause had to be construed "in light of the *immediately preceding* sentence," which, when read together, made such a reading impossible. *Id.* (emphasis in original).

In the instant case, Linear's proposed construction is even more tortured than the approach advocated by Merrill Lynch and rejected in *City of Atascadero*. Not only does the phrase "any other products in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to" almost immediately precede the phrase "otherwise practice the Asserted Claims," ***there is no other phrase in the sentence to which the term "otherwise practice the Asserted Claims"*** properly can be paired grammatically. MPS's plain English construction is the only construction that makes sense.

### 2. Linear's "Two Category" Argument Is Unsupported And Contrary To The Evidence In Any Event

Linear next argues that the labels "sleep mode" and "reverse polarity protection" encompass all the ways in which the ZX circuitry can be connected so as to practice the Asserted Claims, and therefore the phrase "or otherwise practice the Asserted Claims" must refer to something other than "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." Linear AB (D.I. 121), at 5. This is a specious argument, not only because it defies plain English

grammar as discussed above, but because it is completely unsupported and misstates the circumstances at the ITC.

The reality is that neither the term "sleep mode" nor "reverse polarity protection" was ever defined or agreed upon, either at the ITC or in the Settlement Agreement.



Given this abundance of labels, it is obvious that the expression "or otherwise practice the Asserted Claims" simply made clear that regardless of the label, MPS was not to sell any product containing "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" "connected so as to . . . practice the Asserted Claims."

### 3. Linear's Proposed "Interpretation" Would Render Nearly All Of Section 3.3 Superfluous And Also Is Inconsistent With Section 6.1

As set forth in MPS's Opening Brief (D.I. 106) and MPS's Answering Brief in Opposition to Linear's Motion for Summary Judgment (D.I. 120), Linear's interpretation would render superfluous virtually all of section 3.3 of the Settlement Agreement, thus violating basic tenets of contract interpretation. There would have been no point to identifying the MP1556

product, the MP1557 through MP1559 products under development, or calling out "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." There also would have been no point to specifying that "MPS products . . . that have the accused ZX circuitry disabled . . . do not infringe the Licensed Patents." Settlement Agreement (Ex. A to MPS OB (D.I. 106)), § 3.3. This provision immediately follows the sentence that includes the phrase "otherwise practice the Asserted Claims," which further demonstrates that the purpose and intent of the Settlement Agreement was to address "the accused ZX circuitry," not all possibilities of alleged patent infringement. Linear's attempt to explain away this consequence of its improper construction is devoid of merit.





**E.    Linear's Attempt To Use Extrinsic Evidence To Contradict The Plain Meaning Of The Settlement Agreement Is Improper And Unavailing**

**1.    Extrinsic Evidence May Not Be Used To Contradict The Plain Language Of A Contract**

Linear improperly attempts to resort to extrinsic evidence to contradict the plain language of the Settlement Agreement.  Under California law, where the contractual language is clear, the Court ascertains the parties' intent from the written terms and goes no further.  "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  Cal. Civ. Code § 1638 (West 1985).  "In order to prevent the rule from being eviscerated by the exception the contract must be ambiguous and reasonably susceptible to the proffered meaning before parol evidence is permitted."  *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002)  "Where contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further."  *Shaw*, 67 Cal. Rptr. 2d at 855, 58 Cal. App. 4th at 53, quoting *Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 48 Cal. Rptr. 2d 368, 373, 40 Cal. App. 4th 1699, 1707 (1995).  "[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning."  *AIU Ins. Co. v. Superior Court (FMC Corp.)*, 799 P.2d 1253, 1264, 51 Cal. 3d 807, 822 (1990).

The language of the Settlement Agreement is clear.  It controls the outcome of this motion.  MPS is entitled to summary judgment.

**2.    The Extrinsic Evidence Cited By Linear Cannot Alter The Plain Language Of The Settlement Agreement**



Linear fails to cite or even acknowledge this testimony. But Linear's failure to do so cannot change the plain words of the Settlement Agreement itself or the plain words of the contemporaneous e-mails sent by Mr. Neely. In short, the Settlement Agreement is very clear. It applies to preclude MPS from selling the MP1556, the MP1557-1559, and any other product that includes the very specific "ZX circuitry identified by counsel for Linear in the ITC Proceeding," where that ZX circuitry is connected so as to (a) enter into "sleep mode," (b) enter into "reverse polarity protection," or (c) otherwise practice the Asserted Claims. Nothing more, nothing less.

13

### 3.  The Actual Extrinsic Evidence – Ignored By Linear – Supports MPS's Position And The Plain Language Of The Settlement Agreement

Even if this Court were to consider extrinsic evidence in interpreting the Settlement Agreement, it would find that the extrinsic evidence supports MPS's position.  The extrinsic evidence includes the following:



Extrinsic evidence cannot be used to contradict the plain language of a contract. In this case, the terms of the Settlement Agreement are clear-cut. Furthermore, not only are Linear's attempts to re-write the Settlement Agreement improper, the extrinsic evidence supports MPS as to the plain meaning of the parties' agreement. Linear's position is without merit.

## IV.    CONCLUSION

The language of the Settlement Agreement is clear. It does not cover the MP1543, which lacks the ZX circuitry specified in that agreement. Linear's improper attempts to re-write the terms of the Settlement Agreement would transform it from a coherent, straightforward document into a mangled patchwork bearing no resemblance to the parties' agreement. For these reasons and the reasons set forth in MPS's Opening Brief and MPS's Answering Brief in opposition to Linear's motion for summary judgment, the Court should grant summary judgment to MPS and dismiss Linear's breach of contract claim.

<table>
<tr><td>

OF COUNSEL:

Dean G. Dunlavey
Mark D. Kachner
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel: (714) 540-1235

Mark A. Flagel
Robert Steinberg
Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Tel: (213) 485-1234

David McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Tel: (312) 777-7316

</td><td>

POTTER ANDERSON & CORROON LLP


By:    /s/ Kenneth L. Dorsney
       Richard L. Horwitz (#2246)
       Kenneth L. Dorsney (#3726)
       Hercules Plaza, 6th Floor
       1313 North Market Street
       Wilmington, Delaware 19889-0951
       Tel: (302) 984-6000
       rhorwitz@potteranderson.com
       kdorsney@potteranderson.com

*Attorneys for Defendant*
*Monolithic Power Systems, Inc.*

</td></tr>
</table>

Dated:  December 21, 2007
Public Version Dated:  December 21, 2007
839371 / 30611

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Kenneth L. Dorsney, hereby certify that on December 21, 2007, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send notification

to the registered attorney(s) of record that the document has been filed and is available for

viewing and downloading.

I further certify that on December 21, 2007, I have Electronically Mailed the document to

the following person(s):

Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell, LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
klouden@mnat.com

Raphael V. Lupo
Mark G. Davis
Ronald J. Pabis
Stephen K. Shahida
Joel M. Freed
Natalia V. Blinkova
Matthew G. Cunningham
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
rlupo@mwe.com
madavis@mwe.com
rpabis@mwe.com
sshahida@mwe.com
jfreed@mwe.com
nblinkova@mwe.com
mcunningham@mwe.com

Jimmy Shin
McDermott Will & Emery LLP
3150 Porter Dr.
Palo Alto, CA 94304-1212
jshin@mwe.com

By: /s/ Kenneth L. Dorsney
     Richard L. Horwitz
     Kenneth L. Dorsney
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     kdorsney@potteranderson.com

750219 / 30611

# EXHIBIT H

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT I

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT J

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT K

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT L

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT M

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT N

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT O

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT P

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY