IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINEAR TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-476 (GMS) |
| | ) | |
| MONOLITHIC POWER SYSTEMS, INC., | ) | PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |

**LINEAR TECHNOLOGY CORPORATION'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
ON CONTRACT INTERPRETATION AND BREACH OF CONTRACT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

*Attorneys for Plaintiff
Linear Technology Corporation*

OF COUNSEL:

Raphael V. Lupo
Joel M. Freed
Ronald J. Pabis
Jimmy Shin
Matthew G. Cunningham
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, DC  20005
(202) 756-8000

Confidential Version Filed: December 21, 2007
Public Version Filed: December 28, 2007

i.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .........................................................................................................

ARGUMENT ................................................................................................................................ 1

      A.    THE MP1543 HAS THE ZX CIRCUITRY IDENTIFIED
           BY COUNSEL FOR LINEAR .................................................................. 1

      B.                     REDACTED

                                                            ....................... 5

      C.    MONOLITHIC BREACHED ITS AGREEMENT
                     REDACTED                ........................................ 9

CONCLUSION .......................................................................................................................... 12

ii.

TABLE OF AUTHORITIES

Page(s)

Cases

*City of Manhattan Beach v. Superior Court*, 13 Cal. 4th 232 (Cal. 1996) .................................... 8

*Cook Inc. v. Medtronic, Inc.*, 2006 U.S. Dist. LEXIS 47073
    (N.D.. Cal. 2006) ................................................................................................................ 8

*Foad Consulting Group Inc. v. Musil Govan Azzalino*, 270 F.3d 821
    (9th Cir. 2001) ................................................................................................................... 7

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
    442 P.2d 641 (Cal. 1968) ................................................................................................. 8

*Shaw v. Regents of University of California*, 67 Cal. Rptr. 2d 850 Cal.
    App. 4th 44 (1997) ............................................................................................................ 7

*Winet v. Price*, 4 Cal. App. 4th 1159 (Cal. Ct. App. 1992) ............................................................ 7

Statutes

Cal. Civ. Code §1641 (2007) ........................................................................................................ 10

1.

This is Linear Technology Corporation's ("Linear") reply brief in support of its Motion

for Summary Judgment on Contract Interpretation and Breach of Contract (the "Motion"). (D.I.

107.)[1] Linear is entitled to summary judgment because         REDACTED

Linear also should be granted summary judgment on the issue of contract

interpretation because Monolithic not only agreed in Section 3.3 of the Settlement Agreement

REDACTED

ARGUMENT

A.      THE MP1543 HAS THE ZX CIRCUITRY IDENTIFIED BY
        COUNSEL FOR LINEAR

The MP1556, which was one of the products at issue in the ITC Proceeding, had a

REDACTED                               that was identified by counsel for Linear in the

ITC proceeding.  Indeed,                          REDACTED

REDACTED

REDACTED              The product at issue in this action — the MP1543 — also has a

REDACTED

REDACTED

REDACTED

---

[1] Many of Monolithic's arguments in its Opposition are repetitive of arguments it raised in its opening brief in support of its motion for summary judgment (D.I. 106) and have been addressed in Linear's Opposition to that motion (D.I. 121).  Linear's arguments in opposition to those points are incorporated herein.

2.

(D.I. 109, Ex. 12.)  It is also confirmed by the report of Monolithic's expert, Dr. Thomas

Szepesi, who acknowledges that                    REDACTED

                              (Declaration of Karen Jacobs Louden in Support of Linear

Technology Corporation's Reply Brief in Support of Its Motion for Summary Judgment on

Contract Interpretation and Breach of Contract ("Louden Decl."), Ex. 19, Szepesi Answering

Report at 85).  The corresponding       REDACTED       in the MP1543 is shown in the

claim charts in this action and in the expert report of Mr. Blauschild.  (D.I. 109, Ex. 13.)
                              REDACTED


                                                            Nor has it disputed

that the MP1543 also                    REDACTED

        Monolithic's expert also has conceded            REDACTED



        Louden Decl., Ex. 20, Szepesi Dep. at 175-78.

        Thus, Linear has offered sufficient and undisputed proof that the MP1543 has the ZX

circuitry identified by counsel for Linear in the ITC proceeding, as that term is used in the

Settlement Agreement, and that the ZX circuitry causes the MP1543       REDACTED

        "[2]

---

[2]  Monolithic incorrectly asserts that it is entitled to summary judgment because Linear did not
ask its technical expert to opine on the meaning of the contractual term "ZX circuitry identified
by counsel in the ITC proceeding."  D.I. 120 at 2, 8-10.  But Linear's technical expert, Mr.
Blauschild, is not an expert on contract interpretation, which is a matter for the Court.  Mr.
Blauschild has identified the circuitry of the MP1543 including       REDACTED
                                              D.I. 109, Ex. 13, Blauschild
Report at 35-36, 48-49.  Mr. Blauschild also submitted his report from the ITC Investigation in
which he identified            REDACTED
                                              D.I. 109, Ex. 12, Report of Blauschild in
the ITC Proceeding at 45-46, 58, 78.

