## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINEAR TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 06-476 (GMS) |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MONOLITHIC POWER SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MONOLITHIC POWER SYSTEMS' MOTION IN LIMINE NO. 5 TO PRECLUDE LINEAR TECHNOLOGY FROM PRESENTING HEARSAY EVIDENCE TO THE JURY, INCLUDING ANY EVIDENCE CONCERNING EITHER (1) THE ITC PROCEEDING INVOLVING AATI OR (2) THE IMPALA LITIGATION

OF COUNSEL:

Dean G. Dunlavey
Mark D. Kachner
LATHAM & WATKINS LLP
Costa Mesa, CA 92626-1925

Mark A. Flagel
Robert Steinberg
Sean S. Pak
LATHAM & WATKINS LLP
Los Angeles, CA 90071-2007

David McKone
LATHAM & WATKINS LLP
Chicago, IL 60606

Claude M. Stern
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
Redwood Shores, CA 94065

Richard I. Werder, Jr.
Eric Huang
Carlos A. Rodriguez
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
New York, NY 10010

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19889-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Monolithic Power Systems, Inc.*

OF COUNSEL:

Bruce Zisser
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
Los Angeles, CA 90017

Alison E. Monahan
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
San Francisco, CA 94111

MPS moves *in limine* to preclude Linear from presenting hearsay evidence to the jury, including any evidence concerning two cases in which MPS had no involvement – the *Impala* litigation and the *AATI* litigation. The *Impala* and *AATI* cases involved different products, different defendants and different witnesses. Neither reached a final judicial determination – the *Impala* case settled and the *AATI* case currently is on appeal to the Federal Circuit. It would be extremely prejudicial to MPS to allow Linear to introduce evidence about the prior cases – cases in which it had no opportunity to present evidence, question witnesses, or make arguments. Furthermore, such evidence would only serve to confuse the jury and waste time, as there would be no effective way for the parties to explain the context and the significance of these cases. This would add to jury confusion and place a heavy burden on the Court to interpret the significance of the various evidence and rulings.

## I.    INTRODUCTION

In 1997, Linear filed a lawsuit against several defendants (not including MPS) in *Linear Technology Corp. v. Impala Linear Corp., et al.,* No. C 98-1727 (N. D. Cal.) (*Impala* case). The *Impala* case alleged that the defendants, including Maxim, infringed various claims of the '178 patent, one of the two patents at issue in this case. The defendants responded and counterclaimed that the '178 patent was invalid, unenforceable, and not infringed. Nearly eight years of litigation ensued, including the issuance of two claim construction orders and an appeal to the Federal Circuit. All parties to the *Impala* case resolved their disputes without proceeding to trial or a final judicial determination of validity, infringement or inequitable conduct.

In 2006, Linear initiated an investigation in the International Trade Commission against a company called Advanced Analogic Technologies, Inc. (AATI), captioned *In the Matter of Certain Voltage Regulators, Components Thereof and Products Containing Same*, 337-TA-564

(*AATI* case) that dealt with the '258 patent and another patent that is not at issue in this case. The ALJ found that the accused AATI products did not infringe Linear's asserted claims and found one of the claims to be invalid. The ITC Commission upheld the invalidity finding but reversed the finding of non-infringement as to certain claims. The *AATI* case currently is on appeal to the Federal Circuit. Thus, there has been no final judicial determination of validity, infringement or inequitable conduct in that case.

In this case, it appears that Linear intends to seek the introduction of evidence concerning the *Impala* and *AATI* cases. Among the more than **2,200** documents on the "exhibit list" that Linear submitted in its draft of the Pretrial Order, there are documents from the *Impala* case, including expert reports, settlement agreements and press releases. The Court should preclude Linear from overwhelming and confusing the jury with this extraneous material and exclude such hearsay.

