IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINEAR TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 06-476 (GMS) |
| v. | ) ) | |
| MONOLITHIC POWER SYSTEMS, INC., | ) ) | |
| Defendant. | ) | |

## JOINT PROPOSED
## PRELIMINARY JURY INSTRUCTIONS

### INTRODUCTION [AGREED]

Members of the jury:  Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

These instructions will give you some general rules and guidance that might apply to any civil case.  However, because this is also a patent trial which will deal with subject matter that is not within the every day experience of most of us, I will also give you some additional preliminary instructions regarding patents to assist you in discharging your duties as jurors.

### THE PARTIES AND THEIR CONTENTIONS [LINEAR]

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for breach of contract and patent infringement.

The parties in this case are the plaintiff, Linear Technology Corporation or "Linear," and the defendant, Monolithic Power Systems, Inc. or "MPS."

In this case, plaintiff Linear alleges that MPS has breached an agreement between the parties not to sell certain voltage regulator circuits which are used in laptop or notebook computers, cell phones and other battery-operated electronic devices to save power.  Linear seeks damages from MPS for that breach.  MPS denies that it has breached the agreement.

Linear also alleges that MPS has infringed its patents as a result of its manufacture and sale of these voltage regulator circuits.  During the trial, the parties will offer testimony to familiarize you with this technology.

Linear owns two United States Patents that it alleges MPS infringes: Patent Nos. 5,481,178 and 6,580,258.  Because these numbers are so long, patents are usually referred to by their last three digits.  For example, Patent No. 5,481,178 is called simply "the '178 patent" and Patent No. 6,580,258 is called "the '258 patent."  Linear contends that MPS makes, uses, sells, and offers for sale voltage regulator circuits that infringe these patents and that such infringement is willful.

Linear does not contend that all of the claims of each patent are infringed by MPS.  Instead, Linear asserts that only certain claims are infringed.  They may be called "asserted claims."  Linear contends that one of MPS's voltage regulator circuit products infringes these claims.  I, and the attorneys and witnesses, may refer to it as an "accused product."  An "accused product" simply refers to a product that Linear asserts infringes its patents.  You, of course, will determine whether each accused product infringes the asserted claims of any of Linear's patents.

Persons or companies sued for allegedly infringing a patent can deny infringement.  [**They can also defend a charge of infringement by proving the patent is**

invalid.][1]  In this case, MPS denies that it infringes Linear's patents **[and asserts what are called affirmative defenses to the charges of infringement]**.  I will tell you more about infringement in a few minutes.  I will instruct you as to defenses to a charge of infringement in my instructions to you at the close of the evidence.

## MPS'S OBJECTIONS TO LINEAR'S PROPOSED PARTIES AND THEIR CONTENTIONS

MPS objects to the instructions referring to MPS's alleged infringement in the present tense.  MPS has never manufactured, and no longer sells, the accused MP1543 product.  Thus referring to alleged infringement in the present tense would be misleading to the jury.

MPS objects to Linear's inclusion of allegations that MPS's infringement was willful.  The issue of willfulness is not relevant to any issue in this case; it would only be relevant if there were a possibility that patent infringement damages could be enhanced.  There is no such possibility in this case.  The parties have stipulated to patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim.  D.I. 88.  Thus, Linear does not have an opportunity to claim enhanced damages.  Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS.  In addition, Linear brought this lawsuit without providing notice to MPS, MPS discontinued sales of the MP1543, and total net sales of the MP1543 in the United States totaled 110 parts and approximately $100.  Given this factual record, Linear had no basis for alleging willful infringement in the first place.

MPS objects to the omission of its affirmative defenses of unenforceability.

---

[1]    Linear includes the bracketed material only in the event that its motion to strike MPS's invalidity and unenforceability defenses is denied.

MPS objects to the omission of its affirmative defense of unclean hands and bad faith in bringing the breach of contract action for the sale of a product that Linear knew or should have know was not covered by the contract

## PARTIES AND THEIR CONTENTIONS [MPS]

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for breach of contract and patent infringement.

