IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LINEAR TECHNOLOGY CORPORATION, )
                                )
              Plaintiff,         )
                                )
        v.                       )        C.A. No. 06-476 (GMS)
                                )
MONOLITHIC POWER SYSTEMS, INC.,  )
                                )
              Defendant.         )
                                )

## FINAL JURY INSTRUCTIONS

Plaintiff Linear Technology Corporation and Defendant Monolithic Power

Systems, Inc., submit the following final jury instructions.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP          POTTER ANDERSON & CORROON LLP

*/s/ James W. Parrett, Jr.*                   */s/ David E. Moore*
_____              _____
Jack B. Blumenfeld (#1014)                    Richard L. Horwitz (#2246)
Karen Jacobs Louden (#2881)                   David E. Moore (#3983)
James W. Parrett, Jr. (#4292)                 Hercules Plaza, 6th Floor
1201 N. Market Street                         1313 North Market Street
P.O. Box 1347                                 Wilmington, DE 19889
Wilmington, DE 19899                          (302) 984-6000
(302) 658-9200                                rhorwitz@potteranderson.com
jblumenfeld@mnat.com
klouden@mnat.com                              *Attorneys for Defendant*
jparrett@mnat.com                             *Monolithic Power Systems, Inc.*

*Attorneys for Plaintiff*
*Linear Technology Corporation*

May 2, 2008

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---:|
| 1. | GENERAL INSTRUCTIONS | 1 |
| | 1.1    INTRODUCTION [AGREED] | 1 |
| | 1.2    JURORS' DUTIES [AGREED] | 2 |
| | 1.3    EVIDENCE DEFINED [AGREED] | 3 |
| | 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED] | 4 |
| | 1.5    CONSIDERATION OF EVIDENCE [AGREED] | 5 |
| | 1.6    STATEMENTS OF COUNSEL [AGREED] | 6 |
| | 1.7    CREDIBILITY OF WITNESSES [AGREED] | 7 |
| | 1.8    EXPERT TESTIMONY [AGREED] | 9 |
| | 1.9    NUMBER OF WITNESSES [AGREED] | 10 |
| | 1.10   BURDENS OF PROOF [DISPUTED] | 11 |
| 2. | THE PARTIES' CONTENTIONS | 18 |
| | 2.1    THE PARTIES [AGREED] | 18 |
| | 2.2    LINEAR'S CONTENTIONS | 19 |
| | 2.3    MPS'S CONTENTIONS | 23 |
| | 2.4    SUMMARY OF BREACH OF CONTRACT ISSUES [DISPUTED] | 26 |
| | 2.5    SUMMARY OF PATENT ISSUES [DISPUTED] | 31 |
| 3. | BREACH OF CONTRACT | 35 |
| | 3.1    BREACH OF CONTRACT – FACTUAL ELEMENTS [AGREED] | 35 |
| | 3.2    CONTRACT INTERPRETATION [DISPUTED AS TO INCLUSION] | 36 |
| |   3.2.1   CONTRACT INTERPRETATON – MEANING OF ORDINARY WORDS [DISPUTED AS TO INCLUSION, LINEAR] | 39 |
| |   3.2.2   LACK OF MUTUAL CONSENT [DISPUTED AS TO INCLUSION] | 42 |
| | 3.3    **CONTRACT DAMAGES [DISPUTED]** | 44 |

3.3.1   IF A CONTRACT INCLUDES LIQUIDATED DAMAGES IN ADDITION TO ACTUAL DAMAGES, THE LIQUIDATED DAMAGES IS AN UNENFORCEABLE PENALTY [DISPUTED AS TO INCLUSION]    52

3.3.2   APPLICABILITY OF LIQUIDATED DAMAGES PROVISION [DISPUTED AS TO INCLUSION]    53

3.3.3   DAMAGES MUST BE REASONABLE [DISPUTED AS TO INCLUSION]    54

3.4   CURATIVE INSTRUCTION [AGREED]    56

4.   INFRINGEMENT    57

4.1   CLAIM INFRINGEMENT [AGREED]    57

4.2   CONSTRUCTION OF CLAIMS [AGREED IN PART]    58

4.3   PATENT INFRINGEMENT – GENERALLY [AGREED]    59

4.4   DIRECT INFRINGEMENT [DISPUTED]    60

4.4.1   INDIRECT INFRINGEMENT [DISPUTED]    64

4.5   INDUCING PATENT INFRINGEMENT [DISPUTED]    68

4.6   CONTRIBUTORY INFRINGEMENT [DISPUTED]    72

4.7   LITERAL INFRINGEMENT [DISPUTED]    76

4.8   DOCTRINE OF EQUIVALENTS [DISPUTED AS TO INCLUSION]    80

4.9   MEANS-PLUS-FUNCTION CLAIMS [AGREED]    83

4.10   WILLFUL INFRINGEMENT [DISPUTED, DISPUTED AS TO INCLUSION]    85

5.   INVALIDITY DEFENSES [DISPUTED AS TO INCLUSION]    89

5.1   SUMMARY OF THE INVALIDITY DEFENSE [DISPUTED]    89

5.2   ANTICIPATION [DISPUTED AS TO INCLUSION]    91

5.3   PRINTED PUBLICATIONS AS PRIOR ART [DISPUTED AS TO INCLUSION]    95

5.4   OBVIOUSNESS [DISPUTED AS TO INCLUSION]    98

5.4.1   SCOPE AND CONTENT OF THE PRIOR ART [DISPUTED AS TO INCLUSION]    103

5.4.2   DIFFERENCES BETWEEN THE CLAIMS AND THE PRIOR ART [DISPUTED AS TO INCLUSION]    104

    5.4.3    LEVEL OF ORDINARY SKILL [DISPUTED AS TO INCLUSION]    108

    5.4.4    FACTORS INDICATING OBVIOUSNESS: INDEPENDENT INVENTION BY OTHERS [DISPUTED AS TO INCLUSION]    110

    5.4.5    FACTORS INDICATING NON-OBVIOUSNESS/SECONDARY CONSIDERATIONS OF OBVIOUSNESS [DISPUTED AS TO INCLUSION]    111

6.    UNENFORCEABILITY [DISPUTED AS TO INCLUSION]    115

  6.1    INEQUITABLE CONDUCT[DISPUTED AS TO INCLUSION]    115

    6.1.1    MATERIALITY [DISPUTED AS TO INCLUSION]    121

    6.1.2    INTENT [DISPUTED AS TO INCLUSION]    126

    6.1.3    BURYING A MATERIAL REFERENCE IN A LONG LIST MAY INDICATE BAD FAITH [DISPUTED AS TO INCLUSION]    129

    6.1.4    BALANCING [DISPUTED AS TO INCLUSION]    131

  6.2    PATENT MISUSE [DISPUTED AS TO INCLUSION]    134

  6.3    UNCLEAN HANDS [DISPUTED AS TO INCLUSION]    139

7.    DELIBERATION AND VERDICT    144

  7.1    INTRODUCTION [AGREED]    144

  7.2    DUTY TO DELIBERATE [AGREED]    146

  7.3    COURT HAS NO OPINION [AGREED]    147

**APPENDIX A**    a

# 1. GENERAL INSTRUCTIONS

## 1.1 INTRODUCTION [AGREED]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.2  JURORS' DUTIES [AGREED]

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if MPS is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law you should apply to the facts as you find them.  You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy.  You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  You must accept them despite how you feel about their wisdom.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.3  EVIDENCE DEFINED [AGREED]

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was presented to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not speculate about what a witness might have said, or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.4  DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED]

You have heard the terms direct and circumstantial evidence.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.5  CONSIDERATION OF EVIDENCE [AGREED]

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Source:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.6  STATEMENTS OF COUNSEL [AGREED]

A further word about statements and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law.  An attorney may argue all reasonable conclusions from evidence in the record.  It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

Source:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.7 CREDIBILITY OF WITNESSES [AGREED]

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudice, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

<u>Sources:</u>

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.8 EXPERT TESTIMONY [AGREED]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.9 NUMBER OF WITNESSES [AGREED]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

**1.10 BURDENS OF PROOF [DISPUTED]**

**<u>Linear proposed Burdens of Proof</u>**

This is a civil case in which the plaintiff, Linear, is charging the defendant, MPS, with breach of contract and patent infringement. Linear has the burden of proving its claims by a preponderance of the evidence. Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not. To put it differently, if you were to put Linear's and MPS's evidence on the opposite sides of a scale, the evidence supporting Linear's claims would have to make the scales tip somewhat on Linear's side.

Preponderance of the evidence does not depend on the number of witnesses. If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Linear further urges that MPS's patent infringement has been willful. Linear has the burden of proving willfulness of the infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

**[MPS asserts in this case that Linear's patents are invalid. Linear asserts that MPS agreed in a Settlement Agreement not to challenge the validity of its patents. In any**

event, a patent is presumed to be valid.  Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid.][1]

[MPS also asserts in this case that Linear's patents are unenforceable.  Linear asserts that MPS also agreed in a Settlement Agreement not to challenge the enforceability of its patents.  As with challenging the validity of patents, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is enforceable.]

MPS also has the burden of proving by clear and convincing evidence that the $3 million liquidated damages clause of the parties' agreement was unreasonable at the time they entered into that agreement.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt.  That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not the parties have met their burdens of proof.

Sources:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware 1.3 (1993) and Miscellaneous Jury Instructions (GMS) (1/18/06).

**MPS Objections To Linear's Proposed Burdens Of Proof**

MPS objects to Linear's repetition of the explanation of the preponderance of the evidence burden of the proof as redundant and risking confusion.  The Court's prior statement of the standard in the *Telcordia* case was more concise and should be used here.

---

[1]     Linear includes the bracketed material only in the event that its motion to strike Monolithic's invalidity and unenforceability defenses is denied.

MPS objects to Linear's inclusion of allegations that MPS's infringement was willful. The issue of willfulness is not relevant to any issue in this case; it would only be relevant if there were a possibility that patent infringement damages could be enhanced. There is no such possibility in this case. The parties have stipulated to patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim. D.I. 88. Thus, Linear does not have an opportunity to claim enhanced damages. Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS. In addition, Linear brought this lawsuit without providing notice to MPS, MPS discontinued sales of the MP1543, and total net sales of the MP1543 in the United States totaled 110 parts and approximately $100. Given this factual record, Linear had no basis for alleging willful infringement in the first place.

MPS objects to Linear's proposal that the jury be instructed on the reasonableness of the $3 million liquidated damages clause, as that question is a matter for the Court. It would be clear error to present that question to the jury. *See, e.g., Harbor Island Holdings v. Kim*, 107 Cal. App. 4th 790, 795 (2003) ("The validity of the [liquidated damages provision] was a question for the judge to decide."); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1393 (1991) ("[T]he preliminary question whether the liquidated damages provisions were valid was a matter for the court to decide. The court, not the jury, should have decided whether it had been impracticable or extremely difficult to fix actual damages and whether Wells Fargo had made a reasonable endeavor to estimate a fair average compensation for its loss."). These issues are discussed in greater detail in MPS's Motion in Limine No. 1 and its Motion to Bifurcate.

MPS further objects to Linear's proposal that the jury be instructed on the reasonableness of the $3 million liquidated damages clause, as that clause only applies to ITC proceedings, not district court actions. This issue is discussed in greater detail in MPS's Motion in Limine No. 1.

MPS further objects to Linear's proposed instruction because Linear misstates the applicable burden of proof. There is no authority supporting a clear and convincing standard for proving that a liquidated damages clause is unenforceable. The proper burden of proof is preponderance of the evidence. *See Hong v. Somerset Associates*, 161 Cal. App. 3d 111, 116 (1984) ("Under section 1671, subdivision (b), Buyers had ***the burden of proving, by a preponderance of the evidence, that the liquidated damages clause was unreasonable*** under the circumstances existing at the time the contract was made.") (emphasis added). *See also* Cal. Evid. Code § 115 ("Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."). The *Weber* decision, cited by Linear, does not contain any language supporting Linear's contention that the applicable standard is clear and convincing.

MPS objects to Linear's proposed instruction in that it does not include MPS's claims that Linear's asserted patents are invalid and unenforceable.

MPS objects to Linear's inclusion of its assertion that MPS agreed in the Settlement Agreement not to challenge the validity or enforceability of its patents. This is an issue for the Court to decide, and is subject of Linear's motion to dismiss. Moreover, Linear's assertion is a misrepresentation of the Settlement Agreement for the reasons set forth in MPS's response to Linear's motion to dismiss. Accordingly, including Linear's assertion in the jury instructions would confuse the jury and prejudice MPS.

## MPS proposed Burdens of Proof

This is a civil case in which the plaintiff, Linear, is charging the defendant, MPS, with breach of contract and patent infringement.  MPS denies these charges.  Linear has the burden of proving its claims by a preponderance of the evidence.  Proof by a preponderance of the evidence means proof that something is more likely true than not.  To put it differently, if you were to put Linear's and MPS's evidence on the opposite sides of a scale, the evidence supporting Linear's claims would have to make the scales tip somewhat on Linear's side.

In this case, MPS also asserts that the claims in Linear's patents which are being asserted against MPS are invalid.  A party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

MPS also asserts that Linear's patents are unenforceable due to inequitable conduct performed by the patent applicants before the United States Patent and Trademark Office.  MPS has the burden of proving by clear and convincing evidence that the patents are unenforceable due to inequitable conduct.

MPS also asserts that Linear has engaged in patent misuse by attempting to use its patents to restrict MPS's activities outside the United States.  MPS has the burden of proving by a preponderance of the evidence that the patents are unenforceable due to patent misuse.

MPS also asserts that Linear is guilty of unclean hands by attempting to enforce the contract against a product that it knows or should know is not covered by the contract.  MPS has the burden of proving by a preponderance of the evidence that the contract is unenforceable due to unclean hands.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not the parties have met their burdens of proof.

Sources:

Adapted from Instruction 1.10 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876-GMS

**Linear's Objections To MPS's Proposed Burdens of Proof**

Linear objects to MPS's proposed instruction on Burdens of Proof to the extent that it omits language from the Court's standard Miscellaneous Jury Instructions (GMS, Rev. 1/18/06) explaining what is meant by "a preponderance of the evidence." Linear submits that this language is necessary and helpful to the jury to understand this burden.

Linear objects to MPS's proposed instruction on Burdens of Proof to the extent MPS omits Linear's claim of willful infringement. That MPS may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim.

Linear objects to MPS's proposed instruction on Burdens of Proof to the extent it includes for the jury's consideration MPS's defenses of invalidity and unenforceability. As a preliminary matter, as detailed in Linear's motion to strike (D.I. 11), MPS contractually agreed it would not assert those defenses. Furthermore, unenforceability and the issues of inequitable conduct, patent misuse and unclean hands are equitable matters for the Court to decide, not the jury. Linear also objects to MPS's instruction to the extent it asserts that MPS's burden of proof for the issues of patent misuse and unclean hands is a preponderance of the evidence. Unenforceability must be proven by clear and convincing evidence.

-16-

Linear also objects to MPS's proposed instruction to the extent it omits the issue of whether the $3 million liquidated damages clause of the parties' Settlement Agreement was unreasonable at the time the parties entered into that agreement.  For the reasons set forth in Linear's opposition to MPS's motion in limine, it is proper for the jury to consider the underlying factual issues.

## 2.  THE PARTIES' CONTENTIONS

### 2.1  THE PARTIES [AGREED]

The plaintiff in this case is Linear Technology Corporation.  Linear owns United States Patent Nos. 5,481,178 and 6,580,258 B2.  The defendant in this case is Monolithic Power Systems, Inc.  For convenience, I will refer to the plaintiff as Linear and the defendant as MPS. As I noted at the start of the trial, I will refer to the asserted patents by their last three numbers: the '178 patent and the '258 patent.

## 2.2  LINEAR'S CONTENTIONS[1]

Linear alleges that MPS has breached its prior agreement with Linear which the parties entered into in settlement of earlier patent litigation over voltage regulator circuits which are used in laptop or notebook computers, cell phones and other battery-operated electronic devices to save power.  I shall refer to this agreement as the "Settlement Agreement."  Linear alleges that MPS violated the Settlement Agreement in one or more of these three ways:  by unauthorized sale of MP1543 products with "ZX circuitry", by otherwise practicing the "Asserted Claims" of the '178 or '258 patents that were at issue in the prior litigation, and/or by challenging the validity of the '178 or '258 patents in this proceeding.

Linear further contends that under Section 6.1 of the Settlement Agreement, Linear is entitled to damages in the amount of $3 million that MPS agreed it would pay in event of a breach.  Linear also seeks payment of its attorneys' fees pursuant Section 6.1 of the Settlement Agreement.

Whether or not MPS breached the Settlement Agreement, Linear seeks a determination that that MPS has infringed the '178 and '258 patents as a result of unauthorized manufacture and sale of voltage regulator circuits following the Settlement Agreement.  Linear also seeks a determination that MPS's infringement of the '178 and '258 patents has been willful.

---

[1]     Linear has moved to strike MPS's asserted defenses of invalidity and unenforceability (D.I. 11).  Should the Court permit MPS to raise these issues at trial, Linear reserves the right to respond to any instructions or contentions put forward on them by MPS.  In addition, Linear maintains that any issue of inequitable conduct or unenforceability would be for the Court to decide, not the jury.

**MPS Objections To Linear's Contentions**

MPS objects to each of Linear's breach of contract contentions for the reasons set forth in its pending Motion for Summary Judgment of No Breach of Contract (Count One).

MPS objects to Linear's inclusion in its contentions that it alleges that MPS breached the Settlement Agreement by selling products with "ZX circuitry" for the reasons set forth in its Motion in Limine No. 2.  Moreover, the relevant contractual provision is "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," not "ZX circuitry."

