## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LINEAR TECHNOLOGY CORPORATION,  )
)
        Plaintiff,  )    C. A. No. 06-476 (GMS)
)
        v.  )    **PUBLIC VERSION**
)
MONOLITHIC POWER SYSTEMS, INC.,  )    **JURY TRIAL DEMANDED**
)
        Defendant.  )

## MONOLITHIC POWER SYSTEMS' MOTION IN LIMINE NO. 4
## TO PRECLUDE LINEAR TECHNOLOGY FROM PRESENTING
## EVIDENCE OF USE OF THE MP1543 BY CUSTOMERS

OF COUNSEL:

Dean G. Dunlavey
Mark D. Kachner
LATHAM & WATKINS LLP
Costa Mesa, CA 92626-1925

Mark A. Flagel
Robert Steinberg
Sean S. Pak
LATHAM & WATKINS LLP
Los Angeles, CA 90071-2007

David McKone
LATHAM & WATKINS LLP
Chicago, IL 60606

Claude M. Stern
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
Redwood Shores, CA 94065

Richard I. Werder, Jr.
Eric Huang
Carlos A. Rodriguez
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
New York, NY 10010

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19889-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Monolithic Power Systems, Inc.*

OF COUNSEL:

Bruce Zisser
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
Los Angeles, CA 90017

Alison E. Monahan
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
San Francisco, CA 94111

In this motion *in limine*, MPS respectfully asks the Court to preclude Linear from presenting evidence of direct infringement by others, including use of the accused MP1543 in a voltage regulator by MPS's customers or any other non-party.

Linear accuses MPS of indirectly infringing the asserted claims by selling the accused MP1543 to customers who use the product in infringing circuits. Its expert has indicated an intent to testify regarding indirect infringement by MPS. There is, however, no evidence that any customer in the United States has used the MP1543 product in a switching voltage regulator or for any other purpose. There is thus no evidence to support direct infringement by others, a pre-requisite for indirect infringement.

Direct infringement by others is a necessary element of proving liability for indirect infringement. *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006). Because Linear cannot prove a necessary element of indirect infringement, its claim that MPS is liable for indirect infringement fails. Thus, it is appropriate for the Court to exercise its discretion and exclude testimony on this frivolous claim under Federal Rule of Civil Procedure 16(c)(2)(A). The Court should preclude Linear from introducing any evidence of allegedly infringing use of the MP1543 by MPS's customers.

## I.    BACKGROUND

Each asserted claim of the '178 and '258 patents is directed to either a switching voltage regulator or the use of a switching regulator. The MP1543, however, was not a switching voltage regulator. Rather, the MP1543 was a controller that could be combined with an output circuit and feedback circuitry to make a switching voltage regulator. It is undisputed that the MP1543 itself lacked the output circuit (including an output capacitor) and the feedback circuitry required by each of the claims. Accordingly, in selling the MP1543, MPS did not sell a product

that could meet each element of any asserted claim, even under Linear's infringement theory. Linear, then, must prove that MPS either contributed to or induced infringement by others.

## II.    LIABILITY FOR INDIRECT INFRINGEMENT REQUIRES A SHOWING OF DIRECT INFRINGEMENT BY OTHERS

"[L]iability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement by customers." *RF Delaware, Inc. v. Pacific Keyston Techs., Inc.*, 326 F.3d 1255, 1268 (Fed. Cir. 2003). "[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement." *DSU Med. Corp.*, 471 F.3d at 1303. Here, Linear accuses MPS of infringing by selling the accused MP1543 and indirectly inducing or contributing to infringement by others who used the product in a voltage regulator circuit in the United States. To prove indirect infringement, Linear must establish that others directly infringed in the United States.

## III.    THERE IS NO EVIDENCE OF USE OF THE ACCUSED MP1543 BY OTHERS

Rule 26 requires that a party disclose and produce information that it will use to support its claims or defenses. If the party does not disclose such information, the Court may prohibit that party from producing or relying on that evidence at trial pursuant to Rule 37(c)(1).

