IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LINEAR TECHNOLOGY                )
CORPORATION,                     )
                                 )
            Plaintiff,           )
                                 )        C.A. No. 06-476 (GMS)
        v.                       )
                                 )
MONOLITHIC POWER SYSTEMS, INC.,  )
                                 )
            Defendant.           )

# JOINT PROPOSED
# PRELIMINARY JURY INSTRUCTIONS

Plaintiff Linear Technology Corporation and Defendant Monolithic Power

Systems, Inc., submit the following preliminary jury instructions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP        POTTER ANDERSON & CORROON LLP

*/s/ James W. Parrett, Jr.*                 */s/ Richard L. Horwitz*

_____            _____
Jack B. Blumenfeld (#1014)                  Richard L. Horwitz (#2246)
Karen Jacobs Louden (#2881)                 David E. Moore (#3983)
James W. Parrett, Jr. (#4292)               Hercules Plaza, 6th Floor
1201 N. Market Street                       1313 North Market Street
P.O. Box 1347                               Wilmington, DE 19889
Wilmington, DE 19899                        (302) 984-6000
(302) 658-9200                              rhorwitz@potteranderson.com
jblumenfeld@mnat.com
klouden@mnat.com
jparrett@mnat.com                           *Attorneys for Defendant*
                                            *Monolithic Power Systems, Inc.*

*Attorneys for Plaintiff*
*Linear Technology Corporation*

June 18, 2008
2278879

## INTRODUCTION [AGREED]

Members of the jury:  Now that you have been sworn, I am now going to give you some preliminary instructions to guide you in your participation in the trial.

These instructions will give you some general rules and guidance that might apply to any civil case.  However, because this is also a patent trial which will deal with subject matter that is not within the every day experience of most of us, I will also give you some additional preliminary instructions regarding patents to assist you in discharging your duties as jurors.

## THE PARTIES AND THEIR CONTENTIONS [LINEAR]

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for breach of contract and patent infringement.

The parties in this case are the plaintiff, Linear Technology Corporation or "Linear," and the defendant, Monolithic Power Systems, Inc. or "MPS."

In this case, plaintiff Linear alleges that MPS has breached an agreement between the parties not to sell certain voltage regulator circuits which are used in laptop or notebook computers, cell phones and other battery-operated electronic devices to save power.  MPS denies that it has breached the agreement.

Linear also alleges that MPS has infringed its patents as a result of its manufacture and sale of these voltage regulator circuits.  During the trial, the parties will offer testimony to familiarize you with this technology.

Linear owns two United States Patents that it alleges MPS infringes: Patent Nos. 5,481,178 and 6,580,258.  Because these numbers are so long, patents are usually referred to by their last three digits.  For example, Patent No. 5,481,178 is called simply "the '178 patent" and

Patent No. 6,580,258 is called "the '258 patent."  Linear contends that MPS makes, uses, sells, and offers for sale voltage regulator circuits that infringe these patents and that such infringement is willful.

Linear does not contend that all of the claims of each patent are infringed by MPS.  Instead, Linear asserts that only certain claims are infringed.  They may be called "asserted claims."  Linear contends that one of MPS's voltage regulator circuit products infringes these claims.  I, and the attorneys and witnesses, may refer to it as an "accused product."  An "accused product" simply refers to a product that Linear asserts infringes its patents.  You, of course, will determine whether each accused product infringes the asserted claims of any of Linear's patents.

Persons or companies sued for allegedly infringing a patent can deny infringement.  They can defend a charge of infringement by proving the patent is invalid.  In this case, MPS denied that it infringes Linear's patents and asserts that Linear's patents are invalid.  I will tell you about infringement in a few minutes.  I will instruct you as to invalidity defense to a charge of infringement in my instructions to you at the close of evidence.

## MPS'S OBJECTIONS TO LINEAR'S PROPOSED PARTIES AND THEIR CONTENTIONS

MPS objects to Linear's purported summary of the Settlement Agreement.  Linear directly contradicts both the plain language of the Settlement Agreement and the Court's May 23, 2008 Order (D.I. 201).  Linear's attempt to circumvent the Court's order by submitting a misleading jury instruction is improper.

