IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LINEAR TECHNOLOGY            )
CORPORATION,                 )
                             )
            Plaintiff,       )
                             )    C.A. No. 06-476 (GMS)
        v.                   )
                             )
MONOLITHIC POWER SYSTEMS, INC.,  )
                             )
            Defendant.       )

## FINAL JURY INSTRUCTIONS

Plaintiff Linear Technology Corporation and Defendant Monolithic Power

Systems, Inc., submit the following final jury instructions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP          POTTER ANDERSON & CORROON LLP

/s/ James W. Parrett, Jr.                     /s/ Richard L. Horwitz
_____              _____
Jack B. Blumenfeld (#1014)                    Richard L. Horwitz (#2246)
Karen Jacobs Louden (#2881)                   David E. Moore (#3983)
James W. Parrett, Jr. (#4292)                 Hercules Plaza, 6th Floor
1201 N. Market Street                         1313 North Market Street
P.O. Box 1347                                 Wilmington, DE 19889
Wilmington, DE  19899                         (302) 984-6000
(302) 658-9200                                rhorwitz@potteranderson.com
jblumenfeld@mnat.com
klouden@mnat.com                              *Attorneys for Defendant*
jparrett@mnat.com                             *Monolithic Power Systems, Inc.*

*Attorneys for Plaintiff*
*Linear Technology Corporation*

June 18, 2008
2279670.20

# TABLE OF CONTENTS

PAGE

1. GENERAL INSTRUCTIONS ............................................................... 1

    1.1 INTRODUCTION [AGREED] ...............................................1

    1.2 JURORS' DUTIES [AGREED] ...............................................2

    1.3 EVIDENCE DEFINED [AGREED]..........................................3

    1.4 DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED] ..................................4

    1.5 CONSIDERATION OF EVIDENCE [AGREED] ...................................5

    1.6 STATEMENTS OF COUNSEL [AGREED] ...............................6

    1.7 CREDIBILITY OF WITNESSES [AGREED] ...........................7

    1.8 EXPERT TESTIMONY [AGREED] ........................................9

    1.9 NUMBER OF WITNESSES [AGREED] ................................10

    1.10 BURDENS OF PROOF [DISPUTED].....................................11

2. THE PARTIES' CONTENTIONS ...................................................... 16

    2.1 THE PARTIES [AGREED]...................................................16

    2.2 LINEAR'S CONTENTIONS ................................................17

    2.3 MPS'S CONTENTIONS .....................................................20

    2.4 SUMMARY OF BREACH OF CONTRACT ISSUES [DISPUTED].......................24

    2.5 SUMMARY OF PATENT ISSUES [DISPUTED] ....................27

3. BREACH OF CONTRACT.............................................................. 30

    3.1 BREACH OF CONTRACT – FACTUAL ELEMENTS [AGREED] ........................30

    3.2 INTERPRETATION – CRITICAL TERM [MPS; DISPUTED AS TO INCLUSION] ....................................................31

4. INFRINGEMENT .......................................................................... 36

    4.1 CLAIM INFRINGEMENT [AGREED].................................36

    4.2 CONSTRUCTION OF CLAIMS [AGREED IN PART] ...........37

4.3    PATENT INFRINGEMENT – GENERALLY [AGREED] ......................................38

4.4    DIRECT INFRINGEMENT [DISPUTED] ....................................................39

4.5    INDIRECT INFRINGEMENT [DISPUTED] .................................................45

4.6    INDUCING PATENT INFRINGEMENT [DISPUTED] ...........................................49

4.7    CONTRIBUTORY INFRINGEMENT [DISPUTED] .................................................53

4.8    LITERAL INFRINGEMENT [DISPUTED] .................................................57

4.9    DOCTRINE OF EQUIVALENTS [DISPUTED AS TO INCLUSION] ...................61

4.10   MEANS-PLUS-FUNCTION CLAIMS [AGREED] .................................................64

4.11   WILLFUL INFRINGEMENT [DISPUTED, DISPUTED AS TO INCLUSION] ........................................................................................66

4.12   SETTLEMENT AGREEMENT NOT EVIDENCE AS TO EITHER INFRINGEMENT OR VALIDITY [MPS; DISPUTED AS TO INCLUSION].........69

4.13   MPS DECISION TO STOP SALES OF MP1543 NOT EVIDENCE AS TO EITHER INFRINGEMENT OR VALIDITY [MPS; DISPUTED AS TO INCLUSION] ........................................................................................71

5.    INVALIDITY DEFENSES .................................................................. 74

5.1    SUMMARY OF THE INVALIDITY DEFENSE [AGREED] ...................................74

5.2    ANTICIPATION [DISPUTED] .................................................................75

5.3    PRINTED PUBLICATIONS AS PRIOR ART [AGREED] ......................................80

5.4    OBVIOUSNESS [DISPUTED] .................................................................81

5.5    SCOPE AND CONTENT OF THE PRIOR ART [AGREED] ...................................87

5.6    DIFFERENCES BETWEEN THE CLAIMS AND THE PRIOR ART [DISPUTED] ........................................................................................88

5.7    LEVEL OF ORDINARY SKILL [AGREED] ............................................92

5.8    FACTORS INDICATING OBVIOUSNESS: INDEPENDENT INVENTION BY OTHERS [AGREED] ........................................................................93

5.9    FACTORS INDICATING NON-OBVIOUSNESS [AGREED]................................94

6.    DELIBERATION AND VERDICT ..................................................... 95

6.1   INTRODUCTION [AGREED] ..................................................................................95

6.2   DUTY TO DELIBERATE [AGREED]......................................................................97

6.3   COURT HAS NO OPINION [AGREED]..................................................................98

APPENDIX A..............................................................................................................................a

## 1.   GENERAL INSTRUCTIONS

**1.1     INTRODUCTION [AGREED]**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.


Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.2     JURORS' DUTIES [AGREED]

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if MPS is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law you should apply to the facts as you find them.  You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy.  You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  You must accept them despite how you feel about their wisdom.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.


Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.3     EVIDENCE DEFINED [AGREED]

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was presented to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not speculate about what a witness might have said, or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.


Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

### 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED]

You have heard the terms direct and circumstantial evidence.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.5     CONSIDERATION OF EVIDENCE [AGREED]

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Source:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.6     STATEMENTS OF COUNSEL [AGREED]

A further word about statements and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead their statements and arguments are intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law.  An attorney may argue all reasonable conclusions from evidence in the record.  It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

Source:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.7    CREDIBILITY OF WITNESSES [AGREED]

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudice, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.8       EXPERT TESTIMONY [AGREED]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.


Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.9    NUMBER OF WITNESSES [AGREED]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

Sources:

Adapted from Miscellaneous Jury Instructions (GMS) (1/18/06).

## 1.10     BURDENS OF PROOF [DISPUTED]

### Linear proposed Burdens of Proof

This is a civil case in which the plaintiff, Linear, is charging the defendant, MPS, with breach of contract and patent infringement.  Linear has the burden of proving its claims by a preponderance of the evidence.  Proof by a preponderance of the evidence means proof that something is more likely true than not.  It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.  To put it differently, if you were to put Linear's and MPS's evidence on the opposite sides of a scale, the evidence supporting Linear's claims would have to make the scales tip somewhat on Linear's side.

Preponderance of the evidence does not depend on the number of witnesses.  If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party.  In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them and all exhibits received into evidence regardless of who produced them.

Linear further urges that MPS's patent infringement has been willful.  Linear has the burden of proving willfulness of the infringement by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

MPS asserts in this case that Linear's patents are invalid.  However, if the Settlement Agreement has been breached, that Settlement Agreement provides that MPS cannot challenge validity in an action to establish that breach.  In any event, a patent is presumed to be

valid.  Accordingly, the party challenging the patent has the burden of proving by clear and

convincing evidence that the patent is invalid.

Those of you who are familiar with criminal cases will have heard the term proof

beyond a reasonable doubt.  That burden does not apply in a civil case and you should therefore

put it out of your mind in considering whether or not the parties have met their burdens of proof.

Sources:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court
For The District Of Delaware 1.3 (1993) and Miscellaneous Jury Instructions (GMS) (1/18/06).

### MPS Objections To Linear's Proposed Burdens Of Proof

MPS objects to that portion of Linear's proposed instruction that states:

"However, if the Settlement Agreement has been breached, that Settlement Agreement provides

that MPS cannot challenge validity in an action to establish that breach."  This is a blatant

attempt to ignore and contradict the Court's orders, which make it very clear that the jury will be

asked to make findings with respect to validity and then the Court will determine how to treat

those findings.

The Court has expressly stated that:  (1) "*the court* will determine whether this

action is one to enforce the Settlement Agreement after the jury makes its findings with respect

to the ZX circuitry issue," (2) "*the court will not preclude MPS from presenting its invalidity*

*issues to the jury*," and (3) "[s]hould it come to pass that the jury concludes the MP1543 product

contains the ZX circuitry, then *the court* will hold the jury's findings with respect to validity of

the patents-in-suit moot."  June 23, 2008 Memorandum and Order (D.I. 201), at 11 & n.6

(emphasis added).  Furthermore, on June 30, 2008, the Court denied Linear's request that the

issue of validity be bifurcated from the breach of contract and infringement issues. It is improper for Linear to circumvent the Court's orders by suggesting to the jury that it may not need to issue a verdict on invalidity if it finds that MPS has breached the Settlement Agreement.

MPS objects to Linear's repetition of the explanation of the preponderance of the evidence burden of the proof as redundant and risking confusion. The Court's prior statement of the standard in the *Telcordia* case is more concise and should be used here.

MPS objects to Linear's inclusion of allegations that MPS's infringement was willful. As an initial matter, Linear has no evidence to support an allegation of willful infringement. Linear brought this lawsuit without providing notice to MPS. At that time, no judicial officer had addressed the claim construction disputes between the parties. MPS voluntarily discontinued sales of the MP1543 pending the outcome of this lawsuit. Total net sales of the MP1543 in the United States totaled 110 parts and approximately $100. Furthermore, MPS consistently has maintained that the asserted patent claims are invalid. Given this factual record, Linear had no basis for alleging willful infringement in the first place.

Furthermore, the issue of willfulness is not relevant to any issue in this case; it would only be relevant if there were a possibility that patent infringement damages could be enhanced. There is no such possibility in this case. The parties have stipulated to patent infringement damages of $10 should Linear establish infringement of a valid and enforceable patent claim. D.I. 88. Thus, Linear does not have an opportunity to claim enhanced damages. Accordingly, willfulness is not relevant to any issue in this case, and mentioning it in the jury instructions would be confusing to the jury and prejudicial to MPS.

## MPS Proposed Burdens of Proof

This is a civil case in which the plaintiff, Linear, is charging the defendant, MPS, with breach of contract and patent infringement.  MPS denies these charges.  Linear has the burden of proving its claims by a preponderance of the evidence.  Proof by a preponderance of the evidence means proof that something is more likely true than not.  It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.  To put it differently, if you were to put Linear's and MPS's evidence on the opposite sides of a scale, the evidence supporting Linear's claims would have to make the scales tip somewhat on Linear's side.

In this case, MPS also asserts that the claims in Linear's patents which are being asserted against MPS are invalid.  A party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt.  That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not the parties have met their burdens of proof.

Sources:

Adapted from Instruction 1.10 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876-GMS

### Linear's Objections To MPS's Proposed Burdens of Proof

Linear objects to MPS's proposed instruction on Burdens of Proof to the extent that it omits language from the Court's standard Miscellaneous Jury Instructions (GMS, Rev. 1/18/06) explaining what is meant by "a preponderance of the evidence." Linear submits that this language is necessary and helpful to the jury to understand this burden. In particular, Linear objects to the omission of the Court's standard language on the testimony of witnesses in relation to the preponderance of the evidence standard.

