MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200
(302) 658-3989 FAX

**KAREN JACOBS LOUDEN**
302 351 9227
302 425 4681 FAX
klouden@mnat.com

June 30, 2008

**BY E-FILING**

The Honorable Gregory M. Sleet
United States District Court
Federal Building
844 North King Street
Wilmington, DE 19801

        Re:    *Linear Technology Corp. v. Monolithic Power Systems, Inc.*
              C.A. No. 06-476 (GMS)

Dear Chief Judge Sleet:

      Plaintiff Linear Technology Corporation ("Linear") submits this letter brief in support of its motion pursuant to Fed. R. Civ. P. 50(a)(2) for judgment as a matter of law that the asserted claims are infringed. No reasonable jury could find, based on the evidence presented, that Defendant Monolithic has not infringed the asserted claims of the '178 and '258 patents.

      Specifically, with regard to claim 34 of the '258 patent, Monolithic has conceded that the MP1543 has a switch coupled to receive an input voltage, a pair of synchronously switched switching transistors and an output for supplying current to the load which includes an output capacitor. Monolithic has not disputed that the MP1543 monitors the output to generate a first feedback signal and varies the duty cycle of the switching transistors in response to the first control signal to maintain the output at the regulated voltage. In fact, Monolithic only argued that only *a single limitation* of claim 34 is not met. Tr. 774:24-775:23. That argument is insufficient as a matter of law because it is contrary to the claim language and this Court's claim construction order. Monolithic asserts that the MP1543 does not have a second state of circuit operation following a first state of circuit operation because there is purportedly an additional state of operation in between the first and second states. Claim 34, however, is a "comprising" claim and there is no claim limitation precluding a third state between the first and second states of circuit operation. *See Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l*, 246 F.3d 1336 (Fed. Cir. 2001) ("When a patent claims use the word 'comprising' as its transitional phrase, the use of 'comprising' creates a presumption that the body of the claim is open." It

The Honorable Gregory M. Sleet
June 30, 2008
Page 2

"does not exclude additional, unrecited elements."). Indeed, Monolithic's own expert admitted, "The claims clearly describe two states: first state and second state. They don't say that they cannot be asserted in fourth or fifth or sixth state. . ." Tr. 764:3-5.

Monolithic has also conceded that most of the limitations of claims 1-3 of the '258 patent are present in the MP1543. Monolithic only argued that two of the claim limitations of claims 1, 2 and 3 of the '258 patent are not met: (1) the second control signal limitation and (2) the third circuit limitation. This argument is also contrary to the Court's claim construction. Monolithic's only purported evidence that these parts do not have a second control signal is testimony that the second control signal cannot be the PWM signal because the PWM signal is, according to Monolithic, the first control signal. Tr. 770:22-771:5. Even if Monolithic were correct that the PWM signal is the first control signal, nothing in the Court's claim construction order precludes the PWM signal from being both the first and second control signals. Monolithic admitted as much when Dr. Szepesi testified: "There is nothing in the claim construction order explicitly to prevent the first and second control signal to be the same." Tr. 833:22-834:4. Moreover, the evidence shows that the first control signal is, in fact, the LSON signal and that, at a minimum, the first control signal is a mixture of PWM and LSON, not just PWM. Monolithic admits that the "timing of the LSON signal controls the duty cycle" (Tr. 771:18-23) and that the duty cycle will change at the same time the LSON signal changes. Tr. 831:19-832:2. Thus, the claim is infringed whether the PWM signal or the LSON signal is considered the first control signal. As for the third circuit limitation, Mr. Blauschild identified the distinct second and third circuits in the MP1543 schematics. Tr. 489:17-491:25. Monolithic's only argument is that the circuitry that controls the XHSZ signal should be included in the second circuit as well as in the third circuit. Thus, according to Monolithic, if that circuitry relating to the XHSZ signal is part of the second circuit, the second and third circuits are not distinct. Tr. 777:7-778:20. But the evidence shows that Dr. Szepesi misread the Court's claim construction order that defined the second means for generating the first control signal, and as a result he incorrectly identified the signal that is generated by the second circuit. Tr. 838:3-839:4. Dr. Szepesi also conceded that he did not address all of the differences pointed out by Mr. Blauschild as being different between the two circuits (845:7-24). Thus, no reasonable jury could find that the MP1543 does not satisfy the third circuit limitation of claim 1-3 of the '258 patent.

