MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200
(302) 658-3989 FAX

**KAREN JACOBS LOUDEN**
302 351 9227
302 425 4681 FAX
klouden@mnat.com

June 30, 2008

**BY E-FILING**

The Honorable Gregory M. Sleet
United States District Court
Federal Building
844 North King Street
Wilmington, DE 19801

       Re:    *Linear Technology Corp. v. Monolithic Power Systems, Inc.*
               C.A. No. 06-476 (GMS)

Dear Chief Judge Sleet:

      Plaintiff Linear Technology Corporation submits this letter brief in support of its motion pursuant to Fed. R. Civ. P. 50(a)(2) for judgment as a matter of law that Monolithic has not shown, by clear and convincing evidence, that the asserted claims of the '178 and '258 patents are invalid under 35 U.S.C. § 103. No reasonable jury could find, based on the evidence presented, that Monolithic has met its burden of proof of clear and convincing evidence on this defense. Monolithic's burden of showing invalidity is especially difficult here because it relies on art that was before the patent examiner when the examiner considered the claims of the '258 patent and allowed those claims over the prior art relied on by Monolithic. *See Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464 (Fed. Cir. 1990).

      The evidence Monolithic submitted is insufficient as a matter of law because it addresses only the circuit elements present in prior art references, and says nothing with regard to how or why a person of ordinary skill in the art would combine them. Monolithic also presented no evidence of how their proposed combinations would have yielded results that fall within the asserted claims and were predictable to a person of ordinary skill in the art at the time of the invention with a reasonable likelihood of success. *Smiths Indus. Med. Sys, Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed. Cir. 1999).

      It is undisputed that the asserted claims at issue claim controlling synchronous switches. Tr. at 797:20-25. It is also undisputed that the references which Monolithic proposes to modify

The Honorable Gregory M. Sleet
June 30, 2008
Page 2

to therefore yield the claimed inventions do not involve synchronous switches. *Id.* Monolithic asserts, however, that the modification of Linear Application Note 35 ("AN35"), Linear Application Note 29 ("AN29") or JP4-42771, by replacement of the diode with a synchronous rectifier renders the asserted claims invalid. Despite the fact that a transistor cannot generally just be swapped for a diode, Monolithic has not provided any evidence explaining how to connect or how to control this new second switching transistor such that when the regulator circuit enters sleep mode, both the original and the newly added switching transistor would be shut down. Monolithic offered no evidence that any such modification would succeed or would produce predictable results or that one skilled in the art would be motivated to make the combination. In fact, the references themselves state that the circuits of the prior art do not operate in a stable manner which makes those circuits complex and hard to predict: "The loop provides a controlled, conditional instability instead of the usually more desirable (and often elusive) unconditional stability." DX-91 at 11. It is also undisputed that the author of AN29, Jim Williams of Linear, who supposedly faced the efficiency problem identified by Monolithic, chose not to make the substitution in the circuits where Monolithic proposes doing so. Tr. 877:6-20. Dr. Szepesi agrees that Mr. Williams chose not to do the very replacement that Monolithic proposes (*i.e.*, replacing a diode with a synchronous rectifier), even though Mr. Williams knew how to do that. (Tr. 877:14-17). Dr. Szepesi also never built any of the prior art combination circuits that he proposes to be invalidating (Tr. 804:24-805:2) and knows of no one else who has built them either (Tr. 805:12-13). Mere evidence of a problem and the existence of individual circuit elements in the art does not in and of itself create a jury issue. Monolithic has offered no evidence why, faced with this problem, one of skill in the art would make the combination, how such a combination would be arrived at or what it would look like. It also provided no evidence of how or even whether the modified circuit would work.

The evidence in fact shows that the alleged combination of the diodes in the prior art references relied on by Monolithic with a "synchronous rectifier" of the prior art would not work and certainly would not be "the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement" as was the case in *KSR*. *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727 (2007). The evidence presented shows that the circuitry of these vastly different types of switching regulators cannot simply be combined. The difficulty of just combining circuitry in these types of switching regulators is shown by the appendix to AN35, which states:

> Squeezing the utmost efficiency out of a switching regulator is a complex, demanding design task. Efficiency exceeding 80 to 85 percent requires some combination of finesse, witchcraft and just plain luck.

DX-91 at 3084. This passage clearly shows that people working in the art knew very well that one cannot just take different circuit components, combine them and produce predictable results.

The non-obviousness of such a combination is further shown by the failure of Dr. Szepesi's own group at Analog Devices Inc. to create a circuit that successfully accomplished what Monolithic claims was obvious from the combination of these references. Dr. Szepesi's group at Analog, faced with the knowledge of the '178 patent, chose to attempt to design around

The Honorable Gregory M. Sleet
June 30, 2008
Page 3

the patent rather than combine the teachings of AN29 and AN35 with the synchronous rectifiers of the prior art. Dr. Szepesi conceded that he did not rely on the contention that the '178 patent was obvious rather than try to design around it. (795:23-25). Based on the record, no reasonable jury could come to the conclusion that Monolithic's expert did not exercise impermissible hindsight in coming to his obviousness conclusion. *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999).

Further, no reasonable jury could find that Monolithic has proven, by clear and convincing evidence, that the asserted claims are obvious in light of the "objective indicia of nonobviousness" that has been presented. *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1573 (Fed. Cir. 1992). This evidence includes the commercial success of the products incorporating the asserted sleep mode claims, the praise for the inventions of the '178 and '258 patent and the imitation of that success by others. In 1991, Linear engineers Milton Wilcox and Randy Flatness solved a problem whose solution eluded electrical engineers for years: attaining high efficiency over a wide range of load currents in a voltage regulator circuit. Manufacturers of notebook computers, including Apple Computer, had demanded voltage regulators that would be highly efficient at a wide range of load currents since the mid-1980s, were very pleased with the introduction of the LTC1148 and "the people in the battery-operated arena couldn't wait to get their hands on it." Tr. 213:10-20. In fact, Apple Computer was so anxious for it, it took a production version of it before Linear finished characterizing it. *Id.* Apple Computer and other major manufacturers of notebook computers promptly designed the LTC1148 into their products. *Id.* The undisputed evidence also establishes that others copied the features of the LTC1148 and other parts that practice the '178 and '258 patents. *See* Tr. 248:5-8; 274:11-17. Indeed, the undisputed evidence shows that both Monolithic and its expert sought to second source the Linear parts that practice the claims of the asserted patents. Tr. 390:19-391:25; 793: 2-12. Monolithic has not contested the fact that Linear has sold products that practice one or more claims of the '178 and '258 patents as properly construed or that those products have been commercially successful. Tr. 215:13-15.

Respectfully,

*/s/ Karen Jacobs Louden*

Karen Jacobs Louden (#2881)

Enclosures
cc:   Clerk of the Court (by hand delivery w/enc.)
      Richard J. Horwitz, Esq. (by e-mail and hand delivery w/enc.)
      Dean G. Dunlavey, Esq. (by e-mail w/enc.)
      Joel M. Freed, Esq. (by e-mail w/enc.)
2387395