IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINEAR TECHNOLOGY CORPORATION, | ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | C.A. No. 06-476 (GMS) |
| v. | ) | |
| | ) | |
| MONOLITHIC POWER SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## FINAL JURY INSTRUCTIONS

## **TABLE OF CONTENTS**

PAGE

1. GENERAL INSTRUCTIONS ............................................................ ............................................. 1

   1.1 INTRODUCTION ............................................................. ..............................................1

   1.2 JURORS' DUTIES ............................................................ ..............................................2

   1.3 EVIDENCE DEFINED ........................................................ ..............................................3

   1.4 DIRECT AND CIRCUMSTANTIAL EVIDENCE ...... ..............................................4

   1.5 CONSIDERATION OF EVIDENCE........................................ ..............................................5

   1.6 STATEMENTS OF COUNSEL........................................... ..............................................6

   1.7 CREDIBILITY OF WITNESSES ........................................ ..............................................7

   1.8 EXPERT TESTIMONY ..................................................... ..............................................8

   1.9 NUMBER OF WITNESSES ............................................... ..............................................9

   1.10 BURDENS OF PROOF.................................................... ..............................................10

2. THE PARTIES' CONTENTIONS ...................................................... ..............................................11

   2.1 THE PARTIES............................................................... ..............................................11

   2.2 LINEAR'S CONTENTIONS ............................................. ..............................................12

   2.3 MPS'S CONTENTIONS ................................................... ..............................................13

   2.4 SUMMARY OF PATENT ISSUES .................................... ..............................................14

3. INFRINGEMENT ............................................................................ ..............................................15

   3.1 CLAIM INFRINGEMENT.................................................. ..............................................15

   3.2 COMPARISON OF ACCUSED PRODUCTS TO CLAIMS .....................................16

   3.3 CONSTRUCTION OF CLAIMS ........................................ ..............................................17

   3.4 PATENT INFRINGEMENT – GENERALLY ............... ..............................................18

   3.5 DIRECT INFRINGEMENT .............................................. ..............................................19

   3.6 LITERAL INFRINGEMENT.............................................. ..............................................20

3.7 INFRINGEMENT OF OPEN ENDED OR "COMPRISING" CLAIMS....................21

3.8 MEANS-PLUS-FUNCTION CLAIMS........................................................................22

3.9 SETTLEMENT AGREEMENT NOT EVIDENCE AS TO EITHER INFRINGEMENT OR VALIDITY...............................................................................24

3.10 MPS DECISION TO STOP SALES OF MP1543 NOT EVIDENCE AS TO EITHER INFRINGEMENT OR VALIDITY ............................................................25

4. INVALIDITY DEFENSES ......................................................................................... 26

4.1 SUMMARY OF THE INVALIDITY DEFENSE ........................................................26

4.2 OBVIOUSNESS.........................................................................................................27

4.3 SCOPE AND CONTENT OF THE PRIOR ART ......................................................28

4.4 DIFFERENCES BETWEEN THE CLAIMS AND THE PRIOR ART......................29

4.5 LEVEL OF ORDINARY SKILL ...................................................................................30

4.6 FACTORS INDICATING OBVIOUSNESS: INDEPENDENT INVENTION BY OTHERS ..............................................................................................................31

4.7 FACTORS INDICATING NON-OBVIOUSNESS .....................................................32

4.8 OBVIOUSNESS – HINDSIGHT .................................................................................33

5. DELIBERATION AND VERDICT ..................................................................... 34

5.1 INTRODUCTION ........................................................................................................34

5.2 DUTY TO DELIBERATE ...........................................................................................36

5.3 COURT HAS NO OPINION........................................................................................37

APPENDIX A....................................................................................................................................a

## 1.  GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## 1.2    JURORS' DUTIES

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if MPS is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3     EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was presented to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said, or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE

You have heard the terms direct and circumstantial evidence.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.5    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.6    STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

## 1.7    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudice, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

## 1.8    EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

## 1.9    NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

## 1.10    BURDENS OF PROOF

This is a civil case in which the plaintiff, Linear, is charging the defendant, MPS, with patent infringement. MPS denies these charges. Linear has the burden of proving its claims by a preponderance of the evidence. Proof by a preponderance of the evidence means proof that something is more likely true than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not. To put it differently, if you were to put Linear's and MPS's evidence on the opposite sides of a scale, the evidence supporting Linear's claims would have to make the scales tip somewhat on Linear's side.

