IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINEAR TECHNOLOGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MONOLITHIC POWER SYSTEMS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 06-476 GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM

### I. INTRODUCTION

Presently before the court is the defendant's post-trial motion in the above-captioned patent infringement action. The defendant seeks judgment that the patents-in-suit are obvious or, in the alternative, a new trial on the issue of invalidity. For the reasons that follow, the court will deny both of these motions.

### II. BACKGROUND

#### A. Procedural Background

On August 3, 2006, plaintiff Linear Technology Corporation ("Linear") filed this action against Monolithic Power Systems, Inc. ("MPS"), alleging that MPS' products infringe United States Patent Nos. 5,481,178 (the "'178 patent") and 6,580,258 B2(the "'258 patent") (collectively, the "Linear patents"), and that MPS breached a settlement agreement. (D.I. 2.)[1] MPS filed an answer generally denying infringement and breach of the settlement agreement. (D.I. 36.) MPS also

---

[1] The court granted the parties stipulated motion for a protective order on February 12, 2007. To the extent possible, citations are made to public versions of documents filed with this court.

asserted affirmative defenses challenging the enforceability and validity of the Linear patents. (Id.) The court held a *Markman* hearing in this matter on July 26, 2007. On November 20, 2007, the court issued an order construing the disputed claim terms of the Linear patents. (D.I. 104.) The parties exchanged opening expert reports on October 1, 2007 (D.I. 90, 91), answering expert reports on November 1, 2007 (D.I. 101, 102), and supplemental expert reports on November 27, 2007 (D.I. 111) and December 7, 2007 (D.I. 119).

The court held a jury trial from June 23, 2008 through July 1, 2008. (D.I. 231-36.) At no time before the case was submitted to the jury, did MPS move under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law. On July 1, 2008, following the six-day trial, the jury returned a verdict in favor of Linear. In its verdict, the jury found that: (1) MPS infringes the asserted claims of the Linear patents; and (2) MPS failed to prove the Linear patents are invalid by reason of obviousness. (D.I. 227.) The court entered judgment on the verdict in favor of Linear and against MPS on November 17, 2008. (D.I. 240.) Certain claims in this matter remain pending; therefore, the judgment is not a final judgment under Federal Rule 54(b).

Following entry of the judgment, MPS filed a post-verdict motion seeking a judgment as a matter of law ("JMOL") on the issue of obviousness or, alternatively, for a new trial on validity. (D.I. 247.) Linear responded on January 9, 2009. (D.I. 255.) MPS filed its reply in support of the motion on February 2, 2009. (D.I. 256.)

### B. Technology Background

The Linear patents relate to a "high efficiency switching regulator." (D.I. 2, Ex. A at col. 2, l. 20.) Specifically, the Linear Patents relate to a "control circuit and method for maintaining high efficiency over broad current ranges, including low output currents, in a switching regulator circuit."

(Id. at ll. 21-24.)[2] These patents disclose a control circuit and method that improves efficiency by turning off switching transistors under certain operating conditions, thereby alleviating the need for input from the power source. (Id. at ll. 31-38.)

## III. STANDARD OF REVIEW

### A. Motion for Judgment as a Matter of Law

Pursuant to Federal Rule of Civil Procedure 50, a court may render judgment as a matter of law after the moving party is fully heard on an issue at trial if there is no legally sufficient evidentiary basis for a reasonable jury to find for the party opposing the motion on that issue. *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993). If the court denies a motion for judgment as a matter of law during trial, the motion may be renewed within ten days of entry of judgment in the case. Fed. R. Civ. P. 50(b). For a party to prevail on its renewed motion for judgment as a matter of law following a jury trial, the party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893. In assessing the sufficiency of the evidence, the court must draw all reasonable inferences from the evidence in the light most favorable to the nonmovant. *Id.*; *Richardson-Vicks, Inc. v. UpJohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). The appropriate

---

[2] The '258 patent is a continuation of the '178 patent and contains the same specification. Thus, the court will refer only to the '178 patent specification.

3

inquiry is whether a reasonable jury, given the facts before it, could have arrived at the conclusion it did. *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998). The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements in the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893.

### B.  Motion for a New Trial

Pursuant to Federal Rule of Civil Procedure 59, a court may grant a new trial "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The decision to grant or deny a new trial is within the sound discretion of the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts. *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960). Unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *Allied Chem. Corp.*, 449 U.S. at 36. A court should grant a new trial in a jury case, however, only if "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Conrail*, 926 F.2d 1344, 1352 (3d Cir. 1991).