3.

Tellingly, Monolithic has never identified for this Court what it believes constitutes the

"ZX circuitry identified by counsel for the ITC Proceeding," as that phrase is used in the

Settlement Agreement.                                        REDACTED



But that cannot be the case because other products that Monolithic admits

contain the ZX circuitry identified by counsel for Linear in the ITC proceeding have,    REDACTED

REDACTED

REDACTED        Specifically, Section 3.3 of the Settlement Agreement reads:

REDACTED

D.I. 109, Ex. 3 (Settlement Agreement) at § 3.3 (emphasis added).     REDACTED

REDACTED

. Monolithic's expert (relying on the

testimony of Monolithic's Rule 30(b)(6) witness, David Meng) admitted as much when he stated

in his answering report                        REDACTED

---

[3] The "Asserted Claims" are defined in Section 1.3 to be claims      REDACTED
                                        D.I. 109, Ex. 3 (Settlement Agreement)
at   1.3.

4.

REDACTED

Louden Decl., Ex. 19, Szepesi Answering Report at 86.

In fact, if the true test for "ZX circuitry" were whether a product contains the *exact* same

arrangement                 REDACTED                 , then it would not have been

necessary for Monolithic to further resort to the fact                 REDACTED

REDACTED                 to take that part outside the scope of the Settlement Agreement.     REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED     . As Monolithic's expert and its employee, Mr. Meng, have admitted, the

REDACTED
REDACTED

REDACTED                                     . It still,

however, contains the ZX circuitry identified by counsel in the ITC proceeding.

---

[4]  Moreover, the implications from other provisions in the Settlement Agreement also make clear
that phrase ZX circuitry cannot be limited to the MP1556 product itself.     REDACTED
REDACTED

5.

B.     MONOLITHIC    AGREED    THAT    IT    WOULD     REDACTED
REDACTED

Summary judgment also should be granted in Linear's favor on the interpretation of the

phrase "otherwise practice the Asserted Claims" in Section 3.3 of the Settlement Agreement.

Monolithic agreed therein not only that it would                REDACTED

REDACTED

Monolithic's main argument in its Opposition appears to be based on the erroneous

conclusion that Linear's proposed construction would render other portions of Section 3.3

superfluous.  The opposite is true.  As Linear explained in detail in its Opposition to

Monolithic's motion (D.I. 121),                REDACTED

REDACTED

Monolithic's promise                REDACTED

REDACTED

REDACTED                Monolithic's argument that Linear could have simply prohibited

Monolithic from infringing ignores the context of the litigation and that the Settlement

Agreement was drafted on the eve of trial.  It made perfect sense for the parties to call out the

specific activities accused of infringement for avoidance of doubt in addition to prohibiting other

activities that would infringe the Asserted Claims.

On the other hand, because all of the Asserted Claims are either sleep mode claims or

reverse polarity protection claims, Monolithic's interpretation of the language                REDACTED

REDACTED                would add _**nothing**_ to Section 3.3, thus rendering that language

superfluous.  If a                REDACTED

6.

REDACTED

Linear's interpretation is the only interpretation that gives meaning to all of the terms of Section 3.3 and is consistent with the intent and understanding of the parties.

REDACTED

Monolithic now incorrectly calls Linear's reason for adding     REDACTED

to this provision "novel" and "illogical."  It is neither.  It is not novel because, as Mr. Neely's handwritten notes show, Linear made it clear on September 26, when Mr.

REDACTED

England added

REDACTED

Linear's reason also is not "illogical" because

adding     REDACTED     satisfied Linear's stated intent that the

REDACTED

Settlement Agreement include Monolithic's promise

Monolithic also incorrectly argues that "[i]f Linear really did not understand the term 'ZX circuitry identified by counsel in the ITC proceeding' or thought that term was unworkable . . . it had an obligation to inform MPS of that and see if the parties could reach a different agreement." D.I. 120 at 3.  Monolithic misses the point.  That Mr. England and other Linear

7.

employees did not have access to the ZX circuitry identified by counsel demonstrates that

Monolithic's attempt to limit Section            REDACTED            must not be

correct because it would not make sense for Linear to agree to a provision of unknown scope.  In

contrast, Linear's interpretation takes into account that Linear did not know the configuration of

the accused products.  It is for this reason that Mr. England told Monolithic            REDACTED

                                                REDACTED


            REDACTED            See D.I. 109, Ex. 4, England Dep. at 131:5-21 and Ex. 7,

9/26/05 Draft Settlement Agreement at § 3.3.