## II.    EVIDENCE CONCERNING THE *IMPALA* AND *AATI* CASES IS INADMISSIBLE HEARSAY

To the extent that Linear intends to introduce statements made by various individuals in the *Impala* and *AATI* cases, such statements are inadmissible hearsay. Linear would be attempting to rely upon those out of court statements for the truth of the matters they assert. *See* FED. R. EVID. 801, 802.

In the event that Linear attempts to argue that these statements are subject to the exceptions for "unavailable" witnesses outlined in Federal Rule of Evidence 804, such an argument would be without merit. As a threshold matter, those statements not appearing in depositions or trial transcripts do not meet the further requirements of Rule 804(b), *i.e.,* these statements are not former testimony, statements made under belief of impending death, statements against interest, or statements of personal or family history. These statements also do

not fit into any other hearsay exception.

Furthermore, these witnesses are not considered "unavailable" for the purposes of Rule 804 because any "unavailability" was procured by Linear because it did not list any of them on its Rule 26(a)(1) disclosure. FED. R. EVID. 804(a) ("A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying."). *See* Linear's Jan. 12, 2007 Initial Disclosures (Ex. 1). Linear cannot withhold its intention to rely upon out-of-court statements until after the close of fact discovery and then claim the statements are admissible, in part, because the witnesses are unavailable.

It should be noted that MPS was not a party to either the *Impala* or the *AATI* case and thus did not have either notice of, or opportunity to participate in, the depositions, discovery, and briefing in those cases. "Whether a deposition may be used at trial is governed by [Federal Rule of Civil Procedure] Rule 32(a)." *Flores v. NJ Transit Rail Operations, Inc.*, 1998 WL 1107871, at * 2 (D.N.J. Nov. 2, 1998). "The party seeking to admit a deposition at trial must prove that the requirements of Rule 32(a) have been met." *Allgeier v. U.S.*, 909 F.2d 869, 876 (6th Cir. 1990); *accord Jauch v. Corley*, 830 F.2d 47, 50 (5th Cir. 1987); *Rascon v. Hardiman*, 803 F.2d 269, 277 (7th Cir. 1986).

In particular, Rule 32(a) requires that

(1) In General. At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

(A) *the party was present or represented at the taking of the deposition or had reasonable notice of it*;

(B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; *and*

(C) the use is allowed by Rule 32(a)(2) through (8).

FED. R. CIV. P. 32(a)(1) (emphasis added). *Accord Cardinal Fastener & Specialty Co., Inc. v.*

*Progress Bank*, 67 Fed. Appx. 343, 346 (6th Cir. June 12, 2003) (unpublished):

> According to the language of the rule, however, such deposition may only be used
> "against any party *who was present or represented at the taking of the deposition
> or who had reasonable notice thereof*...." (Emphasis added.)  Because these
> preconditions were not satisfied in this instance, for reasons for which the plaintiff
> bears the primary responsibility, we conclude that the district court did not abuse
> its discretion in ruling that the testimony was inadmissible.

Since MPS was not present or represented at the taking of the depositions in the *Impala*

and *AATI* cases, Linear cannot make the threshold showing necessary to introduce the testimony

in any of the depositions.[1]  Furthermore, to the extent that Linear tries to rely on Rule 32(a)(4) as

its basis for attempting to introduce these depositions, these witnesses were not "unavailable"

because, as explained above, Linear procured their unavailability.  *See* FED. R. CIV. P.

32(a)(4)(B).

Similarly, any snippets taken from a party's brief or from a decision are also inadmissible

hearsay, as each of these statements occurred out of this court and would be offered by Linear for

the truth of the matters asserted.  No hearsay exception applies.  To the extent that Linear

attempts to rely upon the hearsay exception in Federal Rule of Evidence 803(8)(C) (records of

agencies setting forth factual findings resulting from an investigation made pursuant to authority

granted by law), these statements are more prejudicial than probative, and should be excluded

under Federal Rule of Evidence 403.  Furthermore, the ITC's decision in the *AATI* case is

currently on appeal and does not constitute a final judicial determination as to anything.