The parties in this case are the plaintiff, Linear Technology Corporation or "Linear," and the defendant, MPS Power Systems, Inc. or "MPS."

In this case, plaintiff Linear alleges that MPS has breached an agreement between the parties not to sell certain voltage regulator circuits which are used in laptop or notebook computers, cell phones and other battery-operated electronic devices to save power. Linear seeks damages from MPS for that breach. MPS denies that it has breached the agreement. MPS also claims that Linear has brought its breach of contract claim in bad faith by asserting it against a product that it knows or should know was not within the scope of the contract.

Linear also alleges that MPS has infringed its patents as a result of its manufacture and sale of these voltage regulator circuits. During the trial, the parties will offer testimony to familiarize you with this technology.

Linear owns two United States Patents that it alleges MPS infringes: Patent Nos. 5,481,178 and 6,580,258. Because these numbers are so long, patents are usually referred to by their last three digits. For example, Patent No. 5,481,178 is called simply "the '178 patent" and Patent No. 6,580,258 is called "the '258 patent." Linear contends that MPS made, used, sold, or offered for sale voltage regulator circuits that infringe these patents.

Linear does not contend that all of the claims of each patent were infringed by MPS. Instead, Linear asserts that only certain claims were infringed. They may be called "asserted claims." Linear contends that one of MPS's voltage regulator circuit products infringed these claims. I, and the attorneys and witnesses, may refer to it as an "accused product." An "accused product" simply refers to a product that Linear asserts infringes its patents. You, of course, will determine whether the accused product infringed the asserted claims of any of Linear's patents.

Persons or companies sued for allegedly infringing a patent can deny infringement. They can also defend a charge of infringement by proving the patent is invalid and unenforceable. In this case, MPS denies that it infringed Linear's patents and asserts what are called affirmative defenses to the charges of infringement. I will tell you more about infringement in a few minutes. I will instruct you as to defenses to a charge of infringement in my instructions to you at the close of the evidence.

## LINEAR'S OBJECTIONS TO MPS'S PROPOSED PARTIES AND THEIR CONTENTIONS

Linear objects to MPS's proposed instruction on the Parties and Their Contentions to the extent it seeks to include the issue of bad faith. First, there is no provision for such relief in the Settlement Agreement. Second, even if there were such a claim, it would not be a matter for the jury to decide.

Linear also objects to MPS's instruction to the extent it excludes Linear's claim for willful infringement. That Monolithic may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim.

Linear further objects to MPS's instruction to the extent it includes references to MPS's defenses of invalidity and unenforceability, because it contractually agreed it would not assert them, and because inequitable conduct is a matter for the Court, not the jury.

Finally, Linear objects to MPS's attempts to change the Court's standard instructions to characterize its infringement in the past tense. That is a matter more appropriately treated by the parties during their case presentations. MPS should not be permitted to provide a one-sided characterization of that matter in the preliminary instructions.

## DUTIES OF THE JURY [AGREED]

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply to those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**EVIDENCE [AGREED]**

The evidence from which you will find the facts will consist of the testimony of witnesses; (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the Court – you may not ask questions).  Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you.  I will list them for you now:

1. Statements, arguments, and questions by lawyers are not evidence.

2. Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3. Testimony that the Court has excluded or told you to disregard is not evidence and must not be considered.

4. Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

## CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY [AGREED]

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.  This instruction applies to the testimony of all witnesses, including expert witnesses.

## BURDEN OF PROOF [LINEAR]

This is a civil case.  Here the plaintiff Linear has the burden of proving its claim of breach of contract by what is called a preponderance of the evidence.  That means that Linear has to produce evidence which, considered in the light of all the facts, leads you to believe that what Linear claims is more likely true than not.  To put it differently, if you were to put Linear's and MPS's evidence on opposite sides of a scale, the evidence supporting Linear would have to make the scale tip somewhat on its side.  If Linear fails to meet this burden, the verdict on the breach of contract claim must be for MPS.  Linear must also prove its damages by a preponderance of the evidence.