MPS objects to Linear's inclusion as an issue whether MPS has breached the Settlement Agreement by "otherwise practicing the 'Asserted Claims' of the '178 or '258 patents that were at issue in the prior litigation."  As set forth in MPS' pending motion for summary judgment, the phrase "otherwise practice the Asserted Claims" in the Settlement Agreement can only be referring to, and modifying, the phrase "product[] in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to . . ."  This is a legal question for the Court.

MPS objects to Linear's inclusion as an issue whether MPS has breached the Settlement Agreement by challenging validity.  As explained in MPS's opposition to Linear's motion to strike MPS's defenses of invalidity and unenforceability (D.I. 17) and MPS's briefs in support of its pending Motion for Leave to File Amended Answer (D.I. 36 and 41), this is not an action brought by Linear to enforce the Settlement Agreement.  MPS is thus entitled to challenge the validity of the patents in suit in this action.  The Court, not the jury, decides this issue.

MPS further objects to Linear's contention that Linear's own complaint could trigger a breach of the Settlement Agreement, the purported breach being MPS's pleadings filed in response to the complaint itself.  Furthermore, Linear's position – that it could be entitled to $3 million in liquidated damages because MPS raised an invalidity defense in this lawsuit –

-20-

further demonstrates that the $3 million liquidated damages provision is an unenforceable penalty.

MPS objects to Linear's inclusion in its contentions that it is entitled to liquidated damages. As set forth above, in MPS's Motion in Limine No. 1, and in MPS's briefs in support of its Motion to Bifurcate the Questions of the Availability and Enforceability of the $3 Million Liquidated Damages Provision in the Settlement and License Agreement (D.I. 139, 140) the Court must decide the validity of the liquidated damages clause. *See, e.g.*, *Harbor Island Holdings, LLC v. Kim*, 107 Cal. App. 4th 790, 794 (2003). In any event, the $3 million liquidated damages clause is an unenforceable penalty. The Court must also decide the applicability of the liquidated damages clause. As discussed in MPS's Motion in Limine No. 1 and its Motion to Bifurcate, that clause only applies to ITC proceedings, not district court actions.

MPS objects to Linear's inclusion in its contentions that it is entitled to attorneys' fees. The issue of attorneys' fees will be resolved by the Court.

MPS objects to Linear's inclusion of allegations that MPS's infringement was willful. The issue of willfulness is not relevant to any issue in this case; it would only be relevant if there were a possibility that patent infringement damages could be enhanced. There is no such possibility in this case. The parties have stipulated to patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim. D.I. 88. Thus, Linear does not have an opportunity to claim enhanced damages. Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS. In addition, Linear brought this lawsuit without providing notice to MPS, MPS discontinued sales of the MP1543, and total net sales of the MP1543 in the United

States totaled 110 parts and approximately $100.  Given this factual record, Linear had no basis for alleging willful infringement in the first place.

MPS objects to Linear's proposed instruction as incorrect because it does not address the fact that Linear would have a double recovery in the event that it obtained liquidated damages in addition to patent infringement damages.  *Poseidon Dev., Inc. v. Woodland Lane Estates, LLC,* 152 Cal. App. 4th 1106, 1115 (2007), cited by Linear as "noting that a liquidated damages clause may be used to account for the cost of litigation if a breach occurs," does not help Linear.  There is no evidence that the parties intended the $3 million to account for the cost of litigation.  Indeed, the Settlement Agreement specifies that the prevailing party is entitled to its attorneys fess, demonstrating that such was not the case.  Here, according to Linear, it would get its patent infringement damages (stipulated to be $10), its attorneys fees, plus $3 million.

## 2.3  MPS'S CONTENTIONS

MPS contends that the accused MPS product did not infringe any of the asserted claims of the '178 or '258 patents because Linear has not proven that the accused MPS product met every limitation of the asserted claims.

MPS further contends that the two Linear patents are invalid and unenforceable. Specifically, MPS contends that the '178 and '258 patents are not new and/or are obvious in view of the prior art.  MPS further contends that the '178 and '258 patents are unenforceable due to inequitable conduct and patent misuse.

[If Linear is permitted to argue willful infringement to the jury]:

MPS further contends that it did not willfully infringe any claim of either the '178 or the '258 patent.

[If the Court denies MPS's Motion for Summary Judgment of No Breach of Contract (Count One)]:

MPS contends that it has not breached the Settlement Agreement.  Specifically, MPS contends that the accused MPS product did not possess "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" and thus MPS did not violate the Settlement Agreement.  MPS also contends that Linear has not proven that the accused MPS product otherwise practiced the claims asserted by Linear in the ITC Proceeding.

[If the Court permits the issue of the validity of the liquidated damages provision of the Settlement Agreement to be tried to the jury]:

MPS also contends that the liquidated damages provision in the Settlement Agreement is an unenforceable penalty, for each of three reasons:

First, the $3 million liquidated damages figure was not the result of an effort by the parties to estimate the actual damages that would flow from a breach of the Settlement Agreement;

Second, the $3 million liquidated damages figure is grossly disproportional to MPS's sales of the accused MPS product in the United States – which totaled approximately $100 – and to the $10 dollars in patent infringement damages that the parties have stipulated Linear can recover if it is found that the accused MPS product did, in fact, infringe the Linear patents.

Third, the Settlement Agreement allows Linear to recover its actual damages, plus liquidated damages of $3 million. The law does not allow the enforcement of contracts that provide for penalties in addition to actual damages;

[If the Court permits the issue of the applicability of the liquidated damages provision to district court actions to be tried to the jury]:

MPS also contends that the liquidated damages provision in the Settlement Agreement is not applicable in this lawsuit, because it is limited to proceedings in the International Trade Commission.

## Linear's Objections To MPS's Contentions

Linear objects to MPS's contentions to the extent MPS omits Linear's claim of willful infringement. That MPS may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim.

Linear objects to MPS's contentions to the extent it includes for the jury's consideration MPS's defenses of invalidity and unenforceability. As a preliminary matter, as detailed in Linear's motion to strike (D.I. 11), MPS contractually agreed it would not assert those

defenses. Furthermore, unenforceability and the issues of inequitable conduct and patent misuse are equitable matters for the Court to decide, not the jury.

Linear also objects to MPS's proposed instruction to the extent it omits the issue of whether the $3 million liquidated damages clause of the parties' Settlement Agreement was unreasonable at the time the parties entered into that agreement. For the reasons set forth in Linear's opposition to MPS's motion *in limine*, it is proper for the jury to consider the underlying factual issues.

Linear further objects to MPS's proposed instruction to the extent it provides an incorrect recitation of the contract issues (*see* Linear's Motion for Summary Judgment on Contract Interpretation and Breach of Contract, (D.I. 107)), and to the extent that it constitutes an improper attempt by MPS to make its inflammatory arguments in the Court's jury instructions.

Linear further objects to MPS's proposed instruction as incorrect because there is no triable issue of double recover raised by liquidated damages in the amount sought and nominal infringement damages of $10.00. MPS's statement of law is incorrect in any event to the extent MPS contends that Linear cannot recover both actual and liquidated damages. *See Poseidon Dev., Inc. v. Woodland Lane Estates, LLC,* 152 Cal. App. 4th 1106, 1115 (Cal. Ct. App. 2007) (noting that a liquidated damages clause may be used to account for the cost of litigation if a breach occurs).

## 2.4  SUMMARY OF BREACH OF CONTRACT ISSUES [DISPUTED]

### Linear proposed Summary of Breach of Contract Issues

The following is a summary of the breach of contract issues that you are asked to decide:

1.    Whether Linear has proven by a preponderance of the evidence that MPS has violated Section 3.3 of the Settlement Agreement by unauthorized making, using, selling, or offering for sale the MP1543 with "ZX circuitry".

2.    Whether Linear has proven by a preponderance of the evidence that MPS violated Section 3.3 of the Settlement Agreement by otherwise practicing the claims of the '178 and '258 patents.

3.    Whether Linear has proven by a preponderance of the evidence that MPS violated the Settlement Agreement by challenging or contesting the validity of the '178 and '258 patents.

4.    Whether MPS has proven by clear and convincing evidence that its agreement to pay Linear $3 million in liquidated damages was unreasonable at the time it entered into the Settlement Agreement.

### MPS Objection To Linear's proposed Summary of Breach of Contract Issues

MPS objects to each of Linear's breach of contract contentions for the reasons set forth in its pending Motion for Summary Judgment of No Breach of Contract.

MPS objects to Linear's inclusion in its contentions that it alleges that MPS breached the Settlement Agreement by selling products with "ZX circuitry" for the reasons set forth in its Motion in Limine No. 2.  Furthermore, Linear misstates the Settlement Agreement, as the relevant contractual provision is "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," not "ZX circuitry."  As set forth in MPS's Motion in Limine No. 2, Linear has failed to provide an identification of the circuitry, if any, in the MP1543 that it contends is "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," and has failed to submit any

-26-

evidence that such circuitry was in the MP1543. The Court should preclude Linear from attempting to do so at trial.

MPS objects to Linear's inclusion as an issue whether MPS has breached the Settlement Agreement by "otherwise practicing the 'Asserted Claims' of the '178 or '258 patents that were at issue in the prior litigation." As set forth in MPS' pending motion for summary judgment, the phrase "otherwise practice the Asserted Claims" in the Settlement Agreement can only be referring to, and modifying, the phrase "product[] in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to . . ." This is a legal question for the Court.

MPS objects to Linear's inclusion as an issue whether MPS has breached the Settlement Agreement by challenging validity. As explained in MPS's opposition to Linear's motion to strike MPS's defense of invalidity, this is not an action brought by Linear to enforce the Settlement Agreement. MPS is thus entitled to challenge the validity of the patents in suit in this action. The Court, not the jury, decides this issue.

MPS further objects to Linear's contention that Linear's own complaint could trigger a breach of the Settlement Agreement, the purported breach being MPS's pleadings filed in response to the complaint itself. Furthermore, Linear's position – that it is entitled to $3 million in liquidated damages because MPS raised an invalidity defense in this lawsuit – further demonstrates that the $3 million liquidated damages provision is an unenforceable penalty.

MPS objects to Linear's inclusion in its contentions that it is entitled to liquidated damages. As set forth above, in MPS's Motion in Limine No. 1, and in MPS's briefs in support of its Motion to Bifurcate the Questions of the Availability and Enforceability of the $3 Million Liquidated Damages Provision in the Settlement and License Agreement (D.I. 139, 140) the Court must decide the validity of the liquidated damages clause. *See, e.g.*, *Harbor Island*

*Holdings, LLC v. Kim*, 107 Cal. App. 4th 790, 794 (2003).  In any event, the $3 million liquidated damages clause is an unenforceable penalty.  The Court must also decide the applicability of the liquidated damages clause.  As discussed in MPS's Motion in Limine No. 1 and its Motion to Bifurcate, that clause only applies to ITC proceedings, not district court actions.

MPS further objects to Linear's liquidated damages contention because Linear misstates the applicable burden of proof.  There is no authority supporting a clear and convincing standard for proving that a liquidated damages clause is unenforceable.  The proper burden of proof is preponderance of the evidence.  *See Hong v. Somerset Associates*, 161 Cal. App. 3d 111, 116 (1984) ("Under section 1671, subdivision (b), Buyers had ***the burden of proving, by a preponderance of the evidence, that the liquidated damages clause was unreasonable*** under the circumstances existing at the time the contract was made.") (emphasis added).  *See also* Cal. Evid. Code § 115 ("Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.").  The *Weber* decision, cited by Linear, does not contain any language supporting Linear's contention that the applicable standard is clear and convincing.

## MPS proposed Summary Of Breach Of Contract Issues

The following is a summary of the breach of contract issues that you are asked to decide:

1) [If the Court denies MPS' pending motion for summary judgment and MPS' Motion in Limine No. 2]: Whether Linear has proven by a preponderance of the evidence that MPS has violated Section 3.3 of the Settlement Agreement by selling the MP1543 part.

2) [If the Court denies MPS' pending motion for summary judgment and MPS' Motion in Limine No. 1]: Whether Linear has proven by a preponderance of the evidence that the liquidated damages provision in Section 6.1 of the Settlement Agreement was intended to apply in district court actions as well as ITC proceedings.

3) [If the Court denies MPS' pending motion for summary judgment and MPS' Motion in Limine No. 1]: Whether MPS has proven by a preponderance of the evidence that the $3 million liquidated damages figure was not the result of the parties attempting to estimate what the actual damages to Linear would be in the event MPS breached the Settlement Agreement.

4) [If the Court denies MPS' pending motion for summary judgment and MPS' Motion in Limine No. 1]: Whether MPS has proven by a preponderance of the evidence that the Settlement Agreement permits Linear to collect both its actual damages and $3 million in liquidated damages

5) [If the Court determines that Section 2.5 of the Settlement Agreement applies to this lawsuit]: Whether Linear has proved by a preponderance of the evidence that MPS has breached the Settlement Agreement by challenging the validity and enforceability of the '178 and the '258 patent in this lawsuit.

## Linear's Objections To MPS's Proposed Summary of Breach of Contract Issues

Linear objects to issue number 1 under MPS's proposed instruction on the Summary of Breach of Contract Issues, "[w]hether Linear has proved by preponderance of the evidence that MPS has violated Section 3.3 of the Settlement Agreement by selling the MP1543 part" as unduly narrow in that it focuses only *on the sale* of the MP1543. The proper question to be put to the jury is whether MPS breached by "making, using, selling or offering for sale" the MP1543 with "ZX circuitry."

-29-

Linear further objects to MPS's proposed instruction to the extent it presents a one-sided case presentation rather than asking the jury to find whether certain provisions of the Settlement Agreement have been violated.

Linear also objects to MPS's proposed instruction to the extent it provides an incorrect recitation of the parties' agreement (*see* D.I. 11 and 107) and to the extent it incorrectly asserts that MPS need only establish that the liquidated damages clause is unreasonable by a preponderance of the evidence. *See* Cal. Civ. Code § 1671(b) (liquidated damages clauses are presumed valid).

## 2.5  SUMMARY OF PATENT ISSUES [DISPUTED]

### Linear proposed Summary of Patent Issues

The following is a summary of the patent infringement issues that you are asked to decide independently of the breach of contract issues:

1.     Whether Linear has proven by a preponderance of the evidence that MPS's manufacture, use, sale, offer for sale or importation into the United States of the MP 1543, or the methods practiced by that product, infringe, either literally or under the doctrine of equivalents, any of the asserted claims of Linear's '178 of '258 patents.

2.     Whether Linear has proven by a preponderance of the evidence that MPS has either induced or contributed to the infringement by others of the asserted claims of the '178 of '258 patents.

3.     Whether Linear has proven by clear and convincing evidence that MPS's infringement has been willful.

### MPS Objections to Linear Proposed Summary of Patent Issues

MPS objects to Linear's first patent issue on the grounds that there is no evidence that the MP1543, by itself, directly infringed any asserted claim.

MPS also objects to that portion of Linear's first patent issue which refers to infringement under the doctrine of equivalents.  The doctrine of equivalents is not at issue in this case.  Linear did not offer any evidence or argument, either in response to MPS's interrogatories or in any of its expert's three reports, that MPS has infringed any claim under the doctrine of equivalents.  Thus, there is no basis for instructing the jury on the doctrine of equivalents.

MPS objects to Linear's second patent issue, as set forth in its Motion in Limine No. 4.  Linear has not presented any evidence, either through its interrogatory responses, or through its expert reports, of any alleged direct infringement of any asserted claim by any MPS customer.

MPS objects to Linear's inclusion of allegations that MPS's infringement was willful. The issue of willfulness is not relevant to any issue in this case; it would only be relevant if there were a possibility that patent infringement damages could be enhanced.  There is no such possibility in this case.  The parties have stipulated to patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim.  D.I. 88.  Thus, Linear does not have an opportunity to claim enhanced damages.  Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS.  In addition, Linear brought this lawsuit without providing notice to MPS, MPS discontinued sales of the MP1543, and total net sales of the MP1543 in the United States totaled 110 parts and approximately $100.  Given this factual record, Linear had no basis for alleging willful infringement in the first place.

## MPS proposed Summary of Patent Issues

The following is a summary of the patent infringement issues that you are asked to decide independently of the breach of contract issues:

1.    Whether Linear has proven by a preponderance of the evidence that MPS's manufacture, use, sale, offer for sale or importation into the United States of the MP1543 constituted direct infringement of any of the asserted claims of Linear's '178 or '258 patents.

2.    Whether MPS has proven by clear and convincing evidence that the asserted claims of Linear's '178 or '258 patents are invalid.

3.    Whether MPS has proven by clear and convincing evidence that Linear's '178 or '258 patents are unenforceable because of inequitable conduct before the United States Patent and Trademark Office.

4.    Whether MPS has proven by a preponderance of the evidence that Linear's '178 or '258 patents are unenforceable because of patent misuse.

5.    Whether MPS has proven by a preponderance of the evidence that Linear's '178 or '258 patents are unenforceable because of unclean hands.

## Linear's Objections To MPS's Proposed Summary Of Patent Issues

Linear objects to MPS's first patent issue to the extent it omits Linear's claims for indirect infringement and infringement under the doctrine of equivalents.  For the reasons stated in Linear's Opposition to MPS's motion *in limine* No. 4, Linear has presented ample evidence of both direct and indirect infringement by MPS.  That MPS may disagree with such claims provides no basis not to advise the jury of Linear's properly pleaded claims.  MPS cannot obtain judgment in its favor on substantive issues by arguing what the evidence shows in the jury instructions.

-33-

Linear also objects to MPS's proposed instruction on Summary of Patent Issues to the extent MPS omits Linear's claim of willful infringement. That MPS may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim.

Linear objects to MPS's remaining patent issues to the extent they include for the jury's consideration MPS's defenses of invalidity and unenforceability. As a preliminary matter, as detailed in Linear's motion to strike (D.I. 11), MPS contractually agreed it would not assert those defenses. Furthermore, unenforceability and the issues of inequitable conduct, patent misuse and unclear hands are equitable matters for the Court to decide, not the jury. Finally, MPS misstates its burden of proof in that unenforceability must be proven by clear and convincing evidence.