MPS asked Linear in an interrogatory to identify the information on which it intended to rely to support its theory of indirect infringement. *See* MPS's Dec. 27, 2006 First Set of Interrogatories No. 1, at 5-6 (Ex. 1). In response, Linear identified only the datasheet for the MP1543 as supporting its contention that MPS indirectly infringed. *See* Linear's Nov. 28, 2007 Fourth Supplemental Response to MPS's Interrogatories No. 1, at Ex. A (Ex. 2). Linear never attempted to take any third party discovery to ascertain how the MP1543 is configured or used by customers, despite having the burden of showing direct infringement for each instance of indirect infringement it is accusing. Indeed, Linear's Rule 30(b)(6) representative testified:

2

███████████████████████████████████████████████
█████████████████████████████████

███████████████████████████████

        In his expert report, Linear's expert, Mr. Blauschild, has stated his intent to testify that

"MPS . . . indirectly infringes in providing each part itself to customers along with its datasheet,

which instructs customers how to assemble and use the infringing combination or perform the

infringing steps."  Blauschild Rep. at 24 (Ex. 4).  Even if it were true – which it is not – that MPS

supplied a datasheet along with each MP1543 it sold, that falls far short of establishing indirect

infringement.  Mr. Blauschild cites to no evidence that each customer receives a datasheet, nor

does he identify any evidence of any actual use, by any MPS customer, of the MP1543

configured as shown in the datasheet.  The record is completely devoid of such information.

        There is no evidence of infringing use of the MP1543 by any MPS customer.  The most

Linear can point to in the record are sales of the MP1543 through a U.S. distributor ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ The MP1543 is no longer manufactured.  But these sales are not evidence of

infringing use by others.  Neither Linear nor MPS knows whether any of the 110 chips sold was

ever used in a voltage regulator, let alone in a manner consistent with the MPS datasheet.  Other

than pointing to the MPS datasheet which describes example configurations for a voltage

regulator, Linear identifies no other evidence.  The datasheet is not evidence of actual use.

Allowing Linear or Mr. Blauschild to testify that customers have used the MP1543 in accordance

with the datasheet would be wholly improper, because there is no evidence of such use. Without evidence of actual use, Blauschild's testimony would be pure speculation.

Mr. Blauschild also relies on testimony that MPS sent evaluation boards to potential customers. Blauschild Opening Expert Report, at 25 (Ex. 4). This is not evidence of use. Indeed, the only evidence that Mr. Blauschild cites of a U.S. entity receiving an MP1543 evaluation board is testimony by Dr. Chen, MPS's corporate witness on technical issues, that

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ Thus, Linear's "evidence" does not come close to meeting the legal standard of "show[ing] direct infringement for each instance of indirect infringement." *DSU Med. Corp.*, 471 F.3d at 1303. Accordingly, allowing Mr. Blauschild to testify as to conclusions not supported by the facts is both improper and highly likely to confuse the jury. Such testimony should be precluded under Federal Rules of Evidence 402 and 403.

## IV.    THE EVIDENCE LINEAR'S EXPERT CITES CANNOT ESTABLISH USE IN AN ALLEGEDLY INFRINGING MANNER

In essence, Linear seeks to establish actual use by virtue of the sale of the MP1543 itself. "The mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275 (Fed. Cir. 2004); *see also id.* at 1275-76 ("Dynacore must therefore either demonstrate that LANs compliant with the IEEE 1394 Standard necessarily infringe the '732 Patent, or point to a specific instance of direct infringement and restrict its suit to liability stemming from that specific instance.").

The MP1543 can be used in both an LED driver (which Linear does not contend infringes) and a voltage regulator (which Linear contends infringes). *See* 8/21/07 W. Chen Dep.

Tr. at 37:6-38:14 (Ex. 9). Thus this case fits squarely within *Dynacore*, as Linear seeks to draw a conclusion of indirect infringement based only upon evidence of sales of a product capable of a substantial non-infringing use. Furthermore, as set forth above, there simply is no evidence that any MPS customer in the United States (or elsewhere, for that matter) has actually used a single MP1543 to build a circuit such as that shown in the MP1543 datasheet. Infringement can only occur in the United States. Thus, the evidence cannot support the conclusion that Linear and its expert wishes to draw. Allowing expert testimony regarding indirect infringement without basis in the evidence is unnecessary and would risk jury confusion.