Contrary to Linear's proposed instruction, the Settlement Agreement is not "an agreement between the parties not to sell certain voltage regulator circuits which are used in laptop or notebook computers, cell phones and other battery-operated electronic devices to save

power." The operative language of the Settlement Agreement is that MPS agreed not to make

sales of products "in which the ZX circuitry identified by counsel for Linear in the ITC

Proceeding is connected so as to allow such products to enter into what Linear referred to as

'sleep mode,' 'reverse polarity protection', or otherwise practice the Asserted Claims." The

Court has rejected Linear's improper attempts to broaden the contractual language. (D.I. 201 at

8-9, 14 ¶ 6.)

> As the Court stated (D.I. 201 at 8-9) (emphasis added):
>
> > [T]he court agrees with MPS that the purpose and intent of
> > the Settlement Agreement was to address "the accused ZX
> > circuitry" and MPS products containing such circuitry, not each
> > and every one of Linear's potential infringement allegations
> > regarding the patents-in-suit. **The language of section 3.3 is
> > specific and narrowly drawn**, so as to preclude MPS from
> > making any sales of products "in which the ZX circuitry identified
> > by counsel for Linear in the ITC Proceeding is connected so as to
> > allow such products to enter into . . . [(1)] 'sleep mode,' [(2)]
> > 'reverse polarity protection,' or [(3)] otherwise practice the
> > Asserted Claims anywhere in the world." Accordingly, **in order
> > for MPS to be in breach of the Settlement Agreement, its
> > MP1543 product must contain the ZX circuitry identified by
> > counsel for Linear in the ITC proceeding connected such that
> > it (1) allows the product to enter into "sleep mode;" (2) allows
> > the product to enter into "reverse polarity protection;"** *or* **(3)
> > allows the product to otherwise practice the Asserted Claims.**

> MPS's instruction, which follows, accurately reflects the language of the

Settlement Agreement and the Court's order.

> In its objections to MPS's instruction, Linear states that it "is unnecessary to

advise the jury that the Court has made rulings on the contract issues." Linear's statement is

without merit. *See* Fed. Rule Civ. P. 56(d)(1) (where court's denial of a motion for summary

judgment specifies what facts are not genuinely at issue, "[t]he facts so specified must be treated

as established in the action." Rule 56(d)(1) *requires* that the jury be informed of the Court's

rulings. Otherwise a losing party – like Linear is attempting to do here – could circumvent the

Court's rulings and seek a jury verdict inconsistent with the Court's rulings. This is similar to the requirement that the jury be instructed as to the Court's interpretation of claim terms. *See* Linear's and MPS's proposed "Summary of the Patent Issues" instructions, *infra*.

Linear claims that its proposed instruction "is also fully consistent with Fed. R. Civ. P. 56(d)(1) in that it describes that facts established by the Court." That assertion is simply false. Linear's proposed instruction does not mention any of the facts established by the Court, including that Linear must establish (1) **sales** of products, (2) containing "**the ZX circuitry identified by counsel for Linear in the ITC proceeding**," (3) with the ZX circuitry **connected** in a particular manner.

Lastly, Linear claims that "it is prejudicial to the parties to suggest that the Court has ruled in favor of one party or the other." This assertion is a *non sequitur* as MPS's proposed instruction does not contain such a suggestion.

MPS objects to the instructions referring to MPS's alleged infringement in the present tense. MPS has never manufactured the accused MP1543 part. Furthermore, MPS has not sold the MP1543 for the last 18 months. Thus referring to alleged infringement in the present tense would be misleading to the jury.

MPS objects to Linear's inclusion of allegations that MPS's infringement was willful. As an initial matter, Linear has no evidence to support an allegation of willful infringement. Linear brought this lawsuit without providing notice to MPS. At that time, no judicial officer had addressed the claim construction disputes between the parties. MPS voluntarily discontinued sales of the MP1543 pending the outcome of this lawsuit. Total net sales of the MP1543 in the United States have totaled 110 parts and approximately $100.

Furthermore, MPS consistently has maintained that the asserted patent claims are invalid.  Given this factual record, Linear had no basis for alleging willful infringement in the first place.

Furthermore, the issue of willfulness is not relevant to any issue in this case; it would only be relevant if there were a possibility that patent infringement damages could be enhanced.  There is no such possibility in this case.  The parties have stipulated to patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim.  D.I. 88.  Thus, Linear does not have an opportunity to claim enhanced damages.  Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS.

## THE PARTIES AND THEIR CONTENTIONS [MPS]

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action where Linear is asserting two separate claims, one for breach of contract and the other for patent infringement.  These two claims are independent of one another.