Linear objects to MPS's proposed instruction on Burdens of Proof to the extent MPS omits Linear's claim of willful infringement. That MPS may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim. It is also relevant to Linear's claim that this an exceptional case, entitling Linear to its attorneys' fees.

## 2.    THE PARTIES' CONTENTIONS

### 2.1    THE PARTIES [AGREED]

The plaintiff in this case is Linear Technology Corporation.  Linear owns United States Patent Nos. 5,481,178 and 6,580,258 B2.  The defendant in this case is Monolithic Power Systems, Inc.  For convenience, I will refer to the plaintiff as Linear and the defendant as MPS.  As I noted at the start of the trial, I will refer to the asserted patents by their last three numbers: the '178 patent and the '258 patent.

## 2.2     LINEAR'S CONTENTIONS

Linear alleges that MPS has breached its prior agreement with Linear which the parties entered into in settlement of earlier patent litigation over voltage regulator circuits which are used in laptop or notebook computers, cell phones and other battery-operated electronic devices to save power.  I shall refer to this agreement as the "Settlement Agreement."  Linear alleges that MPS violated the Settlement Agreement through the unauthorized making, using, selling, or offering for sale of MP1543 products with the ZX circuitry identified by counsel for Linear in the ITC proceeding connected such that it allows the product to enter into "sleep mode," allows the product to enter into "reverse polarity protection," or allows the product to otherwise practice the Asserted Claims.

Whether or not MPS breached the Settlement Agreement, Linear seeks a determination that that MPS has infringed the '178 and '258 patents as a result of unauthorized manufacture and sale of voltage regulator circuits following the Settlement Agreement.  Linear also seeks a determination that MPS's infringement of the '178 and '258 patents has been willful.

## MPS Objections To Linear's Contentions

MPS objects to Linear's purported summary of the Settlement Agreement. Linear directly contradicts both the plain language of the Settlement Agreement and the Court's May 23, 2008 Order (D.I. 201). Linear's attempt to circumvent the Court's order by submitting a misleading jury instruction is improper.

Contrary to Linear's proposed instruction, Section 3.3 of the Settlement Agreement says nothing about "unauthorized making," "using," or "offering for sale." The only conduct specified in that section is making sales. The Court's order states this expressly. (D.I. 201 at 9.) Linear's statement (in its objections to MPS's proposed instruction) that MPS could breach the Settlement Agreement by "making, using, selling or offering for sale" is simply wrong and reflects another fundamental misunderstanding of the agreement.

MPS's instruction, which follows, accurately reflects the language of the Settlement Agreement and the Court's order.

In its objections to MPS's instruction, Linear states that "the Court did not establish two separate requirements." The Court's order states (D.I. 201 at 8-9) (emphasis added):

> [T]he court agrees with MPS that the purpose and intent of the Settlement Agreement was to address "the accused ZX circuitry" and MPS products containing such circuitry, not each and every one of Linear's potential infringement allegations regarding the patents-in-suit. **The language of section 3.3 is specific and narrowly drawn**, so as to preclude MPS from making any sales of products "in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to allow such products to enter into . . . [(1)] 'sleep mode,' [(2)] 'reverse polarity protection,' or [(3)] otherwise practice the Asserted Claims anywhere in the world." Accordingly, **in order for MPS to be in breach of the Settlement Agreement, its MP1543 product must contain the ZX circuitry identified by counsel for Linear in the ITC proceeding connected such that it (1) allows the product to**

**enter into "sleep mode;" (2) allows the product to enter into "reverse polarity protection;" *or* (3) allows the product to otherwise practice the Asserted Claims.**

Thus, "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" must be present in the part **and** the circuitry must be connected in the specified manner.

The Court should also be aware that Linear is taking a completely contradictory position as to the meaning of "circuitry" than it is advocating in the Federal Circuit in its lawsuit against AATI. In that case, the same attorneys who are representing Linear in this case have asserted that "a single difference will suffice to distinguish two circuits." April 9, 2008 Non-Confidential Brief of Appellant-Intervenor Linear Technology Corporation, at 27 n.10.

Similarly, during the claim construction briefing in this case, Linear successfully argued that the "third circuit certainly is distinct from the first and second circuits in that not every electronic component of the three circuits is the same." Linear Technology Corporation's June 26, 2007 Answering Claim Construction Brief (D.I. 57), at 14. The Court adopted Linear's construction, construing the term "third circuit" to mean "a circuit that is distinct from each of the first and second circuits in that not every electronic component of the circuits is the same." Claim Construction Order (D.I. 107), at 7.

The circuitry in the MP1543 that Linear has identified as a reverse current comparator is vastly different than "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." For example, the former is made up of 5 MOSFET transistors and two bipolar transistors. The latter contained 23 MOSFETs, 7 bipolar transistors, 4 inverters and 6 resistors.

As set forth above in its objections to Linear's Proposed "Burdens of Proof" instruction, MPS objects to Linear's inclusion of allegations that MPS's infringement was willful.

## 2.3    MPS'S CONTENTIONS

MPS contends that it has not breached the Settlement Agreement.  Specifically, MPS contends that the accused MPS part in this case – the MP1543 – did not possess "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," and that it has not sold an MP1543 in which that specific circuitry was connected so as to either (1) allow the product to enter into "sleep mode," (2) allow the product to enter into "reverse polarity protection," or (3) allow the product to otherwise practice the claims asserted in the ITC Proceeding.

MPS further contends that the accused MP1543 part did not infringe any of the asserted claims of the '178 or '258 patents because Linear has not proven that the accused MPS product met every limitation of the asserted claims.

MPS further contends that the two Linear patents are invalid.  Specifically, MPS contends that the asserted claims of the '178 and '258 patents are not new and/or are obvious in view of the prior art.

[If Linear is permitted to argue willful infringement to the jury]:

MPS further contends that it did not willfully infringe any claim of either the '178 or the '258 patent.


### Linear's Objections To MPS's Contentions

Linear objects to MPS's contentions to the extent MPS omits Linear's claim of willful infringement.  That MPS may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim.  It is also relevant to Linear's claim that this is an exceptional case, entitling Linear to its attorneys' fees.

Linear's proposed instruction accurately describes the facts established by the Court.  In contrast, MPS's instruction inaccurately recites the Court's rulings.  The Court did not

establish two separate requirements.  Nor did it hold that the "specific circuitry" must be

connected.  What the Court instead held is that:

> Accordingly, in order for MPS to be in breach of the Settlement
> Agreement, its MP1543 product must contain the ZX circuitry
> identified by counsel for Linear in the ITC proceeding connected
> such that it (1) allows the product to [e]nter into "sleep mode" (2)
> allows the product to enter into "reverse polarity protection," *or* (3)
> allows the product to otherwise practice the Asserted Claims.

(D.I. 201 at 9).

    For the first time on June 17, 2008, MPS included what it purports to be an

"objection" to Linear's contentions (which in fact does not respond to Linear's instruction at

all), but is really an effort to reargue its motion for summary judgment as to the meaning of "ZX

Circuitry."   In its May 23, 2008 Opinion, the Court rejected MPS's request to enter summary

judgment on the basis that the MP1543 purportedly does not contain the "ZX Circuitry identified

by counsel for Linear in the ITC proceeding."  Instead, it acknowledged that Linear's position

that "although the circuitry in the MP1543 is not labeled as 'ZX circuitry,' it performs the same

function as the ZX circuitry in the MP1556 and, therefore, contains the same circuitry at issue in

the ITC proceeding" created a genuine issue of fact that was supported by experts.  (D.I. 201 at

10-11).  MPS's attempt to argue its position that circuitry in the MP1543 instead "is vastly

different" from the ZX circuitry identified by counsel for Linear is a plainly improper attempt to

argue the merits of its position in the guise of an "objection" to a jury instruction that does not

address that issue.

    Furthermore, MPS purports to rely on two briefs that addressed different issues –

Linear's June 26, 2007 claim construction brief (filed nearly a year ago) and on an appeal brief

that Linear filed on April 9, 2008,  nearly two months before the pretrial conference. Those

briefs had nothing to do with "ZX circuitry" and out of context snippets cannot change that fact.

In any event, MPS's attempt to belatedly raise these arguments now for the first time in an "objection" to a jury instruction that does not address the issue, and raised after the Court has already decided MPS's summary judgment motion, is plainly improper.

### MPS's Response to Linear's Objections

Linear's objection to this simple, accurate instruction reveals its improper strategy – to ignore the Court's Order by now arguing that the ZX circuitry is not specific circuitry identified by counsel in the ITC proceeding, but instead can be any circuitry that Linear might argue is functionally similar and infringes the patents. The Court expressly rejected this position, stating that the phrase "the ZX circuitry identified by counsel in the ITC Proceeding" is clear and unambiguous. For example, in Footnote 4, the Court stated (emphasis added):

> Linear now appears to argue that the phrase "the ZX circuitry identified by counsel for Linear in the ITC Proceeding," is unclear, because its counsel did not know what the ZX circuitry was since it had not seen the schematics. *The court finds this argument without merit. If Linear thought that the phrase was unclear, Linear should have made that known during the negotiations, and negotiated for different language to be used in the Settlement Agreement*, or defined the term in section 1 of the agreement. It is very easy and often tempting for the court to play Monday morning quarterback and adopt an interpretation based on hindsight, or what it believes the parties knew at the time the contract was signed. This court, however, is not willing to adopt such an approach in interpreting an arms length agreement *that is clear on its face and unambiguous*.

The Court *did* state that Linear had created an issue of fact – but not as to what constitutes "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." Rather, the Court found that Linear had created an issue of fact as to whether the identified ZX circuitry is physically present in the MP1543. D.I. 201, at 10-11 ("Thus, there appears to be a classic

battle of the experts on the issue of whether the MP1543 product contains the ZX circuitry identified by counsel for Linear in the ITC proceeding.").

While Linear's purported evidence was sufficient to prevent the Court from finding as a matter of law, on the then-existing record, that "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" is not in the MP1543, the truth is – and Linear is well aware of this truth – that the circuitry is different, plain and simple. Linear has no evidence to the contrary. Knowing this, Linear now is forced to argue that the phrase "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" means any circuitry that is functionally similar and in its view infringing. The Court, however, has already rejected that argument. Linear should not be allowed to argue – through an improperly broad definition of "the ZX circuitry . . ." – the exact same thing that it previously argued unsuccessfully – *i.e.*, that any infringing circuitry violates Section 3.3 of the Settlement Agreement.

The Court has ruled. The phrase "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" is clear and unambiguous. It means the specific ZX circuitry identified by counsel for Linear in the ITC proceeding – circuitry that was present and connected in the MP1556 that was at issue in that proceeding.

Lastly, Linear's comment concerning the timing of MPS's objection is a smokescreen. Linear has extensively revised its proposed final jury instructions and objections to MPS's proposed final jury instructions in the past week, including on June 17, 2008. Those revisions reflect a clear intention to ignore the Court's May 23, 2008 order. MPS has every right to raise these objections.

## 2.4    SUMMARY OF BREACH OF CONTRACT ISSUES [DISPUTED]

### Linear proposed Summary of Breach of Contract Issues

The following is a summary of the breach of contract issues that you are asked to decide:

> Whether Linear has proven by a preponderance of the evidence that MPS has violated Section 3.3 of the Settlement Agreement by unauthorized making, using, selling, or offering for sale the MP1543 with the ZX circuitry identified by counsel for Linear in the ITC proceeding connected such that it allows the product to enter into "sleep mode," allows the product to enter into "reverse polarity protection," or allows the product to otherwise practice the Asserted Claims.

### Reservation of Rights

Supplementing its prior submissions and statements, Linear objects to the contract interpretations herein to the extent they differ from the interpretations Linear proposed in its summary judgment briefs. The bases for Linear's objections are of record. Linear reserves the right to challenge these interpretations on appeal.