For many of the same reasons, no reasonable jury could find that Claims 1, 2 and 34 of the '178 patent are not infringed. Monlithic's argument on claims 1 and 2 of the '178 patent is based on the assertion that the MP1543 (1) does not have a third circuit (2) does not meet the threshold fraction limitation and (3) does not meet the efficiency requirement of those claims. As to the first element, Monolithic's argument is the same as it was for claims 1-3 of the '258 patent and is insufficient for the same reasons. Further, in regard to claim 34, no reasonable jury could find that the MP1543 does not satisfy the third means limitation of claim 34 of the '178 patent for the same reason that Monolithic's position on the third circuit limitation fails. With regard to threshold fraction, Mr. Blauschild testified that the threshold fraction for the MP1543 was the point at which sleep mode occurs which he calculated was 10 over 400 in the MP1543 for Monolithic's recommended typical application. Tr. 524:12-525:8. Monolithic did not rebut Linear's calculation but rather based its argument on reading the term "fixed" into the court's claim construction of "threshold" and "threshold fraction." This incorrect interpretation reads

The Honorable Gregory M. Sleet
June 30, 2008
Page 3

several of the embodiments of the patents out of the claims, including Figure 9 which Dr. Szepesi conceded both at his deposition and at trial is covered by Claim 1 of the '178 patent. Tr. 848:18-24. On the efficiency limitation, Dr. Szepsezi testified that when "the regulator moved from discontinuous mode to pulse skipping mode" that "doesn't affect efficiency *significantly*." (emphasis added) Tr. at 761. Moreover, he agreed with Mr. Blauschild that when the circuit stops switching, it saves energy. Tr. 862:8-23. Thus, the efficiency of the MP1543 is improved as a result of the second state.

With regard to claim 41 of the '178 patent, Monolithic concedes that all of the limitations are met except for two. First, Monolithic claims it does not have a second state of circuit operation that is following the first state. Tr. 767:3-18. This conclusion is incorrect for the same reasons set forth with regard to claim 34 of the '258 patent. It is contrary to the court's claim construction and contrary to Federal Circuit law construing "comprising claims." Monolithic's only other argument on claim 41 is based on the assertion that the MP1543 does not meet the threshold fraction limitation. For the reasons set forth above, Monolithic's evidence is based on improperly reading the term "fixed" into the Court's claim construction.

Finally, Monolithic's only argument that Claim 55 of the '178 patent is not infringed is testimony that the synchronously switched switching transistors are not prevented from turning on in the second state because once they stop, they have morphed from the synchronously switched switching transistors of the circuit into something else. Specifically, Monolithic argues that "when those switching transistors are prevented from being turned on, then they're not switching synchronously. They're operating in a discontinuous operating mode, which is not operating synchronously." Tr. at 769:6-15. In other words, Monolithic argues that the synchronously switched switching transistors of the MP1543 stop being the synchronously switched switching transistors of the claims in the second state of circuit operation. That interpretation cannot be correct as a matter of law because it would read out all of the embodiments of the patents. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) (an interpretation of the claims which reads out all of the embodiments in the specification is rarely if ever correct). Monolithic also summarily stated that the MP1543 does not have the selected sleep mode current level (Tr. at 769:3-5). Monolithic's argument on that limitation fails as a matter of law for the same reasons its threshold fraction argument fails. That is, Monolithic's position is based again on improperly incorporating the term "fixed" into the Court's claim construction of "selected sleep mode current level." Tr. 768:4-9.

Respectfully,

*/s/ Karen Jacobs Louden*

Karen Jacobs Louden (#2881)

Enclosures
cc:   Clerk of the Court (by hand delivery)
      Richard J. Horwitz, Esq. (by e-mail and hand delivery)
      Dean G. Dunlavey, Esq. (by e-mail)
      Joel M. Freed, Esq. (by e-mail)
2387396