MPS asserts in this case that Linear's patents are invalid. A patent, however, is presumed to be valid. Accordingly, the party challenging the patent has the burden of proving by clear and convincing evidence that the patent is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that a factual contention is true. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not the parties have met their burdens of proof.

## 2.    THE PARTIES' CONTENTIONS

### 2.1    THE PARTIES

The plaintiff in this case is Linear Technology Corporation.  Linear owns United States Patent Nos. 5,481,178 and 6,580,258 B2.  The defendant in this case is Monolithic Power Systems, Inc.  For convenience, I will refer to the plaintiff as Linear and the defendant as MPS. As I noted at the start of the trial, I will refer to the asserted patents by their last three numbers: the '178 patent and the '258 patent.

## 2.2    LINEAR'S CONTENTIONS

Linear seeks a determination that MPS has infringed the '178 and '258 patents as a result of unauthorized manufacture, use, offer for sale or sale of the MP1543.

## 2.3    MPS'S CONTENTIONS

MPS contends that the accused MP1543 part did not infringe any of the asserted claims of the '178 or '258 patents because Linear has not proven that the accused MPS product met every limitation of the asserted claims.

MPS further contends that the two Linear patents are invalid. Specifically, MPS contends that the asserted claims of the '178 and '258 patents are not new and/or are obvious in view of the prior art.

## 2.4   SUMMARY OF PATENT ISSUES

The following is a summary of the patent infringement issues that you are asked

to decide:

1.   Whether Linear has proven by a preponderance of the evidence that MPS's manufacture, use, sale, offer for sale or importation into the United States of the MP 1543, or the methods practiced by that product infringe any of the asserted claims of Linear's '178 of '258 patents.

You are also asked to decide:

2.   Whether MPS has proven by clear and convincing evidence that the asserted claims of the '178 or '258 patents are invalid.

Earlier in the case you also heard disputes over the issues whether MPS indirectly infringed the two Linear patents in suit, whether MPS's infringement was willful, and whether the asserted claims are invalid due to anticipation. I have ruled on those issues, and you should not draw any inferences about my ruling or speculate about what it was. As a result, the only issues you will need to address and decide are the facts relating to whether or not MPS directly infringed the asserted claims of the two Linear patents in suit, and facts relating to validity or invalidity of those asserted claims for obviousness.

### 3.    INFRINGEMENT

### 3.1    CLAIM INFRINGEMENT

Before you can decide whether MPS has infringed Linear's '178 and '258 patents, you will have to understand patent "claims." Patent claims define, in words, the boundaries of what is Linear's protected invention. The patent claims are the numbered paragraphs at the end of the patent. The patent claims at issue here are claims 1, 2, 34, 41 and 55 of the '178 patent, beginning at column 16, line 35 of the '178 patent, and claims 1, 2, 3 and 34 of the '258 patent, beginning at column 16, line 40 of the '258 patent. Only the claims of a patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. The specification and drawings merely describe certain embodiments of the invention. Each of the claims must be considered individually, and to show infringement of a patent, Linear need only establish that one claim of the patent has been infringed.

## 3.2    COMPARISON OF ACCUSED PRODUCTS TO CLAIMS

In determining whether the MP1543 infringes, you are to compare that product to the asserted claims of the '178 and '258 patents.  You are not to compare the MP1543 to Linear's products that are commercial embodiments of the '178 and '258 patents.  Only the claims of a patent can be infringed.