Similarly, Federal Rule of Civil Procedure 60 permits a court to relieve a party from final judgment and even grant a new trial due to "fraud . . . , misrepresentation, or other misconduct by an adverse party." Fed. R. Civ. P. 60(b)(3); *see Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 384-85 (3d Cir. 1996). In order to prevail on a Rule 60 motion, the movant must show that the adverse party engaged in fraud or other misconduct, and this conduct prevented the movant from fully and fairly

presenting his case. *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983). Additionally, the movant must demonstrate that the fraud or misrepresentation was material to the outcome of the case. *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985). Fraud or misrepresentation must be proved by clear and convincing evidence. *See Brown v. Pennsylvania R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960).

## V.  DISCUSSION

### A.  MPS' Motion for JMOL on the Issue of Obviousness

While MPS couches its motion as one for "entry of judgment of obviousness" (D.I. 247 at 3), the court will treat it as a JMOL motion. Federal Rule of Civil Procedure 50 governs JMOL motions. Rule 50(a) requires a JMOL motion made before the case is submitted to the jury to "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). This specificity requirement affords the opposing party an opportunity to cure the defects in proof in order to take the case to the jury. *Duro-Last, Inc. v. Custom Seal, Inc*, 321 F.3d 1098, 1105 (Fed. Cir. 2003). Rule 50(b) permits a party to renew the JMOL motion after the verdict. A party dissatisfied with a jury verdict may not prevail on a post-verdict JMOL motion based on grounds not raised in a pre-verdict JMOL motion.[3] *Duro-Last*, 321 F.3d 1098; *Greenleaf v. Garlock*, 174 F.3d 352, 364 (3d Cir. 1999). By logical extension, when a party fails to file a pre-verdict JMOL altogether, any grounds for JMOL sought by way of a post-verdict motion must be denied. *Advanced Med. Optics, Inc. v. Alcon Lab., Inc.*, No. Civ. A. 03-1095-KAJ, 2005 WL 3454283, at *3 (D. Del. Dec. 16, 2005). Here, MPS failed to file a JMOL motion before the court

---

[3] The parties dispute whether Third Circuit law or Federal Circuit law applies. (D.I. 255 at 5, D.I. 256 at 7). The court, however, need not resolve this dispute because both circuits apply the same standard. *Compare Duro-Last*, 321 F.3d at 1105-08, *with Greenleaf*, 174 F.3d 352, 364 (3d Cir. 1999).

submitted the case to the jury. This omission is fatal to the relief MPS now seeks, because any issues raised in MPS' post-verdict JMOL motion were not raised in a pre-verdict JMOL motion.

MPS argues that it may seek a post-verdict judgment of obviousness without having raised it in a pre-verdict motion, because obviousness is a question of law. (D.I. 247 at 3.) In support of this argument, MPS relies on *Duro-Last* and *Jurgens v. McKasy*, 927 F.2d 1552 (Fed. Cir. 1991). Reliance on these cases, however, is misplaced. As Linear correctly notes, *Duro-Last* and *Jurgen* speak to the scope of appellate review when a party files a post-verdict JMOL motion without having first raised the issue in a pre-verdict JMOL motion. *Duro-Last*, 321 F.3d at 1108 (holding that an appellate court may not review the jury's findings to determine whether they provide a legally sufficient basis for a reasonable jury to find for the verdict winner if the party challenging the verdict fails to raise a pre-verdict JMOL motion); *Jurgens*, 927 F.2d 1552 at 1557 (same). Neither case suggests that the relief MPS seeks is permitted; nor could either, in light of Linear's Seventh Amendment rights. *See Duro-Last*, 321 F.3d at 1107. Indeed, the court in *Duro-Last* expressly prohibited the relief MPS seeks now. The *Duro-Last* court was asked to determine whether a post-verdict JMOL motion on obviousness was sufficiently preserved by pre-verdict JMOL motions addressing inequitable conduct and the on-sale bar. *Id.* In finding that Duro-Last did not preserve the issue of obviousness, the court noted:

> [s]ince a post-trial motion for JMOL can be granted only on grounds advanced in the pre-verdict motion, Duro-Last was precluded from making a post-trial motion under Rule 50(b) for JMOL that its patents were not invalid for obviousness, and it was improper for the district court to rule on Duro-Last's motion challenging the sufficiency of Custom Seal's evidence on the issue.

*Id.* 321 F.3d at 1108. Given the foregoing, the court will deny MPS' motion for judgment of obviousness.

### B. MPS' Motion for a New Trial

MPS moves for a new trial, contending that the jury's finding of non-obviousness was against the clear weight of the evidence, and that it resulted from Linear's misconduct during the trial. As such, MPS seeks a new trial on the issue of validity. Linear, on the other hand, argues that the finding of non-obviousness is not against the weight of the evidence. Furthermore, Linear argues that MPS has failed to carry its burden of proving fraud and has further failed to show that the alleged fraud materially affected the verdict. For the reasons that follow, the court will deny MPS' motion for a new trial.