    Finally, Monolithic asks the Court to ignore all of the evidence of the parties' intent

relating to Section 3.3, arguing the Court need not consider the circumstances surrounding the

agreement.  In doing so, Monolithic asserts that the contract must be ambiguous before parol

evidence can be accepted.  D.I. 120.  That is not the law.  As Linear explained in its Opening

Brief, "[i]n contrast to many other states, California has a liberal parol evidence rule:  It permits

consideration of extrinsic evidence to explain the meaning of the terms of a contract even when

the meaning appears unambiguous."  *Foad Consulting Group Inc. v. Musil Govan Azzalino*, 270

F.3d 821, 826 (9th Cir. 2001), *quoting City of Manhattan Beach v. Superior Court*, 13 Cal. 4th

232, 246 (Cal. 1996) ("The test of admissibility of extrinsic evidence to explain the meaning of a

written instrument is not whether it appears to the court to be plain and unambiguous on its face,

---

[5] Monolithic's reliance on *Shaw v. Regents of University of California,* 67 Cal. Rptr. 2d 850, 856, 58 Cal. App. 4th 44, 54-55 (1997) (D.I. 120 at 12) is misplaced because *Shaw* dealt with the issue of the unexpressed intent of one of the contracting parties.  Here, Monolithic's chief negotiator, Mr. Neely, admitted that Mr. England told Monolithic that Linear expected Monolithic to stop practicing the patents that were at suit in the ITC investigation and that Monolithic      REDACTED      D.I. 109, Ex. 1, Neely Dep. at 43:14-44:1.  For the same reason, Monolithic cannot properly rely on *Winet v. Price*, 4 Cal. App. 4th 1159 (Cal. Ct. App. 1992) (D.I. 120 at 16), which also dealt with the issue of unexpressed intent.

8.

but whether the offered evidence is relevant to prove a meaning to which the language of the

instrument is reasonably susceptible.")  Indeed, the cases cited in Monolithic's Opposition

acknowledge that, under California law, the Court should consider all circumstances in

interpreting a contract and that the parties' intent can be ascertained from "the circumstances

under which the agreement was made." *Cook Inc. v. Medtronic, Inc.*, 2006 U.S. Dist. LEXIS

47073 (N.D. Cal. 2006); *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442

P.2d 641, 644 (Cal. 1968) ("The test of admissibility of extrinsic evidence to explain the

meaning of a written instrument is not whether it appears to the court to be plain and

unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to

which the language of the instrument is reasonably susceptible.")

Further, although Monolithic argues that parol evidence cannot be relied upon to

contradict the plain meaning of an agreement, Linear seeks to do no such thing.  The parties'

intent, as reflected in their contemporaneous writings and testimony, is fully consistent with the

plain language of the Settlement Agreement as written.  That Monolithic seeks to introduce a

stilted interpretation that is contrary to the parties' intent does not make evidence of that intent

improper.

Further, although Monolithic asserts that evidence of the parties' intent should be ignored,

it also directs the Court to extrinsic evidence relating *not* to Section 3.3, but to other provisions

of the contract.  However, Monolithic's proffered evidence has no impact on the proper

interpretation of the promises Monolithic made in Section 3.3 of the Agreement.  The evidence

on which Monolithic relies in support of its position —          REDACTED

— did not relate to Section 3.3,

but rather to, *inter alia*, Monolithic's agreement in Section 6.1 of the Settlement Agreement to

9.

pay                                          REDACTED

That provision supports Linear's position, however.  The language of section 6.1 is

limited          REDACTED          Section 3.3 specifically goes beyond that.  Monolithic's

proffered extrinsic evidence demonstrates that Monolithic sought in Section 6.1 to limit the

REDACTED

But the promise          REDACTED          remains in

Section 3.3, and is consistent with the intent of the parties.  The difference in scope of these

provisions demonstrates that the promise          REDACTED

 

C.    MONOLITHIC    BREACHED    ITS          REDACTED
          REDACTED                                    _____

Summary judgment also should be granted in Linear's favor that Monolithic breached the

Settlement Agreement          REDACTED

Monolithic does not dispute that it waived its right          REDACTED

Monolithic instead attempts to declare that this action

does not constitute a proceeding to enforce the Settlement Agreement, and contends that the