The Third Circuit has held that trial courts have discretion to exclude hearsay subject to

Rule 803(8)(C) based on Rule 403.  *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1345 (3d

---

[1] In contrast, MPS (should it wish to do so) is entitled to introduce deposition testimony from the
*Impala* and *AATI* cases, both because Linear was present and represented at each of these
depositions and because admissions against interest are not hearsay.  *See* FED. R. EVID.
804(b)(1), 804(b)(3).

Cir. 2002). In the *Coleman* case, the Third Circuit affirmed the District Court's exclusion of an

EEOC report because "that proof value could be said to be low, given the fact that it would have

been introduced to the jury after all the evidence had been offered (which evidence was at odds

with the EEOC report), and was more conclusory than factual in nature. . . . Further its value is

not increased based on the agency's expertise, as the District Court seemed to think, because it is

not an 'expert report.'" *Id.*; *see also Marin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1357-58 (4th

Cir. 1995):

> The district court held that the [Virginia Employment Commission] report was
> inadmissible because of the prejudicial effect such an official report might have
> on the jury and because of the availability of the parties to the report to testify at
> trial. . . . In light of the potential for undue prejudice, the district court's
> exclusion of the report did not constitute an abuse of discretion. *See* FED. R. EVID.
> 403.

Similarly, in upholding the district court's decision to exclude an Army investigative officer's

factual findings and conclusions, the Fourth Circuit reasoned that "to the extent that [prior

agency decisions] contain credibility determinations, they tend to undermine the exclusive

province of the jury." *U.S. v. MacDonald*, 688 F.2d 224, 230 (4th Cir. 1982).

## III.    EVIDENCE CONCERNING THE *IMPALA* AND *AATI* CASES SHOULD BE EXCLUDED UNDER FEDERAL RULES OF EVIDENCE 403

It would be extremely prejudicial to MPS, and confusing to the jury, to allow Linear to

introduce evidence about the prior cases. There would be no effective way for the parties or the

Court to explain the context and the significance of these cases. It will be enough of a challenge

to educate the jury as to the facts relevant to the accused MP1543, much less try to explain the

context of the other cases. Accordingly, the Court should preclude Linear and its expert from

mentioning or discussing these prior cases under Rule 403.

## IV.    CONCLUSION

For the foregoing reasons, MPS respectfully requests that the Court grant this motion.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Dean G. Dunlavey
Mark D. Kachner
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel: (714) 540-1235

By:    /s/ Richard L. Horwitz
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 North Market Street
      Wilmington, Delaware 19889-0951
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

Mark A. Flagel
Robert Steinberg
Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Tel: (213) 485-1234

*Attorneys for Defendant*
*Monolithic Power Systems, Inc.*

David McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Tel: (312) 777-7316

OF COUNSEL:

Bruce Zisser
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3100

Claude M. Stern
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Dr., Suite 560
Redwood Shores, CA 94065
Tel: (650) 801-5000

Alison E. Monahan
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600

Richard I. Werder, Jr.
Eric Huang
Carlos A. Rodriguez
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000

Dated: April 11, 2008
859958 / 30611

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 11, 2008, a true and correct copy of

the within document was caused to be served on the attorney(s) of record at the following

addresses as indicated:

## VIA ELECTRONIC MAIL

Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell, LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
klouden@mnat.com

Raphael V. Lupo
Mark G. Davis
Ronald J. Pabis
Stephen K. Shahida
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
rlupo@mwe.com
madavis@mwe.com
rpabis@mwe.com
sshahida@mwe.com

Jimmy Shin
McDermott Will & Emery LLP
3150 Porter Dr.
Palo Alto, CA 94304-1212
jshin@mwe.com

_/s/ Richard L. Horwitz_
Richard L. Horwitz

769541 / 30611

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINEAR TECHNOLOGY CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-476 (GMS) |
| | ) | |
| MONOLITHIC POWER SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## INITIAL DISCLOSURES OF PLAINTIFF LINEAR TECHNOLOGY CORPORATION

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, plaintiff Linear Technology Corporation ("Linear") submits the following Initial Disclosures to defendant Monolithic Power Systems, Inc. ("Monolithic").