As I have already told you, in this case, Linear is also the owner of two patents which it contends MPS infringes.  Linear also has the burden of proving infringement by a preponderance of the evidence.

In this case, Linear also contends that MPS willfully infringed the patents in suit. Linear must prove willful infringement by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

**[MPS also asserts in this case that Linear's patents are invalid. Linear asserts that MPS agreed in a Settlement Agreement not to challenge the validity of its patents.  In any event, a patent is presumed to be valid.  Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid.][2]**

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

## MPS'S OBJECTIONS TO LINEAR'S PROPOSED BURDEN OF PROOF

MPS objects to Linear's inclusion of its assertion that MPS agreed in the Settlement Agreement not to challenge the validity of its patents.  This is an issue for the Court to decide, and is subject of Linear's motion to dismiss.  Moreover, Linear's assertion is a misrepresentation of the Settlement Agreement for the reasons set forth in MPS's response to

---

[2]    Linear includes the bracketed material only in the event that its motion to strike MPS's invalidity and unenforceability defenses is denied.

Linear's motion to dismiss.  Accordingly, including Linear's assertion in the jury instructions would confuse the jury and prejudice MPS.

MPS objects to Linear's omission of the burden of proof for inequitable conduct.

MPS objects to Linear's omission of MPS's affirmative defenses of patent misuse and unclean hands/bad faith in asserting the breach of contract claim against a product it knew or should know was not covered by the Settlement Agreement.

MPS objects to Linear's inclusion of allegations that MPS's infringement was willful.  The issue of willfulness is not relevant to any issue in this case; it would only be relevant if there were a possibility that patent infringement damages could be enhanced.  There is no such possibility in this case.  The parties have stipulated to patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim.  D.I. 88.  Thus, Linear does not have an opportunity to claim enhanced damages.  Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS.  In addition, Linear brought this lawsuit without providing notice to MPS, MPS discontinued sales of the MP1543, and total net sales of the MP1543 in the United States totaled 110 parts and approximately $100.  Given this factual record, Linear had no basis for alleging willful infringement in the first place.

MPS objects to Linear's statement concerning damages.  The parties have stipulated to nominal patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim.  The Court, not the jury, is to determine the enforceability of the $3 million liquidated damages clause in the Settlement Agreement.

**BURDEN OF PROOF [MPS]**

This is a civil case.  Here the plaintiff Linear has the burden of proving its claim of breach of contract by what is called a preponderance of the evidence.  That means that Linear

has to produce evidence which, considered in the light of all the facts, leads you to believe that what Linear claims is more likely true than not. To put it differently, if you were to put Linear's and MPS's evidence on opposite sides of a scale, the evidence supporting Linear would have to make the scale tip somewhat on its side. If Linear fails to meet this burden, the verdict on the breach of contract claim must be for MPS.

As I have already told you, in this case, Linear is also the owner of two patents which it contends MPS infringes. Linear also has the burden of proving infringement by a preponderance of the evidence.

In this case, MPS asserts that Linear's patents are invalid. A patent, however, is presumed to be valid. Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence. MPS also asserts that Linear's patents are unenforceable due to inequitable conduct performed by the applicants for patent before the United States Patent and Trademark Office. MPS has the burden of proving by clear and convincing evidence that the patents are unenforceable due to inequitable conduct. MPS also asserts that Linear is guilty of patent misuse for attempting to use its patents to restrict MPS's activities outside the United States. MPS has the burden of proving by a preponderance of the evidence that the patents are unenforceable due to patent misuse. MPS also asserts that Linear is guilty of unclean hands by attempting to enforce the contract against a product that it knows or should know is not covered by the contract. MPS has the burden of proving by a preponderance of the evidence that the contract is unenforceable due to unclean hands.