### 3. BREACH OF CONTRACT

### 3.1 BREACH OF CONTRACT – FACTUAL ELEMENTS [AGREED]

To recover for MPS's breach of contract, Linear must prove the following:

1.    That Linear and MPS entered into a contract;

2.    That Linear did all, or substantially all, of the significant things that the contract required it to do;

3.    That MPS did something that the contract prohibited it from doing; and

4.    That Linear was harmed by that.


Sources:

Adapted from Judicial Council of California Civil Jury Instructions (CACI) Instruction 300; *New September 2003; Revised December 2007.*

## 3.2  CONTRACT INTERPRETATION [DISPUTED AS TO INCLUSION]

### Linear's proposed instruction on Contract Interpretation

**[Linear proposes this instruction to the extent the Court instructs the jury on contract interpretation]**

Linear and Monolithic dispute the meaning of the sections 3.3 and 6.1 of the parties' Settlement Agreement.  In deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of the language used in the contract, as well as the circumstances surrounding the making of the contract.

Sources:

Adapted from Judicial Council of California Civil Jury Instructions (CACI) Instruction 314.

### MPS's Objections to Linear's proposed instruction on Contract Interpretation

MPS objects to Linear's attempt to have the jury, rather than the Court, interpret the contract.  The Court, not the jury, is to interpret the Settlement Agreement.  *Parsons v. Bristol Dev. Co.,* 402 P.2d 839, 842 (Cal. 1965).  Moreover, Linear's instruction omits the sentence from CACI Instruction 314 that specifies that the plaintiff - i.e., Linear - "must prove that [its] interpretation of the term is correct."

MPS further objects to Linear's proposed instruction as legally incorrect.  Under California law, when a contract has been reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.  Cal. Civ. Code §1639.  Only if it is not possible to determine the intent of the parties solely from the writing, may outside evidence by used to

interpret the contract. *In re Bennett,* 298 F.3d 1059, 1064 (9th Cir. 2002); *Shaw v. Regents of University of California,* 58 Cal. App. 4th 44, 53 (1997).

       Linear objects to MPS's proposed instruction on contract interpretation, which follows, stating that it is "one-sided and incorrect." Linear is simply wrong. MPS's proposed language comes from the applicable statutory provisions and the cases cited.

## MPS's proposed instruction on Contract Interpretation

**[If the Court decides that the question of contract interpretation should be presented to the jury, then (reserving all its rights on appeal) MPS submits the following instruction]:**

The parties dispute the interpretation of sections 3.3 and 6.1 of the Settlement Agreement.  Linear must prove that its interpretation of the disputed language is correct.

In deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was created.  When a contract has been reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.  The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.

If it is not possible to determine the intent of the parties solely from the writing, outside evidence may be used to interpret the contract.  However, outside evidence may not be used to give the language a meaning to which it is not reasonably susceptible.

Sources:

Adapted from Judicial Council of California Civil Jury Instructions (CACI) Instruction 314; *New September 2003*; Cal. Civ. Code §§ 1636, 1638, 1639, 1641 (LexisNexis 2008); *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002); *Shaw v. Regents of University of California*, 58 Cal. App. 4th 44, 53 (1997); *Parsons v. Bristol Dev. Co.*, 402 P.2d 839, 842 (Cal. 1965); *Am. Pres. Lines, Ltd. v Zolin*, 38 Cal. App. 4th 910, 923 (1995).

## Linear's Objections to MPS's proposed instruction

Linear objects to MPS's proposed instruction as one-sided and incorrect  as to the law of parol evidence.  Linear's instruction, which more closely tracks the Judicial Counsel of California's instruction 314, provides a more concise and clear statement of the law. *See, e.g.,*

-38-

*Foad Consulting Group v. Musil Govan Azzalino,* 270 F.3d 821 (9th Cir. 2001) citing *City of Manhattan Beach v. Superior Court,* 914 P.2d 160, 169 (Cal. 1996) ("In contrast to many other states, California has a liberal parole evidence rule: It permits consideration of extrinsic evidence to explain the meaning of the terms of a contract even when the meaning appears unambiguous.").

### 3.2.1  CONTRACT INTERPRETATON – MEANING OF ORDINARY WORDS
### [DISPUTED AS TO INCLUSION, LINEAR]

**[Linear proposes this instruction to the extent the Court instructs the jury on contract interpretation]**

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning, unless you decide that the parties intended the words to have a special meaning.

Sources:

Judicial Council of California Civil Jury Instructions (CACI) Instruction 315.

### MPS Objections to Linear Proposed Meaning of Ordinary Words

MPS objects to Linear's request for this instruction, as it does not apply to this case.  CACI instruction 315 is an instruction concerning Cal. Civ. Code § 1644, which applies where the parties have used technical terms from a particular trade.  That is not hte situation here.

Section 1644 reads:

The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.

As explained in *Hayter Trucking Inc. v. Shell Western E & P, Inc.,* 18 Cal. App. 4th 1, 15 (1993):

"Generally speaking, words in a contract are to be construed according to their plain, ordinary, popular or legal meaning, as the case may be.  However, particular expressions may, by trade usage, acquire a different meaning in reference to the subject matter of a contract. If both parties are engaged in that trade, the parties to the contract are deemed to have used them according to their different and peculiar sense as shown by such trade usage and parol evidence is admissible to establish the trade usage even though the words in their ordinary or legal meaning are entirely unambiguous."

## 3.2.2. LACK OF MUTUAL CONSENT [DISPUTED AS TO INCLUSION]

### MPS's proposed instruction on Lack of Mutual Consent [DISPUTED AS TO INCLUSION]

**[If the Court decides that the question of contract interpretation should be presented to the jury, then (reserving all its rights on appeal) MPS submits the following instruction]**:

The parties to a contract must give mutual consent in order for the contract to be valid and enforceable. Consent is not mutual unless the parties all agree upon the same thing in the same sense. If you find that Linear and MPS did not agree upon the same meaning of the provisions in section 3.3 of the Settlement Agreement, there was no contract.

Sources:

Cal. Civ. Code § 1580 ("Consent is not mutual, unless the parties all agree upon the same thing in the same sense."). *See also Balistreri v. Nevada Livestock Prod Credit Ass'n*, 214 Cal. App. 3d 635, 640, 262 Cal. Rptr. 862, 865 (1989) (quoting 1 Witkin, Summary of Cal. Law, Contracts § 366 (9th ed. 1987)).

### Linear's objections to MPS's proposed instruction

Linear objects to MPS's proposed instruction as argumentative and one-sided, in particular that it is an instruction on contract formation but focused on only one aspect (assent) while omitting all the other elements. Linear also objects to MPS's instruction as nonsensical and confusing for the jury, in particular the statement "Consent is not mutual unless the parties all agree upon the same thing in the same sense." MPS's instruction is also unfounded and confusing, because the fact that the parties entered into the Settlement Agreement has never been in dispute. MPS cannot avoid its contractual obligations by arguing that the contract it

negotiated, drafted with its counsel and indisputably and voluntarily entered into is non-binding for lack of mutual consent.

### 3.3  CONTRACT DAMAGES [DISPUTED]

### Linear proposed Contract Damages

If you decide that Linear has proved its claims against MPS for breach of contract, you also must decide the issue of damages for the breach.  In this case, Linear claims damages specified under the liquidated damages clause of the Settlement Agreement as well as its attorneys' fees.  You must decide whether MPS has met its burden of proving that the liquidated damages clause, to which MPS agreed, was unreasonable under the circumstances existing at the time the contract was made.[1]

Liquidated damages clauses are favored and presumed valid.[2]  A liquidated damages provision is unreasonable only if it bears no relationship to the range of actual damages that the parties could have anticipated would flow from the breach.[3]  Only if the liquidated damages amount is disproportionate to the damages anticipated at the time the contract was made may it be deemed an unenforceable penalty.[4]

Among the factors you may consider in determining whether the liquidated damages clause is unreasonable are the relative equality of the bargaining power of the parties, whether the parties were represented by lawyers at the time the contract was made, the anticipation of the parties that proof of actual damages would be costly or inconvenient, the difficulty of proving what damages were caused or foreseeable, and whether the contract with liquidated damages provision is a form contract.[5]

Sources:

Adapted from Judicial Council of California Civil Jury Instructions (CACI) Instruction 350; *New September 2003; Revised October 2004.*

1.      Cal. Civ. Code §1671(b).

2.     *Weber v. Christian*, 52 Cal. App. 4th 645, 654, 656 (Cal. Ct. App. 1997).

3.     *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977 (Cal. 1998).

4.     *Id.*

5.     *Weber*, Cal. Ct. App. 4th at 654-55.

### MPS objections to Linear proposed Contract Damages

MPS objects to Linear's proposed deviations from the California Civil Jury Instructions, Instruction 350.  MPS objects to Linear's proposed instruction on liquidated damages because, as set forth in MPS's Motion in Limine No. 1 and its Motion to Bifurcate, the validity of a liquidated damages clause is a legal issue.  *See Harbor Island Holdings, LLC v. Kim*, 107 Cal. App. 4th 790, 794 (2003).  If the Court grants MPS's Motion in Limine No. 1 or its Motion to Bifurcate, this instruction on liquidated damages will be irrelevant and prejudicial.

MPS objects to Linear's inclusion of the phrase "to which MPS agreed" as both argumentative and unrelated to the inquiry that underlies a determination as to whether a liquidated damages provision is valid and enforceable.

Linear's proposed instruction is one-sided, argumentative and misstates the law. Linear relies upon the *Weber* decision, which was a lower court decision issued in 1997, prior to the California Supreme Court's decision in *Ridgley*.  *Ridgley* specifically held that a liquidated damages clause is unenforceable if it does not "represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained."  17 Cal. 4th at 977.  As *Ridgley* explained:

> A penalty provision operates to compel performance of an act and usually becomes effective only in the event of default upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach.  The characteristic feature of a penalty is its lack of proportional relation to the

damages which may actually flow from failure to perform under a contract.

*Id.* "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671, subdivision (b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Harbor Island Holdings, L.L.C. v. Kim,* 107 Cal. App. 4th 790, 796 (2003).

MPS also objects to Linear's proposed instruction that liquidated damages clauses are "favored" as misleading and confusing to the jury. In legal parlance, the term "favored" means only that the party challenging the provision has the burden of proof. If the Court were to permit Linear to present evidence concerning the liquidated damages clause to the jury (which would be error), the jury would be instructed that MPS has the burden of proving the clause is invalid. Using the term "favored" is both unnecessary and confusing.

MPS also objects to Linear's proposed instruction that the jury may consider factors such as "the relative equality of the bargaining power of the parties, whether the parties were represented by lawyers at the time the contract was made, the anticipation of the parties that proof of actual damages would be costly or inconvenient, the difficulty of proving what damages were caused or foreseeable, and whether the contract with liquidated damages provision is a form contract," which is language taken from the *Weber* decision that pre-dates the California Supreme Court's *Ridgley* decision. *Ridgley* said nothing to suggest that these factors – which normally are considered in the context of a determination as to unconscionability – are to be considered. If, as here, the liquidated damages figure was not the result of the parties attempting to quantify the actual damages that would result from a breach, the provision is *per se* unenforceable – issues of bargaining power, representation by counsel, form contract, etc. are not considered.

-46-

As stated in *Harbor Island Holdings*, 107 Cal. App. 4th at 799:

> The fact that this was a commercial lease negotiated by seasoned business entities, not a consumer lease between unsophisticated individuals, has no bearing on the result. The court in [*Ridgley*] addressed the suggestion that "a different set of rules [should] apply because [it] was an 'arm's length commercial transaction.' It dispelled that notion, stating, "That [the obligors] are . . . .business owners rather than consumers, however, does not deprive them of section 1671's protection against unreasonable penalties."

*See also Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 521 F. Supp. 2d 1031, 1045 (N.D. Cal. 2007):

> Plaintiff also argues that section 5.7 is a permissible liquidated damages clause. It points out that Defendant was represented by in-house counsel and that the contract was negotiated by the parties and is not a form contract. It argues that the damages here are uncertain. This argument, however, is not persuasive. As discussed above, the agreement requires that the party compute the amount of royalty underpayment, which is the damage, and then triple it.

MPS further objects to Linear's proposed instruction as incomplete and misleading. Linear incorrectly states that "only if" the liquidated damages amount is disproportionate to the damages anticipated at the time the contract was made, may it be deemed an unenforceable penalty. *See* Linear's proposed instruction, ¶ 2 (citing *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977 (1998). Instead, the standard set out in *Ridgley* is much broader. For example, the *Ridgley* Court explained:

> In short an amount disproportionate to the anticipated damages is termed a "penalty." A contractual provision imposing a "penalty' is ineffective, and the wronged party can collect only the actual damages sustained. ***Any provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty***.

> *Id.* at 977-78 (internal citations omitted).

-47-

Likewise, Linear's statement that "Only if the liquidated damages amount is disproportionate to the damages anticipated at the time the contract was made may it be deemed an unenforceable penalty" is inconsistent with California law.  *See Atel Financial Corp. v. Quaker Coal Co.*, 132 F. Supp. 2d 1233 (N.D. Cal. 2001) ("We think the penalty at bench bears no reasonable relationship to actual damages suffered by respondent as the result of delay but to the contrary appears grossly disproportionate in amount. . . .  The equitable powers of the court exist to insure that the ultimate obligation imposed on the debtor is not unreasonable *in proportion* to the original obligation and the seriousness of the default.") (emphasis in original); *accord Sybron Corp. v. Clark Hospital Supply Corp.*, 76 Cal. App. 3d 896 (1978).

MPS objects to Linear's proposed instruction as incomplete in that it does not inform the jury that Linear is seeking a double recovery – patent infringement damages of $10 and $3 million in liquidated damages for allegedly infringing Linear's patents.

**MPS proposed Contract Damages**

**[If the Court decides that the liquidated damages clause is unenforceable, the jury should not be instructed on damages, because Linear's only claim is for attorneys' fees, which will be submitted to the Court.]**

**[If the Court decides that the question of whether the liquidated damages clause is enforceable should be presented to the jury, then (reserving all its rights on appeal) MPS submits the following instruction]:**

The object of awarding damages is to compensate the party injured by a breach, and not to penalize the breaching party. A penalty provision in a contract is improper and unenforceable.

While parties to a contract are not allowed to provide for penalties in the event of a breach, they can under certain conditions determine in advance what damages will be assessed in the event of a breach. Such a provision is known as a liquidated damages clause. A liquidated damages clause is presumed valid. The liquidated damages provision is in fact an improper penalty if MPS shows by a preponderance of the evidence that:

1. the amount set as liquidated damages does not represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained; or

2. the liquidated damages amount bears no relationship to the range of actual damages that the parties could have anticipated would result from the breach.

The characteristic feature of a penalty is its lack of proportional relation to the damages that may actually flow from failure to perform under a contract.

If you find that the liquidated damages clause was not the result of a reasonable attempt by MPS and Linear to estimate the damages that might by sustained if the Settlement

-49-

Agreement were breached, you should find that the liquidated damages clause is an unenforceable penalty. Likewise, if you find that the amount of the liquidated damages bears no relationship to the range of actual damages that MPS and Linear could have anticipated would result from a breach, you should find that the liquidated damages clause is an unenforceable penalty.

In reaching your decision as to whether the $3 million liquidated damages clause in the Settlement Agreement is a penalty provision, and thus unenforceable, you may consider the parties' stipulation that if Linear succeeds in establishing infringement of a valid claim, MPS will pay Linear patent infringement damages of $10. You may also consider the parties' stipulation that MPS's net sales of the accused MP1543 part in the United States were approximately $100.

Sources:

Adapted from Judicial Council of California Civil Jury Instructions (CACI) Instruction 350, New September 2003, Revised October 2004; Council of California Civil Jury Instructions (CACI) Instruction 360, New September 2003; *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977-78 (1998); Corbin on Contracts § 58.1.

### **Linear's Objections to MPS's proposed instruction on Contract Damages**

Linear objects to MPS's proposed instruction as plainly one-sided and argumentative. For example, MPS's instruction begins with a statement that "[a] penalty provision in a contract is improper and unenforceable" notwithstanding California's law that a liquidated damages provision is presumed valid, *see* Cal. Civ. Code § 1671(b), and that MPS bears the burden of proving unenforceability. Linear further objects to MPS's multiple instructions on the liquidated damages clause as unduly complex and confusing, particularly given that liquidated damages clauses are presumed valid and MPS bears the burden of proving that the clause was unreasonable at the time it was entered into.

-50-

Linear further objects to the instruction to the extent it omits relevant factors (set forth in Linear's instruction) for the jury to consider in determining whether the liquidated damages clause is unreasonable.  Finally, for the reasons set forth in Linear's motion *in limine* no. 3, the amount of actual damages incurred is irrelevant to the issue of whether the liquidated damages clause was a reasonable estimate of a party's damages at the time the contract was made. Moreover, Linear is not seeking duplicative damages in that it is not seeking patent damages, but only the stipulated contractual damages of $ 3 million.  In any event, there is no *per se* rule against recovery of both actual and liquidated damages. *See, e.g.,  Foad Consulting Group v. Musil Govan Azzalino,* 270 F.3d 821 (9th Cir. 2001) citing *City of Manhattan Beach v. Superior Court,* 914 P.2d 160, 169 (Cal. 1996) ("In contrast to many other states, California has a liberal parole evidence rule: It permits consideration of extrinsic evidence to explain the meaning of the terms of a contract even when the meaning appears unambiguous.").