## V.    GRANTING THIS MOTION WILL PROMOTE EFFICIENCY

Having failed to develop a record to support such allegations, Linear should not be permitted to waste limited trial time and risk confusion by advancing a theory that cannot be supported by the evidence Linear did pursue. Precluding Linear from advancing this wholly unsupported theory serves the central purpose of Rule 16 by "promoting efficiency and conserving judicial resources by identifying real issues prior to trial and thereby saving time and expense for everyone." FED R. CIV. P. 16 advisory committee's note (1983). Under Rule 16, courts have broad powers to "weed out unmeritorious claims . . . before trial begins." *Smith v. Gulf Oil Co.*, 995 F.2d 638, 642 (6th Cir. 1993). Thus, MPS seeks to "streamline" the issues for trial as contemplated by Rule 16. *See, e.g., A.O. Smith Corp. v. Lewis, Overbeck & Furman*, 777 F. Supp. 1405, 1407 n.4 (N.D. Ill. 1991) ("Rule 16 . . . grants the trial judge broad discretion to shape the course of litigation.") (rev'd on other grounds).

## VI.    CONCLUSION

For the reasons set forth above, the Court should preclude Linear from introducing testimony speculating as to how customers use or configure the MP1543.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Dean G. Dunlavey
Mark D. Kachner
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel: (714) 540-1235

By:    /s/ Richard L. Horwitz
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       Hercules Plaza, 6th Floor
       1313 North Market Street
       Wilmington, Delaware 19889-0951
       Tel: (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

Mark A. Flagel
Robert Steinberg
Sean S. Pak
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Tel: (213) 485-1234

*Attorneys for Defendant*
*Monolithic Power Systems, Inc.*

David McKone
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Tel: (312) 777-7316

OF COUNSEL:

Bruce Zisser
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3100

Claude M. Stern
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Dr., Suite 560
Redwood Shores, CA 94065
Tel: (650) 801-5000

Alison E. Monahan
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600

Richard I. Werder, Jr.
Eric Huang
Carlos A. Rodriguez
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000

Public Version Dated: May 8, 2008
863657 / 30611

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINEAR TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 06-0476-GMS |
| | ) | |
| MONOLITHIC POWER SYSTEMS INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

### DEFENDANT MONOLITHIC POWER SYSTEMS, INC.'S
### FIRST SET OF INTERROGATORIES TO PLAINTIFF
### LINEAR TECHNOLOGY CORPORATION

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rule 26.1 of the Local Rules of this Court, defendant Monolithic Power Systems, Inc. ("MPS") hereby requests that plaintiff Linear Technology Corporation ("Linear") answer the following interrogatories within thirty (30) days after the service hereof, separately and fully under oath by an officer or agent of Linear.

### I.     DEFINITIONS

1.     The Definitions, Rules and Instructions set forth in Fed. R. Civ. P. 33(a) are incorporated herein by reference.

2.     "MPS" means Monolithic Power Systems, Inc.

3.     "Linear" means and includes Linear Technology Corporation and its officers, directors, employees, agents, attorneys, and any other person or entity acting on its behalf or subject to its control.

4.     "Complaint" means Linear's Complaint in this action, filed on or about August 9, 2006, together with any exhibits to such complaint and any amended complaint and exhibits that Linear may file.

5.     "Patent" means any patent, patent application, patent publication, utility model, or industrial design.

6.    "The '178 Patent" means U.S. Patent No. 5,481,178, and all foreign, divisional, reissue, reexamination, continuation, or continuation-in-part patents, and applications related to U.S. Patent No. 5,481,178.

7.    "The '258 Patent" means U.S. Patent No. 6,580,258 B2, and all foreign, divisional, reissue, reexamination, continuation, or continuation-in-part patents, and applications related to U.S. Patent No. 6,580,258 B2.