The parties in this case are the plaintiff, Linear Technology Corporation or "Linear," and the defendant, MPS Power Systems, Inc. or "MPS."

In this case, plaintiff Linear alleges that MPS has breached an earlier Settlement Agreement between the parties that resolved a dispute in the International Trade Commission – the "ITC."  The Court has interpreted certain sections of that Settlement Agreement.  In particular, for Linear to prevail on its breach of contract claim, it must establish two things.  First, it must prove that MPS sold a product that contains "the ZX circuitry identified by counsel for Linear in the ITC Proceeding."  Second, Linear must prove that the specific ZX circuitry

identified by counsel for Linear in the ITC Proceeding is connected such that it (1) allows the product to enter into "sleep mode," (2) allows the product to enter into "reverse polarity protection," or (3) allows the product to otherwise practice certain claims of the Linear patents.

MPS denies that it has breached the agreement and denies that the MPS part at issue in this case – called the MP1543 – contains "the ZX circuitry identified by counsel for Linear in the ITC Proceeding."

Linear also alleges that MPS has infringed its patents as a result of its sales of the MP1543. During the trial, the parties will offer testimony to familiarize you with this technology.

Linear owns two United States Patents that it alleges MPS infringes: Patent Nos. 5,481,178 and 6,580,258. Because these numbers are so long, patents are usually referred to by their last three digits. For example, Patent No. 5,481,178 is called simply "the '178 patent" and Patent No. 6,580,258 is called "the '258 patent." Linear contends that MPS made, used, sold, or offered for sale the MP1543 and that that part infringes these patents.

Linear does not contend that all of the claims of each patent were infringed by MPS. Instead, Linear asserts that only certain claims were infringed. They may be called "asserted claims." I, and the attorneys and witnesses, may refer to the MP1543 as an "accused product." An "accused product" simply refers to a product that Linear asserts infringes its patents. You, of course, will determine whether the accused product infringed the asserted claims of any of Linear's patents.

Persons or companies sued for allegedly infringing a patent can deny infringement. They also can defend a charge of infringement by proving the patent is invalid. In this case, MPS denies that it infringed Linear's patents and asserts that the patent claims are

invalid.  I will tell you more about infringement in a few minutes.  I will instruct you as to

invalidity in my instructions to you at the close of the evidence.

## LINEAR'S OBJECTIONS TO MPS'S PROPOSED PARTIES AND THEIR CONTENTIONS

Linear objects to MPS's instruction to the extent it excludes Linear's claim for

willful infringement.  That Monolithic may disagree with such a claim provides no basis not to

advise the jury of Linear's properly pleaded claim.  It is also relevant to Linear's claim that this

is an exceptional case, entitling Linear to its attorneys' fees.

Linear further objects to MPS's instruction to the extent it contains a complex and

argumentative recitation of the breach of contract issue.  The Court's form preliminary

instructions envision a brief overview of the issues and not a full statement of the parties'

contentions.  The jury will have no predicate in these preliminary instructions for understanding

what the "ZX circuitry identified by counsel for Linear in the ITC proceeding" means or the

*specific* elements Monolithic lists.  It also is unnecessary to advise the jury that the Court has

ruled on the contract issues and it is prejudicial to the parties to suggest that the Court has ruled

in favor of one party or the other.

Linear also objects to MPS's instruction to the extent it inaccurately recites the

Court's rulings.  The Court did not establish two separate requirements.  Nor did it hold that "the

specific ZX circuitry identified by counsel for Linear" must be connected in the three

enumerated ways.  What the Court instead held is that:

> Accordingly, in order for MPS to be in breach of the Settlement
> Agreement, its MP1543 product must contain the ZX circuitry
> identified by counsel for Linear in the ITC proceeding connected
> such that it (1) allows the product to [e]nter into "sleep mode;" (2)
> allows the product to enter into "reverse polarity protection;" *or* (3)
> allows the product to otherwise practice the Asserted Claims.

Finally, Linear objects to MPS's attempts to change the Court's instructions to characterize its infringement in the past tense. That is a matter more appropriately treated by the parties during their case presentations. MPS should not be permitted to provide a one-sided characterization of that matter in the preliminary instructions.