### MPS Objections To Linear's proposed Summary of Breach of Contract Issues

For the same reasons that MPS has objected to Linear's proposed "Contentions" Instruction, MPS objects to Linear's proposed Summary of Breach of Contract Issues instruction. As set forth earlier:

Contrary to Linear's proposed instruction, Section 3.3 of the Settlement Agreement says nothing about "unauthorized making," "using," or "offering for sale." The only conduct specified in that section is making sales. The Court's order states this expressly. (D.I. 201 at 9.) Linear's statement (in its objections to MPS's proposed instruction) that MPS could breach the Settlement Agreement by "making, using, selling or offering for sale" is simply wrong and reflects another fundamental misunderstanding of the agreement.

MPS's instruction, which follows, accurately reflects the language of the Settlement Agreement and the Court's order.

In its objections to MPS's instruction, Linear states that "the Court did not establish two separate requirements." The Court's order states (D.I. 201 at 8-9) (emphasis added):

> [T]he court agrees with MPS that the purpose and intent of the Settlement Agreement was to address "the accused ZX circuitry" and MPS products containing such circuitry, not each and every one of Linear's potential infringement allegations regarding the patents-in-suit. **The language of section 3.3 is specific and narrowly drawn**, so as to preclude MPS from making any sales of products "in which the ZX circuitry identified by counsel for Linear in the ITC Proceeding is connected so as to allow such products to enter into . . . [(1)] 'sleep mode,' [(2)] 'reverse polarity protection,' or [(3)] otherwise practice the Asserted Claims anywhere in the world." Accordingly, **in order for MPS to be in breach of the Settlement Agreement, its MP1543 product must contain the ZX circuitry identified by counsel for Linear in the ITC proceeding connected such that it (1) allows the product to enter into "sleep mode;" (2) allows the product to enter into "reverse polarity protection;" *or* (3) allows the product to otherwise practice the Asserted Claims.**

Thus, "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" must be present in the part **and** the circuitry must be connected in the specified manner.

## MPS proposed Summary Of Breach Of Contract Issues

The following is a summary of the breach of contract issues that you are asked to decide:

> Whether Linear has proven by a preponderance of the evidence that MPS has violated Section 3.3 of the Settlement Agreement by selling the MP1543 part. In order to prevail on this issue, Linear would have to prove that the MP1543 part contained "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" and further that such circuitry is connected such that it (1) allows the product to enter into "sleep mode;" (2) allows the product to enter into "reverse polarity protection;" *or* (3) allows the product to otherwise practice the Asserted Claims.

## Linear's Objections To MPS's Proposed Summary of Breach of Contract Issues

Linear objects to MPS's proposed instruction to the extent it presents a one-sided case presentation through a partial quote from section 3.3. Linear also objects to MPS's instruction to the extent it inaccurately recites the Court's ruling. The Court did not establish two separate requirements – "Linear would have to prove that the MP1543 part contained the 'ZX circuitry'… *and further that* such circuitry is connected…."

## 2.5     SUMMARY OF PATENT ISSUES [DISPUTED]

### Linear proposed Summary of Patent Issues

The following is a summary of the patent infringement issues that you are asked

to decide independently of the breach of contract issues:

1.     Whether Linear has proven by a preponderance of the evidence that MPS's manufacture, use, sale, offer for sale or importation into the United States of the MP 1543, or the methods practiced by that product, infringe, either literally or under the doctrine of equivalents, any of the asserted claims of Linear's '178 of '258 patents.

2.     Whether Linear has proven by a preponderance of the evidence that MPS has either induced or contributed to the infringement by others of the asserted claims of the '178 of '258 patents.

3.     Whether Linear has proven by clear and convincing evidence that MPS's infringement has been willful.

You are also asked to decide:

4.     Whether MPS has proven by clear and convincing evidence that the asserted claims of the '178 or '258 patents are invalid.

### MPS Objections to Linear Proposed Summary of Patent Issues

MPS objects to Linear's first patent issue on the grounds that there is no evidence

that the MP1543, by itself, directly infringed any asserted claim.

MPS also objects to that portion of Linear's first patent issue which refers to

infringement under the doctrine of equivalents.  The doctrine of equivalents is not at issue in this

case.  Linear did not offer any evidence or argument, either in response to MPS's interrogatories

or in any of its expert's three reports, that MPS has infringed any claim under the doctrine of

equivalents.  Thus, there is no basis for instructing the jury on the doctrine of equivalents.

MPS objects to Linear's second patent issue.  As discussed during the May 23,

2008 hearing, Linear has not presented any evidence, either through its interrogatory responses,

- 27 -

or through its expert reports, of any alleged direct infringement of any asserted claim by any MPS customer. The Court stated that it would handle this issue through JMOL motion. May 23, 2008 Hearing Transcript, at 23-24.

As set forth above in its objections to Linear's Proposed "Burdens of Proof" instruction, MPS objects to Linear's inclusion of allegations that MPS's infringement was willful.

## MPS proposed Summary of Patent Issues

The following is a summary of the patent infringement issues that you are asked to decide independently of the breach of contract issues:

1.     Whether Linear has proven by a preponderance of the evidence that MPS's manufacture, use, sale, offer for sale or importation into the United States of the MP1543 constituted direct infringement of any of the asserted claims of Linear's '178 or '258 patents.

2.     Whether MPS has proven by clear and convincing evidence that the asserted claims of Linear's '178 or '258 patents are invalid.

## Linear's Objections To MPS's Proposed Summary Of Patent Issues

Linear objects to MPS's first patent issue to the extent it omits Linear's claims for indirect infringement and infringement under the doctrine of equivalents.  Further, the Court denied MPS's motion *in limine* No. 4, which sought to exclude such evidence.  That MPS may disagree with such claims provides no basis not to advise the jury of Linear's properly pleaded claims.  MPS cannot obtain judgment in its favor on substantive issues by arguing what the evidence shows in the jury instructions.

Linear also objects to MPS's proposed instruction on Summary of Patent Issues to the extent MPS omits Linear's claim of willful infringement.  That MPS may disagree with such a claim provides no basis not to advise the jury of Linear's properly pleaded claim.  It is also relevant to Linear's claim that this is an exceptional case, entitling Linear to its attorneys' fees.

## 3.     BREACH OF CONTRACT

### 3.1     BREACH OF CONTRACT – FACTUAL ELEMENTS [AGREED]

To recover for MPS's breach of contract, Linear must prove the following:

1.     That Linear and MPS entered into a contract;

2.     That Linear did all, or substantially all, of the significant things that the contract required it to do;

3.     That MPS did something that the contract prohibited it from doing; and

4.     That Linear was harmed by that.

Sources:

Adapted from Judicial Council of California Civil Jury Instructions (CACI) Instruction 300; *New September 2003; Revised December 2007.*

### 3.2   INTERPRETATION – CRITICAL TERM [MPS; DISPUTED AS TO INCLUSION]

The following term contained in the Settlement Agreement is central to the

parties' dispute:

> "the ZX circuitry identified by counsel for Linear in the ITC
> Proceeding"

I have found that this term is clear and unambiguous.  For avoidance of doubt, the

term means:

> The specificZX  circuitry that was identified by Linear's counsel in
> the ITC Proceeding.  It was present and connected in the MP1556
> part at issue in the ITC Proceeding.


Sources:

May 23, 2008 Memorandum and Order (D.I. 201) at 8-9 & n.4, 14.


### **Linear's objections to MPS's proposed instruction on Interpretation- Critical Term**

MPS's proposed instruction directing the jury on one portion of one provision of

the Settlement Agreement is an improper attempt by MPS to have the ultimate issue in the case –

as to which the Court ruled there are disputed facts – decided in its favor in the jury instructions.

The Court in its Memorandum Opinion and Order (D.I. 201) did not, as MPS alleges, define "the

ZX circuitry identified by counsel for Linear in the ITC Proceeding" as "[t]he specific circuitry

that was identified by Linear's counsel in the ITC Proceeding" or rule that it is a "critical term."

Nor did it hold that "it was present and connected in the MP1556 part at issue in the ITC

proceeding."  In fact, the language of the instruction "the specific circuitry that was identified by

Linear's counsel" and "[i]t was present and connected in the MP1556 part at issue" *appears*

*nowhere* in the Court's opinion or the Settlement Agreement.  MPS improperly attempts to use

this instruction to advance its contract interpretation that the Court rejected.  In its Opinion and

Order, the Court instead construed Section 3.3 of the Settlement Agreement to mean (D.I. 201 at

¶ 6):

> Section 3.3 of the Settlement Agreement requires the MP1543
> product to contain the ZX circuitry identified by counsel for Linear
> in the ITC proceeding connected such that it allows the product to
> [e]nter into "sleep mode;" allows the product to enter into "reverse
> polarity protection;" or allows the product to otherwise practice the
> Asserted Claims.

The Court did not hold that the ZX Circuitry was limited to "the specific circuitry" present and

connected in the MP1556 part at issue as MPS contends.  The Court further acknowledged that

Linear's position that "although the circuitry in the MP1543 is not labeled as 'ZX circuitry,' it

performs the same function as the ZX circuitry in the MP1556 and, therefore, contains the same

circuitry at issue in the ITC proceeding" created a genuine issue of fact that was supported by

experts.  (*Id*. at 10-11).  MPS attempts to have that factual dispute resolved in its favor by

adopting a narrow interpretation of the provision that the Court did not accept in its decision.

MPS's attempt to draw attention to only one phrase of Section 3.3 of the

Settlement Agreement also is misleading and confusing to the jury and unfairly prejudicial,

especially divorced from the entirety of the section as the Court interpreted it.  This instruction is

also unnecessary as the jury already will be instructed on Section 3.3 in the parties' contentions

and the Summary of the Contract Issues (Instructions 2.2, 2.3 and 2.4).

MPS's instruction also inaccurately recites the Court's rulings and is misleading

to the extent it seeks to parse the language of Section 3.3 into individual requirements.  The

Court did not establish two separate requirements for breach.  Nor did it hold that the "specific

circuitry" must be connected.  What the Court instead held is that:

> Accordingly, in order for MPS to be in breach of the Settlement
> Agreement, its MP1543 product must contain the ZX circuitry

> identified by counsel for Linear in the ITC proceeding connected
> such that it (1) allows the product to [e]nter into "sleep mode;" (2)
> allows the product to enter into "reverse polarity protection;" *or* (3)
> allows the product to otherwise practice the Asserted Claims.

(D.I. 201 at 9).

Linear further objects to the language that the Court found "this term is clear and

unambiguous" and "[f]or avoidance of doubt, the term means" as the Court has not construed the

particular phrase at issue separate from Section 3.3 and that it calls undue attention to one phrase

in Section 3.3 to the exclusion of the rest of the provision that the jury must consider.

For the reasons stated in Linear's objections to MPS's proposed instruction no.

2.3, MPS's attempt to use this jury instruction to inject an argument that was rejected in the

Court's summary judgment decision (D.I. 201) is improper and should be rejected.

### MPS's Response to Linear's Objections

Linear's objection to this simple, accurate instruction reveals its improper strategy

– to ignore the Court's Order by now arguing that the ZX circuitry is not specific circuitry

identified by counsel in the ITC proceeding, but instead can be any circuitry that Linear might

argue is functionally similar and infringes the patents.  The Court expressly rejected this position,

stating that the phrase "the ZX circuitry identified by counsel in the ITC Proceeding" is clear and

unambiguous.   For example, in Footnote 4, the Court stated (emphasis added):

> Linear now appears to argue that the phrase "the ZX circuitry
> identified by counsel for Linear in the ITC Proceeding," is unclear,
> because its counsel did not know what the ZX circuitry was since it
> had not seen the schematics.  ***The court finds this argument
> without merit.  If Linear thought that the phrase was unclear,
> Linear should have made that known during the negotiations,
> and negotiated for different language to be used in the Settlement
> Agreement***, or defined the term in section 1 of the agreement.  It is
> very easy and often tempting for the court to play Monday
> morning quarterback and adopt an interpretation based on

> hindsight, or what it believes the parties knew at the time the contract was signed. This court, however, is not willing to adopt such an approach in interpreting an arms length agreement *that is clear on its face and unambiguous*.