### 3.3     CONSTRUCTION OF CLAIMS

You have a copy of each patent in your juror book. As I already said, the claims of each patent at issue are 1, 2, 34, 41 and 55 of the '178, and 1, 2, 3 and 34 of the '258.

I will provide you with a list of claim terms from each patent and the meaning of the terms the Court construed in Appendix A. As used in these claims, the definitions for certain terms as I construed them must be applied.

## 3.4    PATENT INFRINGEMENT – GENERALLY

A patent confers on its owner the right to exclude others from importing, making, using, selling or offering to sell the patented invention in the United States during the term of its patent. The patent owner may do so by filing a lawsuit for patent infringement. Here, Linear, the patent owner, has sued MPS, and has alleged that the MP1543 infringed claims 1, 2, 34, 41 and 55 of Linear's '178 patent, and claims 1, 2, 3 and 34 of Linear's '258 patent.

Any person or business entity which imports, makes, uses, sells or offers to sell, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent. You must decide whether Linear has proven by a preponderance of the evidence that MPS's products or methods infringe any of the asserted claims of the '178 or '258 patents.

## 3.5    DIRECT INFRINGEMENT

MPS would be liable for directly infringing Linear's '178 or '258 patents if you find that Linear has proven by a preponderance of the evidence that MPS has made, used, sold, or offered to sell the invention defined in one or more asserted claims of Linear's '178 patent or '258 patent in the United States.

A person may directly infringe a patent without knowledge that what he is doing is an infringement of the patent. He may directly infringe even though in good faith he believes that what he is doing is not an infringement.

### 3.6    LITERAL INFRINGEMENT

To determine literal infringement, you must compare the products or methods that include or use the accused MP1543 part with each claim that Linear asserts was infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed if the product or method incorporating the accused MP1543 part is in the United States and includes each and every element in that patent claim. If the product including the accused MP1543 or method using the accused MP1543 does not contain one or more elements recited in a claim, then MPS does not literally infringe that claim. You must determine literal infringement with respect to each claim individually.

### 3.7     INFRINGEMENT OF OPEN ENDED OR "COMPRISING" CLAIMS

The preamble to claim 1 of the '178 patent uses the phrase "the control circuit comprising" and claim 1 of the '258 patent uses the phrase "the circuit comprising."  The word "comprising" means "including the following but not excluding others."

If you find that the MP1543 includes all of the elements of the claims of the '178 or '258 patents, the fact that the MP1543 also may include features, components, or method steps not required by the claims would not avoid infringement of a claim that uses "comprising" language.

## 3.8    MEANS-PLUS-FUNCTION CLAIMS

Claim 34 of the '178 patent defines three requirements of the invention as means for performing certain functions.

A means-plus-function element is a claim element that claims a means for performing a specified function. For example, a table could be claimed in a patent as being a tabletop, legs, and means for attaching the legs to the tabletop. The means-plus-function element would cover structures described in the specification that perform the required function of "attaching the legs to the tabletop" and all equivalents.

I will now explain the three special rules that apply to this type of claim language. First, the accused device must perform the specified function. Specifically, for claim 34 of the '178 patent, you must first determine whether the MP1543 performs the functions of that claim. If not, the means-plus-function claim element is not infringed.

Second, if the MP1543 does perform the required function, you must identify the structure in that product that actually performs this function.

Finally, you must determine whether that accused structure is the same as or equivalent to the structure identified in the patent for performing the required function that I described to you earlier. If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element of the claim is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether people of

- 22 -

ordinary skill in the art would have believed that the structure of the accused product and the

structure in the patent were interchangeable as of the date the patent issued.

### 3.9    SETTLEMENT AGREEMENT NOT EVIDENCE AS TO EITHER INFRINGEMENT OR VALIDITY

The fact that MPS entered into the Settlement Agreement in the ITC Proceeding

is not to be considered by you in determining whether Linear has met its burden of proving

infringement and whether MPS has met its burden of proving invalidity.