#### 1. Whether the Non-Obviousness Verdict was Against the Clear Weight of the Evidence

35 U.S.C. § 103 provides, in pertinent part, that a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious . . . to a person having ordinary skill in the art." Obviousness is a question of law that is predicated upon several factual inquiries. *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). Specifically, the trier of fact must consider: (1) the scope and content of the prior art; (2) the differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) secondary considerations of non-obviousness such as commercial success, long felt but unsolved need, failure of others, and acquiescence of others in the industry that the patent is valid, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966) (the "*Graham* factors"). The Supreme Court, in *KSR Intern. Co. v. Teleflex Inc.*, reaffirmed that the *Graham* factors "continue to define the inquiry that controls." 550 U.S. 398, 406-07 (2007). Rejecting the rigid application of the "teaching, suggestion, or motivation" ("TSM") test in favor of a more expansive and flexible approach in the determination

of obviousness, the Federal Circuit explained that it is permissible for a court to look to "the effects of demands known to the design community or present in the marketplace; and to the background knowledge possessed by a person having ordinary skill in the art . . . ." *Id.* at 418.

In assessing obviousness, "the invention must be considered as a whole without the benefit of hindsight, and the claims must be considered in their entirety." *Rockwell Intern. Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998) (citing *W.L. Gore & Assocs. v. Garlock, Inc.*, 721 F.2d 1540, 1551 (Fed. Cir.1983) and *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567 (Fed. Cir.1983)). Indeed, the Supreme Court in *KSR* recognized that a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. *KSR*, 550 U.S. at 418. It is important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. *Id.* Additionally, although a "combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results," a combination of elements is not obvious if the combined elements work together "in an unexpected and fruitful manner." *Id.* at 416. When challenging the validity of a patent for obviousness based on a combination of prior art references, the challenger bears the burden of proving, by clear and convincing evidence, that one of ordinary skill in the art would have had reason to attempt to make the combination and would have had a reasonable expectation of success in doing so. *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007).

MPS contends that all of the elements of the claimed inventions in the Linear patents were found in the prior art, and that one of ordinary skill in the art would have been motivated to make the combinations claimed. (D.I. 247 at 9.) Specifically, MPS contends that the addition of "sleep

8

reasonable jury was entitled to reject MPS' simultaneous invention theory. Moreover, Linear proffered evidence of commercial success, industrial acclaim, copying, and failure of others. (D.I. 231 at 184:1-185:10, 213:6-214:8, 215:13-21; D.I. 232 at 248:5-8, 274:11-21, 303:10-305:24, 387:4-391:1, 400:6-402:5; D.I. 234 at 792:25-793:20, 795:19-796:9.) The jury was free to accept this evidence of non-obviousness. As such, the jury's verdict is not remotely against the clear weight of the evidence, especially in light of MPS' burden.

### 2. Whether Linear's Alleged Fraud or Misrepresentations Warrant a New Trial

MPS next contends that Mr. Blauschild testified falsely when he stated that his infringement analysis was based on a late 1990s production version of the MAX782, and when he testified that parts undergo development changes over time. (D.I. 247 at 13.)[5] This testimony, however, was consistent with the facts. Mr. Blauschild's testing was conducted on a MAX782 production board he purchased after the *Impala* litigation began in 1998. (D.I. 235 at 947:8-18; D.I. 244, Ex. 1 at 28-29, 246-47; D.I. 254, Ex. 1.)[6] The fact that the MAX782 production board Mr. Blauschild tested contained some schematics from 1993 does not make his testimony fraudulent or the result of misconduct by Linear. Rather, this testimony is something that MPS was free to clarify during further examination. It chose not to and cannot now cry foul for failing to clarify testimony that may have been subject to misinterpretation.

---

[5] MPS also contends that Linear's trial counsel engaged in misconduct by eliciting Mr. Blauschild's testimony and then using this testimony during closing arguments. (D.I. 247 at 18-19.) MPS waived its right to relief, however, by failing to make a timely objection. *See Dunn v. HOVIC*, 1 F.3d 1371, 1376-78 (3d Cir. 1993).

[6] Mr. Blauschild's infringement analysis was prepared in July 2000 in *Linear Tech. Corp. v. Impala Linear Corp.*, Case No. C-98-1727 VRW (N.D. Cal. 1998).

mode" to a synchronous switching voltage regulator, the subject matter of the Linear patents, was known in the prior art, and had been employed with "non-synchronous" switching voltage regulators. (Id. at 9-10.) This, MPS contends, when combined with testimony that there was motivation to use synchronous regulators to improve efficiency, suggests that a skilled artisan would have been motivated to combine "sleep mode" with the synchronous switching voltage regulators. (Id.)