MP1543 falls outside its scope.  D.I. 120 at 21-22.  But Monolithic confuses the issues.  Whether

Monolithic ultimately prevails in its position that the MP1543 is not covered by the Settlement

Agreement and that Monolithic is therefore not in violation of that Agreement has no bearing on

whether Linear has properly made out a claim for breach of contract in its Complaint.  In fact,

Monolithic admitted in its original Answer that Linear properly stated a claim for breach of

10.

contract in its Complaint, thus acknowledging that this present action is a suit to enforce the

Settlement Agreement.  (D.I. 9 ¶ 2).[6]

      Also, Monolithic does not even address Linear's position on the operative provision in

the Settlement Agreement, *i.e.*, that Monolithic                     REDACTED

REDACTED               D.I. 109, Ex. 3, Settlement Agreement at ¶ 2.5 (emphasis

added); D.I. 120 at 23-24.[7]  Instead, Monolithic expounds on the difference between invalidity

and enforceability challenges and warns against rewriting the language of a contract.  But Linear

neither seeks to equate invalidity and unenforceability nor to alter the parties' agreement.  Linear

simply submits that the phrase               REDACTED

      Monolithic also improperly states that the Settlement Agreement does not apply to the

three claims Linear asserts in this action that are not included in the definition of Asserted

Claims in section 1.3 of the Settlement Agreement.  D.I. 120 at 24.  These claims are claims 1, 3

and 34 of U.S. Pat. No. 6,580,258 (the "'258 patent"), which are specifically categorized as

"sleep mode" claims.[8]  Monolithic is wrong because it agreed to         REDACTED

---

[6] Monolithic attempted to retract the admissions it made in its original Answer by moving to amend.  D.I. 36.  Linear opposed that motion and explained in detail the admissions Monolithic made in that Answer, including Monolithic's admission that this is a suit to enforce the Settlement Agreement.  *See* D.I. 39 at 5-7.

[7] Monolithic argues that Linear relies on "mystical canons of contract interpretation."  D.I. 120 at 24.  The canon that every part of a contract should be given effect, as enunciated by Section 1641 of the California Civil Code, is hardly mystical, however.  Indeed, Monolithic repeatedly relies on this canon throughout its Opposition.  *See id.* at 4, 13, 23.

[8] Although Monolithic's expert in the ITC proceeding, Dr. Steven Leeb, took issue with Linear's reference to one group of claims as the "sleep mode" claims, he divided the claims into what he called the "two transistors off" claims and the "reverse current prevention claims."  Dr. Leeb admitted that claims 1, 3 and 34 of the '258 patent are categorized as "two transistors off claims."  D.I. 121, Ex. 17, Leeb Opening Report in the ITC proceeding at 50-51.

11.

D.I. 109, Ex. 3, Settlement Agreement at § 3.3.  That promise is not limited to the Asserted

Claims.                                             REDACTED


                                                    this action is an action to enforce

the Settlement Agreement.  Moreover, even if claims 1, 3 and 34 of the '258 patent were not

within the scope of the Settlement Agreement, that would not negate the fact that Monolithic

*also* is                          REDACTED                          and this proceeding

is one to enforce Monolithic's agreement not to do so.

                        REDACTED

12.

<u>CONCLUSION</u>

For the foregoing reasons and those set forth in Linear's opening brief in support of its

motion (D.I. 108) and in its opposition to Monolithic's motion (D.I. 121), Linear respectfully

requests that summary judgment be granted for Linear that: (1) Monolithic has breached its

promise      REDACTED      ; (2) if Linear proves that Monolithic otherwise practices the

Asserted Claims, it will have proved that Monolithic breached its promise      REDACTED

(3) Monolithic has breached its promise                REDACTED


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*

_____
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

*Attorneys for Plaintiff*
*Linear Technology Corporation*

OF COUNSEL:

Raphael V. Lupo
Joel M. Freed
Ronald J. Pabis
Jimmy Shin
Matthew G. Cunningham
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, DC  20005
(202) 756-8000

December 21, 2007
1345785

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that on December 28, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horwitz
> POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on December 28, 2007 upon the following in the manner indicated:

<u>**BY HAND & EMAIL**</u>

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899

<u>**BY EMAIL**</u>

Dean G. Dunlavey
Mark A. Flagel
Robert Steinberg
Sean Pak
Latham & Watkins LLP
633 West Fifth Street, Ste. 400
Los Angeles, CA  90017

Mark Kachner
Latham & Watkins LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA  92626-1925

David McKone
Latham & Watkins
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago IL 60606

*/s/ Karen Jacobs Louden*
_____
klouden@mnat.com (#2881)