These Initial Disclosures are based on information now reasonably available to Linear, and represent a good faith effort to identify information Linear reasonably believes to be required by Rule 26(a)(1). Linear reserves the right to supplement or amend these disclosures based on its continuing investigation and discovery.

In making these Initial Disclosures, Linear does not waive its right to object: (1) to the production of any document or tangible thing disclosed on the basis of attorney-client privilege, work product immunity, relevance, competence, materiality, hearsay, undue burden, or any other proper ground for objection; (2) to the use of any such information, for any purpose, in whole or in part, in any proceeding in this action or in any other action; or (3) on any and all grounds, at any time, to any other discovery request relating to the subject matter of these disclosures in any proceeding in this action or in any other action.

Linear and Monolithic were previously parties to an investigation of Monolithic under 19

U.S.C. § 1337 before the International Trade Commission, Inv. No. 337-TA-521 ("ITC Investigation") involving U.S. Patent Nos. 5,481,178 and 6,580,258 B2 ("Linear Patents"). In that proceeding, the parties took substantial discovery on issues relevant to the current action, including discovery regarding Monolithic's research and development of its products; Linear's research and development, inventorship, and conception/reduction to practice of the inventions disclosed and claimed in the Linear Patents; and Monolithic's claims of invalidity and unenforceability with respect to those patents. The parties have agreed that the discovery from the ITC Investigation, to the extent otherwise admissible, may be used as if such discovery was taken in this action.

Linear and Monolithic entered into a settlement agreement to terminate the ITC Investigation ("Settlement Agreement"). The plain terms of the Settlement Agreement preclude Monolithic from challenging or otherwise contesting the validity or enforceability of the Linear Patents in any proceeding to enforce the Agreement. Nonetheless, in response to Linear's complaint, Monolithic has raised affirmative defenses of invalidity and unenforceability. Linear has filed a motion to strike those defenses or, in the alternative, enter judgment on the pleadings with respect to those defenses. *See* Motion to Strike Defendant's Affirmative Defenses of Invalidity and Unenforceability Under Fed. R. Civ. P. 12(f) or, in the Alternative, for Judgment on the Pleadings Under Fed. R. Civ. P. 12(c) (the "Motion to Strike," D.I. 11). Linear's Motion to Strike is still pending. Linear provides information herein concerning the issues of validity and enforceability of the Linear Patents in accordance with Rule 26(a)(1), without prejudice to its Motion to Strike.

In these Initial Disclosures, "Monolithic Products" shall mean the MP1543 voltage regulator circuit and/or all switching voltage regulator circuits with at least two switching

- 2 -

transistors, components thereof, and/or products containing same including all step-up and step-down converters designed by, made by, used by, developed by, researched by, tested by, sold or offered for sale by, manufactured by or manufactured at the direction of Monolithic since October 1, 2005.

## A.    Persons With Knowledge Of Discoverable Information

Based on Linear's current information, the individuals named below may have discoverable factual information that may be used to support Linear's claims in this action. Individuals who are described below as "Linear" or "Linear (retired)" or "former Linear employee" are current or former Linear directors, officers or employees. They can be contacted through counsel of record for Linear in this action.

Linear does not consent or authorize Monolithic or its counsel to communicate with any of Linear's current or former directors, officers or employees. Any such individual should be contacted only through Linear's counsel in this action.

Linear does not waive its right to object, under the applicable Federal or Local Rules, to discovery of information from any of the individuals identified below, including by deposition, based on the attorney-client privilege, work product immunity, or both.