11

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

## LINEAR'S OBJECTIONS TO MPS'S PROPOSED BURDEN OF PROOF

Linear objects to MPS's proposed instruction on the Burden of Proof to the extent that it instructs the jury on issues of invalidity and unenforceability (including inequitable conduct, patent misuse and unclean hands/bad faith). First, MPS agreed in the Settlement Agreement to not contest the validity or enforceability of Linear's patents. Second, Linear objects to MPS's inclusion of its defenses of inequitable conduct, patent misuse and unclean hands in the jury instructions as these defenses are equitable in nature and are for the Court to decide, not the jury.

Finally, Linear objects to MPS's instruction to the extent it omits Linear's claim for willful infringement. That Monolithic may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim.

## GENERAL GUIDANCE REGARDING PATENTS[3]

I will now give you a general overview of what a patent is and how one is obtained.

---

[3] MPS requests that the Court play to the jury the Federal Judicial Center's "An Introduction to the Patent System." This video is 17 minutes long and provides a helpful background to the jury. If the Court shows this video to the jury, MPS believes that this section of the Preliminary Jury Instructions can be shortened.

Linear objects to MPS's proposal of playing the Federal Judicial Center video to the jury. The video takes unnecessary time and is not a good substitute for all or portions of the Preliminary Instructions. In addition, aspects of it may be misconstrued as being favorable to one party or the other. Moreover, it includes a section on validity of patents which, as described above, MPS has contractually agreed in the Settlement Agreement not to contest.

A.      **Constitutional Basis for Patent Grant**
        **[AGREED]**

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and the useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

B.      **Exclusionary Right and Term of a Patent**
        **[LINEAR]**

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents.  Once the "Patent Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States for the length of the patent term.  If the invention covered by the patent is a method, the patent law gives the patent owner the right to exclude others from using the method throughout the United States or making or selling throughout the United States any product made by the patented method anywhere in the world.

A person who, without the patent owner's authority makes, uses, sells, or offers to sell a product or employs a method that is covered by one or more claims of a valid patent, infringes the patent.  A person can also induce others to infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement.  This is called inducing infringement.  A party can also contribute to the infringement by others by selling non-staple articles with knowledge that they are especially made or adapted to infringe Linear's patents.  This is called contributory infringement.

**MPS'S OBJECTION TO LINEAR'S PROPOSED EXCLUSIONARY RIGHT AND TERM OF A PATENT**

MPS objects to Linear's deviation from the Court's sample Preliminary Jury Instructions.  Linear has added a statement regarding contributory infringement without making clear that indirect infringement cannot be proven without first proving direct infringement for each instance of alleged indirect infringement.  *DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1303 (Fed Cir 2006) ("In addition, the patentee always has the burden to show direct infringement for each instance of indirect infringement.").  This omission is likely to result in jury confusion and a misunderstanding of the law.

MPS objects to Linear's omission of the intent requirement in proving indirect infringement.  Specifically, the Federal Circuit has made clear that, to prove indirect infringement, Linear must show that MPS knew or should have known that the end users of the accused product would actually infringe the asserted claims:

> This section clarifies that intent requirement by holding en banc that, as was stated in *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 554 (Fed. Cir. 1990), "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements."  The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent.

*DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1304 (Fed Cir 2006) (en banc); *see also Golden Blount, Inc. v. Robert H. Peterson Co.,* 365 F.3d 1054, 1061 (To show contributory infringement, the patentee "must show that [the accused infringer] knew that the combination for which its components were especially made was both patented and infringing.").

## B.    Exclusionary Right And Term Of A Patent [MPS]

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents.  Once the "Patent Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale

the invention throughout the United States for the length of the patent term. If the invention covered by the patent is a method, the patent law gives the patent owner the right to exclude others from using the method throughout the United States.

A person who, without the patent owner's authority makes, uses, sells, or offers to sell a product or employs a method that is covered by one or more claims of a valid patent, infringes the patent. This is called direct infringement. A person can also induce others to infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement if the person knows or should have known that it would result in actual infringement. This is called inducing infringement. A party can also contribute to the infringement by others by selling non-staple articles with knowledge that they are especially made or adapted to infringe Linear's patents. This is called contributory infringement. In order to prove either induced infringement or contributory infringement, the patent owner must first prove direct infringement for each instance of induced or contributory infringement.