### 3.3.1  IF A CONTRACT INCLUDES LIQUIDATED DAMAGES IN ADDITION TO ACTUAL DAMAGES, THE LIQUIDATED DAMAGES IS AN UNENFORCEABLE PENALTY [DISPUTED AS TO INCLUSION]

**[If the Court decides that the liquidated damages clause is unenforceable, the jury should not be instructed on damages, because Linear's only claim is for attorneys' fees, which will be submitted to the Court.]**

**[If the Court decides that the question of whether the liquidated damages clause is enforceable should be presented to the jury, then (reserving all its rights on appeal) MPS submits the following instruction]:**

A liquidated damages provision is only valid if it is the result of a reasonable endeavor by the parties to estimate the actual damages that might be sustained in the event of a breach.  If a contract awards liquidated damages in addition to the actual damages sustained, the liquidated damages provision is in fact a penalty and is unenforceable.  If you find that the Settlement Agreement provides for liquidated damages in addition to actual damages, you must find that the liquidated damages provision is an unenforceable penalty.

Sources:

*Harbor Island Holdings, L.L.C. v. Kim,* 107 Cal. App. 4th 790, 796-97 (2003); *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.,* 521 F. Supp. 2d 1031, 1045-46 (N.D. Cal. 2007).

### Linear's Objections to MPS's proposed instruction

Linear incorporates its objections to MPS's proposed instruction on Contract Damages.

### 3.3.2  APPLICABILITY OF LIQUIDATED DAMAGES PROVISION [DISPUTED AS TO INCLUSION]

**[If the Court decides that the liquidated damages clause is unenforceable, the jury should not be instructed on damages, because Linear's only claim is for attorneys' fees, which will be submitted to the Court.]**

**[If the Court decides that the question of whether the liquidated damages clause is enforceable should be presented to the jury, then (reserving all its rights on appeal) MPS submits the following instruction]:**

MPS contends that the liquidated damages provision in the Settlement Agreement is only applicable to ITC Proceedings and not to district court actions.  If you find that the liquidated damages provision in the Settlement Agreement is not applicable to district court actions, you must not award Linear any liquidated damages even if you find that MPS breached the Settlement Agreement.

### Linear's Objections to MPS's proposed instruction

Linear objects to the inclusion of this instruction because whether this is an action to enforce the Settlement Agreement is a matter for argument by the parties rather than instructions by the Court.  This issue is also duplicative of instruction 3.2 regarding the parties dispute over the meaning of Section 6.1 of the agreement and this additional instruction would be confusing.

### 3.3.3  DAMAGES MUST BE REASONABLE [DISPUTED AS TO INCLUSION]

**[If the Court decides that the liquidated damages clause is unenforceable, the jury should not be instructed on damages, because Linear's only claim is for attorneys' fees, which will be submitted to the Court.]**

**[If the Court decides that the question of whether the liquidated damages clause is enforceable should be presented to the jury, then (reserving all its rights on appeal) MPS submits the following instruction]**:

The damages you award must, in all cases, be reasonable. Where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered.

In reaching your decision as to whether the $3 million liquidated damages clause in the Settlement Agreement would result in unconscionable and grossly oppressive damages, you may consider the parties' stipulation that if Linear succeeds in establishing infringement of a valid claim, MPS will pay Linear patent infringement damages of $10. You may also consider the parties' stipulation that MPS's net sales of the accused MP1543 product in the United States were approximately $100.

Sources:

Cal. Civ. Code § 3359; *Atel Financial Corp. v. Quaker Coal Co.*, 132 F. Supp. 2d 1233 (N.D. Cal. 2001); *Sybron Corp. v. Clark Hospital Supply Corp.*, 76 Cal. App. 3d 896 (1978); Restatement 2d of Contracts, § 351.

### <u>Linear's Objections to MPS's instruction on Damages Must Be Reasonable</u>

Linear objects to MPS's instruction on Damages Must Be Reasonable as irrelevant to any issue before the jury. MPS agreed to the amount of liquidated damages in the Settlement Agreement and prior instructions address whether inclusion of that clause was reasonable under the circumstances at the time the contract was made. *See* Cal. Civ. Code § 1671(b). MPS's

-54-

additional instruction is cumulative, and unfairly prejudicial and biased in its language, particularly in its repeated use of the terms "unconscionable" and "grossly oppressive." For the reasons stated in Linear's motion *in limine* no. 3, the amount of actual damages is not relevant to any issue in this case.

## 3.4  CURATIVE INSTRUCTION [AGREED]

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of the plaintiff.

Source:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 6.13 (1993).

## 4. INFRINGEMENT

## 4.1  CLAIM INFRINGEMENT [AGREED]

Before you can decide whether MPS has infringed Linear's '178 and '258 patents, you will have to understand patent "claims."  Patent claims define, in words, the boundaries of what is Linear's protected invention.  The patent claims are the numbered paragraphs at the end of the patent.  The patent claims at issue here are claims 1, 2, 34, 41 and 55 of the '178 patent, beginning at column 16, line 35 of the '178 patent, and claims 1, 2, 3 and 34 of the '258 patent, beginning at column 16, line 40 of the '258 patent.  Only the claims of a patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.  The specification and drawings merely describe certain embodiments of the invention.  Each of the claims must be considered individually, and to show infringement of a patent, Linear need only establish that one claim of the patent has been infringed.


Sources:

Adapted from Instruction 3.1 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876-GMS; Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 3.1 (1993).

## 4.2  CONSTRUCTION OF CLAIMS [AGREED IN PART]

You have a copy of each patent in your juror book.  As I already said, the claims of each patent at issue are 1, 2, 34, 41 and 55 of the '178, and 1, 2, 3 and 34 of the '258.

I will provide you with a list of claim terms from each patent and the meaning of the terms the Court construed in Appendix A.  As used in these claims, the definitions for certain terms as I construed them must be applied.

Source:

Adapted from Instruction 3.2 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS).

### MPS Objections to Linear's proposed Construction of Claims

Supplementing its prior submissions and statements, MPS identifies the following objections to the jury instructions insofar as they incorporate the November 20, 2007 Claim Construction Order.

1.  "regulated voltage"

2.  "first state of circuit operation"; "second state of circuit operation"

3.  "third circuit"

4.  "first control signal"; "second control signal"

5.  "threshold"

6.  "selected sleep mode current level"

The bases for MPS's objections are of record.  MPS reserves the right to challenge these constructions on appeal.

-58-

**4.3  PATENT INFRINGEMENT – GENERALLY [AGREED]**

A patent confers on its owner the right to exclude others from importing, making, using, selling or offering to sell the patented invention in the United States during the term of its patent.  The patent owner may do so by filing a lawsuit for patent infringement.  Here, Linear, the patent owner, has sued MPS, and has alleged that MPS's MP 1543 infringed claims 1, 2, 34, 41 and 55 of Linear's '178 patent, and claims 1, 2, 3 and 34 of Linear's '258 patent.

Any person or business entity which imports, makes, uses, sells or offers to sell, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent. You must decide whether Linear has proven by a preponderance of the evidence that MPS's products or methods infringe any of the asserted claims of the '178 or '258 patents.


Source:

Adapted from Instruction 3.3 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

-59-

## 4.4  DIRECT INFRINGEMENT [DISPUTED]

### Linear Proposed Direct Infringement

MPS would be liable for directly infringing Linear's '178 or '258 patents if you find that Linear has proven by a preponderance of the evidence that MPS has made, used, sold, or offered to sell the invention defined in one or more asserted claims of Linear's '178 patent or '258 patent in the United States.

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent.  He may directly infringe even though in good faith he believes that what he is doing is not an infringement.

Source:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 3.4 (1993).

### MPS objections to Linear Proposed Direct Infringement

MPS objects to Linear's proposal because Linear has offered no evidence that MPS has directly infringed through the sale of any product.  Furthermore, it is conceded that sales of the MP1543 do not directly infringe, because the MP1543 must be incorporated into a product and used in a specific way in order to even arguably directly infringe any of the asserted claims.  Thus, the sole purpose of this instruction is to provide a foundation for Linear's potential claim of indirect infringement (which, as MPS pointed out in its Motion in Limine No. 4, fails as a matter of law).  MPS also objects to Linear's proposal as incomplete and misleading in that good faith is relevant to issues such as indirect infringement.

## MPS Proposed Direct Infringement

Deciding whether a patent claim has been directly infringed is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I have already explained to you the key terms of the asserted claims mean as a matter of law. In the second step, you must compare each claim as I have interpreted it to the evidence regarding how the MP1543 part has actually been used (if at all) in the United States to determine whether every element of the claim can be found in such use. This element-by-element comparison is your responsibility as the jury for this case. In order to find infringement, you must find that every single element of a claim can be found. If even one element of the claim is missing, you must find that the claim is not infringed.

The United States patent laws applicable to this case are limited to infringing activities that occur within the United States. Linear's patents do not give it a right to regulate or restrict conduct outside of the United States.

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent. He may directly infringe even though in good faith he believes that what he is doing is not an infringement.

**[For the reasons set forth in MPS' Motion in Limine No. 4, MPS objects to any attempt by Linear to argue that MPS has induced or contributed to infringement. If the Court decides that Linear may present an inducement or contributory infringement argument to the jury, then MPS requests that the following be given]:**

However, good faith is relevant to whether MPS may be liable for indirect infringement, which I will instruct you on shortly.

Source:

Adapted from Instruction 3.4 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876-GMS. *See also* Uniform Jury Instructions for Patent Cases, §3.3 (D. Del. 2004). *See also Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("These extraterritorial activities, however, are irrelevant to the case before us, because '[t]he right conferred by a patent under our law is confined to the United States and its territories, . . .'"

### Linear's Objections to MPS's proposed instruction on Direct Infringement

Linear objects to MPS's proposed instruction on Direct Infringement as an incomplete instruction that unnecessarily deviates so far from the instruction given in the *Telcordia* case to the point that it no longer resembles the source instruction. MPS's instruction does not even instruct the jury on the standard for direct infringement and is lacking such basic principles as 1) the burden of proof is a preponderance of the evidence; 2) a claim can be infringed by making, using, selling or offering to sell the invention, 3) any one of the asserted claims may be singularly infringed; and 4) infringement can be proven by circumstantial evidence (rather than direct evidence of use). MPS's instruction should be rejected on this basis alone for failing to instruct the jury on the necessary elements it needs to consider direct infringement.

Linear further objects to MPS's proposed instruction insofar as it instructs the jury that the "United States patent laws applicable to this case are limited to infringing activities that occur within the United States" and to the unnecessary and prejudicial repetition "Linear's patents do not give it a right to regulate or restrict conduct outside of the United States." Linear has not alleged that its patents restrict activities outside the United States and such a statement is irrelevant to the question of direct infringement. MPS instead improperly interjects this paragraph in order to confuse the jury for the purposes of its patent misuse defense.

Linear objects to MPS's inclusion of the statement "[h]owever, good faith is relevant to whether MPS may be liable for indirect infringement" as unnecessarily confusing to the jury. The jury will be adequately instructed on the defendant's state of mind in the Court's instructions on inducement of infringement and contributory infringement.

Finally, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper.

For the foregoing reasons, MPS's instruction should be rejected. The Court should instead adopt Linear's proposed instruction which fairly and accurately instructs the jury on the standard for direct infringement.

## 4.4.1  INDIRECT INFRINGEMENT [DISPUTED]

### Linear proposed Indirect Infringement

Linear also asserts that MPS indirectly infringes Linear's '178 and '258 patents. There are two kinds of indirect infringement – 1) inducement to infringe; and 2) contributory infringement.  Both types of indirect infringement require that Linear establish that someone other than MPS directly infringes the patent claim.

Source:

Adapted from Instruction 3.4.1 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

### MPS objections to Linear proposed Indirect Infringement

For the reasons set forth in MPS' Motion in Limine No. 4, MPS objects to any attempt by Linear to argue that MPS has induced or contributed to infringement.  There is no evidence that any customer in the United States has used the MP1543 product in a switching voltage regulator or for any other purpose.  There is thus no evidence to support direct infringement by others, a pre-requisite for indirect infringement.

MPS further objects to Linear's deviation from the instruction given in the *Telcordia* case as it results in an incomplete construction, and omits the Federal Circuit's requirement that MPS only be liable, if at all, for acts of indirect infringement stemming from specific instances of direct infringement.  *See DSU Med. Corp. v. JMS Co., Ltd*., 471 F.3d 1293, 1303 (Fed Cir 2006) ("In addition, the patentee always has the burden to show direct infringement for each instance of indirect infringement.").

Linear's opposition to MPS's proposed conditional instruction (which follows) cites to cases holding that circumstantial evidence may be used to prove indirect infringement. The cases, however, do not assist Linear. For example, in *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 Fed. Appx. 879, 884 (Fed. Cir. 2001) (unpublished), the passage cited by Linear was addressing damages issues, not infringement. In any event, *Chiuminatta* involved the sale of a finished product, not a part that itself was incapable of infringement. Even then, the Federal Circuit reversed the district court's finding that "each sale of a Green Machine saw led to an act of infringement." Similarly, *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) dealt with sales of a finished puzzle together with an "an instruction sheet teaching the method of restoring the preselected pattern." *Pickholtz v. Rainbow Techs., Inc.*, 260 F. Supp. 2d 980, 988 (D. Cal. 2003), a district court opinion, is inapplicable – it focuses on the requisite mental state necessary to support an indirect infringement finding. None of Linear's cases relieves a patentee from proving direct infringement by someone as a prerequisite to claiming indirect infringement.

## MPS proposed Indirect Infringement

[If the Court denies MPS's Motion in Limine No. 4]:

Linear asserts that MPS indirectly infringed Linear's '178 and '258 patents.  There are two kinds of indirect infringement – 1) inducement to infringe; and 2) contributory infringement.  Both types of indirect infringement require that Linear establish that someone other than MPS directly infringed the patent claim by using the MP1543 in a way that included all of the requirements of the asserted claims.  MPS can be liable for indirect infringement only if its sale of an MP1543 resulted in a direct infringement in the United States by a purchaser of that product.  Linear must show direct infringement in the United States for each instance of indirect infringement for MPS to be liable for that instance of indirect infringement.

Source:

Adapted from Instruction 3.4.1 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).  *DSU Med. Corp. v. JMS Co., Ltd*., 471 F.3d 1293, 1303 (Fed Cir 2006).

## Linear's Objections to MPS's proposed instruction on Indirect Infringement

Linear objects to MPS's proposed instruction on Indirect Infringement to the extent it misleadingly characterizes Linear's burden as having to "show direct infringement in the United States for each instance of indirect infringement…."  This instruction fails to acknowledge that proof of infringement by circumstantial evidence is sufficient.  *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus*., *Inc.*, No. 00-1172, 2001 U.S. App. LEXIS 233, at *13 (Fed. Cir. Jan. 8, 2001) ("Proof of inducing infringement or direct infringement may be shown by circumstantial evidence."); *see also Pickholtz v. Rainbow Techs., Inc*., 260 F. Supp. 2d 980, 988 (D. Cal. 2003) (circumstantial evidence may be used to prove contributory infringement).

Moreover, circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.  *Moleculon Research Corp. v. CBS, Inc*., 793 F.2d 1261, 1272 (Fed. Cir. 1986); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) (same).  Linear has presented ample circumstantial evidence of infringement by others.

MPS's reliance on the *DSU* decision is misplaced.  MPS is wrong to insinuate that Linear must prove that each accused part sold was used in an infringing manner.  *DSU* makes no such pronouncement.  Rather, the *DSU* Court was simply making the unremarkable observation that there can be no indirect infringement, unless direct infringement follows.  Linear does not have to show that each sale resulted in infringement; rather Linear just has to show that it is more probable than not that a customer used the MP1543 in the way it was intended to be used – namely, to infringe the Linear Patents.

Finally, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper.

## 4.5  INDUCING PATENT INFRINGEMENT [DISPUTED]

### Linear proposed Inducing Patent Infringement

To be liable for inducing patent infringement, MPS must have known of the patent and actively encouraged or instructed another person how to use its product or perform a method in a manner that you find infringes the asserted patent claims.

Thus, to prove that MPS induced infringement of the '178 or '258 patents, Linear must prove by a preponderance of the evidence the following four things with respect to that patent:

1.    MPS had knowledge of the patent;

2.    MPS actively encouraged or instructed another person how to use a product or perform a method in a way that you, the jury, finds infringes the patent claims;

3.    MPS had an affirmative intent to cause the acts that constitute direct infringement and must have or should have known that its actions would cause direct infringement; and

4.    The induced person directly infringed a claim of the patent.

Linear may prove these elements by direct or circumstantial evidence.

Source:

Adapted from Instruction 3.5 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

### MPS Objections to Linear proposed Inducing Patent Infringement

For the reasons set forth in MPS' Motion in Limine No. 4, MPS objects to any attempt by Linear to argue that MPS has induced or contributed to infringement.  There is no evidence that any customer in the United States has used the MP1543 product in a switching voltage regulator

or for any other purpose.  There is thus no evidence to support direct infringement by others, a

pre-requisite for indirect infringement.

       MPS objects to Linear's deviation from the instruction given in the *Telcordia* case

as misleading as to Linear's burden to show each of the elements of induced infringement.

## **MPS proposed Inducing Patent Infringement**

[If the Court denies MPS's Motion in Limine No. 4]:

To be liable for inducing patent infringement, MPS must have known of the patent and actively encouraged or instructed another person how to use its product or perform a method in a manner that you find infringes the asserted patent claims.

Thus, to prove that MPS induced infringement of the '178 or '258 patents, Linear must prove by a preponderance of the evidence the following four things with respect to that patent:

1. MPS had knowledge of the '178 and '258 patents;

2. MPS actively encouraged or instructed another person in the United States how to use a product or perform a method in a way that you, the jury, finds infringes the patent claims;

3. MPS had an affirmative intent to cause the acts that constitute direct infringement and must have or should have known that its actions would cause direct infringement; and

4. The induced person directly infringed a claim of the patent in the United States.

All four of these things must be proven by either direct or circumstantial evidence before you may find that MPS induced patent infringement.