8.    "Patents-in-suit" refers to the '178 Patent and the '258 Patent individually and/or collectively.

9.    "Corresponding Applications" means each patent application filed in a country or territory other than the United States, or before an Examining Agency or Authority other than the United States Patent and Trademark Office, claiming priority from a Related Application as that term is defined.

10.    "Related Applications" means (a) all United States patent applications which claim priority to either of the Patents-in-suit, (b) all United States and Patent Cooperation Treaty (PCT) patent applications from which priority is claimed by the Patents-in-suit, and/or (c) all United States patent applications which claim priority to a patent application identified in (a) and/or (b) (each a "Related Application"). The term "all United States patent applications" as used in (a), (b), and (c) includes without limitation, all issued, abandoned and pending patent applications.

11.    "Related Patents" means all United States patents issuing from a Related Application (each a "Related Patent").

12.    "Accused Products" means all products, the manufacture, use, sale and/or offer for sale of which by MPS is accused of infringement by Linear (each an "Accused Product").

13.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

14.    "Asserted Claim" means any claim of the Patents-in-suit that Linear alleges is infringed by MPS.

15. "Prior art" means all things, patents, publications, disclosures, sales, or other acts or occurrences included within the broadest meaning of 35 U.S.C. § 102 (or any subpart thereof) and 35 U.S.C. § 103.

16. "Document" shall have the same meaning and scope as in Rule 34 of the Federal Rules of Civil Procedure and shall include any written, printed, recorded, or graphic matter, regardless of the medium on which it is produced, reproduced, or stored, including without limitation anything that can be classified as a "writing," "original," or "duplicate." "Document" includes all metadata associated with a document for documents drafted, stored, recorded, received, or otherwise maintained electronically. Any document bearing marks, including without limitation initials, stamped indicia, comments or notations not a part of the original text or photographic reproduction thereof, is a separate document.

17. "Electronic Data" means and includes, but is not limited to, originals and all copies of electronic mail ("e-mail"), activity listings of e-mail receipts and/or transmittals.

18. "Things" means any tangible object that conforms to the meaning and scope of this term in Rule 34, Fed. R. Civ. P.

19. A document or communication "referring to," "related to," "relating to" or "concerning" a given subject means any and all documents or communications that constitute, contain, embody, comprise, reflect, identify, state, refer to, connect with, deal with, comment on, respond to, describe, involve, or are in any way pertinent to that subject.

20. "Identify", when referring to a document or documents, means to state its custodian, location and general description of the document or documents, including specification of (i) its production number, (ii) the nature or type of the document (e.g., letter, memorandum, etc.), (iii) its date, (iv) its general subject matter, (v) the author, (vi) the addresses, distributees and recipients, and (vii) the location of each copy (including location of the file in which it is kept or from which it was removed and "identity" of the present custodian"), the title, file number, and other designation thereof.

3

21.    "Identify", when referring to a product or device, means to state the catalog, stock, model, style, or like number or designation, the trademark, name, type, grade, and any other designation customarily used by the party concerned and/or the trade to designate such product or device.

22.    "Identify", when referring to an event or date, means to state, to the extent known, the date on which the event occurred, the nature of the event, all persons involved in the event for which the date is being provided, the role of each such person in the event for which the date is being provided, and all persons with personal knowledge of the occurrence of the event on that date.

23.    "Identify", when referring to an individual, means to state the individual's name, business and home address, present occupation, present organizational title, and past occupations and past organizational titles.

24.    In construing these Interrogatories, the plural shall include the singular, the singular shall include the plural, and a masculine, feminine, or neuter term shall include all other genders.  The words "and" and "or" mean "and/or" and should be read both ways so as to encompass both constructions and call for answers to be provided to both constructions.  The word "each" includes the word "every," and the word "every" includes the word "each." The word "any" shall be understood to include and encompass "all," and "all" should be interpreted to include and encompass "any."

## II.    INSTRUCTIONS

1.    Each interrogatory shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail.  If an objection pertains only to a portion of an interrogatory, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the interrogatory, using your best efforts to do so.