## DUTIES OF THE JURY [AGREED]

So, let me begin with those general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply to those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

## EVIDENCE [AGREED]

The evidence from which you will find the facts will consist of the testimony of witnesses; (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the Court – you may not ask questions). Evidence will also consist of

documents and other things received into the record as exhibits, and any facts that the lawyers

agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you.  I will list

them for you now:

1. Statements, arguments, and questions by lawyers are not
   evidence.

2. Objections to questions are not evidence.  Lawyers have an
   obligation to their clients to make objections when they
   believe evidence being offered is improper under the rules
   of evidence.  You should not be influenced by the objection
   or by the Court's ruling on it.  If the objection is sustained,
   ignore the question.  If it is overruled, treat the answer like
   any other.  If you are instructed that some item of evidence
   is received for a limited purpose only, you must follow that
   instruction.

3. Testimony that the Court has excluded or told you to
   disregard is not evidence and must not be considered.

4. Anything you may have seen or heard outside the
   courtroom is not evidence and must be disregarded.  You
   are to decide the case solely on the evidence presented here
   in the courtroom.

There are two kinds of evidence: direct and circumstantial.  Direct evidence is

direct proof of a fact, such as testimony of an eyewitness.  Circumstantial evidence is proof of

facts from which you may infer or conclude that other facts exist.  As a general rule, the law

makes no distinction between these two types of evidence, but simply requires that you find facts

from all the evidence in the case, whether direct or circumstantial or a combination of the two.

## CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY [AGREED]

You are the sole judges of each witness's credibility.  You should consider each

witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or

unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been

contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

**<u>BURDEN OF PROOF [LINEAR]</u>**

This is a civil case. Here the plaintiff Linear has the burden of proving its claim of breach of contract by what is called a preponderance of the evidence. That means that Linear has to produce evidence which, considered in the light of all the facts, leads you to believe that what Linear claims is more likely true than not. To put it differently, if you were to put Linear's and MPS's evidence on opposite sides of a scale, the evidence supporting Linear would have to make the scale tip somewhat on its side. If Linear fails to meet this burden, the verdict on the breach of contract claim must be for MPS.

As I have already told you, in this case, Linear is also the owner of two patents which it contends MPS infringes. Linear also has the burden of proving infringement by a preponderance of the evidence.

In this case, Linear also contends that MPS willfully infringed the patents in suit. Linear must prove willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

MPS also asserts in this case that Linear's patents are invalid.  However, if the Settlement Agreement has been breached, that Settlement Agreement provides that MPS cannot challenge validity in an action to establish that breach.  In any event, a patent is presumed to be valid.  Accordingly, the party challenging a patent has the burden of proving by clear and convincing evidence that the patent is invalid.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

## MPS'S OBJECTIONS TO LINEAR'S PROPOSED BURDEN OF PROOF

MPS objects to that portion of Linear's proposed instruction that states: "However, if the Settlement Agreement has been breached, that Settlement Agreement provides that MPS cannot challenge validity in an action to establish that breach."  This is a blatant attempt to ignore and contradict the Court's orders, which make it very clear that the jury will be asked to make findings with respect to validity and then the Court will determine how to treat those findings.

The Court has expressly stated that:  (1) "*the court* will determine whether this action is one to enforce the Settlement Agreement after the jury makes its findings with respect to the ZX circuitry issue," (2) "*the court will not preclude MPS from presenting its invalidity issues to the jury*," and (3) "[s]hould it come to pass that the jury concludes the MP1543 product contains the ZX circuitry, then *the court* will hold the jury's findings with respect to validity of the patents-in-suit moot."  June 23, 2008 Memorandum and Order (D.I. 201), at 11 & n.6 (emphasis added).  Furthermore, on June 30, 2008, the Court denied Linear's request that the issue of validity be bifurcated from the breach of contract and infringement issues.  It is improper

for Linear to circumvent the Court's orders by suggesting to the jury that it may not need to issue a verdict on invalidity if it finds that MPS has breached the Settlement Agreement.

As set forth above in its objections to Linear's Proposed "The Parties and Their Contentions" instruction, MPS objects to Linear's inclusion of allegations that MPS's infringement was willful.

## BURDEN OF PROOF [MPS]

This is a civil case.  Here the plaintiff Linear has the burden of proving its claim of breach of contract by what is called a preponderance of the evidence.  That means that Linear has to produce evidence which, considered in the light of all the facts, leads you to believe that what Linear claims is more likely true than not.  To put it differently, if you were to put Linear's and MPS's evidence on opposite sides of a scale, the evidence supporting Linear would have to make the scale tip somewhat on its side.  If Linear fails to meet this burden, the verdict on the breach of contract claim must be for MPS.