The Court *did* state that Linear had created an issue of fact – but not as to what constitutes "the ZX circuitry identified by counsel for Linear in the ITC Proceeding." Rather, the Court found that Linear had created an issue of fact as to whether the identified ZX circuitry is physically present in the MP1543. D.I. 201, at 10-11 ("Thus, there appears to be a classic battle of the experts on the issue of whether the MP1543 product contains the ZX circuitry identified by counsel for Linear in the ITC proceeding.").

While Linear's purported evidence was sufficient to prevent the Court from finding as a matter of law, on the then-existing record, that "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" is not in the MP1543, the truth is – and Linear is well aware of this truth – that the circuitry is different, plain and simple. Linear has no evidence to the contrary. Knowing this, Linear now is forced to argue that the phrase "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" means any circuitry that is functionally similar and in its view infringing. The Court, however, has already rejected that argument. Linear should not be allowed to argue – through an improperly broad definition of "the ZX circuitry . . ." – the exact same thing that it previously argued unsuccessfully – *i.e.*, that any infringing circuitry violates Section 3.3 of the Settlement Agreement.

The Court has ruled. The phrase "the ZX circuitry identified by counsel for Linear in the ITC Proceeding" is clear and unambiguous. It means the specific ZX circuitry identified by counsel for Linear in the ITC proceeding – circuitry that was present and connected in the MP1556 that was at issue in that proceeding.

The Court should also be aware that Linear is taking a completely contradictory

position as to the meaning of "circuitry" than it is advocating in the Federal Circuit in its lawsuit

against AATI.  In that case, the same attorneys who are representing Linear in this case have

asserted that "a single difference will suffice to distinguish two circuits."  April 9, 2008 Non-

Confidential Brief of Appellant-Intervenor Linear Technology Corporation, at 27 n.10.

Similarly, during the claim construction briefing in this case, Linear successfully

argued that the "third circuit certainly is distinct from the first and second circuits in that not

every electronic component of the three circuits is the same."  Linear Technology Corporation's

June 26, 2007 Answering Claim Construction Brief (D.I. 57), at 14.  The Court adopted Linear's

construction, construing the term "third circuit" to mean "a circuit that is distinct from each of

the first and second circuits in that not every electronic component of the circuits is the same."

Claim Construction Order (D.I. 107), at 7.

The circuitry in the MP1543 that Linear has identified as a reverse current

comparator is vastly different than "the ZX circuitry identified by counsel for Linear in the ITC

Proceeding."  For example, the former is made up of 5 MOSFET transistors and two bipolar

transistors.  The latter contained 23 MOSFETs, 7 bipolar transistors, 4 inverters and 6 resistors.

## 4.    INFRINGEMENT

### 4.1    CLAIM INFRINGEMENT [AGREED]

Before you can decide whether MPS has infringed Linear's '178 and '258 patents, you will have to understand patent "claims." Patent claims define, in words, the boundaries of what is Linear's protected invention. The patent claims are the numbered paragraphs at the end of the patent. The patent claims at issue here are claims 1, 2, 34, 41 and 55 of the '178 patent, beginning at column 16, line 35 of the '178 patent, and claims 1, 2, 3 and 34 of the '258 patent, beginning at column 16, line 40 of the '258 patent. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. The specification and drawings merely describe certain embodiments of the invention. Each of the claims must be considered individually, and to show infringement of a patent, Linear need only establish that one claim of the patent has been infringed.

Sources:

Adapted from Instruction 3.1 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876-GMS; Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 3.1 (1993).

## 4.2    CONSTRUCTION OF CLAIMS [AGREED IN PART]

You have a copy of each patent in your juror book.  As I already said, the claims of each patent at issue are 1, 2, 34, 41 and 55 of the '178, and 1, 2, 3 and 34 of the '258.

I will provide you with a list of claim terms from each patent and the meaning of the terms the Court construed in Appendix A.  As used in these claims, the definitions for certain terms as I construed them must be applied.

<u>Source:</u>

Adapted from Instruction 3.2 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876 (GMS).

### **<u>Reservation of Rights</u>**

The parties object to each and every claim construction that is inconsistent with the claim constructions that they proposed in their claim construction briefs.  The bases for their objections are of record.  The parties reserve the right to challenge these constructions on appeal.

### 4.3     PATENT INFRINGEMENT – GENERALLY [AGREED]

A patent confers on its owner the right to exclude others from importing, making, using, selling or offering to sell the patented invention in the United States during the term of its patent.  The patent owner may do so by filing a lawsuit for patent infringement.  Here, Linear, the patent owner, has sued MPS, and has alleged that MPS's MP 1543 infringed claims 1, 2, 34, 41 and 55 of Linear's '178 patent, and claims 1, 2, 3 and 34 of Linear's '258 patent.

Any person or business entity which imports, makes, uses, sells or offers to sell, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent. You must decide whether Linear has proven by a preponderance of the evidence that MPS's products or methods infringe any of the asserted claims of the '178 or '258 patents.

Source:

Adapted from Instruction 3.3 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

## 4.4     DIRECT INFRINGEMENT [DISPUTED]

### Linear Proposed Direct Infringement

MPS would be liable for directly infringing Linear's '178 or '258 patents if you find that Linear has proven by a preponderance of the evidence that MPS has made, used, sold, or offered to sell the invention defined in one or more asserted claims of Linear's '178 patent or '258 patent in the United States.

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent. He may directly infringe even though in good faith he believes that what he is doing is not an infringement.

Source:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 3.4 (1993).

### MPS objections to Linear Proposed Direct Infringement

MPS objects to Linear's proposal because Linear has offered no evidence that MPS has directly infringed through the sale of any product. Furthermore, Linear concedes that sales of the MP1543 do not directly infringe, because the MP1543 must be incorporated into a product and used in a specific way in order to even arguably directly infringe any of the asserted claims. Thus, the sole purpose of this instruction is to provide a foundation for Linear's potential claim of indirect infringement. MPS also objects to Linear's proposal as incomplete and misleading in that good faith is relevant to issues such as indirect infringement.

Linear's objection to MPS's proposed instruction states that "MPS's instruction does not even instruct the jury on the standard for direct infringement and is lacking such basic principles as 1) the burden of proof is a preponderance of the evidence; 2) a claim can be infringed by making, using, selling or offering to sell the invention, 3) any one of the asserted claims may be singularly infringed; and 4) infringement can be proven by circumstantial evidence (rather than direct evidence of use)."

Linear's complaints are without merit. The jury already has been instructed – numerous times – that the burden of proof for infringement is a preponderance of the evidence. *See, e.g.,* instruction 1.10 ("Burdens of Proof), instruction 2.5 ("Summary of Patent Issues"), instruction 3.4 ("Patent Infringement – Generally"). Similarly, the jury already has been instructed – in the immediately preceding instruction – that a claim can be infringed by making, using, selling or offering to sell a product covered by the claim. *See* instruction 3.4 ("Patent Infringement – Generally"). Linear's assertion that MPS's proposed instruction does not include the principle that infringement is to be considered on a claim-by-claim basis is simply wrong. MPS's proposed instruction states that explicitly. Lastly, the jury has already been instructed that it may consider both direct and circumstantial evidence. *See* Instruction 1.4 ("Direct and Circumstantial Evidence"). MPS objects to Linear's unnecessary and prejudicial repetition.

Linear's contention that it is not necessary to instruct the jury that the "United States patent laws applicable to this case are limited to infringing activities that occur within the United States," because Linear has not alleged that its patents restrict activities outside the United States," is without merit. As an initial matter, Linear's proposed instruction states that infringement can be found based upon MPS having "made . . . the invention defined in one or more asserted claims." The MP1543 was manufactured outside the United States. Thus,

Linear's instruction clearly seeks to obtain an infringement verdict based upon activities outside the United States.  In any event, MPS is entitled to a jury that is properly informed that activities outside the United States cannot serve as the basis for an infringement finding.

## **MPS Proposed Direct Infringement**

Deciding whether a patent claim has been directly infringed is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I have already explained to you the key terms of the asserted claims mean as a matter of law. In the second step, you must compare each claim as I have interpreted it to the evidence regarding how the MP1543 part has actually been used (if at all) in the United States to determine whether every element of the claim can be found in such use. This element-by-element comparison is your responsibility as the jury for this case. In order to find infringement, you must find that every single element of a claim can be found. If even one element of the claim is missing, you must find that the claim is not infringed.

The United States patent laws applicable to this case are limited to infringing activities that occur within the United States. Linear's patents do not give it a right to regulate or restrict conduct outside of the United States.

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent. He may directly infringe even though in good faith he believes that what he is doing is not an infringement. However, good faith is relevant to whether MPS may be liable for indirect infringement, which I will instruct you on shortly.

Source:

Adapted from Instruction 3.4 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876-GMS. *See also* Uniform Jury Instructions for Patent Cases, §3.3 (D. Del. 2004). *See also Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("These extraterritorial activities, however, are irrelevant to the case before us, because '[t]he right conferred by a patent under our law is confined to the United States and its territories, . . .'"

## Linear's Objections to MPS's proposed instruction on Direct Infringement

Linear objects to MPS's proposed instruction on Direct Infringement as an incomplete instruction that unnecessarily deviates so far from the instruction given in the *Telcordia* case to the point that it no longer resembles the source instruction. MPS's instruction does not even instruct the jury on the standard for direct infringement and is lacking such basic principles as 1) the burden of proof is a preponderance of the evidence; 2) a claim can be infringed by making, using, selling or offering to sell the invention, 3) any one of the asserted claims may be singularly infringed; and 4) infringement can be proven by circumstantial evidence (rather than direct evidence of use). MPS's instruction should be rejected on this basis alone for failing to instruct the jury on the necessary elements it needs to consider direct infringement.

Linear further objects to MPS's proposed instruction insofar as it instructs the jury that the "United States patent laws applicable to this case are limited to infringing activities that occur within the United States" and to the unnecessary and prejudicial repetition "Linear's patents do not give it a right to regulate or restrict conduct outside of the United States." Linear has not alleged that its patents restrict activities outside the United States and such a statement is irrelevant to the question of direct infringement. MPS instead improperly interjects this paragraph in order to confuse the jury for the purposes of its patent misuse defense.

Linear objects to MPS's inclusion of the statement "[h]owever, good faith is relevant to whether MPS may be liable for indirect infringement" as unnecessarily confusing to the jury. The jury will be adequately instructed on the defendant's state of mind in the Court's instructions on inducement of infringement and contributory infringement.

Finally, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper.

For the foregoing reasons, MPS's instruction should be rejected.  The Court should instead adopt Linear's proposed instruction which fairly and accurately instructs the jury on the standard for direct infringement.

**4.5     INDIRECT INFRINGEMENT [DISPUTED]**

### Linear proposed Indirect Infringement

Linear also asserts that MPS indirectly infringes Linear's '178 and '258 patents. There are two kinds of indirect infringement – 1) inducement to infringe; and 2) contributory infringement.  Both types of indirect infringement require that Linear establish that someone other than MPS directly infringes the patent claim.