### 3.10    MPS DECISION TO STOP SALES OF MP1543 NOT EVIDENCE AS TO EITHER INFRINGEMENT OR VALIDITY

After Linear filed this lawsuit, MPS decided to stop selling the accused MP1543 part pending the outcome of this case. MPS's decision to stop selling the MP1543 is not evidence as to either the issue of whether it infringes any of the asserted patent claims or the issue of whether the asserted patent claims are invalid.

## 4.    INVALIDITY DEFENSES

### 4.1    SUMMARY OF THE INVALIDITY DEFENSE

MPS contends that the asserted claims of the patents-in-suit are invalid. Claims of an issued patent are presumed valid. MPS has the burden of proving by clear and convincing evidence that each asserted claim is invalid.

MPS contends that all of the asserted patent claims are invalid for one or more reasons, depending on the claim in question. Thus, you must determine whether each of Linear's asserted claims is invalid. I will now instruct you in more detail why MPS alleges that the asserted claims of the '178 and '258 patents are invalid.

## 4.2    OBVIOUSNESS

MPS contends that the asserted claims of the '178 and '258 patents are invalid because the claimed inventions were "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made. In many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle. Obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether MPS has established that the claimed inventions are obvious:

1)    the scope and content of the prior art relied upon by MPS;

2)    the difference or differences, if any, between each claim of the '178 patent and each claim of the '258 patent that MPS contends is obvious and the prior art;

3)    the level of ordinary skill in the art at the time the inventions of the '178 and '258 patents were made; and

4)    additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims. Defendant MPS bears the burden of proving obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

## 4.3    SCOPE AND CONTENT OF THE PRIOR ART

You must determine what is the prior art that may be considered in determining whether the asserted claims of the '178 and '258 patents are obvious. A prior art reference may be considered if it discloses information designed to solve the same problems faced by the inventors or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problems faced by the inventors.

## 4.4    DIFFERENCES BETWEEN THE CLAIMS AND THE PRIOR ART

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of any such differences on the obviousness or non-obviousness of the invention as a whole and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

Again, you must undertake this analysis separately for each claim that MPS contends is obvious.

## 4.5    LEVEL OF ORDINARY SKILL

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the pertinent art field. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.     The level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

2.     The types of problems encountered in the art at the time of the invention; and

3.     The sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

### 4.6    FACTORS INDICATING OBVIOUSNESS: INDEPENDENT INVENTION BY OTHERS

In reaching your determination on the issue of obviousness you should also

consider whether or not the claimed invention was invented independently by other persons,

either before it was invented by the patentee or at about the same time.  Just as the failure of

others to make the invention may be evidence that an invention would not have been obvious,

independent making of the invention by persons other than the inventor at about the same time

may be evidence that the invention would have been obvious, depending on the circumstances.

## 4.7    FACTORS INDICATING NON-OBVIOUSNESS

Before deciding the issue of obviousness, you must also consider certain factors

which, if established, may indicate that the invention would not have been obvious.  No factor

alone is dispositive, and you must consider the obviousness or non-obviousness of the invention

as a whole.

4.    Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

5.    Was there long felt need for a solution to the problem facing the inventors which was satisfied by the claimed invention?

6.    Did others try, but fail, to solve the problem solved by the claimed invention?

7.    Did others copy the claimed invention?

8.    Did the claimed invention achieve unexpectedly superior results over the closest prior art?

9.    Did others in the field, or did MPS, praise the claimed invention or express surprise at the making of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

## 4.8    OBVIOUSNESS – HINDSIGHT

The question of nonobviousness is simple to ask, but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the asserted claims, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the asserted claims. The difficulty that attaches to honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patents in suit as a guide through the maze of prior art references, combine the right references in the right way so as to achieve the result of the asserted claims.