At trial, however, Linear's expert, Robert Blauschild ("Mr. Blauschild"), opined that simply combining the known elements of the prior art would not have worked, and that a skilled artisan would have recognized as much. (D.I. 235 at 921:9-927:4, 944:24-946:24.) Additionally, Mr. Blauschild testified that the fact that the Linear engineer who authored two prior art references, application notes 29 and 35,[4] failed to combine the two references to yield the claimed invention teaches away from making the combination. (D.I. 235 at 926:23-927:4). Thus, based on the foregoing, a reasonable jury could have concluded that combining "sleep mode" with a synchronous switching voltage regulator did not naturally flow from the prior art given the perceived reduced efficiencies.

MPS further contends that it established near simultaneous invention by others and that this, when compared to Linear's "weak" evidence of non-obviousness, demonstrates that the Linear patents are invalid as obvious. (D.I. 247 at 10-11.) MPS relies on testimony from Mr. Dobkin and Mr. Timm to support its near simultaneous invention theory. Linear, however, undermined this theory when, under the rule of completeness, it adduced testimony from Mr. Dobkin that he believed MPS copied Linear's technology. (D.I. 232 at 274:1-21.) Given the conflicting testimony, a

---

[4] Application notes are articles published by semiconductor companies describing how to use the integrated circuits manufactured by the company in different applications. (D.I. 234 at 679:12-16.)

9

Additionally, MPS fails to demonstrate how Mr. Blauschild's testimony prevented it from fully and fairly presenting its case. This is not a situation where there was an abuse of the discovery process. *See, e.g., Stridiron*, 698 F.2d at 207 (holding that the plaintiff's untruthful interrogatory responses prevented defendant from fully and fairly presenting her claim). Nor is it the case that the event revealing the fraud occurred after the close of discovery. *See, e.g., Bethel v. McAllister Bros., Inc.*, 81 F.3d 376 (3d Cir. 1996) (holding that the plaintiff's statement made after the close of discovery, contradicting his trial testimony, was grounds for relief under Rule 60(b)(3)). Rather, Linear properly provided MPS with Mr. Blauschild's expert report well in advance of trial, and then questioned him based on his report. It was MPS' responsibility to review Mr. Blauschild's report and prepare to cross-examine him based on his testimony. A party that fails to present known facts helpful to its case cannot obtain relief under Rule 60(b) after an adverse verdict has been entered against it. *See Moolenaar v. Gov't of Virgin Islands*, 822 F.2d 1342, 1347 (3d Cir. 1987).

MPS argues that the timing of the testimony, length of the report, manner in which underlying schematics were referenced, and the absence of its own lead patent counsel prevented it from challenging the testimony. (D.I. 256 at 5-6.) The court finds these arguments unpersuasive. While the testimony was elicited on re-direct examination of the last witness on the last day of trial, this does not absolve a litigant from actively pursuing its case. It is true that the court generally disfavors re-cross examination. It is also true that under the appropriate circumstances the court will, and has, permitted re-cross examination of a witness. Moreover, the length of an expert report is no excuse for not knowing the contents of the report. This is especially true where, as here, the report was produced during discovery and was likely known by counsel as having been used in prior litigation. Further, while MPS complains that Mr. Blauschild referenced documents by Bates

11

production number, that approach is perfectly acceptable and often preferable to avoid confusion. Finally, although the absence of MPS' lead patent counsel was regrettable, it does not warrant a new trial when competent and capable attorneys are available to provide adequate representation.

Even assuming, *arguendo*, that the court were to find Mr. Blauschild's testimony misleading, the materiality of his testimony on re-direct examination is questionable. MPS asserts that this testimony undermined their theory of simultaneous invention. Simultaneous invention, however, is but one factor the factfinder considers in determining whether a patent is invalid as obvious. *See Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1460 (Fed. Cir. 1984). As discussed more fully in Section V(B)(1), there was ample evidence that the patents-in-suit were not obvious. As such, even if the jury accepted the simultaneous invention theory, they were still free to find that the invention was not obvious. This finding is supported by the record, especially given MPS' burden.

## VI. CONCLUSION

For the aforementioned reasons, the court will deny MPS' motion for judgment of obviousness. Furthermore, the court finds that there is evidentiary support for the jury verdict of non-obviousness, and that MPS has failed to carry its burden of showing fraud or misconduct. As such, the court will deny MPS' motion for a new trial on the issue of validity.

Dated: November 12, 2009

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINEAR TECHNOLOGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MONOLITHIC POWER SYSTEMS, INC.,<br><br>Defendant. | C.A. No. 06-476 GMS |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Monolithic Power Systems, Inc.'s Motion for Judgment of Obviousness or, in the Alternative, for a New Trial on the Issue of Validity (D.I. 242) is DENIED.

Dated: November 12, 2009

CHIEF, UNITED STATES DISTRICT JUDGE