1.    Robert C. Dobkin
       Vice President, Chief Technical Officer
       Linear
       (Linear Patents, Monolithic Products, State of the Art)

2.    Randy G. Flatness
       Senior Design Engineer
       Linear
       (Linear Patents, Monolithic Products, State of the Art)

3.    David Bell
       President
       Linear
       (Linear Technology, Settlement Agreement)

4.    Paul Coghlan
      Vice President, Finance and Chief Financial Officer
      Linear
      (Damages, Settlement Agreement)

5.    Sue Kasnick
      Finance
      Linear
      (Damages)

6.    John England
      General Counsel
      Linear
      (Settlement Agreement)

7.    Lothar Maier
      Chief Executive Officer
      Linear
      (Settlement Agreement)

8.    Mark Rowland Esq.
      Ropes & Gray
      (Prosecution of Linear Patents)

9.    Tony Armstrong
      Power Products Marketing Manager
      Linear
      (Damages)

10.   Rick Neely
      Chief Financial Officer
      Monolithic
      (Settlement Agreement)

11.   Jeffrey Tatum
      General Counsel
      Monolithic
      (Settlement Agreement)

Linear also expects that current or former employees, agents, or consultants of Monolithic likely have information relevant to Linear's claims in this action. Linear believes these individuals include those with knowledge about: (1) the design, development, and testing

of Monolithic Products; (2) the operation and functionality of Monolithic Products; (3) the manufacture, assembly, and distribution of Monolithic Products; (4) the marketing, advertising, and sales of Monolithic Products; (5) when Monolithic first became aware of the Linear Patents; (6) any analysis of the Linear Patents; (7) any decision to engage in any activity alleged to be infringing while aware of the Linear Patents; (8) the negotiation of the Settlement Agreement; (9) any analysis of the Settlement Agreement; (10) any decision to engage in any activity alleged to constitute a breach of the Settlement Agreement; (11) any effort to redesign any Monolithic Products; (12) Monolithic's financial information, including without limitation, sales, revenues, costs, overhead, profits (gross and net), royalties, accounting and financial systems, business planning and analysis, and promotion, marketing, and development cost; and (13) communications with customers regarding the Monolithic Products.

**B.    Relevant Documents**

As explained above, the parties have agreed that the discovery obtained in the ITC Investigation, to the extent otherwise admissible, may be used as if such discovery was taken in this action.    Linear also describes below additional categories of documents it has in its possession, custody, or control that it currently believes it may use to support its claims in this action.    Unless otherwise specified, all such documents are located at the offices of Linear or at the offices of Linear's counsel, McDermott, Will & Emery LLP, 600 13th Street, N.W., Washington, D.C. 20005.

1.    Documents relating to the Linear Patents

2.    Documents relating to the Settlement Agreement

3.    Documents relating to Monolithic Products

4.    Documents relating to Linear's claim for damages, including documents sufficient

to show total sales and profit margins of Linear's products that practice the claimed inventions of the Linear Patents.

**C.    Computation of Damages**

Linear seeks all damages to which it is entitled under the Patent Laws for Monolithic's infringement. Specifically, Linear seeks no less than a reasonable royalty on all Monolithic sales of products that infringe the Linear Patents. Linear also requests a trebling of any damages award under 35 U.S.C. § 284 for Monolithic's willful infringement of the Linear Patents, as well as attorneys' fees and costs under 35 U.S.C. § 285.

In addition, Linear seeks all damages to which it is entitled for Monolithic's breach of the Settlement Agreement, including liquidated damages, royalties, and attorneys' fees.

**D.    Insurance Agreements**

Based on current information, Linear is not aware of any insurance agreement under which "any person carrying on an insurance business may be liable to satisfy part or all of [the] judgment that may be entered in [this] action or indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(D).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff*
*Linear Technology Corporation*

- 6 -

OF COUNSEL:

Raphael V. Lupo
Joel M. Freed
Mark G. Davis
Ronald J. Pabis
Stephen K. Shahida
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, DC 20005
(202) 756-8000

667344.1

- 7 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing were caused to be served on January 12, 2007 upon the following individuals in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

### BY E-MAIL

Dean G. Dunlavey
Mark A. Flagel
Robert Steinberg
Rosslyn Stevens Hummer
Latham & Watkins
633 West Fifth Street, Ste. 400
Los Angeles, CA 90017

Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com