**LINEAR'S OBJECTIONS TO MPS'S PROPOSED INSTRUCTION ON EXCLUSIONARY RIGHT AND TERM OF A PATENT**

Linear objects to MPS's proposed instruction on Exclusionary Right and Term of a Patent because the purpose of the preliminary instructions is to provide a brief overview and not a full statement of the law, which will be provided in the Final Jury Instructions. Requiring an element by element recitation of the law of induced and contributory infringement would unduly complicate the preliminary instructions.

In particular, MPS seeks to add a statement that "[i]n order to prove either induced infringement or contributory infringement, the patent owner must first prove direct infringement for each instance of induced or contributory infringement." Not only is that statement misleading in its use of the phrase "each instance" and in failing to acknowledge that

proof by circumstantial evidence is satisfactory, the statement is made without reference to other aspects of direct infringement, inducement of infringement, or contributory infringement. MPS's attempt to focus on one element to the exclusion of others should be rejected for these Preliminary Instructions.

**The Parts Of A Patent [AGREED]**

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents. Many of the terms used by me in this description are contained in a "Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions. Feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent

laws.  The examiner reviews the prior work of others in the form of voluminous files of patents and publications.  This type of material is called "prior art."  Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application.  Documents found in the search of prior art are called "references."  In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched.  The compilation of the papers concerning the proceedings before the Patent Office is called the "prosecution history," "file wrapper," or "file history."  The PTO does not have its own laboratories or testing facilities.

The examiner may "reject" the application claims if he or she believes that they are applications for inventions that are not patentable in light of the prior art, or because the patent specification does not adequately describe the claimed inventions.  The applicant may then amend the claims to respond to the examiner's rejections.  If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

**Summary Of The Patent Issues [LINEAR]**

In this case, you must decide several things according to the instructions that I will give you at the end of the trial.  Those instructions will repeat this summary and will provide more detail.  One thing you will need not decide is the meaning of the patent claims.  That is one of my jobs – to explain to you what the patent claims mean.  By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end.  Meanwhile, you will find a definition in the glossary attached to these preliminary instructions.  In essence, you must decide:

(1)      whether Linear has proven by a preponderance of the

         evidence that the MPS accused products infringe the

         asserted claims of one or more of the two patents;

(2)      if you find that one or more of Linear's patents are

         infringed whether, by clear and convincing evidence, that

         infringement was willful;

(3)      **[and whether those asserted claims of Linear's patents**

         **that have been infringed have been proven by MPS by**

         **clear and convincing evidence to be invalid**.][4]

**MPS'S OBJECTION TO LINEAR'S PROPOSED SUMMARY OF THE PATENT
ISSUES**

         MPS objects to the instructions referring to MPS's alleged infringement in the

present tense.  MPS no longer manufactures or sells the accused MP1543 product, a fact Linear

has proposed as an uncontested fact.  Thus referring to alleged infringement in the present tense

would be misleading to the jury.

         MPS objects to Linear's inclusion of allegations that MPS's infringement was

willful.  The issue of willfulness is not relevant to any issue in this case; it would only be

relevant if there were a possibility that patent infringement damages could be enhanced.  There is

no such possibility in this case.  The parties have stipulated to patent infringement damages of

$10 should Linear establish infringement of a valid and enforceable patent claim.  D.I. 88.  Thus,

---

[4]      Linear includes the bracketed material only in the event that its motion to strike MPS's
invalidity and unenforceability defenses is denied.

Linear does not have an opportunity to claim enhanced damages. Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS. In addition, Linear brought this lawsuit without providing notice to MPS, MPS discontinued sales of the MP1543, and total net sales of the MP1543 in the United States totaled 110 parts and approximately $100. Given this factual record, Linear had no basis for alleging willful infringement in the first place.