Source:

Adapted from Instruction 3.5 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS); *See also* Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 3.6 (1993); Instruction 4.3 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

## **Linear's Objections to MPS's proposed instruction on Inducing Patent Infringment**

Linear objects to MPS's deviation from the instruction given in the *Telcordia* case as misleading as to the elements of induced infringement, particularly the repeated reference to "in the United States" as unnecessary and confusing to the jury.

Finally, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper.

## 4.6  CONTRIBUTORY INFRINGEMENT [DISPUTED]

### Linear proposed Contributory Infringement

MPS may also be infringing if it contributes to the infringement of others.  The elements of contributory infringement are:

1.    sale or supply by MPS;

2.    of a material component of the patented invention, or a material component for use in practicing a patented process, that is not a staple article of commerce capable of substantial noninfringing use;

3.    with knowledge of the patent and with knowledge that the component was especially made or adapted for use in infringement of such invention.

A "staple" article is a commodity or product with substantial uses apart from a patented invention.  In determining whether the component supplied by MPS is a "staple article of commerce," you should take into account the quality, quantity, and efficiency of MPS's suggested uses for its MP 1543 product.

MPS can be liable for contributory infringement if one of its customers directly infringes a patent claim.  Proof of contributory infringement and the underlying direct infringement may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

Source:

Adapted from Instruction 3.6 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

### MPS Objections to Linear proposed Contributory Infringement

For the reasons set forth in MPS' Motion in Limine No. 4, MPS objects to any attempt by Linear to argue that MPS has induced or contributed to infringement.  There is no evidence that

any customer in the United States has used the MP1543 product in a switching voltage regulator or for any other purpose. There is thus no evidence to support direct infringement by others, a pre-requisite for indirect infringement.

MPS believes that the Court's Instruction 4.4 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS), provides a more accurate and concise statement of the law than provided in Linear's proposed Contributory infringement. For example, the *Energy Transportation* instruction makes clear the requirement of direct infringement. MPS thus proposes an instruction based on the *Energy Transportation* Instruction 4.4.

## MPS proposed Contributory Infringement

[If the Court denies MPS's Motion in Limine No. 4]:

Linear asserts that MPS contributed to another's infringement. To show contributory infringement, Linear has the burden to prove that it is more likely than not that there was contributory infringement.

Thus, to prove that MPS contributed to another's infringement of the '178 and '258 patents, Linear must prove by a preponderance of the evidence each of the following four things:

1.    MPS sold or supplied;

2.    a material component of the patented invention that is not a staple article of commerce capable of substantial non-infringing use;

3    with knowledge that the component was especially made or adapted for use in a n infringing product. This requires that MPS knew of the patent and knew that the patent would be infringed by the use of their component; and

4.    the acts of MPS resulted in a direct infringement of a claim of the patents by another person in the United States.

A "staple article of commerce capable of substantial non-infringing use" is something that has uses other than as a part of component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Source:

Adapted from Instruction 4.4 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

## **Linear's Objections to MPS's proposed instruction on Contributory Infringement**

Linear believes that the Court's instruction in the *Telcordia* case (and offered by Linear) provides a more accurate, concise and complete statement of the law than MPS's proposed Contributory Infringement instruction.  In particular, Linear objects to MPS's instruction as inaccurate and misleading to the extent it excludes that proof of contributory infringement and the underlying direct infringement may be based on circumstantial evidence.

Finally, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper.

## 4.7  LITERAL INFRINGEMENT [DISPUTED]

### Linear proposed Literal Infringement

A patent claim is literally infringed if MPS's product or method includes each and every component, or limitation, of that claim.  If MPS's product or method includes each and every limitation of any claim of the '178 or '258 patents, then you must find that MPS infringes that claim.  You must conduct this comparison for each asserted claim of each patent-in-suit. Infringement may not be avoided simply by adding features or components or method steps not required by the claims.  If MPS's product or method do not meet each of the limitations of any asserted claim of the '178 or '258 patents, then there is no literal infringement.  You must determine literal infringement with respect to each patent claim, and each product and method, individually.

Source:

Adapted from Instruction 3.7 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

### MPS Objections to Linear proposed Literal Infringement

MPS believes that the Court's Instruction 4.5 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS), provides a more accurate and concise statement of the law than provided in Linear's proposed Contributory infringement.

MPS objects to Linear's proposal because Linear has offered no evidence that MPS has directly infringed through the sale of any product.  Furthermore, it is conceded that sales of the MP1543 do not directly infringe, because the MP1543 must be incorporated into a product and used in a specific way in order to even arguably directly infringe any of the asserted claims.

Thus, the sole purpose of this instruction is to provide a foundation for Linear's potential claim of indirect infringement (which, as MPS pointed out in its Motion in Limine No. 4, fails as a matter of law).

MPS objects to Linear's proposal in that it suggests that the jury could find literal infringement based upon conduct outside the United States.  This is contrary to the law.  *See Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("These extraterritorial activities, however, are irrelevant to the case before us, because '[t]he right conferred by a patent under our law is confined to the United States and its territories, . . .'").

## MPS proposed Literal Infringement

To determine literal infringement, you must compare the products or methods that incorporate the accused MP1543 part with each claim that Linear asserts was infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if the product or method incorporating the accused MP1543 part is in the United States and includes each and every element in that patent claim. If the product incorporating the accused MP1543 or method using the accused MP1543 does not contain one or more elements recited in a claim, then MPS does not literally infringe that claim. You must determine literal infringement with respect to each claim individually.

The products or methods incorporating the accused MP1543 part should be compared to the invention described in each patent claim it is alleged to infringe, not to Linear's preferred embodiment of the claimed invention. The same element of the accused part may satisfy more than one element of a claim.

Source:

Adapted from Court's Instruction 4.5 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

## Linear's Objections to MPS's proposed instruction on Literal Infringement

Linear objects to MPS's proposed instruction on Literal Infringement as a misleading and inaccurate statement of the law. In particular, MPS's proposed instruction omits the important statement for the jury that "[i]nfringement may not be avoided simply by adding features or components or method steps not required by the claims." The jury will be confused in this case without that necessary guidance.

Linear further objects to MPS's deviation from the instruction given in *Energy Transportation Group, Inc. v. Sonic Innovations* to the extent it unnecessarily and confusingly includes the phrase "the accused MP1543 part is in the United States."

Finally, for the reasons set forth in Linear's opposition to MPS's motion *in limine* no. 4, Linear has in fact presented evidence of direct infringement by MPS. Furthermore, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper.

## 4.8  DOCTRINE OF EQUIVALENTS [DISPUTED AS TO INCLUSION]

### Linear proposed Doctrine of Equivalents

If you do not find literal infringement you may consider infringement under the "doctrine of equivalents."  You may find that MPS's product and method infringe a claim, even if not all of the components or method steps of the claim are literally present in MPS's product. You may find infringement in such circumstances if the components or method steps of MPS's product are equivalent to that claimed in at least one of Linear's patent claims.  You must find that there is an equivalent component or method step in MPS's product or method for each element or method step of the patent claim that is not literally present in MPS's product or method.  This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented.  Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while avoiding the literal language of the patent claims.

The test to determine equivalence under the doctrine of equivalents is whether MPS's product and components and methods involve no substantial differences from the inventions claimed in Linear's patents.  One way to determine if the differences are substantial is to determine whether each component of MPS's product, or each method step in MPS's methods, perform substantially the same function in substantially the same way to produce substantially the same result as the corresponding component or method step claimed in Linear's patents.

-80-

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued.  The question of whether MPS's product or method and components are equivalent to that defined in Linear's claims is to be determined as of the time of the alleged infringement.


Source:

Adapted from Instruction 3.8 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

### MPS Objection to Linear proposed Doctrine of Equivalents

MPS objects to the inclusion of this instruction.  The doctrine of equivalents is not at issue in this case.  Linear did not offer any evidence or argument, either in response to MPS's interrogatories or in any of its expert's three reports, that MPS has infringed any claim under the doctrine of equivalents.  Thus, there is no basis for instructing the jury on the doctrine of equivalents.

It is black letter law that Linear must present "*evidence and argument* concerning the doctrine and each of its elements." *nCUBE Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (emphasis in original).  In particular, Linear had to provide "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *Texas Instr. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).  Linear never even attempted to provide such testimony and argument.  It cannot present an infringement argument based on the doctrine of equivalents.

-81-

**<u>Linear's Response to MPS's Objection</u>**

MPS's attempt to in effect seek judgment in its favor by arguing about the

sufficiency of the evidence on substantive issues in the context of jury instructions is improper.

## 4.9  MEANS-PLUS-FUNCTION CLAIMS [AGREED]

Claim 34 of the '178 patent defines three requirements of the invention as means for performing certain functions.

A means-plus-function element is a claim element that claims a means for performing a specified function.  For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop.  The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop" and all equivalents.

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the specified function.  Specifically, for claim 34 of the '178 patent, you must first determine whether MPS's MP1543 performs the functions of that claim. If not, the means-plus-function claim element is not infringed.

Second, if MPS's MP 1543 does perform the required function, you must identify the structure in that product that actually performs this function.

Finally, you must determine whether that accused structure is the same as or equivalent to the structure identified in the patent for performing the required function that I described to you earlier.  If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of the claim is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.  Another way is to consider whether people of ordinary skill

in the art would have believed that the structure of the accused product and the structure in the

patent were interchangeable as of the date the patent issued.


Source:

Adapted from Instruction 3.9 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS).

## 4.10  WILLFUL INFRINGEMENT [DISPUTED, DISPUTED AS TO INCLUSION]

### Linear proposed Willful Infringement

If you find by a preponderance of the evidence that MPS infringed Linear's patents, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful.  Willfulness must be proven by clear and convincing evidence showing that:

1.  MPS had actual knowledge of Linear's patents,

2.  A reasonable person, with knowledge of Linear's patents, would have concluded that: (a) MPS's actions were highly likely to infringe Linear's '178 or '258 patent, and (b) Linear's '178 or '258 patent, were highly likely to be valid, and

3.  MPS acted even though it knew, or it was so obvious that it should have known, that its actions were highly likely to infringe a valid patent.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances compromises a number of factors, which include, but are not limited to, whether MPS intentionally copied the claimed invention, and whether MPS presented a substantial defense to infringement, including the defense that the patent is invalid.

Source:

Adapted from Instruction 12.8 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

### MPS Objections to Linear proposed Willful Infringement

MPS objects to the inclusion of this instruction.

MPS objects to Linear's inclusion of allegations that MPS's infringement was willful.  The issue of willfulness is not relevant to any issue in this case; it would only be relevant if there were a possibility that patent infringement damages could be enhanced.  There is no such possibility in this case.  The parties have stipulated to patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim.  D.I. 88.  Thus, Linear does not have an opportunity to claim enhanced damages.  Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS.  In addition, Linear brought this lawsuit without providing notice to MPS, MPS discontinued sales of the MP1543, and total net sales of the MP1543 in the United States totaled 110 parts and approximately $100.  Given this factual record, Linear had no basis for alleging willful infringement in the first place.

MPS also objects to Linear's inclusion of infringement under the doctrine of equivalents.  The doctrine of equivalents is not at issue in this case.  Linear did not offer any evidence or argument, either in response to MPS's interrogatories or in any of its expert's three reports, that MPS has infringed any claim under the doctrine of equivalents.  Thus, there is no basis for instructing the jury on the doctrine of equivalents.

It is black letter law that Linear must present "*evidence and argument* concerning the doctrine and each of its elements."  *nCUBE Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (emphasis in original).  In particular, Linear had to provide "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents."  *Texas Instr. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).

Linear never even attempted to provide such testimony and argument. It cannot present an infringement argument based on the doctrine of equivalents.

### MPS proposed Willful Infringement

**[If the Court concludes an instruction on willful infringement is appropriate]**

If you find by a preponderance of the evidence that MPS infringed Linear's patents, then you must further determine if this infringement was willful. Willfulness must be proven by clear and convincing evidence showing that:

1. MPS had actual knowledge of Linear's patents,

2. A reasonable person, with knowledge of Linear's patents, would have concluded that: (a) MPS's actions were highly likely to infringe Linear's '178 or '258 patent, and (b) Linear's '178 or '258 patent, were highly likely to be valid, and

3. MPS acted even though it knew, or it was so obvious that it should have known, that its actions were highly likely to infringe a valid patent.

In making the determination as to willfulness, you must consider the totality of the circumstances and determine whether there was an objectively high likelihood that MPS knew that it was infringing a valid patent. In making this determination you may consider a number of factors, which include, but are not limited to, whether MPS intentionally copied the claimed invention, whether Linear provided notice to MPS of its infringement allegations before filing this lawsuit, whether MPS chose to discontinue sales of the MP1543 after receiving notice from Linear, the volume of sales of the MP1543, and whether MPS presented a substantial defense of non-infringement, invalidity, or unenforceability.

Source:

Adapted from Instruction 10.8 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

## **Linear's Objections to MPS's proposed instruction on Willful Infringement**

Linear objects to MPS's instruction as misleading to the jury, in particular the restatement that the jury must again "determine whether there was an objectively high likelihood that MPS knew that it was infringing a valid patent." That statement was accurately laid out for the jury in the previously enumerated factors and its repetition places undue emphasis on it. Linear also objects to the factors MPS adds to its instruction, in particular "whether Linear provided notice to MPS of its infringement allegations before filing this lawsuit." Such a statement is an incorrect statement of law as the proper inquiry is whether MPS had notice of the patents in suit, a fact it cannot dispute because it was unquestionably aware of the patents from the prior ITC action and the Settlement Agreement. Linear also objects to the factor "whether MPS chose to discontinue sales of the MP1543 after receiving notice from Linear" as confusing and irrelevant because it ignores MPS's state of mind at the time it intentionally chose to willfully infringe Linear's patents. Linear further objects to the inclusion of the factor "the volume of sales of the MP1543" as MPS's failure in the marketplace is irrelevant to its intent to willfully infringe Linear's patents. Linear additionally objects to MPS's reference to a defense of "unenforceability" as that is an equitable question for the Court and not the jury.

Finally, Linear objects to MPS's omission of its language that MPS's infringement may be under the doctrine of equivalents.

## 5.  INVALIDITY DEFENSES [DISPUTED AS TO INCLUSION]

**[Linear objects to the inclusion of any instruction on invalidity as MPS contractually agreed in the Settlement Agreement that it would not assert that defense.]**

### 5.1  SUMMARY OF THE INVALIDITY DEFENSE [DISPUTED]

**Linear's proposed instruction on Summary of the Invalidity Defense**

**[Linear contends that the jury should not be instructed on invalidity because MPS contractually agreed in the Settlement Agreement that it would not assert that defense. Linear proposes this instruction to the extent the Court instructs the jury on invalidity]**

MPS contends that the asserted claims of the patents-in-suit are invalid.  MPS has the burden of proving by clear and convincing evidence that each claim is invalid.

Claims of an issued patent are presumed valid.  However, they may be found to be invalid, if proven by clear and convincing evidence.  Thus, you must determine whether each of Linear's claims is invalid.

MPS contends that all of the asserted patent claims are invalid for one or more reasons, depending on the claim in question.  I will now instruct you in more detail why the Defendants allege that the asserted claims of the '178 and '258 patents are invalid.

Source:

Adapted from Instruction 5.0 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

**MPS objections to Linear's proposed instruction on Summary of the Invalidity Defense**

MPS objects to the repetition of the burden of proof as unnecessary and confusing.

## **MPS's proposed instruction on Summary of the Invalidity Defense**

MPS contends that the asserted claims of the patents-in-suit are invalid. MPS has the burden of proving by clear and convincing evidence that each claim is invalid.

MPS contends that all of the asserted patent claims are invalid for one or more reasons, depending on the claim in question. I will now instruct you in more detail why MPS alleges that the asserted claims of the '178 and '258 patents are invalid.

Source:

Adapted from Instruction 5.0 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

## **Linear's objections to MPS's proposed instruction on Summary of the Invalidity Defense**

As a preliminary matter, Linear objects to the inclusion of any instruction on validity because MPS contractually agreed in the Settlement Agreement that it would not contest the validity of Linear's Patents. Linear has moved to strike MPS's validity defenses (D.I. 11) which is currently pending before the Court.

Linear objects to MPS's instruction as a misleading and incomplete statement of the law. In particular, MPS's instruction omits the black letter law that "[c]laims of an issued patent are presumed valid." 35 U.S.C. § 282 ("A patent shall be presumed valid."). Linear further objects to MPS's omission that invalidity must be determined for each asserted claim.

## 5.2  ANTICIPATION [DISPUTED AS TO INCLUSION]

### Linear's proposed instruction on Anticipation

MPS contends that the inventions defined in the claims of Linear's patents are not new or novel.  Something that shows that a patent claim is not novel is said to anticipate that claim.  Several different types of events may anticipate and invalidate a patent claim.  Here, MPS contends that the claims are anticipated by different applications, patents and publications which, if they meet certain requirements, may be "prior art."  I will explain the requirements as to each shortly.

In order to prove invalidity of the invention claimed in Linear's patents for anticipation, MPS must prove by clear and convincing evidence for each claim that each and every limitation of the claimed invention is found in a single piece of prior art.  Absence from the single piece of prior art of even a single claim limitation negates anticipation.  Stated another way, MPS may not rely on evidence beyond the piece of prior art itself, such as testimony by the prior art reference's author, to supplement or fill gaps in the teachings of the prior art.

To meet its burden, MPS must prove by clear and convincing evidence that:

1)        the material upon which it relies is "prior art" under the law;

2)        if the material is prior art, that the prior art contains each and every limitation of the claimed invention; and

3)        the prior art contains enough information to enable one skilled in the art to make and use the claimed invention.