2.      Where a complete answer to a particular interrogatory is not provided, the interrogatory shall be answered to the extent possible and a statement made explaining why only a partial answer can be given.

3.      Answers to these interrogatories shall set out each interrogatory in full before each answer.  Separate answers shall be given in response to each interrogatory and, when an interrogatory has subdivisions, to each subdivision.

4.      If any responsive identified document was, but no longer is in your possession, custody or control, state precisely what disposition was made of it (including its present location and who possesses or controls it) and identify the person who authorized or ordered such disposition.

5.      Each request asks for a present response and for supplementation of such response to include information acquired after the original response was given and required to be disclosed in accordance with the applicable Federal Rules of Civil Procedure.

6.      If a privilege is claimed in response to a request, state the nature of privilege claimed, indicate as to the information requested whether (i) any documents exist, or (ii) any oral communications took place, and describe the privileged information with sufficient particularity to identify its general subject matter, custodian, author, all recipients, and date of origination.   If the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked.

## III.    INTERROGATORIES

## INTERROGATORY NO. 1:

For each claim of the patents-in-suit that Linear contends MPS has directly or contributorily infringed or is infringing, or induced infringement of, by its manufacture, use, sale and/or offer for sale of the MP1543 product (and any other MPS product that Linear accuses of infringement in this lawsuit), provide a claim chart setting forth the structure of the MPS product and/or

method of using the MPS product which corresponds to each limitation in each claim. If a limitation is set forth in "means plus function" form, set forth the structure disclosed in the specification which carries out the function and the corresponding structure in the MPS product. Where Linear asserts that a claim limitation is met by the doctrine of equivalents, set forth the structure in the MPS product and/or method of using the MPS product which is alleged to be equivalent and the "function, way and result" analysis that allegedly supports same, and state why any difference is insubstantial.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: __*/s/ Kenneth L. Dorsney*__
       Richard L. Horwitz (#2246)

Dean G. Dunlavey
Mark A. Flagel
Robert Steinberg
Rosslyn Stevens Hummer
LATHAM & WATKINS LLP
633 W. Fifth Street, Suite 4000
Los Angeles, CA 90071-2007
Tel: (213) 485-1234

       Kenneth L. Dorsney (#3726)
       Hercules Plaza, 6th Floor
       1313 North Market Street
       Wilmington, Delaware 19889-0951
       Tel: (302) 984-6000
       rhorwitz@potteranderson.com
       kdorsney@potteranderson.com

*Attorneys for Defendant*
*Monolithic Power Systems Inc.*

Dated: December 27, 2006
769534 / 30611

## CERTIFICATE OF SERVICE

I, Kenneth L. Dorsney, hereby certify that on December 27, 2006, a true and

correct copy of the within document was caused to be served on the attorney of record at the

following addresses as indicated:

### VIA HAND DELIVERY

Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899

### VIA ELECTRONIC MAIL

Raphael V. Lupo
Mark G. Davis
Ronald J. Pabis
Stephen K. Shahida
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
rlupo@mwe.com
madavis@mwe.com
rpabis@mwe.com
sshahida@mwe.com

_/s/ Kenneth L. Dorsney_
Kenneth L. Dorsney

769541 / 30611

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 3

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

# EXHIBIT 4

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 5

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 6

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 7

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 8

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 9

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 8, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on May 8, 2008, the attached document was Electronically Mailed to

the following person(s):

Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell, LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
klouden@mnat.com

Raphael V. Lupo
Mark G. Davis
Ronald J. Pabis
Stephen K. Shahida
Joel M. Freed
Natalia V. Blinkova
Matthew G. Cunningham
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
rlupo@mwe.com
madavis@mwe.com
rpabis@mwe.com
sshahida@mwe.com
jfreed@mwe.com
nblinkova@mwe.com
mcunningham@mwe.com

Jimmy Shin
McDermott Will & Emery LLP
3150 Porter Dr.
Palo Alto, CA 94304-1212
jshin@mwe.com

By:  */s/ David E. Moore*
    Richard L. Horwitz
    David E. Moore
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

750219 / 30611

2