As I have already told you, in this case, Linear is also the owner of two patents which it contends MPS infringes.  Linear also has the burden of proving infringement by a preponderance of the evidence.

In this case, MPS asserts that Linear's patents are invalid. A patent, however, is presumed to be valid.  Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

**LINEAR'S OBJECTIONS TO MPS'S PROPOSED BURDEN OF PROOF**

Linear objects to MPS's instruction to the extent it omits Linear's claim for willful infringement.  That Monolithic may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim.  It is also relevant to Linear's claim that this is an exceptional case, entitling Linear to its attorneys' fees.

**GENERAL GUIDANCE REGARDING PATENTS[1]**

I will now give you a general overview of what a patent is and how one is obtained.

**A.    Constitutional Basis for Patent Grant
        [AGREED]**

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "to promote the progress of science and the useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

**B.    Exclusionary Right and Term of a Patent
        [LINEAR]**

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents.  Once the "Patent Office" or "PTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale

---

[1]    The parties consent to the playing to the jury of the Federal Judicial Center's "An Introduction to the Patent System."  If the Court agrees, then the parties agree that this section on "General Guidance Regarding Patents" can be omitted.

the invention throughout the United States for the length of the patent term. If the invention covered by the patent is a method, the patent law gives the patent owner the right to exclude others from using the method throughout the United States or making or selling throughout the United States any product made by the patented method anywhere in the world.

A person who, without the patent owner's authority makes, uses, sells, or offers to sell a product or employs a method that is covered by one or more claims of a valid patent, infringes the patent. A person can also induce others to infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement. This is called inducing infringement. A party can also contribute to the infringement by others by selling non-staple articles with knowledge that they are especially made or adapted to infringe Linear's patents. This is called contributory infringement.

**MPS'S OBJECTION TO LINEAR'S PROPOSED EXCLUSIONARY RIGHT AND TERM OF A PATENT**

MPS objects to Linear's deviation from the Court's sample Preliminary Jury Instructions. Linear has added a statement regarding contributory infringement without making clear that indirect infringement cannot be proven without first proving direct infringement for each instance of alleged indirect infringement. *DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1303 (Fed Cir 2006) ("In addition, the patentee always has the burden to show direct infringement for each instance of indirect infringement."). This omission is likely to result in jury confusion and a misunderstanding of the law.

MPS objects to Linear's omission of the intent requirement in proving indirect infringement. Specifically, the Federal Circuit has made clear that, to prove indirect infringement, Linear must show two things: First, that a third party has used the MP1543 in the United States so as to directly infringe one or more of the asserted claims, and second, that MPS

knew or should have known that the end users of the accused product would actually infringe the asserted claims:

> This section clarifies that intent requirement by holding en banc that, as was stated in *Manville Sales Corp. v. Paramount Systems, Inc*., 917 F.2d 544, 554 (Fed. Cir. 1990), "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent.

*DSU Med. Corp. v. JMS Co., Ltd.,* 471 F.3d 1293, 1304 (Fed Cir 2006) (en banc); *see also*

*Golden Blount, Inc. v. Robert H. Peterson Co.,* 365 F.3d 1054, 1061 (To show contributory

infringement, the patentee "must show that [the accused infringer] knew that the combination for

which its components were especially made was both patented and infringing."). MPS's

instruction, which follows, accurately summarizes the law. Linear's instruction is misleading

because it does not set forth the elements that Linear must prove to establish indirect

infringement.

## B.     Exclusionary Right And Term Of A Patent [MPS]

The United States Patent and Trademark Office is responsible for reviewing

patent applications and granting patents. Once the "Patent Office" or "PTO" has issued a patent,

the patent owner has the right to exclude others from making, using, selling, or offering for sale

the invention throughout the United States for the length of the patent term. If the invention

covered by the patent is a method, the patent law gives the patent owner the right to exclude

others from using the method throughout the United States.

A person who, without the patent owner's authority makes, uses, sells, or offers to

sell a product or employs a method that is covered by one or more claims of a valid patent,

infringes the patent. This is called direct infringement. A person can also induce others to

infringe a patent by suggesting to other persons or companies that they undertake acts that constitute infringement if the person knows or should have known that it would result in actual infringement. This is called inducing infringement. A party can also contribute to the infringement by others by selling non-staple articles with knowledge that they are especially made or adapted to infringe Linear's patents. This is called contributory infringement. In order to prove either induced infringement or contributory infringement, the patent owner must first prove direct infringement by a third party for each instance of induced or contributory infringement.