Source:

Adapted from Instruction 3.4.1 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

### MPS objections to Linear proposed Indirect Infringement

MPS objects to any attempt by Linear to argue that MPS has induced or contributed to infringement.  As discussed during the May 23, 2008 hearing, there is no evidence that any customer in the United States has used the MP1543 part to build a switching voltage regulator or for any other purpose.  There is thus no evidence to support direct infringement by others, a pre-requisite for indirect infringement.  The Court stated that it would handle this issue through JMOL motion.  May 23, 2008 Hearing Transcript, at 23-24.  Linear's statement (in its objections to MPS's proposed instruction) that it "has presented ample circumstantial evidence of infringement by others" is without merit.  Linear does not have, and has not presented, ***any*** evidence of direct infringement by others.

MPS further objects to Linear's deviation from the instruction given in the *Telcordia* case as it results in an incomplete construction, and omits the Federal Circuit's requirement that MPS only be liable, if at all, for acts of indirect infringement stemming from

specific instances of direct infringement.  *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293,

1303 (Fed Cir 2006) ("In addition, the patentee always has the burden to show direct

infringement for each instance of indirect infringement.").

              Linear's opposition to MPS's proposed conditional instruction (which follows)

cites to cases holding that circumstantial evidence may be used to prove indirect infringement.

The cases, however, do not assist Linear.  For example, in *Chiuminatta Concrete Concepts, Inc.*

*v. Cardinal Indus., Inc.*, 1 Fed. Appx. 879, 884 (Fed. Cir. 2001) (unpublished), the passage cited

by Linear was addressing damages issues, not infringement.  In any event, *Chiuminatta* involved

the sale of a finished product, not a part that itself was incapable of infringement.  Even then, the

Federal Circuit reversed the district court's finding that "each sale of a Green Machine saw led to

an act of infringement."  Similarly, *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272

(Fed. Cir. 1986) dealt with sales of a finished puzzle together with an "an instruction sheet

teaching the method of restoring the preselected pattern."  *Pickholtz v. Rainbow Techs., Inc.*, 260

F. Supp. 2d 980, 988 (D. Cal. 2003), a district court opinion, is inapplicable – it focuses on the

requisite mental state necessary to support an indirect infringement finding.  None of Linear's

cases relieves a patentee from proving direct infringement by someone as a prerequisite to

claiming indirect infringement.  The jury cannot simply speculate – which is precisely what

Linear is asking that it be allowed to do.

## MPS proposed Indirect Infringement

## [To Be Given Only If Court Denies MPS' JMOL motion]

Linear asserts that MPS indirectly infringed Linear's '178 and '258 patents. There are two kinds of indirect infringement – 1) inducement to infringe; and 2) contributory infringement. Both types of indirect infringement require that Linear establish that someone other than MPS directly infringed the patent claim by using the MP1543 part in a way that included all of the requirements of the asserted claims. MPS can be liable for indirect infringement only if its sale of an MP1543 part resulted in a direct infringement in the United States by a purchaser of that part. Linear must show direct infringement in the United States for each instance of indirect infringement for MPS to be liable for that instance of indirect infringement.

Source:

Adapted from Instruction 3.4.1 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS). *DSU Med. Corp. v. JMS Co., Ltd*., 471 F.3d 1293, 1303 (Fed Cir 2006).

## Linear's Objections to MPS's proposed instruction on Indirect Infringement

Linear objects to MPS's proposed instruction on Indirect Infringement to the extent it misleadingly characterizes Linear's burden as having to "show direct infringement in the United States for each instance of indirect infringement…." This instruction fails to acknowledge that proof of infringement by circumstantial evidence is sufficient. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus*., *Inc*., No. 00-1172, 2001 U.S. App. LEXIS 233, at *13 (Fed. Cir. Jan. 8, 2001) ("Proof of inducing infringement or direct infringement may be shown by circumstantial evidence."); *see also Pickholtz v. Rainbow Techs.,*

*Inc.*, 260 F. Supp. 2d 980, 988 (D. Cal. 2003) (circumstantial evidence may be used to prove contributory infringement).  Moreover, circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.  *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) (same).  Linear has presented ample circumstantial evidence of infringement by others.

        MPS's reliance on the *DSU* decision is misplaced.  MPS is wrong to insinuate that Linear must prove that <u>each</u> accused part sold was used in an infringing manner.  *DSU* makes no such pronouncement.  Rather, the *DSU* Court was simply making the unremarkable observation that there can be no indirect infringement, unless direct infringement follows.  Linear does not have to show that <u>each</u> sale resulted in infringement; rather Linear just has to show that it is more probable than not that a customer used the MP1543 in the way it was intended to be used – namely, to infringe the Linear Patents.

        Finally, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper.  The Court denied Monolithic's motion *in limine* no. 4 on this very issue.

**4.6     INDUCING PATENT INFRINGEMENT [DISPUTED]**

### Linear proposed Inducing Patent Infringement

To be liable for inducing patent infringement, MPS must have known of the patent and actively encouraged or instructed another person how to use its product or perform a method in a manner that you find infringes the asserted patent claims.

Thus, to prove that MPS induced infringement of the '178 or '258 patents, Linear must prove by a preponderance of the evidence the following four things with respect to that patent:

1.     MPS had knowledge of the patent;

2.     MPS actively encouraged or instructed another person how to use a product or perform a method in a way that you, the jury, finds infringes the patent claims;

3.     MPS had an affirmative intent to cause the acts that constitute direct infringement and must have or should have known that its actions would cause direct infringement; and

4.     The induced person directly infringed a claim of the patent.

Linear may prove these elements by direct or circumstantial evidence.

Source:

Adapted from Instruction 3.5 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

### MPS Objections to Linear proposed Inducing Patent Infringement

MPS objects to any attempt by Linear to argue that MPS has induced or contributed to infringement.  As discussed during the May 23, 2008 hearing, there is no evidence that any customer in the United States has used the MP1543 part to build a switching voltage regulator or for any other purpose.  There is thus no evidence to support direct infringement by

- 49 -

others, a pre-requisite for indirect infringement.  The Court stated that it would handle this issue

through JMOL motion.  May 23, 2008 Hearing Transcript, at 23-24.

MPS objects to Linear's deviation from the instruction given in the *Telcordia* case

as misleading as to Linear's burden to show each of the elements of induced infringement.

## MPS proposed Inducing Patent Infringement

### [To Be Given Only If Court Denies MPS' JMOL motion]

To be liable for inducing patent infringement, MPS must have known of the patent and actively encouraged or instructed another person how to use its product or perform a method in a manner that you find infringes the asserted patent claims.

Thus, to prove that MPS induced infringement of the '178 or '258 patents, Linear must prove by a preponderance of the evidence each of the following four things with respect to that patent:

1. MPS had knowledge of the '178 and '258 patents;

2. MPS actively encouraged or instructed another person in the United States how to use a product or perform a method in a way that you, the jury, finds infringes the patent claims;

3. MPS had an affirmative intent to cause the acts that constitute direct infringement and must have or should have known that its actions would cause direct infringement; and

4. The induced person directly infringed a claim of the patent in the United States.

All four of these things must be proven by either direct or circumstantial evidence before you may find that MPS induced patent infringement.

Source:

Adapted from Instruction 3.5 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS); *See also* Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 3.6 (1993); Instruction 4.3 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

### **Linear's Objections to MPS's proposed instruction on Inducing Patent Infringment**

Linear objects to MPS's deviation from the instruction given in the *Telcordia* case as misleading as to the elements of induced infringement, particularly the repeated reference to "in the United States" as unnecessary and confusing to the jury.

Finally, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper. The Court denied Monolithic's motion *in limine* no. 4 on this very issue.

### 4.7    CONTRIBUTORY INFRINGEMENT [DISPUTED]

#### Linear proposed Contributory Infringement

MPS may also be infringing if it contributes to the infringement of others. The elements of contributory infringement are:

1.    sale or supply by MPS;

2.    of a material component of the patented invention, or a material component for use in practicing a patented process, that is not a staple article of commerce capable of substantial noninfringing use;

3.    with knowledge of the patent and with knowledge that the component was especially made or adapted for use in infringement of such invention.

A "staple" article is a commodity or product with substantial uses apart from a patented invention. In determining whether the component supplied by MPS is a "staple article of commerce," you should take into account the quality, quantity, and efficiency of MPS's suggested uses for its MP 1543 product.

MPS can be liable for contributory infringement if one of its customers directly infringes a patent claim. Proof of contributory infringement and the underlying direct infringement may be based on circumstantial evidence you have heard in this case, rather than direct evidence of infringement.

Source:

Adapted from Instruction 3.6 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

#### MPS Objections to Linear proposed Contributory Infringement

MPS objects to any attempt by Linear to argue that MPS has induced or contributed to infringement. As discussed during the May 23, 2008 hearing, there is no evidence

that any customer in the United States has used the MP1543 part to build a switching voltage regulator or for any other purpose. There is thus no evidence to support direct infringement by others, a pre-requisite for indirect infringement. The Court stated that it would handle this issue through JMOL motion. May 23, 2008 Hearing Transcript, at 23-24.

MPS further objects to Linear's instruction because it does not include as one of the elements of contributory infringement that Linear must prove that one of MPS's customers directly infringed a patent claim. Linear's formulation is confusing and misleading.

MPS believes that the Court's Instruction 4.4 given in Energy Transportation Group, Inc. v. Sonic *Innovations, Inc.*, No. 05-422 (GMS), provides a more accurate and concise statement of the law than provided in Linear's proposed Contributory infringement. For example, the *Energy Transportation* instruction makes clear the requirement of direct infringement. MPS thus proposes an instruction based on the *Energy Transportation* Instruction 4.4.

**MPS proposed Contributory Infringement**

**[To Be Given Only If Court Denies MPS' JMOL motion]**

Linear asserts that MPS contributed to another's infringement. To show contributory infringement, Linear has the burden to prove that it is more likely than not that there was contributory infringement.

Thus, to prove that MPS contributed to another's infringement of the '178 and '258 patents, Linear must prove by a preponderance of the evidence each of the following four things:

1.    MPS sold or supplied;

2.    a material component of the patented invention that is not a staple article of commerce capable of substantial non-infringing use;

3.    with knowledge that the component was especially made or adapted for use in an infringing product. This requires that MPS knew of the patent and knew that the patent would be infringed by the use of its component; and

4.    the acts of MPS resulted in a direct infringement of a claim of the patents by another person in the United States.

A "staple article of commerce capable of substantial non-infringing use" is something that has uses other than as a part of component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Source:

Adapted from Instruction 4.4 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

- 55 -

## **Linear's Objections to MPS's proposed instruction on Contributory Infringement**

Linear believes that the Court's instruction in the *Telcordia* case (and offered by Linear) provides a more accurate, concise and complete statement of the law than MPS's proposed Contributory Infringement instruction. In particular, Linear objects to MPS's instruction as inaccurate and misleading to the extent it excludes that proof of contributory infringement and the underlying direct infringement may be based on circumstantial evidence.

Finally, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper. The Court denied Monolithic's motion *in limine* no. 4 on this very issue.

## 4.8     LITERAL INFRINGEMENT [DISPUTED]

### Linear proposed Literal Infringement

A patent claim is literally infringed if MPS's product or method includes each and every component, or limitation, of that claim. If MPS's product or method includes each and every limitation of any claim of the '178 or '258 patents, then you must find that MPS infringes that claim. You must conduct this comparison for each asserted claim of each patent-in-suit. Infringement may not be avoided simply by adding features or components or method steps not required by the claims. If MPS's product or method do not meet each of the limitations of any asserted claim of the '178 or '258 patents, then there is no literal infringement. You must determine literal infringement with respect to each patent claim, and each product and method, individually.

Source:

Adapted from Instruction 3.7 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

### MPS Objections to Linear proposed Literal Infringement

MPS believes that the Court's Instruction 4.5 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS), provides a more accurate and concise statement of the law than provided in Linear's proposed instruction.