## 5.    DELIBERATION AND VERDICT

### 5.1    INTRODUCTION

Once you adjourn to the jury room, the first thing I recommend you do is select a foreperson. How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts, not me. Your sole interest is to seek the truth from the evidence in that case. In order for you to as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

- 34 -

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the Court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

## 5.2    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

## 5.3    COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented.

# APPENDIX A

| '178 and '258 CLAIM TERMS | COURT'S CONSTRUCTION |
|---|---|
| "switching voltage regulator" | "a device or circuit that receives an input voltage and produces a predetermined and constant output voltage by controlling the opening and closing of a switch." |
| "coupled" | "circuit elements are coupled when a current path exists between them." |
| "output terminal" | "a point or node of the switching regulator to which the load is coupled." |
| "load" | "a device, circuit, or system coupled to the output terminal to which the regulator can supply current." |
| "a pair of synchronously switched switching transistors" | "a pair of switching transistors are synchronously switched when they are driven out of phase to supply current at a regulated voltage to a load." |
| "regulated voltage" | "a voltage having a controlled value." |
| "first state of circuit operation" | "a state in which the switching transistors are both enabled for switching and are synchronously switched such that one transistor is ON and the other is OFF, with a varying duty cycle to maintain a regulated voltage at the output terminal." |

| '178 and '258 CLAIM TERMS | COURT'S CONSTRUCTION |
|---|---|
| "third circuit" | "a circuit that is distinct from each of the first and second circuits in that not every electronic component of the circuits is the same." |
| "first control signal" | "a control signal generated by the second circuit and used to affect the operation of other circuitry." |
| "second control signal" | "a control signal generated by the third circuit and used to affect the operation of other circuitry." |
| "second state of circuit operation" | "a state during which both switching transistors are OFF and current is supplied to the load by the output capacitor." |
| "threshold" | "a predetermined level or value at which some change in circuit operation takes place." |
| "threshold fraction of maximum rated output current" | "a that level or value is a number greater than zero that represents the proportionality of two numbers, the proportion being relative to a rated maximum output current." |
| "a first means for generating a voltage feedback signal indicative of the voltage at the output" <br><br> The function of the term is "generating a voltage feedback signal indicative of the voltage at the output." | "the combination of resistors 36A and 36B; the combination of resistors $R_1$ and $R_2$ and operational amplifier 602; and voltage feedback circuit 220." |

| '178 and '258 CLAIM TERMS | COURT'S CONSTRUCTION |
|---|---|
| "a second means for generating a first control signal . . . to maintain the output terminal at the regulated voltage" is a means plus function claim pursuant to 35 U.S.C. § 112(6).<br><br>The function of the term is "generating a first control signal . . . to maintain the output terminal at the regulated voltage." | "the Figure 2 combination of drive circuit 20, transconductance amplifier 38, offset voltage $v_{OS}$ 76, reference voltage 37, current comparator 39, a feedback current $_{IFB}$ between inductor L1 32 and current comparator 39, and constant off-time one-shot circuit 25, which outputs the signal; combinations having a pulse-width-modulator circuit or a variable off-time one-shot circuit, $R_3$, $^V_{REF}$, $^V_{OS}$, current comparator 39, one-shot circuit 245, off-time controller 250 and capacitor $^C_{CON}$" |
| "a third means for generating a second control signal . . . the period of time having a duration which is a function of the current supplied to the load by the regulator" is a means plus function claim pursuant to 35 U.S.C. § 112(6).<br><br>The function of the term is "generating a second control signal." | "the Figure 2 hysteretic comparator 74 $_{VREF}$, current source $I_1$ 72, and logic circuits 66, 68, 69; the Figure 7 combinations such as the circuitry including 72, 74, 315, 316, $_{VREF}$, and related sleep control logic; or combinations such as those disclosed at column 16, lines 5-12. |
| "selected sleep mode current level" | "a predetermined current level below which the regulator enters into a second mode of operation." |