MPS objects to the omission of its affirmative defenses of unenforceability. Moreover, Linear's statement that infringement must first be proven before invalidity can be shown is incorrect. Accordingly, the jury can find invalidity and/or unenforceability regardless of whether if finds infringement.

**Summary Of The Patent Issues [MPS]**

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will need not decide is the meaning of the patent claims. That is one of my jobs – to explain to you what the patent claims mean. By the way, the word "claims" is a term of art and I will instruct you on its meaning at trial's end. Meanwhile, you will find a definition in the glossary attached to these preliminary instructions. In essence, you must decide:

(1)             whether Linear has proven by a preponderance of the

evidence that the MPS accused product infringed the

asserted claims of one or more of the two patents; and

(2)             whether the asserted claims of Linear's patents have been

proven by MPS by clear and convincing evidence to be

invalid and/or unenforceable.

## LINEAR'S OBJECTIONS TO MPS'S PROPOSED SUMMARY OF THE PATENT ISSUES

Linear objects to MPS's proposed instruction on the Summary of Patent Issues to the extent it includes for the jury's consideration MPS's defenses of invalidity and unenforceability.  As a preliminary matter, as detailed in Linear's motion to strike, MPS contractually agreed it would not assert those defenses.  Furthermore, unenforceability is an equitable matter for the Court to decide, not the jury.

Linear further objects to MPS's instruction to the extent it omits Linear's claim for willful infringement.  That Monolithic may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim.

Finally, Linear objects to MPS's attempts to change the Court's standard instructions to characterize its infringement in the past tense.  That is a matter more appropriately treated by the parties during their case presentations.  MPS should not be permitted to provide a one-sided characterization of that matter in the preliminary instructions.

## CONDUCT OF THE JURY [AGREED]

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the Court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day.  And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## COURSE OF THE TRIAL [AGREED]

This trial, like most jury trials, comes in seven stages or phases.  We have already been through the first phase, which was to select you as jurors.  The remaining stages are:

(2)     These preliminary instructions to you;

(3)     Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence.  The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4)     The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5)     My final instructions on the law to you;

(6)     The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

(7)     Your deliberations where you will evaluate and discuss the evidence among yourselves and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So, as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.

**TRIAL SCHEDULE [AGREED]**

Though you have heard me say this during the voir dire, I want to again outline the schedule I expect to maintain during the course of this trial.

This case is expected to take eight days to try.  We will normally begin the day at 9:00 A.M. promptly.  We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 p.m. to 4:30 P.M.  There will be a fifteen minute break at 11:00 A.M. and another fifteen minute break at 3:15 P.M.  The only significant exception to this schedule may occur when the case is submitted to you for your deliberations.  On that day, the proceedings might last beyond 5:00 p.m.  We will post a copy of this schedule for your convenience in the jury deliberation room.

## <u>GLOSSARY OF PATENT TERMS</u>

| | |
|---|---|
| <u>Applicants</u> | The named inventors who are applying for the patent. |
| <u>Assignment</u> | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| <u>Claims</u> | The part of a patent that defines the invention. These are found at the end of the patent specification in the form of numbered paragraphs. |
| <u>Disclosure of Invention</u> | The part of the patent specification that explains how the invention works and usually includes a drawing. |
| File or Prosecution History <u>Wrapper, File History</u> | The written record of proceedings in the United States Patent and Trademark Office ("Patent Office" or "PTO"), including the original patent application and later rejections, responses to the rejections and other communications between the Patent Office and the applicant. |
| <u>Patent Application</u> | The initial papers filed in the Patent Office by an applicant. These typically include a specification, drawings, claims and the oath (Declaration) of the applicant. |
| <u>Patent Examiners</u> | Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention. |
| <u>Prior art</u> | Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to the filing of his/her application. |
| <u>Prior Art References</u> | Any item of prior art (publication, patent or product) used to determine patentability. |
| <u>Specification</u> | The part of the patent application or patent that describes the invention, and may include drawings. The specification does not define the invention, only the claims do. |

2278879