If you find that MPS has failed to meet its burden with respect to any of these elements, then you must find that the claims are not invalid for anticipation.

A piece of prior art anticipate a patent claim if it discloses, either expressly or inherently, all of the limitations of the claim. There is no anticipation unless every one of the limitations of the claimed invention is found in a single piece of prior art. If the piece of prior art is silent about a limitation of a claim, it may still anticipate that claim if that limitation is inherently present in that piece of prior art. To prove that a limitation is inherent in a piece of prior art, MPS must show by clear and convincing evidence that the missing matter is necessarily present in the piece of prior art and that it would be recognized by persons skilled in the art. Inherency may not be established by probabilities or possibilities. Thus, the allegedly inherent property must always be present. The mere fact that a certain thing may result from a given set of circumstances is not enough.

Prior art that is publicly known is information in the general body of knowledge in the public domain, such as articles or other patents before the invention was made. It is not necessary that the prior art have been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to make use of the prior art contents.

You must keep these requirements in mind and apply them to each kind of alleged anticipatory prior art offered by MPS. There are additional requirements that apply to each kind of anticipation that MPS contends apply here, and I will discuss those further.

Accordingly, the claims of the '178 and '258 patents are anticipated if each and every element of the claimed inventions therein were disclosed in a single prior art reference before March 23, 1992.

<u>Sources:</u>

Adapted from Instruction 3.1 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876-GMS

### **MPS's Objection to Linear's proposed instruction on Anticipation**

This Court's statement of the law of anticipation in Instruction 6.1 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS) is more concise and accurate, and MPS urges its adoption. In addition, Linear's proposal erroneously suggests that testimony regarding inherency may not be considered, when in fact the opposite is true.

### **MPS's proposed instruction on Anticipation**

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, MPS must show that the claimed invention is not new.

In this case, MPS contends that the claims of the '178 and '258 patents are anticipated.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed inventions is found in the prior publication, patent, etc., you should take into account what a person of ordinary skill

in the art would have understood from his or her examination of the particular publication, patent, etc.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular prior publication, invention, etc., but also what is inherently featured in or resulted from a natural result of its practice.  This is called "inherency."  A party claiming inherency must prove it by clear and convincing evidence.  To establish inherency, the evidence must make clear that prior art either necessarily featured or resulted in the missing descriptive matter and that it would be so recognized by persons of ordinary skill in the art.  Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time the patent application was filed would have recognized the inherent disclosure.  Thus, a prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that MPS contends apply in this case.  I will now instruct you about those.

Source:

Adapted from Instruction 6.1 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

**Linear's Objection to MPS's proposed instruction on Anticipation**

As a preliminary matter, Linear objects to the inclusion of any instruction on validity because MPS contractually agreed in the Settlement Agreement that it would not contest

the validity of Linear's Patents.  Linear has moved to strike MPS's validity defenses (D.I. 11) which is currently pending before the Court.

Linear also objects to MPS's instruction as misleading and incomplete in that it omits several key elements of anticipation, particularly 1) that is it MPS's burden to establish that any asserted prior art actually qualifies as prior art and 2) that the prior art must be enabling to one of ordinary skill in the art so they can make and use the claimed invention.  Linear further objects to MPS's instruction as failing to instruct the jury as to the critical dates for determining what is prior art to the claims.

### 5.3  PRINTED PUBLICATIONS AS PRIOR ART [DISPUTED AS TO INCLUSION]

MPS contends that the asserted claims of the '178 and '258 patents are anticipated because the inventions defined in those claims were described in a printed publication more than one year before the patentee filed the U.S. patent application or invented the invention.

A patent claim is invalid if the invention defined by that claim was described in a printed publication before it was invented by the patentee or more than one year prior to the filing date of the U.S. application.  A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, or photocopies.  An issued patent is a printed publication.  A published patent application is a printed publication as of its publication date.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each and every element of the claimed invention to the reader.  The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation.  In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art one year before the application for the '178 patent was filed, and you may consider evidence that sheds light on the knowledge such a person would have had.

Source:

Adapted from Instruction 6.3 given in Energy Transportation Group, Inc. v. Sonic Innovations, Inc., No. 05-422 (GMS).

## **Linear's Objections to the proposed instruction on Printed Publications as Prior Art**

Linear objects to the inclusion of any instruction on validity because MPS contractually agreed in the Settlement Agreement that it would not contest the validity of Linear's Patents.  Linear has moved to strike MPS's validity defenses (D.I. 11) which is currently pending before the Court.

## 5.4  OBVIOUSNESS [DISPUTED AS TO INCLUSION]

### Linear's proposed instruction on Obviousness

MPS contends that the asserted claims of the '178 and '258 patents are invalid because the claimed inventions were "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art at the time the invention was made.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether MPS has established that the claimed inventions are obvious:

1)    the scope and content of the prior art relied upon by MPS;

2)    the difference or differences, if any, between each claim of the '178 patent and each claim of the '258 patent that MPS contends is obvious and the prior art;

3)    the level of ordinary skill in the art at the time the inventions of the '178 and '258 patents were made; and

4)    additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.  Defendant MPS bears the burden of proving obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

Source:

Adapted from Instruction 7.1 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

### **MPS's Objections to Linear's proposed instruction on Obviousness**

MPS objects to Linear's deviation from the Supreme Court's decision in *KSR Intern, Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007). Specifically, Linear's proposed instruction fails to articulate the factors the jury should consider in evaluating the obviousness of the asserted claims. Through its proposed instruction, Linear is attempting to ignore the law as set forth in *KSR* and have the jury consider the question of obviousness using the wrong legal standard.

## MPS's proposed instruction on Obviousness

Even if an invention claimed in Linear's patents is not anticipated by the prior art, the claimed invention may nevertheless be invalid if it would have been obvious to one of skill in the art at the time the invention was made.

In order to prove that the invention claimed in the claims of Linear's patents is invalid for obviousness, MPS must prove by clear and convincing evidence for each claim that the differences between the subject matter of the claimed inventions and the prior art are such that the subject matter of the claim taken as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the relevant art.

If the invention claimed in the claims of Linear's patents is no more than a predictable variation of the work in the prior art, the invention is likely obvious. Likewise, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.

One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims. Any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed. Common sense teaches that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.

When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to

pursue the known options within his or her technical grasp.  If this leads to the anticipated

success, it is likely the product not of innovation but of ordinary skill and common sense.

In order to be patentable, an invention must not be obvious to a person of ordinary

skill in the art at the time the invention was made.  A patent for a combination which only unites

old elements with no change in their respective functions withdraws what is already known into

the field of the patent's monopoly and diminishes the resources available to others.  The issue is

not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a

genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the

time it was made.

In determining whether or not MPS has established obviousness by clear and

convincing evidence, you must consider the following factors:

    1.    The scope and content of the prior art relied upon by MPS;

    2.    The differences between each claim of Linear's patents and the prior art;
          and

    3.    The level of ordinary skill in the pertinent art at the time the invention of
          Linear's patents was made.

You may also consider any secondary considerations of non-obviousness.  I will

now explain each of these factors.


Sources:

*KSR Intern, Co. v. Teleflex, Inc.,* 127 S.Ct. 1727 (2007); *Leapfrog Enterprises v. Fisher-Price,
Inc.,* 485 F.3d 1157 (Fed. Cir. 2007); Instruction 4.5 of *Telcordia Technologies, Inc. v. Cisco
Systems, Inc.*, No. 04-876 (GMS).

-101-

## **<u>Linear's Objections to MPS's proposed instruction on Obviousness</u>**

As a preliminary matter, Linear objects to the inclusion of any instruction on validity because MPS contractually agreed in the Settlement Agreement that it would not contest the validity of Linear's Patents.  Linear has moved to strike MPS's validity defenses (D.I. 11) which is currently pending before the Court.

Linear also objects to MPS's removal of secondary considerations as a factor to be considered for obviousness.  It is black letter law that objective indicia of non-obviousness must be considered as part of the obviousness inquiry.  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000) ("Our precedents clearly hold that secondary considerations, when present, must be considered in determining obviousness.").  MPS's permissive characterization that the jury "may also consider any secondary considerations" is both misleading and a misstatement of the law.  Linear's proposed instruction correctly states the factors to be considered in assessing obviousness.

Linear further objects to MPS's instruction as interjecting unfairly prejudicial issues entirely unrelated to obviousness such as "[a] patent combination which only unites old elements with no change in their respective function withdraws what is already know into the field of the patent's monopoly and diminishes the resources available to others."  Such a statement, which did not appear in the Court's instruction in the *Telcordia* case, does nothing to describe obviousness and only serves to prejudicially mischaracterize the patentee as a monopolist.

-102-

### 5.4.1  SCOPE AND CONTENT OF THE PRIOR ART [DISPUTED AS TO INCLUSION]

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.

You must determine what is the prior art that may be considered in determining whether the asserted claims of the '178 and '258 patents are obvious.  A prior art reference may be considered if it discloses information designed to solve the same problems faced by the inventors or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problems faced by the inventors.


Sources:

Adapted from Instruction 7.2 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

### **Linear's Objection to MPS's proposed instruction on Scope and Content of the Prior Art**

As a preliminary matter, Linear objects to the inclusion of any instruction on validity because MPS contractually agreed in the Settlement Agreement that it would not contest the validity of Linear's Patents.  Linear has moved to strike MPS's validity defenses (D.I. 11) which is currently pending before the Court.

## 5.4.2  DIFFERENCES BETWEEN THE CLAIMS AND THE PRIOR ART [DISPUTED AS TO INCLUSION]

### Linear's proposed instruction on the Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of any such differences on the obviousness or non-obviousness of the invention as a whole and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed

at the time of the invention that would have prompted a person of ordinary skill in the art in the

relevant field to combine the known elements in the way the claimed invention does.

        Again, you must undertake this analysis separately for each claim that MPS

contends is obvious.

Source:

Adapted from Instruction 7.5 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.,* No. 05-422 (GMS).

**<ins>MPS's Objections to Linear's proposed instruction on Differences Between the Claims and the Prior Art</ins>**

        MPS objects to Linear's proposed language, "Most, if not all, inventions rely on

building blocks long since uncovered, and claimed discoveries almost of necessity will likely be

combinations of what is already known" as unnecessary and redundant to the statement that "you

should consider whether a reason existed at the time of the invention that would have prompted a

person of ordinary skill in the art in the relevant field to combine the known elements in the way

the claimed invention does."

**MPS's proposed instruction on Differences Between The Claims And The Prior Art**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directly to the subject matter of the claimed invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. You should consider whether a reasons existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

<u>Source</u>:

Adapted from Instruction 7.5 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

**<u>Linear's Objections to MPS's proposed instruction on Differences Between the Claims and the Prior Art</u>**

As a preliminary matter, Linear objects to the inclusion of any instruction on validity because MPS contractually agreed in the Settlement Agreement that it would not contest the validity of Linear's Patents.  Linear has moved to strike MPS's validity defenses (D.I. 11) which is currently pending before the Court.

Linear also objects to MPS's deviation from the instruction given in the *Energy Transportation Group* case as a misleading and incomplete statement of the law.  In particular, MPS's instruction omits the clarifying statement that "[m]ost, if not all, inventions rely on building blocks long since unconvered, and claimed discoveries almost of necessity will likely be combinations of what is already known."  Linear's proposed instruction provides a complete statement of the law and more closely tracks the instruction the Court previously gave in the *Energy Transportation Group* case.

### 5.4.3  LEVEL OF ORDINARY SKILL [DISPUTED AS TO INCLUSION]

#### MPS's proposed instruction on Level of Ordinary Skill

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the pertinent art field.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.    The level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

2.    The types of problems encountered in the art at the time of the invention; and

3.    The sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

Sources:

Adapted from Instruction 7.6 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

#### Linear's Objection to MPS's proposed instruction on Level of Ordinary Skill

Linear objects to the inclusion of any instruction on validity because MPS contractually agreed in the Settlement Agreement that it would not contest the validity of Linear's

Patents.  Linear has moved to strike MPS's validity defenses (D.I. 11) which is currently pending before the Court.

### 5.4.4  FACTORS INDICATING OBVIOUSNESS: INDEPENDENT INVENTION BY OTHERS [DISPUTED AS TO INCLUSION]

**MPS's proposed instruction on Factors Indicating Obviousness: Independent Invention By Others**

In reaching your determination on the issue of obviousness you should also consider whether or not the claimed invention was invented independently by other persons, either before it was invented by the patentee or at about the same time.  Just as the failure of others to make the invention may be evidence that an invention would not have been obvious, independent making of the invention by persons other than the inventor at about the same time may be evidence that the invention would have been obvious, depending on the circumstances.

Sources:

Adapted from Instruction 7.7 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

**Linear's Objection to MPS's proposed instruction on Factors Indicating Obviousness: Independent Invention By Others**

Linear objects to the inclusion of any instruction on validity because MPS contractually agreed in the Settlement Agreement that it would not contest the validity of Linear's Patents.  Linear has moved to strike MPS's validity defenses (D.I. 11) which is currently pending before the Court.

### 5.4.5  FACTORS INDICATING NON-OBVIOUSNESS/SECONDARY CONSIDERATIONS OF OBVIOUSNESS [DISPUTED AS TO INCLUSION]

**Linear's proposed instruction on Factors Indicating Non-Obviousness**

Before deciding the issue of obviousness, you must also consider certain factors which, if established, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole.

1.      Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.      Was there long felt need for a solution to the problem facing the inventors which was satisfied by the claimed invention?

3.      Did others try, but fail, to solve the problem solved by the claimed invention?

4.      Did others copy the claimed invention?

5.      Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.      Did others in the field, or did MPS, praise the claimed invention or express surprise at the making of the claimed invention?

7.      Did others accept licenses under the '178 patent or the '258 patent because of the merits of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

Source:

Adapted from Instruction 7.8 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.,* No. 05-422 (GMS).

**MPS's Objections to Linear's proposed instruction on Factors Indicating Non-Obviousness**

MPS objects to Linear's inclusion of commercial success as a factor without discussing the lack of commercial success. This is misleading to the jury and impermissibly would allow Linear to show evidence of commercial success without permitting MPS to rebut that evidence. The parties stipulated that MPS sold approximately $100 worth of the MP1543 in the U.S. Since Linear is claiming that the MP1543 embodies the asserted claims, the lack of commercial success of the MP1543 either indicates that the asserted claims were obvious or that the MP1543 does not embody the asserted claims. *See, e.g., Ferag AG v. Grapha-Holding AG*, 935 F. Supp. 1238, 1247 (D.D.C. 1996) (holding patent invalid for obvious and finding that the "lack of commercial success buttresses the finding that the patent is obvious"); *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.*, 547 F.2d 1300, 1306 (7th Cir. 1976) (noting that lack of commercial success of the product at least has a bearing upon whether they rendered the inventions obvious).

MPS also objects to Linear's titling of this instruction. The Supreme Court has titled these considerations as "secondary." *See KSR Intern, Co. v. Teleflex, Inc.,* 127 S.Ct. 1727 (2007); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 86 S.Ct. 684 (1966).

## <u>MPS's proposed instruction on Secondary Considerations of Obviousness</u>

In deciding whether a claimed invention is obvious, you must consider the following secondary evidence which may show that the claims at issue are not obvious:

1. Commercial success, or lack thereof, of products covered by Linear's '178 and '258 patents. Evidence concerning commercial success may take the form of sales figures coupled with market share data, or sales figures alone. The commercial success, or lack thereof, may be shown through the sales of anyone practicing the claimed inventions, including MPS.

2. A long felt need in the art which was satisfied by the inventions of the patents in suit;

3. The failure of others to make the invention;

4. Unexpected results achieved by the invention;

5. Praise of the invention by those in the field;

6. The taking of licenses under the patent by others;

7. Skepticism or expressions of disbelief;

There must be a connection between the evidence showing any of these factors and the claimed invention. For example, if commercial success is due to advertising, promotion, salesmanship, or features of the product other than those found in the claim, then this is not a factor that would rebut a finding of obviousness.

<u>Source:</u>

Adapted from Instruction 4.5.4 of *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS); Instruction 7.8 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS). *See also Ferag AG v. Grapha-Holding AG*, 935 F. Supp. 1238, 1247 (D.D.C. 1996) (holding patent invalid for obvious and finding that the "lack of commercial success buttresses the finding that the patent is obvious"); *Illinois Tool Works, Inc. v. Foster*

*Grant Co., Inc.*, 547 F.2d 1300, 1306 (7th Cir. 1976) (noting that lack of commercial success of the product at least has a bearing upon whether they rendered the inventions obvious).

## Linear's Objection to MPS's proposed instruction on Secondary Considerations of Obviousness

As a preliminary matter, Linear objects to the inclusion of any instruction on validity because MPS contractually agreed in the Settlement Agreement that it would not contest the validity of Linear's Patents.  Linear has moved to strike MPS's validity defenses (D.I. 11) which is currently pending before the Court.

Linear also objects to the title of the instruction "Secondary Considerations of Obviousness" because secondary considerations are objective indicia of nonobviousness.  This title is also an unnecessary deviation from the title of the instruction used in the *Telcordia* case upon which MPS otherwise copied its instruction.  Linear submits that the title of its instruction "Factors Indicating Non-Obviousness," as used in the *Energy Transportation Group* case, is more appropriate.

Linear further objects to this instruction as legally incorrect as it cites "lack of commercial success" as a factor to be considered.  *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 960 (Fed. Cir. 1986) ("the absence of objective evidence is a neutral factor." (internal quotations omitted)).  Linear notes that there was no such instruction in the *Energy Transportation Group* or *Telcordia* cases.  Moreover, MPS cannot rely on its own "lack of success" because it was MPS that chose to pull its product from the market upon being charged with breach of contract and infringement.