## LINEAR'S OBJECTIONS TO MPS'S PROPOSED INSTRUCTION ON EXCLUSIONARY RIGHT AND TERM OF A PATENT

Linear objects to MPS's proposed instruction on Exclusionary Right and Term of a Patent because the purpose of the preliminary instructions is to provide a brief overview and not a full statement of the law, which will be provided in the Final Jury Instructions. Requiring an element by element recitation of the law of induced and contributory infringement would unduly complicate the preliminary instructions.

In particular, MPS seeks to add a statement that "[i]n order to prove either induced infringement or contributory infringement, the patent owner must first prove direct infringement by a third party for each instance of induced or contributory infringement." Not only is that statement misleading in its use of the phrase "each instance" and in failing to acknowledge that proof by circumstantial evidence is satisfactory, the statement is made without reference to other aspects of direct infringement, inducement of infringement, or contributory infringement. MPS's attempt to focus on one element to the exclusion of others should be rejected for these Preliminary Instructions.

**The Parts Of A Patent [AGREED]**

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents. Many of the terms used by me in this description are contained in a "Glossary of Patent Terms," which I will give to you along with a copy of these preliminary instructions. Feel free to refer to the Glossary throughout the trial.

For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the invention in terms sufficiently full, clear, concise and exact to enable any person skilled in the art to which the invention pertains to be able to make and use the invention; (2) a disclosure of the best mode of carrying out the invention known to the inventor at the time of filing; and (3) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention. When a patent application is received at the Patent and Trademark Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws. The examiner reviews the prior work of others in the form of voluminous files of patents and publications. This type of material is called "prior art." Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application. Documents found in the

search of prior art are called "references."  In conducting the search of prior art, the examiner

notes in writing on the file the classes or subclasses of art searched.  The compilation of the

papers concerning the proceedings before the Patent Office is called the "prosecution history,"

"file wrapper," or "file history."  The PTO does not have its own laboratories or testing facilities.

The examiner may "reject" the application claims if he or she believes that they

are applications for inventions that are not patentable in light of the prior art, or because the

patent specification does not adequately describe the claimed inventions.  The applicant may

then amend the claims to respond to the examiner's rejections.  If, after reviewing the prior art

maintained at the PTO, the examiner concludes that the claims presented by the applicant define

the applicant's claimed invention over the most relevant known prior art in a manner that is

patentable and that the patent meets the other requirements for patentability, the application is

granted as a U.S. patent.

### Summary Of The Patent Issues [LINEAR]

In this case, you must decide several things according to the instructions that I

will give you at the end of the trial.  Those instructions will repeat this summary and will provide

more detail.  One thing you will need not decide is the meaning of the patent claims.  That is one

of my jobs – to explain to you what the patent claims mean.  By the way, the word "claims" is a

term of art and I will instruct you on its meaning at trial's end.  Meanwhile, you will find a

definition in the glossary attached to these preliminary instructions.  In essence, you must decide:

(1)        whether Linear has proven by a preponderance of the

evidence that the MPS accused products infringe the

asserted claims of one or more of the two patents;

(2)     if you find that one or more of Linear's patents are

        infringed whether, by clear and convincing evidence, that

        infringement was willful;

(3)     and whether those asserted claims of Linear's patents that

        have been infringed have been proven by MPS by clear and

        convincing evidence to be invalid.

**MPS'S OBJECTION TO LINEAR'S PROPOSED SUMMARY OF THE PATENT ISSUES**

MPS objects to the instructions referring to MPS's alleged infringement in the present tense. MPS has never manufactured the accused MP1543 part. Furthermore, MPS has not sold the MP1543 for the last 18 months. Thus referring to alleged infringement in the present tense would be misleading to the jury.

As set forth above in its objections to Linear's Proposed "The Parties and Their Contentions" instruction, MPS objects to Linear's inclusion of allegations that MPS's infringement was willful.

MPS objects to Linear's erroneous statement that infringement must first be proven before invalidity can be shown. There is no basis at law for that statement. The jury can find invalidity regardless of whether it finds infringement.