MPS objects to Linear's proposal because Linear has offered no evidence that MPS has directly infringed through the sale of any product. Furthermore, it is conceded that sales of the MP1543 do not directly infringe, because the MP1543 must be incorporated into a product and used in a specific way in order to even arguably directly infringe any of the asserted

claims. Thus, the sole purpose of this instruction is to provide a foundation for Linear's potential claim of indirect infringement.

MPS objects to Linear's proposal in that it suggests that the jury could find literal infringement based upon conduct outside the United States. This is contrary to the law. *See Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("These extraterritorial activities, however, are irrelevant to the case before us, because '[t]he right conferred by a patent under our law is confined to the United States and its territories, . . .'").

## MPS proposed Literal Infringement

To determine literal infringement, you must compare the products or methods that incorporate the accused MP1543 part with each claim that Linear asserts was infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if the product or method incorporating the accused MP1543 part is in the United States and includes each and every element in that patent claim. If the product incorporating the accused MP1543 or method using the accused MP1543 does not contain one or more elements recited in a claim, then MPS does not literally infringe that claim. You must determine literal infringement with respect to each claim individually.

Source:

Adapted from Court's Instruction 4.5 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

## Linear's Objections to MPS's proposed instruction on Literal Infringement

Linear objects to MPS's proposed instruction on Literal Infringement as a misleading and inaccurate statement of the law. In particular, MPS's proposed instruction omits the important statement for the jury that "[i]nfringement may not be avoided simply by adding features or components or method steps not required by the claims." The jury will be confused in this case without that necessary guidance.

Linear further objects to MPS's deviation from the instruction given in *Energy Transportation Group, Inc. v. Sonic Innovations* to the extent it unnecessarily and confusingly includes the phrase "the accused MP1543 part is in the United States."

Finally, for the reasons set forth in Linear's opposition to MPS's motion *in limine* no. 4, Linear has in fact presented evidence of direct infringement by MPS. Furthermore, MPS's attempt to in effect seek judgment in its favor by arguing about the sufficiency of the evidence on substantive issues in the context of jury instructions is improper.

**4.9      DOCTRINE OF EQUIVALENTS [DISPUTED AS TO INCLUSION]**

**Linear proposed Doctrine of Equivalents**

If you do not find literal infringement you may consider infringement under the "doctrine of equivalents." You may find that MPS's product and method infringe a claim, even if not all of the components or method steps of the claim are literally present in MPS's product. You may find infringement in such circumstances if the components or method steps of MPS's product are equivalent to that claimed in at least one of Linear's patent claims. You must find that there is an equivalent component or method step in MPS's product or method for each element or method step of the patent claim that is not literally present in MPS's product or method. This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while avoiding the literal language of the patent claims.

The test to determine equivalence under the doctrine of equivalents is whether MPS's product and components and methods involve no substantial differences from the inventions claimed in Linear's patents. One way to determine if the differences are substantial is to determine whether each component of MPS's product, or each method step in MPS's methods, perform substantially the same function in substantially the same way to produce substantially the same result as the corresponding component or method step claimed in Linear's patents.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether MPS's product or method and components are equivalent to that defined in Linear's claims is to be determined as of the time of the alleged infringement.

Source:

Adapted from Instruction 3.8 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

### MPS Objections to Linear proposed Doctrine of Equivalents

MPS objects to the inclusion of this instruction. The doctrine of equivalents is not at issue in this case. Linear did not offer any evidence or argument, either in response to MPS's interrogatories or in any of its expert's three reports, that MPS has infringed any claim under the doctrine of equivalents. Thus, there is no basis for instructing the jury on the doctrine of equivalents.

It is black letter law that Linear must present "*evidence and argument* concerning the doctrine and each of its elements." *nCUBE Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (emphasis in original). In particular, Linear had to provide "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *Texas Instr. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). Linear never even attempted to provide such testimony and argument. It cannot present an infringement argument based on the doctrine of equivalents.

## Linear's Response to MPS's Objection

MPS's attempt to in effect seek judgment in its favor by arguing about the

sufficiency of the evidence on substantive issues in the context of jury instructions is improper.

### 4.10     MEANS-PLUS-FUNCTION CLAIMS [AGREED]

Claim 34 of the '178 patent defines three requirements of the invention as means for performing certain functions.

A means-plus-function element is a claim element that claims a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop" and all equivalents.

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the specified function. Specifically, for claim 34 of the '178 patent, you must first determine whether MPS's MP1543 performs the functions of that claim. If not, the means-plus-function claim element is not infringed.

Second, if MPS's MP 1543 does perform the required function, you must identify the structure in that product that actually performs this function.

Finally, you must determine whether that accused structure is the same as or equivalent to the structure identified in the patent for performing the required function that I described to you earlier. If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of the claim is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether people of

ordinary skill in the art would have believed that the structure of the accused product and the

structure in the patent were interchangeable as of the date the patent issued.


Source:

Adapted from Instruction 3.9 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876 (GMS).

**4.11     WILLFUL INFRINGEMENT [DISPUTED, DISPUTED AS TO INCLUSION]**

<u>Linear proposed Willful Infringement</u>

If you find by a preponderance of the evidence that MPS infringed Linear's patents, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful.  Willfulness must be proven by clear and convincing evidence showing that:

1.     MPS had actual knowledge of Linear's patents,

2.     A reasonable person, with knowledge of Linear's patents, would have concluded that: (a) MPS's actions were highly likely to infringe Linear's '178 or '258 patent, and (b) Linear's '178 or '258 patent, were highly likely to be valid, and

3.     MPS acted even though it knew, or it was so obvious that it should have known, that its actions were highly likely to infringe a valid patent.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to, whether MPS intentionally copied the claimed invention, and whether MPS presented a substantial defense to infringement, including the defense that the patent is invalid.

<u>Source:</u>

Adapted from Instruction 12.8 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

<u>**MPS Objections to Linear proposed Willful Infringement**</u>

As set forth above in its objections to Linear's Proposed "Burdens of Proof" instruction, MPS objects to Linear's inclusion of allegations that MPS's infringement was willful.

MPS also objects to Linear's inclusion of infringement under the doctrine of equivalents. The doctrine of equivalents is not at issue in this case. Linear did not offer any evidence or argument, either in response to MPS's interrogatories or in any of its expert's three reports, that MPS has infringed any claim under the doctrine of equivalents. Thus, there is no basis for instructing the jury on the doctrine of equivalents.

It is black letter law that Linear must present "evidence and argument concerning the doctrine and each of its elements." *nCUBE Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (emphasis in original). In particular, Linear had to provide "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *Texas Instr. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). Linear never even attempted to provide such testimony and argument. It cannot present an infringement argument based on the doctrine of equivalents.

## MPS proposed Willful Infringement

### [If the Court concludes an instruction on willful infringement is appropriate]

If you find by a preponderance of the evidence that MPS infringed Linear's patents, then you must further determine if this infringement was willful.  Willfulness must be proven by clear and convincing evidence showing that:

1.    MPS had actual knowledge of Linear's patents,

2.    A reasonable person, with knowledge of Linear's patents, would have concluded that: (a) MPS's actions were highly likely to infringe Linear's '178 or '258 patent, and (b) Linear's '178 or '258 patent, were highly likely to be valid, and

3.    MPS acted even though it knew, or it was so obvious that it should have known, that its actions were highly likely to infringe a valid patent.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to, whether MPS intentionally copied the claimed invention, and whether MPS presented a substantial defense to infringement, including the defense that the patent is invalid.

Source:

Adapted from Instruction 10.8 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

### Linear's Objections to MPS's proposed instruction on Willful Infringement

Linear objects to MPS's omission of its language that MPS's infringement may be under the doctrine of equivalents.

**4.12    SETTLEMENT AGREEMENT NOT EVIDENCE AS TO EITHER INFRINGEMENT OR VALIDITY [MPS; DISPUTED AS TO INCLUSION]**

The fact that MPS entered into the Settlement Agreement in the ITC Proceeding is not to be considered by you in determining whether Linear has met its burden of proving infringement and whether MPS has met its burden of proving invalidity.

Source:

Settlement Agreement, § 8.5:  "Linear and MPS agree that neither this Settlement and License Agreement nor any act under it constitutes or shall be construed to constitute an admission of liability or fault of any kind by MPS, which liability or fault MPS expressly denies."  *See also Lyle/Carlstrom Assoc., Inc. v. Manhattan Store Interiors, Inc.*, 635 F. Supp. 1371, 1384 (E.D.N.Y. 1986) ("there are no clear inferences about the prospects for success at the trial that can be drawn from the settlement of an infringement action.  Settlement may reflect a desire for peace, a plaintiff's superior economic resources, or a defendant's business decision to avoid lengthy and costly litigation."), *aff'd without op.*, 824 F.2d 977 (Fed. Cir. 1987); *Pioneer Hi-Bred Int'l, Inc. v. Ottowa Plant Food, Inc.,* 219 F.R.D 135, 144 (N.D. Iowa 2003) ("Indeed, the court doubts that the Decree [entered into as part of a settlement agreement with a third party] has more than marginal relevance, because numerous factors, apart from the value of the claim, go into the determination to settle, so that the Decree actually says little or nothing about the value of Pioneer's claim against Ottawa.").

**Linear's objections to MPS's proposed instruction on Settlement Agreement Not Evidence As To Either Infringement Or Validity**

MPS's proposed instruction directing the jury not to consider evidence of the parties' settlement agreement is a plainly improper attempt by MPS to argue its position in the jury instructions and to gain another motion *in limine* that it did not file in accordance with the Court's procedures.  Although MPS's instruction purports to rely on section 8.5 of the Settlement Agreement to argue that it is not relevant to infringement or invalidity, section 8.5 does not say that.  Section 8.5 provides only that "Linear and MPS agree that neither this Settlement and License Agreement nor any act under it constitutes or ***shall be construed to constitute an admission of liability or fault*** of any kind by MPS, which liability or fault of MPS expressly

denies." Settlement Agreement, § 8.5 (emphasis added). Section 3.3 provides, however, that MPS would "not make any sales of any other products in which the ZX circuitry identified by counsel for Linear in the ITC proceeding is connected so as to allow such products to enter into what Linear referred to as 'sleep mode,' 'reverse polarity protection,' or otherwise practice the Asserted Claims anywhere in the world." Moreover, there is no need for the Court to instruct the jury on section 8.5 as it and all other provisions in the Settlement Agreement will be before the jury.

## MPS's Response to Linear's Objections

Linear's objecton is specious. Pursuant to the Settlement Agreement, Linear expressly agreed that "neither this [agreement] nor any act under it constitutes or shall be construed to constitute an admission of liability or fault of any kind by MPS." Settlement Agreement, § 8.5. The Court should preclude Linear from breaching the Settlement Agreement and arguing otherwise.

**4.13    MPS DECISION TO STOP SALES OF MP1543 NOT EVIDENCE AS TO EITHER INFRINGEMENT OR VALIDITY [MPS; DISPUTED AS TO INCLUSION]**

After Linear filed this lawsuit, MPS decided to stop selling the accused MP1543 part pending the outcome of this case.  MPS's decision to stop selling the MP1543 is not evidence as to either the issue of whether it infringes any of the asserted patent claims or the issue of whether the asserted patent claims are invalid.

Source:

Joint Stipulation Regarding Damages for Patent Infringement (D.I. 88):  "Nothing in this Stipulation shall be used as or shall constitute an admission by either party of any claim, defense, assertion or allegation made by the other party in connection with this action and each party reserves all remaining claims and defenses."

**Linear's objections to MPS's proposed instruction on MPS's Decision to Stop Sales of MP1543 Not Evidence As To Either Infringement of Validity**

MPS's proposed instruction directing the jury not to consider evidence of the parties' settlement agreement is a plainly improper attempt by MPS to argue its position in the jury instructions and to gain another motion *in limine* that it did not file in accordance with the Court's procedures.