## 6.  UNENFORCEABILITY [DISPUTED AS TO INCLUSION]

### 6.1  Inequitable Conduct [DISPUTED AS TO INCLUSION]

#### Linear's proposed instruction on Inequitable Conduct

**[Linear includes this instruction only in the event that its motion to strike MPS's invalidity and unenforceability defenses (D.I. 11) is denied and the Court permits the jury to consider the equitable issue of inequitable conduct]**

Every applicant for a patent has a duty of candor and good faith in its dealing with the Patent Office and the examiner handling the application.  This duty of candor is important because the examiner has only limited information available to determine the state of the art.  The time available to the examiner is also limited.  Thus, the Patent Office requires full disclosure to the Patent Office of all information which is material to examination of the application.

This means that the applicant and his or her attorneys must not intentionally withhold or misrepresent material information concerning the claimed invention.  A breach of this duty is called inequitable conduct and renders the patent unenforceable.

To prove inequitable conduct, MPS must show, by clear and convincing evidence, that the applicants or their attorneys, with intent to mislead or deceive, withheld or misrepresented information that was significant and material to the examiner's evaluation of the patent application.

Source:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 5.1 (1993).

#### MPS's objections Linear's proposed instruction on Inequitable Conduct

-115-

For the reasons set forth in MPS's response to Linear's Motion in Limine No. 2, the jury should be permitted to hear the issue of inequitable conduct, and an instruction on inequitable conduct is appropriate.

MPS objects to Linear's instruction as failing to explain that inequitable conduct found with respect to one claim of a patent, even if not asserted, renders the entire patent unenforceable. *Impax Labs., Inc. v. Aventis Pharma. Inc.,* 468 F.3d 1366 (Fed. Cir. 2006).

MPS objects to Linear's instruction as failing to explain that inequitable conduct found with respect to the '178 patent will render the '258 patent unenforceable as well. *Agfa Corp. v. Creo Prods. Inc.,* 451 F.3d 1366 (Fed. Cir. 2006); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804 (Fed. Cir. 1990).

## MPS' proposed instruction on Inequitable Conduct

Every applicant for a patent has a duty of candor and good faith in its dealing with the Patent and Trademark Office and the examiner handling the application. This duty of candor is important because the examiner has only limited information available to determine the state of the art. The time available to the examiner is also limited. Therefore, to prevent an applicant from obtaining a patent he or she does not deserve, the Patent and Trademark Office requires full disclosure to the Patent Office of all information which is material to examination of the application.

This means that the applicant and his or her attorneys must not intentionally withhold or misrepresent material information concerning the claimed invention. A breach of this duty is called inequitable conduct and renders the patent unenforceable.

In this case, MPS contends that Linear may not enforce the '178 and '258 patents against it because Linear engaged in inequitable conduct before the Patent and Trademark Office

-116-

during prosecution of the '178 and '258 patents.  To prove inequitable conduct, MPS must show, by clear and convincing evidence, that the applicants, their attorneys, or someone else involved in a substantial way with the prosecution of the application, with intent to mislead or deceive, withheld or misrepresented information that was significant and material to the examiner's evaluation of the patent application.

Inequitable conduct with respect to one claim in a patent, even if that claim is not asserted, renders the entire patent unenforceable.

Inequitable conduct committed during the prosecution of the '178 patent would render the '258 patent unenforceable as well.

Sources:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 5.1 (1993); Instruction 5.5 of *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS); *Impax Labs., Inc. v. Aventis Pharma. Inc.,* 468 F.3d 1366 (Fed. Cir. 2006); *Agfa Corp. v. Creo Prods. Inc.,* 451 F.3d 1366 (Fed. Cir. 2006); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804 (Fed. Cir. 1990).

## Linear's Objections to MPS's proposed instruction on Inequitable Conduct

As a preliminary matter, Linear objects to the inclusion of any instruction on unenforceability because MPS contractually agreed in the Settlement Agreement that it would not contest the enforceability of Linear's Patents.  Linear has moved to strike MPS's validity and unenforceability defenses (D.I. 11) which is currently pending before the Court.

Linear also objects to the inclusion of any unenforceability instruction as these issues are equitable matters for the Court to decide and not the jury.  For instance, it is well-settled that "[t]he defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide."  *Paragon Podiatry Lab., Inc. v. KLM Labs. Inc.,* 984 F.2d 1182, 1190 (Fed. Cir. 1993); *see, e.g., General Electro Music Corp. v. Samick Music Corp.,* 19 F.3d 1405, 1408 (Fed. Cir. 1994) ("The disputed issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature"); *Gardco Mfg. Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212 (Fed. Cir. 1987), citing *General Tire & Rubber Co. v. Watson-Bowman Assoc., Inc.,* 193 U.S.P.Q. 484, 485 (D. Del. 1977) (["T]he court held that the defense of inequitable conduct is 'equitable in nature and thus does not give rise to the right of trial by jury.' We agree."); *Allergan Inc. v. Pharmacia Corp.*, No. 01-141 (SLR), 2002 U.S. Dist. LEXIS 19811, at *4 (D. Del. Mar. 1, 2002) ("[T]he issue of inequitable conduct is a matter for the Court to determine…").

-118-

Evidence bearing on inequitable conduct has no relevance to the jury questions of infringement or invalidity. The introduction of such evidence would pose a substantial risk of confusing the jury. *THK Am., Inc. v. NSK, Ltd.,* Case No. 90 C 6049, 1996 U.S. Dist. LEXIS 226, at *4 (N.D. Ill. Jan. 10, 1996) ("This Court believes that a patent case is complex and confusing enough for a jury without infusing evidence which has no relevance to the issues to be decided by that jury. The patent itself should be tried, not the patentee.") (citing *In Re: Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 538 F.2d 180, 196 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040 (1977)).

Moreover, to permit MPS to present evidence of inequitable conduct before the jury would create a real danger of prejudice to Linear. *THK Am., Inc.,* 1996 U.S. Dist. LEXIS 226, at *5 ("[T]o the extent possible, evidence which is likely to prejudice should be heard separately by the Court. Evidence tending to show fraud on the part of the inventor is so likely to prejudice the jury on other issues that the fraud issue should be tried separately."); *see also Coolsavings.com, Inc. v. E-centives, Inc.,* No. 98 C 4924, 2000 WL 1262929, at *4 (N.D. Ill. 2000) (separating inequitable conduct claim from the issues of infringement and validity to avoid prejudice); *Avco Corp. v. PPG Indus., Inc.,* 867 F. Supp. 84, 98 (D. Mass. 1994) (separating issue of inequitable conduct from validity case and trying issues of inequitable conduct in a concurrent non-jury trial).

Linear also objects to MPS's instruction to the extent it includes the statement "[i]nequitable conduct committed during the prosecution of the '178 patent would render the '258 patent unforceable as well." The determination of so-called "infectious inequitable conduct" is an equitable question for the Court to decide and not the jury. Moreover, MPS's statement is

confusing to the jury in that it suggests the jury does not need to independently consider inequitable conduct for the '258 patent.

Linear further objects to this instruction as argumentative and inflammatory (e.g. "to prevent an applicant from obtaining a patent he or she does not deserve.").

## 6.1.1  MATERIALITY [DISPUTED AS TO INCLUSION]

### Linear's proposed instruction on Materiality

**[Linear includes this instruction only in the event that its motion to strike MPS's invalidity and unenforceability defenses (D.I. 11) is denied and the Court permits the jury to consider the equitable issue of inequitable conduct]**

MPS contends that material information known to the applicant, the applicant's representative, or someone else involved in a substantial way in the prosecution of the application was withheld or misrepresented to the Patent and Trademark Office during the prosecution of the '178 and '258 patents.

In considering materiality, you first must determine whether or not information was withheld from or false or misleading statements were made to the Patent and Trademark Office during the examination of the '178 and/or '258 patents.  If you find that the applicant, the applicant's representative(s), or others involved in a substantial way with the examination of the application withheld information from or made false or misleading statements to the Patent and Trademark Office during the examination of the '178 and/or '258 patents, you must then determine whether or not the withheld information or false or misleading statements were material.

Information or statements are material if there is a substantial likelihood that a reasonable examiner would have considered them important in deciding whether to allow an application to issue as a patent.

Information that is cumulative of, or in other words, adds little to or has no more bearing on the examination of an application than information the examiner already had, is not material.  Information that discloses a more complete combination of the relevant features of the

invention sought to be patented may be highly material. This is true even if those features were before the examiner in other, less complete references.

Source:

Adapted from Instruction 5.6 of *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS).

### **MPS's objections to Linear's proposed instruction on Materiality**

For the reasons set forth in MPS's response to Linear's Motion in Limine No. 2, the jury should be permitted to hear the issue of inequitable conduct, and an instruction on inequitable conduct is appropriate.

MPS objects to Linear's proposed instruction as providing an incomplete description of the standard for materiality set forth in 37 C.F.R. § 1.56(b). Rule 56(b) was amended in January of 1992 to recite the standard set forth in MPS's proposed instruction. Dep't of Commerce. Patent and Trademark Office, 37 C.F.R. Parts 1 and 10 Duty of Disclosure, [D.I. 910764-1306] RIM 0651-AA27, 57 F.R. 2021 (Jan. 17, 1992). The standard set forth in the *Telcordia* case tracked the previous standard, which was applicable to the patents at issue in that case.

**MPS's proposed instruction on Materiality**

MPS contends that material information known to the applicants, the applicants' representative, or someone else involved in a substantial way in the prosecution of the application was withheld or misrepresented to the Patent and Trademark Office during the prosecution of the '178 and '258 patents.

In considering materiality, you first must determine whether or not information was withheld from, or false or misleading statements were made to, the Patent and Trademark Office during the examination of the '178 and/or '258 patents. If you find that the applicant, the applicant's representative(s), or others involved in a substantial way with the examination of the application withheld information from or made false or misleading statements to the Patent Trademark Office during the examination of the '178 and/or '258 patents, you must then determine whether or not the withheld information or false or misleading statements were material.

Information is material when it is not cumulative to information already of record or being made of record in the application, and it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or it refutes, or is inconsistent with, a position the applicant takes in: opposing an argument of unpatentability relied on by the Patent Office, or asserting an argument of patentability. A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

-123-

<u>Sources</u>:

Adapted from Instruction 5.6 of *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS); 37 C.F.R. § 1.56(b).

### Linear's Objections to MPS's proposed instruction on Materiality

Linear incorporates by reference its objections to MPS's instruction no. 6.1.

Linear further objects to MPS's proposed instruction on Materiality as a misleading and incomplete statement of the law.  MPS notably omits the standard for materiality, given in the *Telcordia* instruction upon which MPS purportedly modeled its proposed instruction, that "[i]nformation or statements are material if there is a substantial likelihood that a reasonable examiner would have considered them important in deciding whether to allow an application to issue as a patent."  Furthermore, MPS is incorrect in its assertion that the 1992 amendment of Rule 56(b) changed the law.  The Federal Circuit held in *Digital Control Inc. v. Merlin Technology Inc.*, 437 F.3d 1309, 1316 (Fed. Cir. 2006) that "the 'reasonable examiner' standard and our case law interpreting that standard were not supplanted by the PTO's adoption of a new Rule 56."

Linear also objects to the entire last paragraph of MPS's proposed instruction as an incorrect statement of the law.  In particular, MPS proffers the entirely unsupported statement that a "prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of the evidence, burden of proof standard….," which is incorrect and misleading to the jury.  As described above, the proper standard is whether there would have been a substantial likelihood that a reasonable examiner

would have considered the art material, and not whether the claims are unpatentable.  Moreover, MPS bears the burden of proving inequitable conduct by clear and convincing evidence, not a preponderance of the evidence as MPS asserts.

Although Linear disagrees that any instruction should be given for materiality, Linear submits that its proposed instruction that more closely tracks the instruction given in the *Telcordia* case than MPS's instruction is a more accurate and concise statement of the law.

## 6.1.2  INTENT [DISPUTED AS TO INCLUSION]

### <u>Linear's proposed instruction on Intent</u>

**[Linear includes this instruction only in the event that its motion to strike MPS's invalidity and unenforceability defenses (D.I. 11) is denied and the Court permits the jury to consider the equitable issue of inequitable conduct]**

Defendant must prove, by clear and convincing evidence, that the applicants or their attorneys withheld or misrepresented material information with the intent to mislead or deceive the patent examiner.  If the withholding or misrepresentation occurred through negligence, oversight, carelessness or an erroneous judgment, then there was no intent and no inequitable conduct.

Intent need not be proved directly because there is no way of scrutinizing the operations of the human mind.  Therefore, you may infer intent from conduct, from acts substantially certain to accomplish a result, but you are not required to infer it.  Any such inference depends upon the totality of the circumstances, including the nature and level of culpability of the conduct and the absence or presence of affirmative evidence of good faith.

<u>Source:</u>

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 5.3 (1993).

### <u>MPS's Objections to Linear's proposed instruction on Intent</u>

For the reasons set forth in MPS's response to Linear's Motion in Limine No. 2, the jury should be permitted to hear the issue of inequitable conduct, and an instruction on inequitable conduct is appropriate.

MPS also submits that this Court's instruction in the *Telcordia* case was a more concise and neutral statement of the law than that proposed by Linear, and hence should be adopted.

## **MPS's proposed instruction on Intent to Deceive or Mislead**

MPS contends that material information was withheld or misrepresented to the PTO during the prosecution of '178 and '258 patents with the intent to deceive or mislead the PTO. If you determine that material information was withheld or misrepresented to the PTO, you must next determine whether such information was withheld or misrepresented with the intent to deceive or mislead the PTO. Intent to deceive the PTO may be found from direct evidence. Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances. In determining whether or not there was intent to deceive or mislead the PTO, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

Sources:

Adapted from Instruction 5.7 of *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS); 37 C.F.R. § 1.56(b).

## **Linear's Objections to MPS's proposed instruction on Intent to Deceive or Mislead**

Linear incorporates by reference its objections to MPS's instruction no. 6.1

Linear further objects to MPS's proposed instruction on Intent to Deceive or Mislead as an incomplete and misleading statement of the law. In particular, MPS's instruction omits any reference to the fact that withholdings or misrepresentations occurring through negligence, oversight, carelessness or erroneous judgment are without intent and do not rise to the level of inequitable conduct. Linear's proposed instruction gives a more complete statement of the law for the jury and should be used instead.

### 6.1.3  BURYING A MATERIAL REFERENCE IN A LONG LIST MAY INDICATE BAD FAITH [DISPUTED AS TO INCLUSION]

"Burying" a particularly material prior art reference by including it within a lengthy Information Disclosure Statement containing a large number of other references can be probative of bad faith.  If Linear buried a particularly material reference in a submission to the Patent Office that contained a long list of prior art references, this evidence would make it more likely that Linear has committed inequitable conduct.


Sources:

*Mollins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) ("'[B]urying' a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith."); Manual of Patent Examining Procedure ("MPEP"), § 2004, Item 13 (8th ed. August 2001) ("It is desirable to avoid the submission of long lists of documents if it can be avoided.  Eliminate clearly irrelevant and marginally pertinent cumulative information.  If a long list is submitted, highlight those documents which have been specifically brought to applicant's attention and/or are known to be of most significance."); MPEP, § 2004, Item 13 (5th ed., Rev. 14, Nov. 1992) (same).

### Linear's Objections to MPS's proposed instruction on Burying a Material Reference in a Long List May Indicate Bad Faith

Linear incorporates by reference its objections to MPS's instruction no. 6.1.

Linear objects to MPS's proposed instruction as argumentative and highly prejudicial.  Rather than being a summary of the law for the jury, MPS's proposed instruction is a statement of its case that should not be included in the jury instruction and is properly reserved for MPS's case presentation.  Notably MPS cannot point to a single set of jury instructions, model or otherwise, where such an instruction has been given.  The Court should reject MPS's blatant attempt to makes its argument through the jury instructions.

Linear further objects to this instruction as misleading and confusing for the jury. There is no question that MPS's burden on inequitable conduct is proof by clear and convincing evidence. Nonetheless, MPS improperly refers in its instruction to "evidence would make it more likely" (e.g. a subtle reference to the preponderance of the evidence standard) that would confuse the jury as to MPS's burden on this issue. MPS's attempt to lessen its burden should be rejected.

Linear also objects to this instruction as highly prejudicial and biased in the language used. Particularly, Linear objects to the highly prejudicial characterization of presenting references to the patent examiner as "burying." Linear further objects to MPS's characterizations of Linear's compliance with its duties as being "lengthy" and in "bad faith."

### 6.1.4  BALANCING [DISPUTED AS TO INCLUSION]

#### Linear's proposed instruction on Balancing

**[Linear includes this instruction only in the event that its motion to strike MPS's invalidity and unenforceability defenses (D.I. 11) is denied and the Court permits the jury to consider the equitable issue of inequitable conduct]**

You must determine whether the allegedly withheld information or misrepresentation satisfies a threshold level of materiality.  You must also determine whether the conduct of applicants or their attorneys satisfies a threshold showing of intent to mislead.  Assuming satisfaction of the thresholds, materiality and intent must be balanced.

The more material the withheld or misrepresented information is, the less stringent is the requirement to prove intent by clear and convincing evidence.  In other words, withholding or misrepresentation of a highly material piece of information requires a lower level of proven intent, thereby allowing you to infer intent.  You must be the judge of this balance.

If, you find that defendants have proven by clear and convincing evidence that there was a material withholding or a material misrepresentation of information and that applicants or their attorneys acted with intent to deceive the examiner, then you must balance these two factors to determine whether or not, in your view, there was inequitable conduct.

Source:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 5.4 (1993).

#### MPS's Objections to Linear's proposed instruction on Balancing

For the reasons set forth in MPS's response to Linear's Motion in Limine No. 2, the jury should be permitted to hear the issue of inequitable conduct, and an instruction on inequitable conduct is appropriate.