**Summary Of The Patent Issues [MPS]**

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. One thing you will need not decide is the meaning of the patent claims. That is one of my jobs – to explain to you what the patent claims mean. By the way, the word "claims" is a

term of art and I will instruct you on its meaning at trial's end.  Meanwhile, you will find a

definition in the glossary attached to these preliminary instructions.  In essence, you must decide:

> (1)         whether Linear has proven by a preponderance of the
>
>            evidence that the MPS accused product infringed the
>
>            asserted claims of one or more of the two patents; and
>
> (2)         whether MPS has proven by clear and convincing evidence
>
>            that the asserted claims of Linear's patents are invalid.

## LINEAR'S OBJECTIONS TO MPS'S PROPOSED SUMMARY OF THE PATENT ISSUES

Linear objects to MPS's instruction to the extent it omits Linear's claim for

willful infringement.  That Monolithic may disagree with such a claim provides no basis not to

advise the jury of Linear's properly pleaded claim.  It is also relevant to Linear's claim that this

is an exceptional case.

Finally, Linear objects to MPS's attempts to change the Court's standard

instructions to characterize its infringement in the past tense.  That is a matter more appropriately

treated by the parties during their case presentations.  MPS should not be permitted to provide a

one-sided characterization of that matter in the preliminary instructions.

## DECISION TO STOP SALES OF MP1543 NOT EVIDENCE AS TO EITHER INFRINGEMENT OR VALIDITY ISSUES [MPS]

After Linear filed this lawsuit, MPS decided to stop selling the accused MP1543

part pending the outcome of this case.  MPS's decision to stop selling the MP1543 is not

evidence as to either the issue of whether it infringes any of the asserted patent claims or the

issue of whether the asserted patent claims are invalid.

**LINEAR'S OBJECTIONS TO MPS'S PROPOSED INSTRUCTION ON DECISION TO STOP SALES OF MP1543 NOT EVIDENCE AS TO EITHER INFRINGEMENT OR INVALIDITY**

MPS's proposed instruction directing the jury not to consider evidence of the parties' settlement agreement is a plainly improper attempt by MPS to argue its position in the jury instructions and to gain another motion *in limine* that it did not file in accordance with the Court's procedures.

At the pretrial conference, counsel for Linear argued (5/23 transcript at 16) that Linear should be able to argue the small number of sales of the MP1543 does not establish that customers did not use the product for its intended purpose. In responding to this and other arguments, the Court acknowledged that such evidence can go to the jury (5/23 transcript at 19:19-22) (emphasis added):

> Mr. Freed: Your Honor, I think I have said it all. The evidence is they pulled them from the market.
>
> The Court: ***The jury can hear that. I will let the jury hear that***.

Moreover, counsel for MPS argued at the pretrial conference that the number of sales of the MP1543 product is relevant to infringement. The fact that MPS limited the number of sales by intentionally withdrawing its product from the market is also plainly relevant to rebut MPS's argument that Linear has not adduced sufficient evidence of contributory or induced infringement in light of the number of sales.

Moreover, although MPS's instruction purports to rely on the parties' Joint Stipulation Regarding Damages For Patent Infringement (D.I. 88) to argue that MPS's decision to stop selling the MP1543 is not ***evidence*** of infringement or invalidity, the Stipulation does not say that. The Stipulation provides only that "[n]othing in this Stipulation ***shall be used as or constitute an admission*** by either party of any claim, defense, assertion or allegation made by

the other party in connection with this action and each party reserves all remaining claims and defenses." Stipulation at 3 (emphasis added). Linear is not arguing that the Stipulation or facts set forth therein *is an admission*, but there is no question that MPS's decision *is evidence* that the jury can consider in making its determinations.

**MPS'S RESPONSE TO LINEAR'S OBJECTIONS TO MPS'S PROPOSED INSTRUCTION ON DECISION TO STOP SALES OF MP1543 NOT EVIDENCE AS TO EITHER INFRINGEMENT OR INVALIDITY**

MPS is not attempting to "gain another motion *in limine*" or "argue its position in the jury instructions." Linear's objections are red herrings that have no relevance to the issue at hand.

MPS's instruction does not relate to the parties' settlement agreement nor does it seek to preclude the jury from hearing that MPS stopped selling the MP1543. Indeed, MPS's proposed instruction expressly informs the jury that "MPS decided to stop selling the MP1543 part pending the outcome of this case." The relevant point is that it would be wholly improper for Linear to argue or suggest that MPS's decision to stop selling the MP1543 is affirmative evidence of infringement or the validity of the patent claims. That is the point which the instruction addresses and which Linear ignores.