At the pretrial conference, counsel for Linear argued (5/23 transcript at 16) that Linear should be able to argue the small number of sales of the MP1543 does not establish that customers did not use the product for its intended purpose.  In responding to this and other arguments, the Court acknowledged that such evidence can go to the jury (5/23 transcript at 19:19-22) (emphasis added):

> Mr. Freed:  Your Honor, I think I have said it all.  The evidence is they pulled them from the market.
>
> The Court:  ***The jury can hear that.  I will let the jury hear that***.

Moreover, counsel for MPS argued at the pretrial conference that the number of sales of the MP1543 product is relevant to infringement.  The fact that MPS limited the number of sales by intentionally withdrawing its product from the market is also plainly relevant to rebut MPS's argument that Linear has not adduced sufficient evidence of contributory or induced infringement in light of the number of sales.

Moreover, although MPS's instruction purports to rely on the parties' Joint Stipulation Regarding Damages For Patent Infringement (D.I. 88) to argue that MPS's decision to stop selling the MP1543 is not *evidence* of infringement or invalidity, the Stipulation does not say that.  The Stipulation provides only that "[n]othing in this Stipulation *shall be used as or constitute an admission* by either party of any claim, defense, assertion or allegation made by the other party in connection with this action and each party reserves all remaining claims and defenses."  Stipulation at 3 (emphasis added).  Linear is not arguing that the Stipulation or facts set forth therein *is an admission*, but there is no question that MPS's decision *is evidence* that the jury can consider in making its determinations.

## MPS's Response to Linear's Objections

MPS is not attempting to "gain another motion *in limine*" or "argue its position in the jury instructions."  Linear's objections are red herrings that have no relevance to the issue at hand.

MPS's instruction does not relate to the parties' settlement agreement nor does it seek to preclude the jury from hearing that MPS stopped selling the MP1543.  Indeed, MPS's proposed instruction expressly informs the jury that "MPS decided to stop selling the MP1543 part pending the outcome of this case."  The relevant point is that it would be wholly improper for Linear to argue or suggest that MPS's decision to stop selling the MP1543 is affirmative

evidence of infringement or the validity of the patent claims.  That is the point which the instruction addresses and which Linear ignores.

The parties entered into a stipulation whereby MPS agreed not to sell the MP1543 pending the outcome of this lawsuit.  The parties jointly agreed that "Nothing in this Stipulation shall be used as or shall constitute an admission by either party of any claim, defense, assertion or allegation made by the other party in connection with this action and each party reserves all remaining claims and defenses."  D.I. 88.  Linear now wants to renege on that agreement.

Additionally, Linear's assertion that MPS's decision to stop selling the MP1543 is "plainly relevant to rebut MPS's argument that Linear has not adduced sufficient evidence of contributory or induced infringement in light of the number of sales" makes no sense.  Putting aside the fact that Linear does not have *any* evidence of direct infringement by third parties, and thus no evidence of contributory or induced infringement, MPS's decision to stop selling the MP1543 has no bearing on whether Linear has sufficient evidence of direct infringement by third parties as to the very limited sales that MPS did make.

## 5.    INVALIDITY DEFENSES

### 5.1    SUMMARY OF THE INVALIDITY DEFENSE [AGREED]

MPS contends that the asserted claims of the patents-in-suit are invalid.  Claims of an issued patent are presumed valid.  MPS has the burden of proving by clear and convincing evidence that each asserted claim is invalid.

MPS contends that all of the asserted patent claims are invalid for one or more reasons, depending on the claim in question.  Thus, you must determine whether each of Linear's asserted claims is invalid.  I will now instruct you in more detail why MPS alleges that the asserted claims of the '178 and '258 patents are invalid.

Source:

Adapted from Instruction 5.0 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

## 5.2     ANTICIPATION [DISPUTED]

### Linear's proposed instruction on Anticipation

MPS contends that the inventions defined in the claims of Linear's patents are not new or novel. Something that shows that a patent claim is not novel is said to anticipate that claim. Several different types of events may anticipate and invalidate a patent claim. Here, MPS contends that the claims are anticipated by different applications, patents and publications which, if they meet certain requirements, may be "prior art." I will explain the requirements as to each shortly.

In order to prove invalidity of the invention claimed in Linear's patents for anticipation, MPS must prove by clear and convincing evidence for each claim that each and every limitation of the claimed invention is found in a single piece of prior art. Absence from the single piece of prior art of even a single claim limitation negates anticipation. Stated another way, MPS may not rely on evidence beyond the piece of prior art itself, such as testimony by the prior art reference's author, to supplement or fill gaps in the teachings of the prior art.

To meet its burden, MPS must prove by clear and convincing evidence that:

1)      the material upon which it relies is "prior art" under the law;

2)      if the material is prior art, that the prior art contains each and every limitation of the claimed invention; and

3)      the prior art contains enough information to enable one skilled in the art to make and use the claimed invention.

If you find that MPS has failed to meet its burden with respect to any of these elements, then you must find that the claims are not invalid for anticipation.

A piece of prior art anticipates a patent claim if it discloses, either expressly or inherently, all of the limitations of the claim. There is no anticipation unless every one of the

limitations of the claimed invention is found in a single piece of prior art. If the piece of prior art is silent about a limitation of a claim, it may still anticipate that claim if that limitation is inherently present in that piece of prior art. To prove that a limitation is inherent in a piece of prior art, MPS must show by clear and convincing evidence that the missing matter is necessarily present in the piece of prior art and that it would be recognized by persons skilled in the art. Inherency may not be established by probabilities or possibilities. Thus, the allegedly inherent property must always be present. The mere fact that a certain thing may result from a given set of circumstances is not enough.

Prior art that is publicly known is information in the general body of knowledge in the public domain, such as articles or other patents before the invention was made. It is not necessary that the prior art have been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to make use of the prior art contents.

You must keep these requirements in mind and apply them to each kind of alleged anticipatory prior art offered by MPS. There are additional requirements that apply to each kind of anticipation that MPS contends apply here, and I will discuss those further.

Accordingly, the claims of the '178 and '258 patents are anticipated if each and every element of the claimed inventions therein were disclosed in a single prior art reference. A publication constitutes a prior art reference if it was published either "before the invention date thereof by the applicant for the patent" or "more than one year prior to the date of the application for patent."

Sources:

Adapted from Instruction 3.1 given in *Telcordia Technologies, Inc. v. Cisco Systems, Inc*., No. 04-876-GMS

## MPS's Objections to Linear's proposed instruction on Anticipation

This Court's statement of the law of anticipation in Instruction 6.1 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS) is more concise and accurate, and MPS urges its adoption. In addition, Linear's proposal erroneously suggests that testimony regarding inherency may not be considered, when in fact the opposite is true.

MPS further objects to Linear's failure to include its burden of proving invention prior to its March 23, 1993 patent application filing date, if it wants to rely upon an earlier invention date.

## MPS's proposed instruction on Anticipation

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, MPS must show that the claimed invention is not new.

In this case, MPS contends that the claims of the '178 and '258 patents are anticipated.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed inventions is found in the prior publication, patent, etc., you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular publication, patent, etc.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular prior

publication, invention, etc., but also what is inherently featured in or resulted from a natural result of its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that prior art either necessarily featured or resulted in the missing descriptive matter and that it would be so recognized by persons of ordinary skill in the art. Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time the patent application was filed would have recognized the inherent disclosure. Thus, a prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

A publication constitutes prior art if it was published *either* "before the invention thereof by the applicant for patent" *or* "more than one year prior to the date of the application for patent." In this case, Linear's first patent application was filed on March 23, 1993. It is presumed that an applicant's invention date is the date that his or her patent application was filed. Accordingly, if Linear intends to rely upon an earlier invention date, it has the burden of proving the earlier invention date by a preponderance of the evidence. Regardless of Linear's invention date, any publication in this or a foreign country prior to March 23, 1992 constitutes prior art..

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to the particular categories of anticipation that MPS contends apply in this case. I will now instruct you about those.

Source:

Adapted from Instruction 6.1 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

**Linear's Objection to MPS's proposed instruction on Anticipation**

Linear objects to MPS's instruction as misleading and incomplete in that it omits several key elements of anticipation, particularly 1) that is it MPS's burden to establish that any asserted prior art actually qualifies as prior art and 2) that the prior art must be enabling to one of ordinary skill in the art so they can make and use the claimed invention.  Linear further objects to MPS's instruction as failing to instruct the jury as to the critical dates for determining what is prior art to the claims.

Linear also objects to MPS's instruction that "[a]ccordingly, if Linear intends to rely upon an earlier invention date, it has the burden of proving the earlier invention date by a preponderance of the evidence.  Regardless of Linear's invention date, any publication in this or a foreign country prior to March 23, 1992 constitutes prior art" as inappropriate and premature as the invention date for Linear's patents is not at issue unless and until MPS relies on prior art that puts the invention date at issue.

### 5.3    PRINTED PUBLICATIONS AS PRIOR ART [AGREED]

MPS contends that the asserted claims of the '178 and '258 patents are anticipated because the inventions defined in those claims were described in a printed publication before the patentee invented the invention or more than one year before the patentee filed the U.S. patent application.

A patent claim is invalid if the invention defined by that claim was described in a printed publication before it was invented by the patentee or more than one year prior to the filing date of the U.S. application.  A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, or photocopies.  An issued patent is a printed publication.  A published patent application is a printed publication as of its publication date.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each and every element of the claimed invention to the reader.  The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation.  In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art one year before the application for the '178 patent was filed, and you may consider evidence that sheds light on the knowledge such a person would have had.

Source:

Adapted from Instruction 6.3 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

### 5.4    OBVIOUSNESS [DISPUTED]

### Linear's proposed instruction on Obviousness

MPS contends that the asserted claims of the '178 and '258 patents are invalid because the claimed inventions were "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether MPS has established that the claimed inventions are obvious:

      1)    the scope and content of the prior art relied upon by MPS;

      2)    the difference or differences, if any, between each claim of the '178 patent and each claim of the '258 patent that MPS contends is obvious and the prior art;

      3)    the level of ordinary skill in the art at the time the inventions of the '178 and '258 patents were made; and

      4)    additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims. Defendant MPS bears the burden of proving obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

Source:

Adapted from Instruction 7.1 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

**MPS's Objections to Linear's proposed instruction on Obviousness**

MPS objects to Linear's deviation from the Supreme Court's decision in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007). Linear's proposed instruction fails to articulate the factors the jury should consider in evaluating the obviousness of the asserted claims. Through its proposed instruction, Linear is attempting to ignore the law as set forth in *KSR* and to have the jury consider the question of obviousness using an outdated and discredited legal standard.

MPS's proposed instruction, which follows, sets forth the correct legal standard. Linear's objects to MPS's instruction, claiming that it is "improper," "unfairly prejudicial," and "does not help the jury." Linear's objection is devoid of merit. MPS's instruction is taken, essentially *verbatim*, from the Supreme Court's articulation in *KSR* of the proper legal standard and how it is to be applied.

Paragraph three is taken from *KSR*, 127 S. Ct. at 1740:

When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.

Paragraph four is taken from *KSR*, 127 S. Ct. at 1742:

One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims. . . . Under the correct analysis, any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed. . . . Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.

Paragraph five is taken from *KSR*, 127 S. Ct. at 1742:

When there is a design need or market pressure to solve a problem and

there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

Paragraph six is taken from *KSR*, 127 S. Ct. at 1739 (citations omitted):

For over a half century, the Court has held that a "patent for a combination which only unites old elements with no change in their respective functions ... obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men."..

**MPS's proposed instruction on Obviousness**

Even if an invention claimed in Linear's patents is not anticipated by the prior art, the claimed invention may nevertheless be invalid if it would have been obvious to one of skill in the art at the time the invention was made.