MPS submits that this Court's instruction in the *Telcordia* case is a more concise and neutral statement of the law, and hence should be adopted here. Linear's proposal includes unnecessary repetition of prior instructions.

MPS further objects to the last paragraph of Linear's proposal as incorrect. In essence, it tells the jury that if it finds inequitable conduct (ie, both materiality and intent to mislead), it must then determine whether to find inequitable conduct. In contrast, if the jury finds both materiality and intent to mislead, then inequitable conduct has been established.

## **MPS's proposed instruction on Balancing of Materiality and Intent**

If you determine that MPS has proven by clear and convincing evidence that material information was withheld or misrepresented, you must then balance the degree of materiality with the evidence of intent to determine whether there was an intent to deceive or mislead the PTO. Where the materiality of the withheld or misrepresented information is high, the showing of intent needed to establish inequitable conduct is proportionally less, and vice versa.

Sources:

Adapted from Instruction 5.8 of *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS); 37 C.F.R. § 1.56(b).

## **Linear's Objections to MPS's proposed instruction on Balancing of Materiality and Intent**

Linear incorporates by reference its objections to MPS's instruction no. 6.1.

Linear further objects to MPS's proposed instruction as a misleading and incomplete statement of the law. Linear submits that if the Court were to give an instruction on Balancing, Linear's proposed instruction from the 1993 Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware provides a more complete statement of the law.

## 6.2  PATENT MISUSE [DISPUTED AS TO INCLUSION]

### Linear's proposed instruction on Patent Misuse

**[Linear includes this instruction only in the event that its motion to strike MPS's invalidity and unenforceability defenses (D.I. 11) is denied and the Court permits the jury to consider the equitable issue of patent misuse.]**

MPS contends that the '178 and '258 patents are unenforceable due to Linear's alleged misuse of the patents.  MPS bears the burden of proving patent misuse by clear and convincing evidence.

The patent laws prevent a patentee from obtaining a remedy where it improperly extends its patent beyond its temporal or physical scope with anticompetitive effect.  Congress has identified certain conduct, however, that does not constitute misuse of a patentee's rights.  For example, it is not misuse for a patentee to seek to enforce its patent rights against direct infringement or contributory or induced infringement.  Also, patent misuse generally will not be found where the alleged extension of scope of the patent arises as a result of the parties' agreement, particularly where the agreement was voluntarily entered into as part of a settlement.[1]  The law generally favors voluntary settlement of legal disputes, and there is a public interest and policy in upholding and enforcing settlement agreements voluntarily entered into.[2]  Even if patent misuse is found, if a patentee terminates its misuse, the patents again become fully enforceable.

_____

[1]    *Bayer AG v. Housey Pharm., Inc.*, 228 F. Supp. 2d 467, 470-73 (D. Del. 2002) (holding that a "key consideration" is the "voluntariness of the licensee's agreement to the royalty provisions" and that "[i]f the license agreement is for the convenience of the parties in measuring the value of the license, then the agreement cannot constitute patent misuse.").

[2]    *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369 (holding the law favors voluntary settlement of legal disputes and "there is a compelling public interest and policy in upholding and enforcing settlement agreement voluntarily entered into.")

To prevail on this defense, MPS also must prove by clear and convincing evidence that any alleged misuse of the '178 and '258 patents occurred at the same time that Linear claims infringement of the '178 and '258 patents.  If MPS does not meet its burden of proof, then you must find against MPS on this defense.


Source:

Adapted from Uniform Jury Instructions for Patent Cases, §4.8.8 (D. Del. 2004); *Monsanto Co. v. McFarling*, 363 F.3d 1336, 1341 (Fed. Cir. 2004); *Windsurfing Int'l, Inc. v. AMF Inc.*, 782 F.2d 995, 1101 (Fed. Cir. 1986); *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1339 (Fed. Cir. 2006);

### MPS's Objections to Linear's proposed instruction on Patent Misuse

For the reasons set forth in MPS's response to Linear's Motion in Limine No. 2, the jury should be permitted to hear the issue of patent misuse, and an instruction on patent misuse is appropriate.

MPS objects to Linear's proposed instruction as reciting the wrong burden of proof.  MPS must prove patent misuse by a preponderance of the evidence.  *Trading Tech. Intern., Inc. v. eSpeed, Inc.*, 2008 WL 203385, *1 (N.D. Ill. 2008) ("Patent misuse is an equitable defense to a claim of patent infringement.  It requires the alleged infringer to show, by a preponderance of the evidence "that the patentee has impermissibly broadened the physical or temporal scope of the patent with anti-competitive effect."); *GFI, Inc. v. Franklin Corp.*, 88 F. Supp. 2d 619, 621 (N.D. Miss. 2000) (finding that defendants must establish defenses of patent misuse by a preponderance of the evidence).

MPS further objects to Linear's recitation of "it is not misuse for a patentee to seek to enforce its patent rights against direct infringement or contributory or induced infringement" as irrelevant and confusing to the jury.  Linear also misstates the law in its proposal that patent

misuse cannot arise as a result of a settlement agreement.  *In re Clausen Co.*, 81 B.R. 285, 288 (D. N.J. Jan. 22, 1988) (finding that both a licensee and a party to a settlement agreement can raise the defense of patent misuse in response to a claim of patent infringement).  Moreover, Linear improperly seeks summary judgment through its proposed instruction.

## MPS's proposed instruction on Patent Misuse

MPS contends that the '178 and '258 patents are unenforceable because of Linear's misuse of the patents.

Patent law will not provide a remedy to a patentee who exploits a patent in an improper manner by violating the antitrust laws or extending the patent beyond its lawful scope. A patent is unenforceable for misuse if the patentee attempts to exclude products from the marketplace that do not infringe the claims of the '178 and '258 patents and the patentee has actual knowledge that those products do not infringe any claim of the '178 and '258 patents.

MPS contends that the Settlement Agreement's language purporting to cover "sales" made "anywhere in the world" extends the patents beyond their lawful scope and that Linear has actual knowledge that such products sold outside of the United States would not infringe any claim of the '178 and '258 patents.

To prevail on this defense, MPS must demonstrate that the misuse of the '178 and '258 patents was occurring during the time period Linear claims infringement of the '178 and '258 patents.  If MPS does not meet its burden of proof, then you must find against MPS on this defense.


Source:

Adapted from Uniform Jury Instructions for Patent Cases, §4.8.8 (D. Del. 2004).

## Linear's Objections to MPS's proposed instruction on Patent Misuse

Linear incorporates by reference its objections to MPS's instruction no. 6.1.

Linear further objects to MPS's misleading and improper deviation from the 2003 Delaware Uniform Jury Instructions for Patent Cases as omitting language that Congress has

identified certain conduct, in particular seeking to enforce "patent rights against infringement or contributory infringement," as not constituting patent misuse.  Linear also objects to MPS's omission of the law that upon termination of any alleged misuse by the patentee, the patent again becomes fully enforceable.  MPS's instruction provides an incomplete and misleading statement of the law and should be rejected.  Although Linear submits that the equitable issue of patent misuse should not be tried to the jury, and indeed the model jury instructions for the Federal Circuit Bar Association and the American Intellectual Property Law Association do not contain instructions for patent misuse, were the Court to decide that it should instruct the jury on this defense then Linear has submitted its own instruction that provides a complete statement of the law.

Linear further objects to MPS's improper attempt in the third paragraph of its instruction to present its incorrect contract interpretation argument on the parties' Settlement Agreement.  To the extent not otherwise decided by the Court in advance of trial, the place for the parties to argue what is covered by the Settlement Agreement is before the jury during case presentations and not in the jury instructions.

### 6.3  UNCLEAN HANDS [DISPUTED AS TO INCLUSION]

#### Linear's proposed instruction on Unclean Hands

**[Linear includes this instruction only in the event that its motion to strike MPS's invalidity and unenforceability defenses (D.I. 11) is denied and the Court permits the jury to consider the equitable issue of patent misuse.]**

MPS alleges that Linear's patent infringement claims are barred by the doctrine of unclean hands.  To show that Linear has unclean hands, MPS must show by clear and convincing evidence that Linear engaged in fraud or other unconscionable conduct when enforcing the '178 and '258 Patents against MPS.  Unclean hands requires an "unconscionable act" that has an "immediate and necessary relationship" to the claims of patent infringement asserted against MPS.

While unclean hands can reach other egregious forms of conduct, a patentee does not have unclean hands merely by asserting that someone has infringed its patent or by suing a competitor it believes is infringing its patent.  Even if the patentee is mistaken in its belief of infringement, the patentee does not have unclean hands by seeking to enforce what it thinks are its patent rights in court.  Additionally, if you do find that MPS either breached the Settlement Agreement or that the MP1543 infringes the '178 or '258 patents, then you must necessarily find that Linear does not have unclean hands for having brought this lawsuit.

Finally, MPS cannot rely on unclean hands as a defense, or any other equitable defense, if MPS itself has unclean hands, including any unconscionable conduct related towards the patents in suit.  One example of such unclean hands by MPS would be willful infringement.

Sources:

Adapted from Instruction 5.3 of *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS).

### MPS's Objections to Linear's proposed instruction on Unclean Hands

For the reasons set forth in MPS's opposition to Linear's Motion to Strike MPS's invalidity and unenforceability defenses, MPS should be permitted to raise unenforceability as a defense.

MPS objects to Linear's misrepresentation of the burden of proof. MPS must show unclean hands by a preponderance of the evidence. *Kelley Blue v. Car-Smarts, Inc.*, 802 F. Supp. 278, 292 (C.D. Cal. 1992) (finding defendant must prove by a preponderance of evidence that plaintiff has engaged in any misconduct to determine an unclean hands defense); *New York v. Shinnecock Indian Nation*, 523 F. Supp. 2d 185, 281 (E.D.N.Y 2007); *Sony Elecronics, Inc. v. Soundview Tech., Inc.*, 157 F. Supp. 2d 172 (D. Conn. 2001).

MPS objects to Linear's inclusion of "a patentee does not have unclean hands merely by asserting that someone has infringed its patent or by suing a competitor it believes is infringing its patent. Even if the patentee is mistaken in its belief of infringement, the patentee does not have unclean hands by seeking to enforce what it thinks are its patent rights in court" as irrelevant and confusing to the jury. MPS is asserting that Linear has unclean hands in its assertion of its breach of contract claims, not in seeking to enforce its patent rights. Because Linear has asserted a breach of contract claim against a product that Linear knows is not covered by the contract, Linear has unclean hands.

MPS objects to Linear's inclusion of allegations that MPS's infringement was willful.  The issue of willfulness is not relevant to any issue in this case; it would only be relevant if there were a possibility that patent infringement damages could be enhanced.  There is no such possibility in this case.  The parties have stipulated to patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim.  D.I. 88.  Thus, Linear does not have an opportunity to claim enhanced damages.  Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS.  In addition, Linear brought this lawsuit without providing notice to MPS, MPS discontinued sales of the MP1543, and total net sales of the MP1543 in the United States totaled 110 parts and approximately $100.  Given this factual record, Linear had no basis for alleging willful infringement in the first place.

MPS objects to Linear's inclusion of "if you do find that MPS either breached the Settlement Agreement or that the MP1543 infringes the '178 or '258 patents, then you must necessarily find that Linear does not have unclean hands for having brought this lawsuit."  If the MP1543 is not covered by the settlement agreement and Linear knew or should have known that, then Linear is guilty of unclean hands, regardless of whether it prevails on its infringement claims.

**MPS proposed Unclean Hands**

MPS contends that Linear's patent infringement claims are barred by the doctrine of unclean hands.  To show that Linear has unclean hands, MPS must show that Linear engaged in fraudulent or unconscionable conduct when enforcing the '178 or '258 patents against MPS.  Unclean hands requires an "unconscionable act" that has an "immediate and necessary relationship" to the claims of patent infringement asserted against MPS.  If you find that Linear brought its breach of contract claims against MPS when it knew or should have known that the Settlement Agreement did not cover MPS's MP1543 product, then you may find the '178 or '258 patents to be unenforceable against MPS.


Sources:

Adapted from Instruction 5.3 of *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS).

**Linear's Objections to MPS's proposed instruction on Unclean Hands**

As a preliminary matter, Linear objects to the inclusion of any instruction on unenforceability because MPS contractually agreed in the Settlement Agreement that it would not contest the enforceability of Linear's Patents.  Linear has moved to strike MPS's validity and unenforceability defenses (D.I. 11) which is currently pending before the Court.  Linear also objects to the inclusion of any unenforceability instruction as these issues are equitable matters for the Court to decide and not the jury.  Notably, none of the Delaware Uniform Jury Instructions (either 1993 and 2003) or the Federal Circuit or AIPLA Model Patent Jury Instructions contains an instruction for unclean hands as the issue is an equitable one reserved for the Court.

Linear also objects to MPS's critical omission from its instruction the language defining what conduct ***does not*** constitute unclean hands.  MPS's omission of this language, previously given by the Court in the *Telcordia* case, is misleading and confusing for the jury.  Although Linear submits that this issue should be decided by the Court, in the event the Court chooses to instruct the jury on unclean hands, Linear's proposed instruction includes the omitted language and provides a more accurate and complete statement of the law.

Linear also objects to MPS's omission of the requirement that a party asserting an equitable remedy, including unclean hands, must itself not have unclean hands.  In particular, Linear has accused MPS of willful infringement and the jury is entitled to consider whether MPS has unclean hands in light of its willful infringement.

Linear further objects to MPS's selective omission from the instruction given in the *Telcordia* case of the burden of proof for unclean hands.  The proper burden of proof to hold a patent unenforceable is clear and convincing evidence.  *See, e.g., Carpet Seaming Tape Licensing Corp. v. Beam Seam Inc*., 616 F.2d 1133, 1143 (9th Cir. 1980) ("[I]nfringement suits are presumed to be in good faith, a presumption which can be rebutted only by clear and convincing evidence.").  MPS's omission of this burden engenders jury confusion.

## 7.  DELIBERATION AND VERDICT

### 7.1  INTRODUCTION [AGREED]

How you conduct your deliberations is up to you.  But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges – judges of the facts, not me.  Your sole interest is to seek the truth from the evidence in that case.  In order for you to as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the Court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror Number 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.


Sources:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 7.1. (1993) and Miscellaneous Jury Instructions (GMS) (1/18/06).

## 7.2  DUTY TO DELIBERATE [AGREED]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that – your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Sources:

Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 7.3 (1993).

### 7.3  COURT HAS NO OPINION [AGREED]

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented.


Sources:

Miscellaneous Jury Instructions (GMS) (1/18/06).

# APPENDIX A

| '178 and '258 CLAIM TERMS | COURT'S CONSTRUCTION |
|---|---|
| "switching voltage regulator" | "a device or circuit that receives an input voltage and produces a predetermined and constant output voltage by controlling the opening and closing of a switch." |
| "coupled" | "circuit elements are coupled when a current path exists between them." |
| "output terminal" | "a point or node of the switching regulator to which the load is coupled." |
| "load" | "a device, circuit, or system coupled to the output terminal to which the regulator can supply current." |
| "a pair of synchronously switched switching transistors" | "a pair of switching transistors are synchronously switched when they are driven out of phase to supply current at a regulated voltage to a load." |
| "regulated voltage" | "a voltage having a controlled value." |
| "first state of circuit operation" | "a state in which the switching transistors are both enabled for switching and are synchronously switched such that one transistor is ON and the other is OFF, with a varying duty cycle to maintain a regulated voltage at the output terminal." |
| "third circuit" | "a circuit that is distinct from each of the first and second circuits in that not every electronic component of the circuits is the same." |

| "first control signal" | "a control signal generated by the second circuit and used to affect the operation of other circuitry." |
|---|---|
| "second control signal" | "a control signal generated by thethird circuit and used to affect the operation of other circuitry." |
| "second state of circuit operation" | "a state during which both switching transistors are OFF and current is supplied to the load by the output capacitor." |
| "threshold" | "a predetermined level or value at which some change in circuit operation takes place." |
| "threshold fraction of maximum rated output current" | "a that level or value is a number greater than zero that represents the proportionality of two numbers, the proportion being relative to a rated maximum output current." |
| "a first means for generating a voltage feedback signal indicative of the voltage at the output" <br><br> The function of the term is "generating a voltage feedback signal indicative of the voltage at the output." | "the combination of resistors 36A and 36B; the combination of resistors $R_1$ and $R_2$ and operational amplifier 602; and voltage feedback circuit 220." |

| | |
|---|---|
| "a second means for generating a first control signal . . . to maintain the output terminal at the regulated voltage" is a means plus function claim pursuant to 35 U.S.C. § 112(6).<br><br>The function of the term is "generating a first control signal . . . to maintain the output terminal at the regulated voltage." | "the Figure 2 combination of drive circuit 20, transconductance amplifier 38, offset voltage $_{VOS}$ 76, reference voltage 37, current comparator 39, a feedback current $_{IFB}$ between inductor L1 32 and current comparator 39, and constant off-time one-shot circuit 25, which outputs the signal; combinations having a pulse-width-modulator circuit or a variable off-time one-shot circuit, R$_3$, $^V_{REF}$, $^V_{OS}$, current comparator 39, one-shot circuit 245, off-time controller 250 and capacitor $^C_{CON}$" |
| "a third means for generating a second control signal . . . the period of time having a duration which is a function of the current supplied to the load by the regulator" is a means plus function claim pursuant to 35 U.S.C. § 112(6).<br><br>The function of the term is "generating a second control signal." | "the Figure 2 hysteretic comparator 74 $_{VREF}$, current source I$_1$ 72, and logic circuits 66, 68, 69; the Figure 7 combinations such as the circuitry including 72, 74, 315, 316, $_{VREF}$, and related sleep control logic; or combinations such as those disclosed at column 16, lines 5-12. |
| "selected sleep mode current level" | "a predetermined current level below which the regulator enters into a second mode of operation." |