The parties entered into a stipulation whereby MPS agreed not to sell the MP1543 pending the outcome of this lawsuit. The parties jointly agreed that "Nothing in this Stipulation shall be used as or shall constitute an admission by either party of any claim, defense, assertion or allegation made by the other party in connection with this action and each party reserves all remaining claims and defenses." D.I. 88. Linear now wants to renege on that agreement.

Additionally, Linear's assertion that MPS's decision to stop selling the MP1543 is "plainly relevant to rebut MPS's argument that Linear has not adduced sufficient evidence of contributory or induced infringement in light of the number of sales" makes no sense. Putting

aside the fact that Linear does not have *any* evidence of direct infringement by third parties, and thus no evidence of contributory or induced infringement, MPS's decision to stop selling the MP1543 has no bearing on whether Linear has sufficient evidence of direct infringement by third parties as to the very limited sales that MPS did make.

## CONDUCT OF THE JURY [AGREED]

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the Court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes. A word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any

testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day. And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## COURSE OF THE TRIAL [AGREED]

This trial, like most jury trials, comes in seven stages or phases. We have already been through the first phase, which was to select you as jurors. The remaining stages are:

(2)      These preliminary instructions to you;

(3)      Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence. The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4)      The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5)      My final instructions on the law to you;

(6)      The closing arguments of the lawyers which will be offered to help you make your determination; and, finally,

(7)    Your deliberations where you will evaluate and discuss the
evidence among yourselves and determine the outcome of
the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So,
as the evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the
trial.

## TRIAL SCHEDULE [AGREED]

Though you have heard me say this during the voir dire, I want to again outline
the schedule I expect to maintain during the course of this trial.

This case is expected to take eight days to try.  We will normally begin the day at
9:00 A.M. promptly.  We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00
p.m. to 4:30 P.M.  There will be a fifteen minute break at 11:00 A.M. and another fifteen minute
break at 3:15 P.M.  The only significant exception to this schedule may occur when the case is
submitted to you for your deliberations.  On that day, the proceedings might last beyond 5:00
p.m.  We will post a copy of this schedule for your convenience in the jury deliberation room.

## <u>**GLOSSARY OF PATENT TERMS**</u>

<u>Applicants</u>                    The named inventors who are applying for the patent.

<u>Assignment</u>                    Transfer of ownership rights in a patent or patent application from one person or company to another.

<u>Claims</u>                        The part of a patent that defines the invention. These are found at the end of the patent specification in the form of numbered paragraphs.

<u>Disclosure of Invention</u>        The part of the patent specification that explains how the invention works and usually includes a drawing.

File or Prosecution History <u>Wrapper, File History</u>        The written record of proceedings in the United States Patent and Trademark Office ("Patent Office" or "PTO"), including the original patent application and later rejections, responses to the rejections and other communications between the Patent Office and the applicant.

<u>Patent Application</u>            The initial papers filed in the Patent Office by an applicant. These typically include a specification, drawings, claims and the oath (Declaration) of the applicant.

<u>Patent Examiners</u>            Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

<u>Prior art</u>                    Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to the filing of his/her application.

<u>Prior Art References</u>        Any item of prior art (publication, patent or product) used to determine patentability.

<u>Specification</u>                The part of the patent application or patent that describes the invention, and may include drawings. The specification does not define the invention, only the claims do.

# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
————
(302) 658-9200
(302) 658-3989 fax

James W. Parrett, Jr.
(302) 351-9678
(302) 425-3083 fax
jparrett@mnat.com

June 18, 2008

**BY E-FILING**

The Honorable Gregory M. Sleet
United States District Court
Federal Building
844 North King Street
Wilmington, DE 19801

> Re:    *Linear Technology Corp. v. Monolithic Power Systems, Inc.*
>        <u>C.A. No. 06-476 (GMS)</u>

Dear Chief Judge Sleet:

Pursuant to the Court's instructions at the pretrial conference, attached are the parties' revised joint proposed preliminary jury instructions. We are also submitting to the clerk's office a disk containing the instructions in Word format.

Respectfully,

*/s/ James W. Parrett, Jr.*

James W. Parrett, Jr. (#4292)

/dam
Enclosures
cc:    Clerk of the Court (by hand delivery w/enc.)
       Richard J. Horwitz, Esq. (by e-mail and hand delivery w/enc.)
       Dean G. Dunlavey, Esq. (by e-mail w/enc.)
       Joel M. Freed, Esq. (by e-mail w/enc.)

2371866