In order to prove that the invention claimed in the claims of Linear's patents is invalid for obviousness, MPS must prove by clear and convincing evidence for each claim that the differences between the subject matter of the claimed inventions and the prior art are such that the subject matter of the claim taken as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the relevant art.

If the invention claimed in the claims of Linear's patents is no more than a predictable variation of the work in the prior art, the invention is likely obvious. Likewise, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.

One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims. Any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed. Common sense teaches that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.

When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to

pursue the known options within his or her technical grasp.  If this leads to the anticipated

success, it is likely the product not of innovation but of ordinary skill and common sense.

In order to be patentable, an invention must not be obvious to a person of ordinary

skill in the art at the time the invention was made.  A patent for a combination which only unites

old elements with no change in their respective functions withdraws what is already known into

the field of the patent's monopoly and diminishes the resources available to others.  The issue is

not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a

genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the

time it was made.

In determining whether or not MPS has established obviousness by clear and

convincing evidence, you must consider the following factors:

1.    The scope and content of the prior art relied upon by MPS;

2.    The differences between each claim of Linear's patents and the prior art;

3.    The level of ordinary skill in the pertinent art at the time the invention of
      Linear's patents was made; and

4.    Additional considerations, if any, that indicate that the invention was
      obvious or not obvious.

Sources:

*KSR Int'l Co. v. Teleflex, Inc.,* 127 S.Ct. 1727, 1739-42 (2007) (at set forth above, the language
of the third through sixth paragraphs, including the language objected to by Linear, is taken
essentially *verbatim* from *KSR*); *Leapfrog Enterprises v. Fisher-Price, Inc.,* 485 F.3d 1157 (Fed.
Cir. 2007); Instruction 4.5 of *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, No. 04-876
(GMS).

### Linear's Objections to MPS's proposed instruction on Obviousness

Linear objects to MPS's instruction as an improper and unfairly prejudicial deviation from the instruction given by the Court in the *Telcordia* case.  Although MPS purports to offer an instruction based on the Supreme Court's decision in KSR, MPS simply adds self-serving surplus verbage that does not explain to the jury what obviousness is, but instead tries to argue MPS's case for nonobviousness.  Such additional language, while omitting the language given by the Court in *Telcordia*, does not help the jury.  MPS's instruction improperly suggests that obviousness is assessed by looking at the "invention" rather than a claim by claim analysis as required by the law.  Moreover, Linear's instruction is consistent with *KSR* and comes from a post-*KSR* case, *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

Linear further objects to MPS's instruction as interjecting unfairly prejudicial issues entirely unrelated to obviousness such as "[a] patent combination which only unites old elements with no change in their respective function withdraws what is already know into the field of the patent's monopoly and diminishes the resources available to others."  Such a statement, which did not appear in the Court's instruction in the *Telcordia* case, does nothing to describe obviousness and only serves to prejudicially mischaracterize the patentee as a monopolist.

### 5.5     SCOPE AND CONTENT OF THE PRIOR ART [AGREED]

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.

You must determine what is the prior art that may be considered in determining whether the asserted claims of the '178 and '258 patents are obvious.  A prior art reference may be considered if it discloses information designed to solve the same problems faced by the inventors or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problems faced by the inventors.

Sources:

Adapted from Instruction 7.2 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

**5.6    DIFFERENCES BETWEEN THE CLAIMS AND THE PRIOR ART [DISPUTED]**

<u>**Linear's proposed instruction on the Differences Between the Claimed Invention and the Prior Art**</u>

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of any such differences on the obviousness or non-obviousness of the invention as a whole and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.

Again, you must undertake this analysis separately for each claim that MPS contends is obvious.

Source:

Adapted from Instruction 7.5 given in Energy Transportation Group, Inc. v. Sonic Innovations, Inc., No. 05-422 (GMS).

**MPS's Objections to Linear's proposed instruction on Differences Between the Claims and the Prior Art**

MPS objects to Linear's proposed language "Importantly," as improperly emphasizing one portion of the instruction relative to the remainder.

MPS objects to Linear's proposed language, "Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known" as argumentative.  It is also unnecessary and redundant to the statement that "you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does."

**MPS's proposed instruction on Differences Between The Claims And The Prior Art**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directly to the subject matter of the claimed invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. You should consider whether a reasons existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Source:

Adapted from Instruction 7.5 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS). *See also KSR Int'l Co. v. Teleflex, Inc.,* 127 S.Ct. 1727, 1739-42 (2007).

**Linear's Objections to MPS's proposed instruction
<u>on Differences Between the Claims and the Prior Art</u>**

Linear objects to MPS's deviation from the instruction given in the *Energy Transportation Group* case as a misleading and incomplete statement of the law. In particular, MPS's instruction omits the clarifying statement that "[m]ost, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known." Linear's proposed instruction provides a complete statement of the law and more closely tracks the instruction the Court previously gave in the *Energy Transportation Group* case.

## 5.7      LEVEL OF ORDINARY SKILL [AGREED]

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the pertinent art field.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.      The level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

2.      The types of problems encountered in the art at the time of the invention; and

3.      The sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

Sources:

Adapted from Instruction 7.6 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

**5.8      FACTORS INDICATING OBVIOUSNESS: INDEPENDENT INVENTION BY OTHERS [AGREED]**

In reaching your determination on the issue of obviousness you should also consider whether or not the claimed invention was invented independently by other persons, either before it was invented by the patentee or at about the same time.  Just as the failure of others to make the invention may be evidence that an invention would not have been obvious, independent making of the invention by persons other than the inventor at about the same time may be evidence that the invention would have been obvious, depending on the circumstances.

Sources:

Adapted from Instruction 7.7 given in *Energy Transportation Group, Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS).

**5.9     FACTORS INDICATING NON-OBVIOUSNESS [AGREED]**

Before deciding the issue of obviousness, you must also consider certain factors which, if established, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole.

1.     Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.     Was there long felt need for a solution to the problem facing the inventors which was satisfied by the claimed invention?

3.     Did others try, but fail, to solve the problem solved by the claimed invention?

4.     Did others copy the claimed invention?

5.     Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.     Did others in the field, or did MPS, praise the claimed invention or express surprise at the making of the claimed invention?

7.     Did others accept licenses under the '178 patent or the '258 patent because of the merits of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

Source:

Adapted from Instruction 7.8 given in Energy Transportation Group, Inc. v. Sonic Innovations, Inc., No. 05-422 (GMS).

6.        DELIBERATION AND VERDICT

6.1        INTRODUCTION [AGREED]

How you conduct your deliberations is up to you.  But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges – judges of the facts, not me.  Your sole interest is to seek the truth from the evidence in that case.  In order for you to as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence.  Now let me finish up by explaining how you may communicate questions or messages to the Court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer.  The question will be given to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror Number 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 6-2, or 4-4, or whatever your vote happens to be.  That should stay secret until you are finished.

Sources:

Adapted from Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 7.1. (1993) and Miscellaneous Jury Instructions (GMS) (1/18/06).

## 6.2     DUTY TO DELIBERATE [AGREED]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that – your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.


Sources:

Uniform Jury Instructions For Patent Cases In The United States District Court For The District of Delaware 7.3 (1993).

### 6.3     COURT HAS NO OPINION [AGREED]

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented.


Sources:

Miscellaneous Jury Instructions (GMS) (1/18/06).

# APPENDIX A

| '178 and '258 CLAIM TERMS | COURT'S CONSTRUCTION |
|---|---|
| "switching voltage regulator" | "a device or circuit that receives an input voltage and produces a predetermined and constant output voltage by controlling the opening and closing of a switch." |
| "coupled" | "circuit elements are coupled when a current path exists between them." |
| "output terminal" | "a point or node of the switching regulator to which the load is coupled." |
| "load" | "a device, circuit, or system coupled to the output terminal to which the regulator can supply current." |
| "a pair of synchronously switched switching transistors" | "a pair of switching transistors are synchronously switched when they are driven out of phase to supply current at a regulated voltage to a load." |
| "regulated voltage" | "a voltage having a controlled value." |
| "first state of circuit operation" | "a state in which the switching transistors are both enabled for switching and are synchronously switched such that one transistor is ON and the other is OFF, with a varying duty cycle to maintain a regulated voltage at the output terminal." |

| '178 and '258 CLAIM TERMS | COURT'S CONSTRUCTION |
|---|---|
| "third circuit" | "a circuit that is distinct from each of the first and second circuits in that not every electronic component of the circuits is the same." |
| "first control signal" | "a control signal generated by the second circuit and used to affect the operation of other circuitry." |
| "second control signal" | "a control signal generated by the third circuit and used to affect the operation of other circuitry." |
| "second state of circuit operation" | "a state during which both switching transistors are OFF and current is supplied to the load by the output capacitor." |
| "threshold" | "a predetermined level or value at which some change in circuit operation takes place." |
| "threshold fraction of maximum rated output current" | "a that level or value is a number greater than zero that represents the proportionality of two numbers, the proportion being relative to a rated maximum output current." |
| "a first means for generating a voltage feedback signal indicative of the voltage at the output"<br><br>The function of the term is "generating a voltage feedback signal indicative of the voltage at the output." | "the combination of resistors 36A and 36B; the combination of resistors $R_1$ and $R_2$ and operational amplifier 602; and voltage feedback circuit 220." |

| '178 and '258 CLAIM TERMS | COURT'S CONSTRUCTION |
|---|---|
| "a second means for generating a first control signal . . . to maintain the output terminal at the regulated voltage" is a means plus function claim pursuant to 35 U.S.C. § 112(6).<br><br>The function of the term is "generating a first control signal . . . to maintain the output terminal at the regulated voltage." | "the Figure 2 combination of drive circuit 20, transconductance amplifier 38, offset voltage $V_{OS}$ 76, reference voltage 37, current comparator 39, a feedback current $_{IFB}$ between inductor L1 32 and current comparator 39, and constant off-time one-shot circuit 25, which outputs the signal; combinations having a pulse-width-modulator circuit or a variable off-time one-shot circuit, $R_3$, $V_{REF}$, $V_{OS}$, current comparator 39, one-shot circuit 245, off-time controller 250 and capacitor $C_{CON}$." |
| "a third means for generating a second control signal . . . the period of time having a duration which is a function of the current supplied to the load by the regulator" is a means plus function claim pursuant to 35 U.S.C. § 112(6).<br><br>The function of the term is "generating a second control signal." | "the Figure 2 hysteretic comparator 74 $_{VREF}$, current source $I_1$ 72, and logic circuits 66, 68, 69; the Figure 7 combinations such as the circuitry including 72, 74, 315, 316, $_{VREF}$ and related sleep control logic; or combinations such as those disclosed at column 16, lines 5-12. |
| "selected sleep mode current level" | "a predetermined current level below which the regulator enters into a second mode of operation." |

# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
_____
(302) 658-9200
(302) 658-3989 fax

James W. Parrett, Jr.
(302) 351-9678
(302) 425-3083 fax
jparrett@mnat.com

June 18, 2008

**BY E-FILING**

The Honorable Gregory M. Sleet
United States District Court
Federal Building
844 North King Street
Wilmington, DE 19801

    Re:    *Linear Technology Corp. v. Monolithic Power Systems, Inc.*
           C.A. No. 06-476 (GMS)

Dear Chief Judge Sleet:

    Pursuant to the Court's instructions at the pretrial conference, attached are the parties' proposed final jury instructions. We are also submitting to the clerk's office a disk containing the instructions in Word format.

        Respectfully,

        /s/ James W. Parrett, Jr.

        James W. Parrett, Jr. (#4292)

/dam
Enclosures
cc:    Clerk of the Court (by hand delivery w/enc.)
       Richard J. Horwitz, Esq. (by e-mail and hand delivery w/enc.)
       Dean G. Dunlavey, Esq. (by e-mail w/enc.)
       Joel M. Freed, Esq. (by e-mail w/enc.)
2372613